IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Civil Action No. 1:15-cv-02184-REB**

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

    *Plaintiff*,

    v.

FEDERAL BUREAU OF PRISONS,

    *Defendant*.

## PLAINTIFF'S MOTION TO REASSIGN CASE TO CIVIL DOCKET

Plaintiff Prison Legal News ("PLN"), by and through its undersigned counsel, respectfully moves for an order reassigning this case from the appellate ("AP") docket to the civil docket.

### CERTIFICATION OF CONFERRAL

Pursuant to D.COLO.LCivR 7.1(a), undersigned counsel hereby certify that prior to filing this motion, they conferred in good faith, by telephone, with counsel for Defendant concerning this motion and hereby notify the Court that Defendant opposes the relief sought herein.

### INTRODUCTION

This is a constitutional case arising out of the federal government's censorship of a PLN publication at the United States Penitentiary, Administrative Maximum Facility at Florence, Colorado ("ADX"). PLN alleges that this censorship violates the First Amendment to the United States Constitution under the multi-factor test that the

Supreme Court enunciated in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987).  PLN also alleges that the government has violated the Due Process Clause of the Fifth Amendment by, *inter alia*, providing *pro forma* censorship notices that fail to articulate the reasoning for the censorship.

Resolution of these constitutional claims on the AP docket is not appropriate because they require discovery from the government and fact-finding at a trial.  PLN will seek discovery on several issues relevant to the fact-intensive *Turner* test, such as prison policies and procedures regarding censorship, whether or not the prison censors similar information in other publications or media, security measures at ADX, and the ability of the prison to redact or remove allegedly objectionable content.  Because this information goes well beyond whatever administrative record will be produced in this case, retaining the case on the AP docket would significantly prejudice PLN's ability to prosecute its claims.

## BACKGROUND

On October 1, 2015, PLN filed its Complaint seeking declaratory and injunctive relief concerning the repeated censorship of its magazine *Prison Legal News* at ADX.  *See generally* Doc. 1.  *Prison Legal News* is a monthly magazine that contains analysis of legal decisions affecting prisoners, news relating to the criminal justice system, and information designed to help prisoners navigate the judicial system.  *See id.* ¶¶ 1, 12.  The magazine has thousands of subscribers, including inmates in state and federal prisons in all fifty states.  *Id.* ¶¶ 12, 14.

Since 2010, ADX has rejected at least eleven issues of *Prison Legal News* in their entirety. See *id.* ¶¶ 22, 56. According to the *pro forma* rejection notices from the prison, information about ADX inmates or staff in *Prison Legal News*—generally in the form of articles about legal proceedings involving such inmates or staff—purportedly constitutes a security threat. *Id.* ¶¶ 3, 23-25. Oftentimes, the censored content is already available to prisoners. *Id.* ¶¶ 28, 30-32. For example, two issues were censored based on articles that included information from published Tenth Circuit decisions, which presumably are available through the ADX law library. *Id.* ¶¶ 31-32. ADX is the only Bureau of Prisons ("BOP") institution to censor an issue of *Prison Legal News* since 2012. See *id.* ¶ 2.

The Complaint includes three claims. Count I alleges that the censorship violates PLN's First Amendment rights because, *inter alia*, the censored information does not pose a security risk in light of the stringent security measures in place at ADX, and the fact that most of the information censored is already available or known to ADX inmates. See *id.* ¶ 54. PLN will seek discovery from the government to develop the factual record on this claim. For example, PLN will seek identification of other publications and resources to which prisoners have access, to determine the extent to which ADX has censored information in *Prison Legal News* that is not censored when it appears in other publications or media. *Id.* ¶ 30. As another example, PLN will seek production of any internal policies or guidelines concerning censorship at ADX, which is relevant to whether ADX's conduct conforms with the First Amendment. In addition to

3

fact discovery on these and other issues, PLN may proffer expert testimony concerning, for example, whether the censored material poses a security risk at ADX.

