# Attachment 1
# Declaration of Todd Chapman

*Prison Legal News v. Federal Bureau of Prisons*,
No. 15-cv-02184-RM-NYW


**U.S. Department of Justice**
Federal Bureau of Prisons

P R O G R A M   S T A T E M E N T
OPI         CPD/CPB
NUMBER      P5266.11
DATE        November 9, 2011

# Incoming Publications

/s/
*Approved*: Thomas R. Kane
Acting Director, Federal Bureau of Prisons

1. **PURPOSE AND SCOPE**

**§ 540.70 Purpose and scope.**

**Except when precluded by statute (see § 540.72), the Bureau of Prisons permits an inmate to subscribe to or to receive publications without prior approval and has established procedures to determine if an incoming publication is detrimental to the security, discipline, or good order of the institution or if it might facilitate criminal activity.   The term publication, as used in this subpart, means a book, booklet, pamphlet, or similar document, or a single issue of a magazine, periodical, newsletter, newspaper, plus such other materials addressed to a specific inmate such as advertising brochures, flyers, and catalogs.**

Section 7 of this Program Statement contains procedures to implement Sec. 615 of The Commerce, Justice, State Appropriations Act of 2000 (P.L. 106-113) (hereafter referred to as "the Ensign Amendment").

   a. **Summary of Changes**

*Policy Rescinded*
PS 5266.10       Incoming Publications (1/10/03)

This revision updates references to the Ensign Amendment.

**Federal Regulations from 28 CFR are in bold type**.
Implementing instructions are in regular type.

b. **Program Objectives**.   Expected results of this program are:

- Inmates will be permitted to receive and retain publications that do not threaten the security, good order, or discipline of the institution, or that may facilitate criminal activity, or are otherwise prohibited by law.
- Publications determined detrimental to the security, good order, or discipline of the institution or that may facilitate criminal activity, or are otherwise prohibited by law, will be excluded from Bureau facilities.
- A safer environment for staff and inmates will be provided by strengthening procedures to prevent the introduction of contraband.

c. **MCC/MDC/FDC/FTC Application.**   Procedures in this Program Statement apply to Metropolitan Correctional Centers, Metropolitan Detention Centers, Federal Detention Centers, and Federal Transportation Centers, all of which are referred to as "administrative institutions" for the purposes of this Program Statement.

2. **PROCEDURES**

**§ 540.71 Procedures.**

**(a)(1)   At all Bureau institutions, an inmate may receive hardcover publications and newspapers only from the publisher, from a book club, or from a bookstore.**

The sender's address must be clearly identified on the outside of the package.

**(2)   At medium security, high security, and administrative institutions, an inmate may receive softcover publications (for example, paperback books, newspaper clippings, magazines, and other similar items) only from the publisher, from a book club, or from a bookstore.**

**(3)   At minimum security and low security institutions, an inmate may receive softcover publications (other than newspapers) from any source.**

**(4)   The Unit Manager may make an exception to the provisions of paragraphs (a)(1) and (2) of this section if the publication is no longer available from the publisher, book club, or bookstore.   The Unit Manager shall require that the inmate provide written documentation that the publication is no longer available from these sources.   The approval of any request for an exception is to be documented, in writing, on an Authorization to Receive a Package which will be used to secure the item.**

**(b)   The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.   The Warden may not reject a publication solely because its content is**

**religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant.   Publications which may be rejected by a Warden include but are not limited to publications which meet one of the following criteria:**

**(1)   It depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;**

**(2)   It depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of Bureau of Prisons institutions;**

**(3)   It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;**

**(4)   It is written in code;**

**(5)   It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;**

**(6)   It encourages or instructs in the commission of criminal activity;**

**(7)   It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.**

Only the Warden may reject an incoming publication.   In the Warden's absence, only the Acting Warden may perform this function.

Section 3 of this Program Statement contains procedures for returning a publication under the Ensign Amendment.   In Section 3, "sexually explicit" and "nudity" are defined in terms of pictorial depictions only.   Publications not subject to return under Section 3 (for example, material that does not meet a definition in that section) may still be rejected under this section.

To help staff determine which materials may pose the type of threat that warrants exclusion, the following guidelines are provided.

A Warden may determine that sexually explicit material of the following types will be excluded, as potentially detrimental to the security and good order or discipline of the institution, or as facilitating criminal activity:

- Sadomasochistic.
- Bestiality.
- Involving children.

