IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02184-RM-NYW

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

**DEFENDANT'S MOTION TO STAY DISCOVERY
AND TO VACATE THE SCHEDULING CONFERENCE AND RELATED DEADLINES**

The Court should stay discovery in this case until it decides that it has subject-matter jurisdiction to resolve the matter and that Prison Legal News ("PLN") has stated some plausible claim for relief. Relatedly, the Court should vacate the Scheduling Conference currently set for August 17, 2016, and all deadlines associated with that Conference. Undersigned counsel for the BOP consulted with counsel for PLN before filing this motion. *See* D.C.COLO.LCivR 7.1(a). PLN opposes a stay of discovery.

There are good grounds for the Court to issue a stay. The Federal Bureau of Prisons ("BOP") has moved to dismiss PLN's complaint in its entirety. *See* Doc. 31. The BOP has raised the jurisdictional defenses of mootness and standing. This Court has held that it should determine whether jurisdiction exists before the parties proceed to discovery. The BOP has also moved to dismiss some of PLN's claims for failure to state a claim for relief. Recent Supreme Court and Tenth Circuit cases authorize this Court to delay discovery until it determines whether or not a plaintiff has pleaded a plausible claim. And the Court also has strong grounds for issuing a stay when the facts here are evaluated under the five-factor *String Cheese* test applied in this district.

**Claim One** has a significant jurisdictional flaw. PLN alleges that the BOP violated PLN's First Amendment rights by not allowing inmates at the United States Penitentiary – Administrative Maximum ("ADX") to receive certain issues of a magazine published by PLN. The magazines were rejected simply because they contained articles that identified and discussed BOP inmates or personnel. That claim is both constitutionally and prudentially moot because the ADX has eliminated its former practice of rejecting publications solely because they identify and discuss inmates or staff. Doc. 31 at 6-12.[1]

In February 2016, the ADX adopted a new policy for reviewing incoming publications (the "February 2016 Policy"). The February 2016 Policy establishes enhanced review procedures, including a mandatory review by ADX legal personnel before the Warden can reject any publication. A BOP official has confirmed in a sworn declaration that, pursuant to the February 2016 Policy, "the ADX will adhere to the standard that a publication will not be rejected solely because it discusses an ADX or Bureau inmate, or Bureau staff member"—as happened with the rejected issues of *Prison Legal News*. *See* Doc. 31 at 5. The official further expressed the ADX's commitment to the February 2016 Policy. *Id.* As a good-faith demonstration of that commitment, the ADX Warden has re-reviewed the previously rejected issues of *Prison Legal News* in accordance with the procedures and practices established by the February 2016 Policy. *Id.* at 5-6. The Warden determined that those issues can be provided to ADX inmate subscribers. *Id.*

The BOP has also moved to dismiss PLN's challenge in Claim One to the BOP's practice of withholding an entire incoming publication when it contains only some objectionable material. *Id.* at 12-13. That allegation fails to state a claim because the Supreme Court upheld the BOP's practice in *Thornburgh v. Abbott*, 490 U.S. 401-418-19 (1986).

The BOP has moved to dismiss **Claim Two**, a procedural-due-process claim challenging

---

[1] Pursuant to Fed. R. Civ. P. 10(c), the BOP incorporates by reference the arguments it raised in its motion to dismiss.

2

the procedures associated with the past rejections of PLN's magazine.  PLN states no plausible claim for relief because it received notice and an opportunity to be heard that satisfies due process in this context.  Doc. 31 at 13-19.  And, insofar as Claim Two asserts that the BOP did not follow its own procedures for reviewing incoming publications (which the well-pleaded facts do not show), that allegation also fails to state a plausible due-process claim.  Prison regulations do not confer rights or benefits.  *Id.* at 14.

There is also a jurisdictional deficiency in Claim Two.  PLN asserts that the BOP's alleged practice of returning a publication to the publisher before the completion of the publisher's appeal process violates due process.  But that practice does not exist.  Therefore, PLN lacks standing to challenge that non-existent practice.  *Id.* at 19.

Finally, **Claim Three**, an Administrative Procedure Act ("APA") claim, merely reiterates its First and Fifth Amendment claims.  The BOP has moved to dismiss the APA claim for the same reasons that require dismissal of Claims One and Two.  *Id.* at 19-20.

## ARGUMENT

**I.     THE COURT SHOULD STAY DISCOVERY UNTIL IT DETERMINES THAT IT HAS JURISDICTION.**

The BOP asserts that the Court lacks subject-matter jurisdiction based on mootness and lack of standing.  *Id.* at 6-12, 19-20.  The Court is authorized to stay discovery until it issues a ruling on the BOP's motion to dismiss.