In Count II of the Complaint, PLN alleges that Defendant violated PLN's rights under the Due Process Clause of the Fifth Amendment by failing to provide timely and adequate notice to PLN of rejections. *Id.* ¶¶ 59-70. As explained in the Complaint, PLN receives standard-form notices of rejection—as many as nine months post-censorship—that do not address the *Turner* factors and that provide no explanation for why the cited content is purportedly detrimental to the security, discipline, or good order of ADX. *See id.* ¶¶ 3, 25, 40. For at least one issue, PLN received no notice from ADX at all, learning of the censorship only from letters sent to PLN by its incarcerated subscribers. *See id.* ¶ 37. PLN will seek discovery on this claim, including production of internal policies or guidelines concerning the appeals process and preparation of rejection notices, as well as identification of any other censored issues for which ADX failed to provide notice.

Count III of the Complaint alleges violations of the Administrative Procedure Act ("APA") in connection with Defendant's arbitrary and capricious censorship decisions and Defendant's failure to provide proper notice and a meaningful opportunity to appeal the censorship in contravention of its own policies and procedures. *See id.* ¶¶ 37-40, 72-80.

PLN did not notice this case for the AP docket. *See* D.C.COLO.LAPR 3.1. After the Complaint was filed, however, the Court issued an Order *sua sponte* directing the

4

parties to confer and prepare a Joint Case Management Plan pursuant to Local AP Rule 16.1.  *See* Doc. 5.

## ARGUMENT

This case is inappropriate for adjudication on the AP docket and should therefore be reassigned to the civil docket.  The scope of the AP docket, as defined by Local AP Rule 1.1(c), extends to the "pre-merits management and briefing in a social security appeal, a case commenced or reviewed under 5 U.S.C. § 706 concerning an action or final decision of an administrative agency, board, commission or officer, or a bankruptcy appeal."  The Local AP Rules impose unique procedural constraints—including limited discovery and fact-finding—that are appropriate only when the Court is reviewing a complete factual record on appeal from an agency adjudication.  *See* D.C.COLO.LAPR 16.1(b); *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579-80 (10th Cir. 1994) (explaining that the streamlined procedures now embodied in the AP rules are appropriate when a district court applies the "arbitrary or capricious" standard to review a fully adjudicated factual record).  That is not the case here.

PLN's Complaint asserts "mixed" claims—one arising under the APA (5 U.S.C. § 706), but also two independent constitutional claims that rest on an undeveloped factual record.  Adjudication of such mixed cases on the civil docket is appropriate where, as here, this would "best . . . achieve the efficiencies dictated by Rule 1 of the Federal Rules of Civil Procedure and the purpose and intent of the court's AP docket and LAP Rules."  *Gasco Energy v. EPA*, No. 12-cv-1658-AP, Order Terminating AP Docket Designation and for Early Assignment to Merits Judge Under D.C.COLO.LCiv.R

40.1(b) at 1 (D. Colo. Dec. 6, 2012) (Doc. 15).  In *Gasco*, a court in this district reassigned a "mixed" case to the civil docket where the case included an administrative appeal appropriate for AP review and a related non-APA claim that required the traditional adjudicative procedures of the civil docket.  *Id.* at 1-2 ("[T]he [administrative] appeal is not obviously severable from the [non-APA] enforcement action, and it appears both should be decided at the same time and by the same judge."); *see also Wright v. F.B.I.*, 598 F. Supp. 2d 76, 78 (D.D.C. 2009) (denial of APA "arbitrary or capricious" claims has no bearing on the merits of plaintiff's constitutional claims).

Courts in this district routinely adjudicate cases that contain both APA and constitutional claims—including First Amendment claims asserted against BOP—on the civil docket.  *See, e.g.*, *Mohammed v. Holder*, 47 F. Supp. 3d 1236 (D. Colo. 2014) (complaint alleging both APA and First Amendment claims assigned to civil docket); *Brown v. Fed. Bureau of Prisons*, No. 11-cv-03191, 2014 WL 321214 (D. Colo. Jan. 29, 2014) (same); *Magluta v. Fed. Bureau of Prisons*, No. 11-cv-02381, 2013 WL 1151815 (D. Colo. Mar. 19, 2013) (same).