In addition:

- The Warden must prohibit a sexually explicit publication if it is determined to pose a threat to the institution or is contrary to law. Child pornography materials, which are prohibited by law, are examples.
- Sexually explicit material does not include material of a news or information type. Publications concerning research or opinions on sexual, health, or reproductive issues, or covering the activities of gay rights organizations or gay religious groups, for example, should be admitted unless they are otherwise a threat to legitimate institution interests.
- Literary publications should not be excluded, solely because of homosexual themes or references, if they are not sexually explicit in a manner that threatens legitimate institution interests.
- Sexually explicit material may be admitted if it has scholarly value, or general social or literary value.

**(c) The Warden may not establish an excluded list of publications. This means the Warden shall review the individual publication prior to the rejection of that publication. Rejection of several issues of a subscription publication is not sufficient reason to reject the subscription publication in its entirety.**

**(d) Where a publication is found unacceptable, the Warden shall promptly advise the inmate in writing of the decision and the reasons for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable. The Warden shall permit the inmate an opportunity to review this material for purposes of filing an appeal under the Administrative Remedy Program unless such review may provide the inmate with information of a nature which is deemed to pose a threat or detriment to the security, good order or discipline of the institution or to encourage or instruct in criminal activity.**

In questionable cases, institution staff should consult legal staff.

**(e) The Warden shall provide the publisher or sender of an unacceptable publication a copy of the rejection letter. The Warden shall advise the publisher or sender that he may obtain an independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. The Warden shall return the rejected publication to the publisher or sender of the material unless the inmate indicates an intent to file an appeal under the Administrative Remedy Program, in which case the Warden shall retain the rejected material at the institution for review. In case of appeal, if the rejection is sustained, the rejected publication shall be returned when appeal or legal use is completed.**

See BP-A0953, Notification to Inmate and Publisher/Sender of Rejected Publication, for a sample.

The Warden will retain the rejected publication for 20 days from the date the inmate is sent written notification of the rejection. The 20-day period allows the inmate to file an appeal under the

Administrative Remedy Program.  If he/she does not file within 20 days, the rejected publication may be returned to the publisher.

If the inmate does file an appeal, the Warden will retain the rejected publication at the institution. The rejected publication (or the offensive portion of it) must be reviewed before a staff response is prepared for the BP-229, Request for Administrative Remedy or, when applicable, a BP-230, Regional Appeal of Administrative Remedy or BP-231, Central Office Appeal of Administrative Remedy, respectively.

The Regional Office and Central Office should not respond to a BP-230 or BP-231 appeal without first reviewing either the rejected publication or a copy of the offensive portion of it.

**(f)  The Warden may set limits locally (for fire, sanitation, or housekeeping reasons) on the number or volume of publications an inmate may receive or retain in his quarters.  The Warden may authorize an inmate additional storage space for storage of legal materials in accordance with the Bureau of Prisons procedures on personal property of inmates.**

3.  **STATUTORY RESTRICTIONS REQUIRING RETURN OF COMMERCIALLY PUBLISHED INFORMATION OR MATERIAL WHICH IS SEXUALLY EXPLICIT OR FEATURES NUDITY**

**§ 540.72 Statutory restrictions requiring return of commercially published information or material which is sexually explicit or features nudity.**

Title 18 of the United States Code, Section 4042 note, states:

> "[N]one of the funds appropriated or otherwise made available to the Federal Bureau of Prisons may be used to distribute or make available any commercially published information or material to a prisoner when it is made known to the Federal official having authority to obligate or expend such funds that such information or material is sexually explicit or features nudity."

Procedures in this section affect publications received on or after **August 28, 1999.**  Publications authorized before that date will be retained and transferred per the Program Statement **Inmate Personal Property**.

**(a)  When commercially published information or material may not be distributed by staff or made available to inmates due to statutory restrictions (for example, a prohibition on the use of appropriated funds to distribute or make available to inmates information or material which is sexually explicit or features nudity), the Warden or designee shall return the information or material to the publisher or sender.  The Warden or designee shall advise the publisher or sender that an independent review of the decision may be obtained by writing to the Regional**

**Director within 20 days of receipt of the notification letter.   Staff shall provide the inmate with written notice of the action.**

Mailroom staff will return publications found to be non-distributable on the basis of the definitions listed in subsection (b) below. The publications will be returned with the appropriate attachment.

Ordinarily, the outside cover is used to assess content or the need for further review.

Non-distributable publications will be returned to the sender or publisher with a BP-A0954, Notification to Publisher of Return of Publication.   The publications may be returned in bulk, annotating the number of returned copies.