As this Court has recognized, "[q]uestions of jurisdiction and immunity should be resolved at the earliest stages of litigation, so as to conserve the time and resources of the Court and the parties."  *Samuels v. Baldwin*, No. 14-cv-02588-LTB-KLM, 2015 WL 232121, *1 (D. Colo. Jan. 16, 2015); *accord*, *e.g.*, *Meek v. Clements*, No. 11-cv-02840-MSK-MEH, 2012 WL 688409, *1 (D. Colo. Mar. 2, 2012) ("Legal questions regarding the court's subject matter jurisdiction should be resolved as early as possible in the litigation, before incurring the burdens

3

of discovery.") (citing *Behrens v. Pelletier*, 516 U.S. 299, 308, 310 (1996)); *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No. 1:02-cv-01934-LTB-PAC, 2006 WL 894955, *2 (D. Colo. Mar. 30, 2006) (finding that a stay of discovery was appropriate when a motion to dismiss for lack of personal jurisdiction was pending). "Thus, a stay of discovery during the pendency of a dispositive motion asserting a jurisdictional challenge may be appropriate and efficient." *Ind v. Colo. Dep't of Corrs.*, No. 09-cv-00537-WJM-KLM, *2 (D. Colo. Jan. 23, 2012).

Staying discovery until the Court resolves the jurisdiction issue is the "appropriate and efficient" approach here. *Id.* If the Court does not have subject-matter jurisdiction, it has no power to take any action in the case. "A court may not … exercise authority over a case for which it does not have subject matter jurisdiction." *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (ellipsis and citation omitted). "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Id.* (citation omitted); *see also Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking.") (emphasis in original).

The Court has broad discretion to stay proceedings as incidental to its power to control its own docket. *See Clinton v. Jones*, 520 U.S. 681, 706-07 (1997); *see also Rodriguez v. IBP, Inc.*, 243 F.3d 1221, 1230 (10th Cir. 2001) (power to stay discovery lies within the sound discretion of the court) (citation omitted). It makes sense, and is most efficient, for the Court to exercise its broad authority and stay discovery until the Court resolves the fundamental question of jurisdiction.

## II. THE COURT IS AUTHORIZED TO DETERMINE WHETHER THE COMPLAINT STATES A CLAIM BEFORE ALLOWING DISCOVERY.

The Supreme Court and the Tenth Circuit have emphasized that a trial court should not "unlock the doors" of discovery unless and until a plaintiff demonstrates that it has stated a plausible claim under Rule 8 of the Federal Rules of Civil Procedure. A stay pending a determination of plausibility is appropriate even when a defendant, like the BOP here, does not claim entitlement to some type of immunity.

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court embraced "the understanding that, before proceeding to discovery, a complaint must allege facts suggestive of illegal conduct." *Id.* at 563 n.8 (emphasis added). The Court noted that "it is only by taking care to require allegations that reach the level suggesting conspiracy [the claim the respondents attempted to plead] that we can hope to avoid the potentially enormous expense of discovery in cases with no 'reasonably founded hope that the [discovery] process will reveal relevant evidence[.]'" *Id.* at 559-60 (citing *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 347 (2005)); *see also id.* at 558-59 (holding that "a district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed") (citations omitted).

Then, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court held that, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. The Court emphasized that the plausibility determination must precede the initiation of discovery, even when a district court might attempt to engage in "careful case management" designed to cabin discovery in the early stages of the case. *Id.* at 684-85 ("We have held, however, that the question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process.").

The Court rejected an approach that would allow "a claim just shy of a plausible entitlement to relief" to proceed to discovery, recognizing "the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." *Id.* at 685 (quoting *Twombly*).

While *Iqbal* noted that applying the Rule 8 pleading standard before opening discovery "is especially important in suits where Government-official defendants are entitled to assert the defense of qualified immunity," *see id.*, the Supreme Court did not limit its analysis to the qualified-immunity context. The rationale for declining to "unlock the doors of discovery" before determining plausibility applies equally to government agencies, like the BOP here, who are sued for injunctive relief:

> If a Government official is to devote time to his or her duties, and to the formulation of sound and responsible policies, it is counterproductive to require the substantial diversion that is attendant to participating in litigation and making informed decisions as to how it should proceed. Litigation, though necessary to ensure that officials comply with the law, exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government.