Likewise, PLN's constitutional claims should be adjudicated on the civil docket. As an initial matter, the constitutional claims are freestanding causes of action that do not arise outside of the APA, and the Court would have jurisdiction to adjudicate these claims, whether or not they are brought alongside an APA claim.  *See Bell v. Hood*, 327 U.S. 678, 681-82 (1946) (holding that 28 U.S.C. § 1331 provides a federal cause of action for constitutional claims); *Simmat v. Bureau of Prisons*, 413 F.3d 1225, 1236 (10th Cir. 2005) (same).  The addition of an APA claim, therefore, should not alter the

process for adjudicating PLN's constitutional claims, which implicate the discovery and fact-finding functions of a trial court. *See Jordan v. Wiley*, No. 07-cv-00498, 2009 WL 980313, at *1 (D. Colo. April. 8, 2009) (holding that overlapping constitutional and APA claims are "no reason to deny Plaintiff relevant documents on his constitutional claims.").

Unlike the "arbitrary or capricious" standard of the APA, PLN's First Amendment claim is governed by the *Turner* standard, which asks whether prison censorship is "reasonably related to legitimate penological interests." 482 U.S. at 89. The *Turner* standard requires the consideration and weighing of several factors, including: (i) the connection between censorship and the government interest put forward to justify it; (ii) whether the prisoners have alternative means of exercising the First Amendment right that is impinged upon; (iii) the impact accommodation of the constitutional right will have on guards, other inmates, and prison resources; and (iv) whether there are "obvious, easy alternatives" to the challenged censorship. *Id.* at 89-91. The consideration of these factors is "highly fact-intensive" and cannot be performed here without the benefit of full discovery that is permitted on the civil docket. *Sattar v. Holder*, No. 07-cv-02698, 2012 WL 882401, at *4 (D. Colo. Mar. 15, 2012) (citing *Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002)).

In light of the fact-intensive nature of the *Turner* test, plaintiffs pursuing First Amendment claims against a prison routinely obtain discovery—including where such claims are asserted alongside APA claims. *See Jordan v. Wiley*, No. 07-cv-00498, 2008 WL 4861923, at *2 (D. Colo. Nov. 10, 2008) (discovery granted on constitutional

7

claims in mixed case); *see also Sperry v. Werholtz*, 413 F. App'x 31, 37 (10th Cir. 2011) (prisoner obtained discovery in bringing First Amendment censorship claim to establish elements of *Turner* test); *Rocha v. Twilleger*, No. 10-cv-00357, 2011 WL 4048789, at *2 (D. Colo. Sept. 12, 2011) (same); *cf. Alexander v. Archuleta Cty.*, No. 08-cv-00912, 2009 WL 3245915, at *2 (D. Colo. Oct. 2, 2009) (discovery granted in First Amendment retaliation case).

In *Rocha*, for example, a court in this district held that a prisoner pursuing a First Amendment claim was entitled to production of, *inter alia*, written policies and practices governing the relevant defendant-prison employees, investigatory documents relating to the complaint, and certain information about inmates present at the prison during the relevant time period. *Rocha*, 2011 WL 4048789, at *2.  Similarly, in *Sperry*, the prisoner-plaintiff obtained discovery on his First Amendment censorship claims against the Kansas Department of Corrections.  *Sperry*, 413 F. App'x at 37-39.  The evidence obtained in the course of discovery included: (i) information regarding the security risk posed by censored publications; (ii) documentation of all publication censorships in the prison in the relevant time period; and (iii) evidence of easy, obvious alternatives to censorship.  *Id.*  The Tenth Circuit relied on this evidence to determine whether the plaintiff had met the *Turner* standard.  *Id.* at 39-40.  And in *Jordan*, the plaintiff, an ADX inmate who brought both constitutional and APA challenges to his punishment for possession of contraband, obtained discovery concerning his constitutional claims while his APA claims were still pending.  *Jordan*, 2008 WL 4861923, at *2 (granting plaintiff's

8

motion for leave to conduct discovery on constitutional claims); *Jordan*, 2009 WL 980313, at *2 (granting plaintiff's motion to compel discovery on constitutional claims).