Materials extracted, photocopied, or clipped from such publications will also be returned to the sender with a BP-A0955, Notification to Sender of Return of Materials.

Under subsection (a) of this section, there is no need to delay the return of non-distributable publications or materials even when an inmate appeals under the Administrative Remedy Program, because the statutory restriction on making the material available precludes any inmate review.

Inmates will be notified via the BP-A0956, Notification to Inmate of Return of Publication or Materials.

Although the publication or material is returned, the Warden will ensure a copy of the publication cover and one page of the banned information or material is copied and retained at the institution in case of a subsequent appeal by the inmate or publisher/sender.

Inmates may use the Administrative Remedy Program to appeal return of materials.   However, as 18 U.S.C. 4042 note prohibits the Bureau from distributing the material, inmates may not review copies of returned materials in connection with administrative remedy filings.

Only one copy of the retained, statutorily prohibited information is to be retained by the Warden, even if the publication is mailed to several inmates:

- For example, if the April 2009 publication of XYZ is mailed to 20 inmates, that publication cannot be made available to inmates.   Only one issue of the publication needs to be retained.
- A copy of the notification sent to each inmate will be attached to the retained material.

**(b)   *Definitions*.   For the purpose of this section:**

**(1)   *Commercially published information or material* means any book, booklet, pamphlet, magazine, periodical, newsletter, photograph or other pictorial depiction, or similar document, including stationery and greeting cards, published by any individual, organization, company, or corporation which is distributed or made available through any means or media for commercial purposes.   This**

**definition includes any portion extracted, photocopied, or clipped from such items.**

**(2)   *Nudity* means a pictorial depiction where genitalia or female breasts are exposed.**

Specifically, when the pictorial depiction of the female breast displays the areola or nipple, this material will be rejected.

**(3)   *Features* means the publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues.   Publications containing nudity illustrative of medical, educational, or anthropological content may be excluded from this definition.**

Section 2.c. prohibits the establishment of an excluded list of publications.   It is important to review each individual publication for unacceptable content.   The following are examples of commercial publications that "contain nudity illustrative of medical, educational, or anthropological content," which are allowable:

- *National Geographic*.
- *Our Bodies, Ourselves*.

Also, the following are examples of commercial publications that may be allowable **if they do not contain depictions of nudity:**

- *Sports Illustrated* swimsuit issues.
- Lingerie catalogs.

However, if the above examples **contain depictions of nudity not illustrative of medical, educational, or anthropological content,** they should be rejected under this section.   A publication may change a single issue or its general policies and practices at any time, which would make it acceptable or unacceptable for distribution.   The examples above are **guidelines only** and are subject to change.

**(4)   *Sexually explicit* means a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation.**

For purposes of this section, written text does not qualify a publication as sexually explicit.

Publications with sexual content that are not returned under these procedures are still subject to rejection through procedures in Section 2.b.(7).   For example, publications that contain sexually explicit text, feature sadomasochism or bestiality, or involve children may not meet the definitions in this Section for "sexually explicit" or "nudity," but may be considered detrimental to the security and good order of the institution, per Section 2.b.(7).

**REFERENCES**

*Program Statements*
P1330.16    Administrative Remedy Program (12/31/07)
P1350.02    Donations, Acceptance of (6/29/98)
P5265.14    Correspondence (4/5/11)
P5360.09    Religious Beliefs and Practices (12/31/04)
P5580.08    Inmate Personal Property (8/22/11)
P5800.16    Mail Management Manual (4/5/11)

*Federal Regulations*
Federal Regulations cited in this Program Statement are contained in 28 CFR 540.70-72.

*BOP Forms (available on Sallyport)*
BP-229       Request for Administrative Remedy
BP-230       Regional Appeal of Administrative Remedy
BP-231       Central Office Appeal of Administrative Remedy
BP-A0953     Notification to Inmate and Publisher/Sender of Rejected Publication
BP-A0954     Notification to Publisher of Return of Publication
BP-A0955     Notification to Sender of Return of Materials
BP-A0956     Notification to Inmate of Return of Publication or Materials

*ACA Standards*
- 2nd Edition Standards for Administration of Correctional Agencies: 2-CO-5D-01.
- 4th Edition Standards for Adult Correctional Institutions: 4-4490.
- 4th Edition Standards for Adult Local Detention Facilities: 4-ALDF-5B-07.

*Records Retention Requirements*
Requirements and retention guidance for records and information applicable to this program are available in the Records and Information Disposition Schedule (RIDS) on Sallyport.