*Id.*

Following *Twombly* and *Iqbal*, the Tenth Circuit has recognized that discovery should not proceed until the Court determines that a plaintiff has pleaded a plausible claim. In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210 (10th Cir. 2011), the Court stated that the Rule 8 plausibility requirement serves two purposes. One is "to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense." *Id.* at 1215 (quoting *Pace v. Swerdlow*, 519 F.3d 1067, 1076 (10th Cir. 2008) (Gorsuch, J., concurring) (citing *Twombly*)).[2] The second is "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." *Id.* Allowing discovery here would clearly thwart this second purpose. It would unnecessarily trigger an expensive and

---

[2] The defendant in *Kansas Penn Gaming* did not claim entitlement to immunity.

6

burdensome discovery process before the Court has a chance to decide whether there is any viable claim.

The Tenth Circuit has routinely affirmed decisions in which trial courts decline to open discovery pending the completion of the Rule 8 evaluation, finding that commencing discovery under those circumstances would be inconsistent with *Twombly* and *Iqbal*. In *Sheldon v. Khanal*, 502 F. App'x 765 (10th Cir. 2012), a case where no immunity defenses were raised, the appellants argued that an order of dismissal issued by another district court should not have res judicata effect. Appellants claimed "they were denied a full and fair opportunity to litigate their claims … because they were denied discovery before the court ruled on their motions to dismiss." *Id.* at 773. The Tenth Circuit rejected this argument:

> [D]iscovery is not necessary to resolve a motion to dismiss for failure to state a claim for relief; the court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's … complaint alone is legally sufficient to state a claim for which relief may be granted. One purpose of requiring that a complaint state a plausible claim for relief is to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim.

*Id.* (citing *Kansas Penn Gaming*, 656 F.3d at 1215) (other internal citation and quotation marks and brackets omitted). The Tenth Circuit observed that the district court that had dismissed the case had "appropriately limited discovery to preserve judicial resources while the motions to dismiss were pending, and the [plaintiffs] have not shown that this limitation was unfair." *Id.*

Other Tenth Circuit authority since *Iqbal* also supports staying discovery in this case at this time. In *Jensen v. America's Wholesale Lender*, 425 F. App'x 761 (10th Cir. 2011), the district court found that plaintiffs failed to state any plausible claim against defendants, who were alleged to have engaged in fraud and to have conspired to foreclose on plaintiffs' home. *Id.* at 762-63. On appeal, plaintiffs contended that discovery, which the district court did not permit, would have allowed them to plead their fraud claim with the required particularity. *Id.* at 764. The Tenth Circuit, following *Iqbal*, rejected this argument: "Though they insist they could

7

establish their fraud claim with discovery, our pleading standard 'does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'" *Id.* (quoting *Iqbal*, 556 U.S. 678-79); *accord*, *e.g.*, *Roth v. Wilder*, 420 F. App'x 804, 805 (10th Cir. 2011) ("Roth specifically stated in his objections to the magistrate judge's report and recommendation that he could not identify any defendant's particular wrongful actions or inactions without first engaging in discovery.  As the Supreme Court made clear in *Twombly*, however, Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance some facts might exist which could support a plausible claim."); *Mecca v. United States*, 389 F. App'x 775, 782 (10th Cir. 2011) (finding that the plaintiff was not entitled to discovery against either *Bivens* defendants or the sovereign because Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and observing that "[v]ague allegations against the entire Army do not suffice") (citing *Iqbal*, 556 U.S. at 678-79).

In accordance with this authority, this Court has rejected the argument that a motion to dismiss should be denied where the plaintiff was "prepared to prove her claims at trial 'after complete discovery.'"  *Alley v. Aurora Loan Services, LLC*, No. 10-cv-02163-REB-CBS, 2011 WL 3799035, *6 (D. Colo. July 21, 2011), *adopted*, 2011 WL 3799585 (D. Colo. Aug. 26, 2011).  "That argument is unavailing as the Supreme Court has held that '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements' will 'not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.'"  *Id.* at n.6 (quoting *Iqbal*, 556 U.S. at 678-79).

The Court should stay discovery here until it determines whether or not PLN has pleaded any plausible claim.

### III. THE COURT HAS COMPELLING GROUNDS TO EXERCISE ITS DISCRETION TO STAY DISCOVERY HERE.

#### A. Legal standards

This Court has broad discretion to stay discovery. *Clinton*, 520 at 706-07. A stay of discovery is especially appropriate where "resolution of a preliminary motion may dispose of the entire action." *See*, *e.g.*, *Advanced Career Technologies, Inc. v. Does*, No. 13-cv-00304-WJM-KLM, 2014 WL 3749218, *1 (D. Colo. July 30, 2014); *Eggert v. Chaffee Co., Colo.*, No. 10-cv-01320-CMA-KMT, 2010 WL 3359613, *1 (D. Colo. Aug. 25, 2010) (citations omitted).[3]

The Court can weigh several factors in determining whether to exercise its broad discretion to stay discovery. *See String Cheese Incident,* 2006 WL 894955, *2 (denoting a five-part test that includes an assessment of: "(1) plaintiff's interests in proceeding expeditiously with the civil action and the potential prejudice to plaintiff of a delay; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest").