In the present case, PLN seeks to prove its First Amendment and Due Process claims through the presentation of expert testimony and factual evidence gained during discovery, including interrogatories, document requests, requests for admission, and possibly depositions. PLN will seek discovery regarding, for example: (i) the scope of security measures at ADX (to assess the reasonableness of ADX's censorship); (ii) written policies, procedures, complaints, and internal communications regarding censorship and censorship appeals at ADX (to assess security risks, reasonableness of censorship and whether PLN is given meaningful notice and a chance to appeal ADX censorship decisions); (iii) news sources and legal information to which prisoners have access (to assess the connection between the censorship and the alleged security interest); (iv) the redaction capabilities and practices of ADX staff (to assess the availability of obvious alternatives to censorship); and (v) the rejection history of *Prison Legal News* at ADX (to ascertain whether ADX failed to send PLN notice for other censored issues). *See Turner*, 482 U.S. at 89-91.

This discovery is particularly appropriate in the present case because of the apparent lack of any meaningful administrative record or fact-finding by Defendant. Defendant's notifications to PLN of a censored issue consisted of a form letter citing a Bureau of Prison regulation without any explanation of how the censorship determination was made or how the magazine content would affect the prison or its

inmates. *See* Doc. 1 at ¶ 23. Discovery is required to develop the record for proper application of the *Turner* factors.

Furthermore, upon completion of the discovery outlined above, PLN may decide to file a motion for summary judgment, or partial summary judgment on its two constitutional claims. Such motions are not permitted under this Court's AP rules. *See* D.C.COLO.LAPR 16.1(b).

Requiring PLN to pursue its constitutional claims without a meaningful opportunity to conduct fact or expert discovery will be highly prejudicial to PLN. By contrast, Defendant would suffer no prejudice by having to litigate the APA claim on the civil docket, where the procedure for review of such claims will continue to apply. *See Gasco Energy*, slip op. at 2 (observing that despite reassignment, "Section III (the LAP Rules) on appellate procedure will continue to govern" the APA claim). Accordingly, both the constitutional claims and the APA claim should be litigated together on the civil docket.

## CONCLUSION

For the foregoing reasons, PLN respectfully requests that this case be remanded to the Clerk of the Court for reassignment to the civil docket.

10

DATED:   November 20, 2015

          Respectfully submitted,

| | |
|---|---|
| Lance Weber<br>Sabarish Neelakanta<br>Human Rights Defense Center<br>PO Box 1151<br>Lake Worth, Florida  33460<br>Telephone: (561) 360-2523<br>E-mail:<br>lweber@humanrightsdefensecenter.org<br>sneelakanta@humanrightsdefensecenter.org<br><br>*Of Counsel:*<br><br>Elliot Mincberg<br>Washington Lawyers' Committee for Civil Rights & Urban Affairs<br>11 Dupont Circle NW<br>Suite 400<br>Washington, DC 20036<br>Telephone: (202) 319-1000<br>E-mail: elliot_mincberg@washlaw.org | *s/  Steven D. Zansberg*<br>**Steven D. Zansberg**<br>Levine Sullivan Koch & Schulz LLP<br>1888 Sherman Street, Suite 370<br>Denver, CO 80203<br>Telephone: (303) 376-2409<br>FAX: (303) 376-2401<br>E-mail: szansberg@lskslaw.com<br><br>Peter A. Swanson<br>Addar Weintraub<br>Matthew S. Shapanka<br>Covington & Burling LLP<br>One CityCenter<br>850 Tenth Street NW<br>Washington, DC 20001<br>Telephone: (202) 662-6000<br>FAX: (202) 662-6291<br>E-mail: pswanson@cov.com<br>       aweintraub@cov.com<br>       mshapanka@cov.com<br><br>David M. Shapiro<br>Roderick and Solange MacArthur Justice Center<br>Northwestern University School of Law<br>375 E. Chicago Avenue<br>Chicago, IL 60611<br>Telephone:  (312) 503-0711<br>E-mail:david.shapiro@law.northwestern.edu<br><br>*Attorneys for Plaintiff Prison Legal News* |

## CERTIFICATE OF SERVICE

I hereby certify that on November 20, 2015, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to all counsel of record.

                                          s/ Steven D. Zansberg
                                          ***Steven D. Zansberg***
                                          Levine Sullivan Koch & Schulz LLP
                                          1888 Sherman Street, Suite 370
                                          Denver, CO 80203
                                          Telephone: (303) 376-2409
                                          FAX: (303) 376-2401
                                          E-mail: szansberg@lskslaw.com