#### B. The *String Cheese* factors support a stay.

Here, there is a pending motion to dismiss all claims, including a motion to dismiss for lack of subject-matter jurisdiction. And consideration of the *String Cheese* factors weighs strongly in favor of a stay.

---

[3] *Accord*, *e.g.*, *Nankivil v. Lockheed Martin Corp.*, 216 F.R.D 689, 692 (M.D. Fla. 2003) (stating that a stay may be appropriate if "resolution of a preliminary motion may dispose of the entire action") (citation omitted); *Vivid Techs., Inc. v. American Sci. & Eng'g, Inc.*, 200 F.3d 795, 804 (Fed. Cir. 1999) ("When a particular issue may be dispositive, the court may stay discovery concerning other issues until the critical issue is resolved.") (citation omitted); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Auth.*, 201 F.R.D. 1, 2 (D.D.C. 2005) ("A stay of discovery pending the determination of a dispositive motion is an eminently logical means to prevent wasting time and effort of all concerned, and to make the most efficient use of judicial resources.") (internal quotation omitted)); 8A Charles Alan Wright et al., *Federal Practice and Procedure* § 2040 (3d ed. 1998) ("[W]hen one issue may be determinative of a case, the court has discretion to stay discovery on other issues until the critical issue has been decided.").

### 1.      Factor number 1:  PLN is not prejudiced.

As for the first factor, PLN will not be prejudiced by a stay.  A stay affords the Court the time required to ascertain whether it has subject-matter jurisdiction, without which it cannot issue any decisions that bind the parties.  PLN has no legal right to litigate claims for which there is no jurisdiction.  A stay also affords the Court time to conduct the plausibility assessment, which the Supreme Court emphasized in *Iqbal* should precede the initiation of discovery.  The resolution of the jurisdictional and plausibility questions is proceeding rapidly.  Immediately after the BOP filed its motion to dismiss, the Court set an oral argument on the motion.  *See* Doc. 33.  PLN will not be prejudiced if discovery is deferred until the Court issues a ruling on the motion and satisfies itself that it has jurisdiction to proceed to the merits.[4]

The risk of prejudice to PLN is particularly low here.  The BOP has made a public commitment to the Court and to PLN that it has abolished the practice at the heart of PLN's claims, *i.e.*, rejecting the magazine based on a reference to a BOP inmate or staff member.  Notably, it has been more than two years since an issue of *Prison Legal News* was rejected at the ADX.  *See* Doc. 1 at ¶ 22 (last rejection in April 2014); *see also* Doc. 31 at 5 n.5 (confirming that no issues were rejected at the ADX in 2015 or to date in 2016).  The BOP has also represented that it has commenced the process of identifying the ADX inmate subscribers of *Prison Legal News* in order to provide them the rejected issues of the magazine.  Doc. 31 at 5-6.

The BOP's actions also assuage concerns about prejudice insofar as PLN's procedural-due-process claim is concerned.  There is a markedly diminished risk that *any* issue of *Prison Legal News* will be rejected following the adoption of the February 2016 Policy.  *See id.* at 4-5 (describing reduction in rejections).  Therefore, PLN's exposure to appeal procedures it contends

---

[4] In the alternative, the Court could defer discovery at least until the motion is fully briefed and it has heard oral argument.  At that point, the Court will have a clearer understanding of the strength of the BOP's arguments, particularly on the critical jurisdictional issue, and can determine if a continuing stay is warranted.

are procedurally defective is reduced, too.  Under these circumstances, where PLN faces minimal risk of injury, a stay is not prejudicial.

The Court can also take into account the fact that the BOP has acted in a forthright and cooperative manner in this case.  It has not sought to unduly delay these proceedings.  Rather, after the lawsuit was filed, the ADX thoroughly reviewed its procedures and adopted a new policy for reviewing incoming publications.  The BOP has expressed a public commitment to that policy.  All of this was done without the prod of discovery.  This record provides assurance that PLN's interests will not be harmed if discovery is delayed long enough to allow the Court to evaluate the BOP's dispositive motion.

### 2.    Factor number two:  The BOP bears a significant burden.

The second factor—the burden on the BOP—strongly weighs in favor of a stay.  The BOP faces a significant burden if discovery proceeds.  The Supreme Court in *Iqbal* recognized the prejudice the BOP faces here:  Discovery "exacts heavy costs in terms of efficiency and expenditure of valuable time and resources that might otherwise be directed to the proper execution of the work of the Government."  *See* 556 U.S. at 685.

Prison officials—likely including former ADX Wardens and officials in the BOP's North Central Regional Office—will be deposed.  The time required to prepare the officials for deposition necessarily diverts them from their assigned duties and, consequently, impacts the operations of the ADX and the North Central Regional Office.  The BOP will be required to respond to other discovery.  PLN has already served extensive discovery requests on the BOP, including requests for production of documents, interrogatories, and a request for entry upon land to gain access to the ADX pursuant to Fed. R. Civ. P. 34.

While negative effects on prison operations are an inevitable consequence of litigation, they may be limited or avoided entirely if the Court finds that it lacks subject-matter jurisdiction

11

or that PLN has not pleaded a plausible claim. The Court can properly exercise its discretion to avoid any needless disruption of prison operations because of unnecessary discovery.

### 3. Factor number three: A stay is more convenient for the Court.

As to the third *String Cheese* factor, it is more convenient for the Court to stay discovery until it is clear that this case will proceed. *See Conchas-Bustos v. Cole*, No. 15-cv-00511-WYD-KLM, 2015 WL 3661171, *2 (D. Colo. June 12, 2015) (staying discovery pending resolution of a dispositive motion); *Chavous v. D.C. Fin. Responsibility & Mgmt. Assistance Authority*, 201 F.R.D 1, 5 (D.D.C. 2005) (noting that staying discovery pending a decision on a dispositive motion that would fully resolve the case "furthers the ends of economy and efficiency").

The parties are cooperative, but there will be discovery disputes that the parties likely will not be able to resolve on their own. For example, the BOP anticipates that it will object to PLN's request for entry upon land on multiple grounds, including, but not limited to, proportionality and because it improperly seeks "confidential interviews" of inmates.[5] But if the Court grants the motion to dismiss, there would be no need for the Court to address any discovery issues at all. This factor also weighs in favor of staying discovery.

### 4. Factors four and five: The preeminent nonparty interest is the interest in the efficient use of federal judicial and agency resources.

The fourth and fifth *String Cheese* factors also weigh in favor of a stay.

As for the fourth factor, there are no nonparties who have an interest in insisting that PLN obtain discovery right away, before the Court decides whether it has jurisdiction and whether PLN has satisfied the Rule 8 pleading standards. Inmates at the ADX do not have an interest in immediate discovery. They are the beneficiaries of the review procedures established as a result

---

[5] The BOP has not thoroughly reviewed PLN's discovery requests at this time, nor has counsel had an opportunity to consult with counsel for PLN about any discovery request. The BOP references the pending discovery requests here because they are relevant to the Court's assessment of the *String Cheese* factors.

of the adoption of the February 2016 Policy, which provides the very relief that PLN is seeking on its First Amendment claim.

As for non-parties outside the prison (factor number five), the public has no interest in seeing unnecessary discovery proceed, especially where the efficient use of the resources of both a federal court and a federal agency charged with safely housing almost 200,000 prisoners are concerned. Therefore, to the extent a public interest is implicated, "the public's interest in the efficient and just handling of legal disputes favors imposition of a stay in these circumstances." *Samuels*, 2015 WL 232121, *3.

In sum, an assessment of the *String Cheese* factors supports the Court's decision to exercise its discretion to stay discovery. This approach avoids the imposition of the significant burdens associated with discovery that may prove to be unnecessary in this case. Further, a stay will in no way prejudice PLN from engaging in robust discovery, if necessary, following the resolution of the motion to dismiss.

## CONCLUSION

For the foregoing reasons, the Court should stay discovery pending resolution of the BOP's motion to dismiss. The Court should also vacate the August 17, 2016, Scheduling Conference and all related deadlines.

Respectfully submitted August 5, 2016.

    JOHN F. WALSH
    United States Attorney

    s/ *Susan Prose*
    Susan Prose
    Assistant United States Attorney
    1225 Seventeenth Street, Suite 700
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    Fax: (303) 454-0404
    E-mail: susan.prose@usdoj.gov

    Counsel for the Federal Bureau of Prisons

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)

       I hereby certify that on August 5, 2016, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

    Steven Zansberg
    Lance Weber
    Sabarish Neelakanta
    Peter Swanson
    Matthew Shapanka
    Elliot Mincberg
    David Shapiro
    Stephen Kiehl


                                          s/ *Susan Prose*
                                          Susan Prose
                                          United States Attorney's Office