**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 15-CV-02184-RM-STV

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

      Plaintiff,

      v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

_____

**PLAINTIFF PRISON LEGAL NEWS'S MEMORANDUM IN OPPOSITION TO
DEFENDANT FEDERAL BUREAU OF PRISONS' MOTION TO DISMISS (DOC. 31)**
_____

Prison Legal News ("PLN") brought this action to address the unlawful censorship of its magazine *Prison Legal News* at the United States Penitentiary — Administrative Maximum Facility ("ADX"). Defendant the Federal Bureau of Prisons ("BOP") concedes that issues of *Prison Legal News* were rejected solely because they discussed an ADX or BOP inmate, or BOP staff member. Def.'s Mot. to Dismiss (Doc. 31) (hereinafter, "Mot.") at 2–3. This censorship violates the First Amendment and the Administrative Procedure Act ("APA").

In the present motion, BOP moves to dismiss PLN's censorship claim as moot. BOP claims that the ADX purportedly decided (after PLN filed suit) that "it will *not* reject an incoming publication . . . simply because it identifies an ADX or BOP inmate, or BOP staff member." Mot. 3. But this alleged change is not embodied in any written policy. The only basis for BOP's claim is the say-so of an ADX employee who is not responsible for prison censorship decisions and who testified in his deposition that his statement about the purported change in policy was based on mere hearsay. *Id.*

1

Even if BOP had made a formal and binding commitment to eliminating this blanket censorship practice, BOP's mootness argument would fail.  PLN challenges not only the blanket practice under which issues of *Prison Legal News* were rejected, but also whether the rejections of *Prison Legal News* were lawful under the appropriate censorship standard—*i.e.*, whether the censored content is "detrimental to the security, good order, or discipline of the institution."  *Id.* n.2 (quoting 28 C.F.R. § 540.71(b)).  The purported elimination of ADX's blanket censorship practice does nothing to deprive this Court of jurisdiction to enter a declaratory judgment that the *Prison Legal News* content at issue in this case was improperly censored, and to issue an injunction against censoring similar content in the future.

The likelihood of BOP resuming censorship is not "speculative."  *Id.* at 6.  ADX has a more-than-decade-long history of censoring *Prison Legal News*.  PLN previously brought an action in 2003 based on ADX's censorship of multiple issues of PLN, only to have ADX claim, after PLN petitioned this Court for relief, that it would not censor again on legally defenseless grounds.  Yet several years after the case was dismissed, BOP resumed censorship of *Prison Legal News*.  Despite two lawsuits and multiple purported policy changes, BOP has failed to guarantee that unlawful censorship will not recur.

BOP also moves to dismiss certain claims for failure to state a claim upon which relief can be granted.  BOP does not dispute that PLN has included adequate factual allegations in the Complaint.  Rather, BOP's arguments amount to disputes over the merits of PLN's claims, including (a) whether redacting or removing allegedly objectionable material is a feasible alternative to censoring entire issues of *Prison Legal News*, and (b) whether BOP's perfunctory rejection notices provide PLN with an adequate notice and a meaningful opportunity to be heard,

as required by the Due Process Clause.  Having pled its claims with sufficient factual content, PLN is entitled to discovery and an opportunity to prove the merits of its claims.

## FACTUAL BACKGROUND

Published since 1990, *Prison Legal News* is a monthly magazine that provides news about legal decisions affecting prisoners and information designed to help prisoners navigate the judicial system.  Compl. (Doc. 1) ¶¶ 1, 11–12.  *Prison Legal News* has thousands of subscribers, including nineteen inmates at ADX as of the filing of the Complaint.  *Id.* ¶ 1.

Since January 2010, ADX wardens have rejected at least eleven issues of *Prison Legal News* in their entirety.  *Id*. ¶ 22.  The rejection notices contain only perfunctory language, *id.* ¶ 63, and provide no explanation for why the cited content is purportedly detrimental to the security, discipline, or good order of ADX (the stated reason for the rejections).  *Id.* ¶ 39.  BOP admits that all eleven issues were rejected pursuant to ADX's blanket practice of censoring publications solely because they discuss an ADX or BOP inmate, or BOP staff member.  Mot. 2–3; *see also* Chapman Decl. (Doc. 31-1) ¶¶ 24, 28.

PLN appealed at least four rejections to the BOP Regional Director for the North Central Region, which includes ADX.  Compl. ¶ 41.  Each appeal was rejected in a letter from the Regional Director reciting BOP's general censorship policy (Program Statement 5266.11 (Doc. 31-2)) without providing any specific reasoning for the rejection.  *Id.* ¶ 45.

Before filing this action, counsel for PLN sent two letters to the then-warden of ADX, along with other BOP and DOJ officials, concerning the ADX's censorship of *Prison Legal News*.  *Id.* ¶¶ 48–49; *see also* Declaration of Matthew S. Shapanka ("Shapanka Decl."), Exs. B, D.  Although the warden, in response, promised to review *Prison Legal News* more thoroughly,

nothing in his letters suggested that BOP planned to enact any formal policy change or otherwise commit to stopping unlawful censorship.  Compl. ¶ 50; Shapanka Decl., Exs. C, E.

On October 1, 2015, PLN brought this action, asserting three claims for relief.  Count I alleges that BOP's rejection of *Prison Legal News* censors constitutionally protected speech in violation of the First Amendment.  *Id.* ¶¶ 51–58.  Count II alleges that BOP has failed to provide constitutionally adequate notice of the censorship in violation of the Due Process Clause of the Fifth Amendment.  *Id.* ¶¶ 59–70.  Count III alleges that BOP's conduct also violated the APA. *Id.* ¶¶ 71–81.  PLN seeks, *inter alia*, declaratory and injunctive relief.  Compl. at 16.

BOP's motion to dismiss asserts that, after the commencement of this action, it implemented a "new ADX policy in February 2016."  Mot. 3.  This new policy makes two principal changes:  (1) it provides for additional personnel to review proposed rejections, *see* Chapman Decl. Ex. 2, Institution Supplement FLM 5266.11C, *Incoming Publications*, § IV.B (Doc. 31-3) ("February 2016 Policy"); and (2) it provides for quarterly training for ADX staff involved in the incoming publication review process, *see id.* § IV.Q.  Importantly, neither the February 2016 Policy, nor any other written policy, provides that "the ADX will *not* reject an incoming publication under 28 C.F.R. § 540.71(b) simply because it identifies an ADX or BOP inmate, or BOP staff member."  Mot. 3.

## ARGUMENT

BOP's motion presents several arguments.  First, BOP asserts that PLN's First Amendment claim (Count I) is moot and should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).  Second, BOP contends that one aspect of Count I and PLN's due process claim (Count II) should be dismissed for failure to state a claim pursuant to

Rule 12(b)(6).  Third, BOP argues that a single allegation in Count II fails for lack of standing and fails to state a claim.  Fourth, BOP argues that PLN's APA claim (Count III) fails for the same reasons as the constitutional claims.  None of BOP's scattershot arguments has merit.

## I.     PLN's First Amendment Claim Is Not Moot.

Federal courts may only hear "actual 'Cases' or 'Controversies.'"  *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2014) (quoting U.S. Const., art. III, § 2).  A federal court may lose jurisdiction, properly invoked, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)); *see also Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (explaining that a court lacks jurisdiction to hear a case if "the plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision" (quotation marks omitted)).  The defendant bears a "heavy" burden of proving mootness.  *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979); *see also Greater Yellowstone Coal. v. Tidwell*, 572 F.3d 1115, 1121 (10th Cir. 2009).

### A.     BOP Has Failed to Show That the Mootness Doctrine Applies.

A case is not moot unless (1) factual developments "completely and irrevocably eradicate [ ] the effects of the alleged violation," *Rezaq v. Nalley*, 677 F.3d 1001, 1009 (10th Cir. 2012) (quoting *Davis*, 440 U.S. at 631) (brackets in original), and (2) no prospective relief remains available, *see id.* at 1010.  Neither requirement is met here.

#### 1.     BOP Has Not "Completely and Irrevocably Eradicated" the Effects of the Censorship of *Prison Legal News*.

BOP argues that the case is moot in light on the February 2016 Policy and statements made in Mr. Chapman's declaration.  Mot. 7.  But these do not completely and irrevocably eradicate the effects of ADX's censorship of *Prison Legal News*.

First, nothing in the February 2016 Policy (Doc. 31-3) commits the ADX not to reject *Prison Legal News* "simply because it identifies and discusses an ADX or BOP inmate or BOP staff member."  Mot. 6.  The policy is devoid of any content-based rules regarding the rejection of publications.  Instead, the changes reflected in the February 2016 policy are limited to the *process* by which ADX decides to censor incoming publications.  Doc. 31-3 at 2; *see also supra* p. 4.  Thus, these changes have no bearing on PLN's challenge to the *substantive* reasons for ADX's censorship of *Prison Legal News*.

BOP's assertions that the substantive policy has changed rely solely on statements from the executive assistant at ADX (Todd Chapman)—rather than the Warden, who is the ADX official in charge of censorship.  *See* Shapanka Decl., Ex. A ("Chapman Dep.") at 13:20–21 (Mr. Chapman's "primary duty is as public information officer"), 31:3–5 (explaining that "[t]he Warden is the CEO of the institution . . . they have the final say"); *see also* Chapman Decl. ¶ 22 (referring to the Warden as the "approving official").  Mr. Chapman states that "[t]he ADX will not utilize the fact that a publication discusses an ADX or Bureau inmate, or Bureau staff member, standing alone, as a basis for the Warden to find that the incoming publication is 'detrimental to the security, good order, or discipline of the institution.'"  Chapman Decl. ¶ 25 (quoting Doc. 31-2 at 2).  But this statement is insufficient:  the "mere informal promise or assurance on the part of the [governmental] defendants that the challenged practice will cease" does not suffice to establish mootness.  *Rio Grande Silvery Minnow v. Bureau of Reclamation*,

601 F.3d 1096, 1118 (10th Cir. 2010) (quoting *Burbank v. Twomey*, 520 F.2d 744, 748 (7th Cir. 1975)).  As the Fourth Circuit has explained, "bald assertions of a defendant—whether governmental or private—that it will not resume a challenged policy fail to satisfy any burden of showing that a claim is moot."  *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014).

As Mr. Chapman admitted in his deposition, his statement about the ADX's blanket censorship practice is not based on any written policy.  *See* Chapman Dep. 45:4–6, 107:12–14, 115:15 (no written policy contains the new standard).  Nor is it even based on Mr. Chapman's personal knowledge of the ADX's censorship practices.  When asked for the basis for his statement, Mr. Chapman testified that he "received only verbal confirmation from [the] legal department that that is being taught [during staff training].  I have not seen it written in any document."  *Id.* at 147:12–14; *see also id.* at 146:24–25 (testifying that he learned of this from "talking with legal, that's what they're covering in the training"); Doc. 31-3 ¶ IV.Q (outlining training procedures).  Indeed, Mr. Chapman did not even attend any of the trainings himself. Chapman Dep. 125:12, 128:25, 133:9.[1]  The "bald assertion" of an ADX official who neither is in charge of censorship, nor has any personal knowledge of the purported change, falls well short of the government's burden to establish mootness.  *Wall*, 741 F.3d at 498; *see also Toevs v. Reid*, 685 F.3d 907, 908 n.1 (10th Cir. 2012) (finding that government defendants' "vague suggestions of change to [a prison program]" failed to carry their burden of demonstrating mootness).

Second, even if ADX were to "adhere to the standard that an incoming publication will not be rejected *solely* because it discusses an ADX or Bureau inmate, or Bureau staff member,"

---

[1] Like the February 2016 Policy, the training materials discuss only the rejection *procedures*. *See* Shapanka Decl., Ex. H; *see also* Chapman Dep. 147:13–14.  In addition to Exhibit H, the training materials included a copy of the Institution Supplement and a form rejection notice.

Chapman Decl. ¶ 29 (emphasis added), this would not moot PLN's First Amendment claim.

BOP maintains that issues of *Prison Legal News* may still be rejected if the ADX believes a

particular discussion of an inmate or staff member "is 'detrimental to the security, good order, or

discipline of the institution or . . . might facilitate criminal activity.'" *Id.* ¶ 25 (quoting Doc. 31-2

at 2); *see also id.* ¶¶ 26–27. Thus, there remains a live dispute over whether the First

Amendment permitted the rejection of each of the censored issues of *Prison Legal News* as a

threat to "the security, good order, or discipline of the institution." As set forth in the Complaint,

PLN alleges that the content in these issues did not constitute a legitimate security threat and

therefore the rejection of them ran afoul of the Constitution. Compl. ¶¶ 26–34.

BOP asserts that the current Warden has determined that all the rejected issues may now

be delivered to subscribers at ADX. Mot. 5–6. However, the delivery of censored issues of

*Prison Legal News* to subscribers in 2017, up to seven years after they were censored, does not

"completely and irrevocably eradicate" the effects of censorship, *Rezaq*, 677 F.3d at 1009,

because PLN's mission depends on the timely delivery of legal news to prisoners. In this

context, completely and irrevocably eradicating the effects of the past censorship means, at a

minimum, that future issues with similar content will be timely delivered to subscribers.

Because BOP has offered no such assurance, PLN's as-applied challenge is not moot.

### 2. Prospective Relief Remains Available to PLN.

Because neither the policy change nor Mr. Chapman's declaration cures BOP's First

Amendment violation, action by this Court could still offer prospective relief. A declaratory

judgment that BOP's practice of rejecting entire issues of *Prison Legal News* based on the mere

mention of an ADX inmate or staff-member violates the First Amendment—and an injunction

from censoring on this basis—would ensure that this blanket practice is permanently eliminated.

PLN also seeks a declaratory judgment and an injunction on its as-applied challenge—

*i.e.*, PLN's claim that the eleven censored issues of *Prison Legal News* do not pose a security

threat and their censorship violated the First Amendment even applying the appropriate

standards.  Although BOP states that these issues could be delivered today (anywhere from two

to seven years after they were published), this does nothing to ensure that similar content would

be delivered in the future.  BOP also contends that the February 2016 policy renders the threat of

future censorship "so speculative" that the claim is moot, Mot. 6, but the policy provides no

change to the substantive censorship standard applied by the ADX.  Indeed, Mr. Chapman

testified that at least some of the issues of *Prison Legal News were* properly censored, even

under the February 2016 Policy.  *See, e.g.*, Chapman Dep. 60:18–20, 72:14–16, 79:14–23.

BOP's reliance on *Brown v. Buhman*, Mot. 7–8, is misplaced.  In *Brown*, the Tenth

Circuit found that a county prosecutor's adoption of a formal policy mooted the plaintiffs' claim

for an injunction barring the prosecutor from bringing charges of bigamy against them.  *See* 822

F.3d 1151, 1171 (10th Cir. 2016).  While the policy in *Brown* permitted the government to bring

future prosecutions in cases fitting certain narrow categories, the court concluded that "[n]othing

in the record suggests the Browns fit, or in the future may fit, into either category."  822 F.3d at

1170.  As a result, injunctive relief would "have [had] virtually 'no effect in the real world.'"  *Id.*

at 1171 (quoting *Wyoming v. U.S. Dep't of Agriculture*, 414 F.3d 1207, 1212 (10th Cir. 2005)).

Here, by contrast, the ADX has made no formal policy change addressing PLN's

concerns with the prison's substantive censorship policy—which, unlike the challenged law in

*Brown*, has been used (repeatedly) to the detriment of the plaintiff.  *See id.* at 1170–71

(prosecutor testified that he had no recollection of anyone being prosecuted under the law absent

some aggravating circumstances).  Moreover, PLN continues to publish magazines that discuss

or mention BOP inmates and staff, and the BOP has expressly retained the right to censor such

content.  *See* Chapman Decl. ¶¶ 25–27.  While BOP states that "it is impossible to promise that

every future issue of *Prison Legal News*, including those that identify and discuss BOP inmates

or staff, will be suitable for dissemination in the maximum-security ADX environment," Mot.

11, PLN does not seek such relief.  Rather, PLN seeks declaratory and injunctive relief

compelling BOP "to deliver . . . all future issues of *Prison Legal News* absent a compelling

legitimate penological interest supported by specific facts."  Compl. at 16.  Put differently,

PLN's requested relief would require that BOP base each individual rejection on compelling

penological interests, rather than on unconstitutional bright-line rules.[2]

>    **B.**     **The Voluntary Cessation of Illegal Conduct Exception Applies.**

BOP's mootness argument also fails based on the voluntary cessation of illegal conduct

exception to mootness.  "It is well settled that a defendant's voluntary cessation of a challenged

practice does not deprive a federal court of its power to determine the legality of the practice."

*Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *City of*

*Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)).  A defendant's cessation of

challenged conduct moots a case only if "the defendant carries the formidable burden of showing

---

[2] It also bears mention that the policy change in *Brown* was only one of several bases for the
court's conclusion that the case was moot.  The plaintiffs had moved out of state, declared under
oath that they did not intend to return, and stayed in Nevada long enough for the statute of
limitations on any felony to expire.  *See Brown*, 822 F.3d at 1172.

that it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur." *Brown*, 822 F.3d at 1163 (quoting *Already*, 133 S. Ct.at 727).

### 1.     The Censorship Can Reasonably Be Expected to Recur.

Even assuming, *arguendo*, that the alleged changes at ADX provide the relief PLN seeks, BOP initiated the changes only after PLN filed its complaint—despite months of pre-suit communications with then-ADX Warden John Oliver and at least four formal appeals to the BOP Regional Director.  Compl. ¶¶ 41–47, 50; Shapanka Decl., Exs. B, D.  Warden Oliver's responses to PLN's letters refused to acknowledge the improper nature of ADX's censorship and reasserted BOP's authority to reject publications.  *See* Shapanka Decl., Exs. C, E.  Having had ample opportunity to change its behavior before suit, BOP has failed to show that its post-suit actions are not merely a "reluctant submission."  *Brown*, 822 F.3d at 1167.

Furthermore, BOP's unlawful censorship of *Prison Legal News* can reasonably be expected to recur, because it *has already recurred* under similar circumstances.  In 2003, PLN filed a lawsuit against the ADX warden alleging that beginning in March 2001, ADX rejected issues of *Prison Legal News* because, *inter alia*, they mentioned ADX inmates.  Compl. (Doc. 1) ¶ 17, *PLN v. Hood*, No. 03-D-2516(PAC) (D. Colo., filed Dec. 10, 2003) (Shapanka Decl., Ex. F).  In *Hood*, PLN challenged ADX's censorship of *Prison Legal News* on the ground that it constituted "inmate to inmate correspondence," defined at the time as any "article, publication, advertisement, etc. that contains specific information written by or about an inmate."  *Id.*

Similar to its strategy in the present case, BOP filed a motion to dismiss in *Hood* on the ground, in part, that PLN's claim was moot because the relevant Institutional Supplements "have been modified by Warden Hood" and no longer bar a "publication that references a particular

inmate or inmates."  Def.'s Mot. to Dismiss (Doc. 8) at 6, *PLN v. Hood* (Shapanka Decl., Ex. G).

But after PLN voluntarily dismissed the case in 2005 (Doc. 59), BOP resumed censoring issues

of *Prison Legal News* in 2010 on the ground that the issues "discussed an ADX or Bureau

inmate, or Bureau staff member."  Mot. 2–3.  The fact that ADX has previously resumed

censorship following a litigation-induced promise not to censor belies BOP's present claim that

any threat of future censorship of *Prison Legal News* is no more than "speculative."  Mot. 6.

### 2.      No "Presumption of Good Faith" Applies in This Case.

BOP suggests it is entitled to a presumption of good faith with respect to its stated intent

to adhere to its new policy.  Mot. 9–10 (citing *Rio Grande*, 601 F.3d at 1116–18).  But *Rio*

*Grande* does not establish a broad presumption of good faith for governmental defendants.  The

court in that case explained that it "need not definitively opine" on what measure of deference to

grant government agents in applying the voluntary cessation exception.  601 F.3d at 1116 n.15.

Even if a presumption existed, it would not apply here in view of BOP's failure to take

action until PLN filed suit and the ADX's history of resuming censorship it promised to stop.

BOP claims that "[t]he ADX has demonstrated its good-faith commitment to the February 2016

Policy by agreeing to provide the previously rejected issues of *Prison Legal News* to ADX

inmate subscribers."  Mot. 10.  But it is immaterial that the current Warden would permit

delivery of rejected issues from several years ago if a future Warden may refuse delivery of

similar content—particularly where, as here, multiple past Wardens *already* determined the

material posed a threat, and new Wardens cycle into ADX regularly.[3]  By failing to make any

---

[3] Four individuals have served as ADX Warden since 2009.  *See* Def.'s Supp. Interrog. Resp. No.
15 (Shapanka Decl., Ex. I) (showing four Wardens since 2009)

formal change to its substantive censorship policy, BOP has failed to show—let alone make
"absolutely clear"—that "the allegedly wrongful behavior could not reasonably be expected to
recur." *Brown*, 822 F.3d at 1166 (quoting *Already*, 133 S. Ct. at 727).

     **C.**     **PLN's Claims Are Not Prudentially Moot.**

     A case is prudentially moot if "the case is so attenuated that considerations of prudence
and comity for coordinate branches of government counsel the court to stay its hand, and to
withhold relief it has the *power* to grant." *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011).
BOP's prudential mootness argument, Mot. 11, largely repeats its constitutional mootness
argument, and thus fails for the reasons explained above. *Supra* § I.B.  In particular, while BOP
states that it "cannot do more," Mot. 11, this ignores BOP's failure to make *any* change to its
substantive censorship standards in the February 2016 Policy.

**II.**     **PLN's Complaint States Claims Upon Which Relief Can Be Granted.**

     "To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556
U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Where the
complaint provides sufficient "factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct alleged," the Rule 12(b)(6) motion
should be denied. *Id.* Here, BOP does not dispute that the Complaint alleges sufficient facts to
provide notice of PLN's claims for relief.  BOP instead argues that the factual allegations related
to one "aspect" of Count I and all of Count II fail to establish plausible constitutional violations.
Mot. 12–19.  BOP's merits-based arguments miss the mark.

     **A.**     **PLN States a Plausible First Amendment Claim Based on Alternatives to
                Wholesale Censorship.**

BOP does not dispute that PLN has stated a plausible claim for relief with respect to whether BOP's censorship of *Prison Legal News* violates the First Amendment.  Mot. 2.  Instead, BOP's Rule 12(b)(6) argument for this claim is limited to particular allegations that redaction or removal of the allegedly objectionable material—often a small fraction of the total issue—is an alternative to rejecting the entire issue.[4]  Compl. ¶¶ 35–36, 56.  These allegations relate to one of several factors that courts generally consider in determining whether prison censorship is valid under the First Amendment:  whether the existence of "easy and obvious alternatives" suggests that the censorship is an "exaggerated response" by prison officials to security concerns.  *Thornburgh  v. Abbott*, 490 U.S. 401, 418 (1989); *see, e.g.*, *Morrison v. Hall*, 261 F.3d 896, 900 (9th Cir. 2001) (finding that an Oregon prison ban on all bulk rate, third class, and fourth class mail as "junk mail" was an "exaggerated response" to an "alleged junk mail problem" because an easy and obvious alternative was for the prison to simply distinguish between "true 'junk mail'" and paid subscription publications).

Like the prison in *Morrison*, ADX has a practice of rejecting *Prison Legal News* in its entirety, resulting in the censorship of significant amounts of admittedly unobjectionable content.  Compl. ¶ 35.  In some cases, as Mr. Chapman explained, only a single sentence might be deemed objectionable, Chapman Dep. 80:3–4, yet BOP nevertheless rejects the entire issue of *Prison Legal News*, often containing over fifty pages of content, *see, e.g.*, Compl. Ex A. (Doc 1-1) (sixty-four pages); *id.* Ex. B (Doc 1-2) (fifty-six pages).  PLN has alleged that an alternative to rejecting entire issues is redacting or removing only the material deemed objectionable, while

---

[4] Accordingly, even if the Court were to accept BOP's argument, it would not be appropriate to "dismiss PLN's First Amendment claim" in its entirety, as BOP suggests.  Mot. 12.

leaving the rest.  Compl. ¶¶ 36, 56.  PLN alleges that these measures would involve minimal

extra administrative burden, but would address the prison's safety concerns in a more tailored,

less exaggerated manner while still allowing the vast majority of PLN's content to reach its

subscribers.  *Id.*; *see also PLN v. Columbia Cty.*, No. 3:12-CV-00071-SI, 2012 WL 1936108, at

*10 (D. Or. May 29, 2012)  ("The speed at which [sic] mail handling staff can inspect mail,

however, does not establish a rational link between the policy and reducing contraband.").

BOP argues that *Thornburgh* requires dismissal of PLN's allegations because "the

Supreme Court upheld the BOP's 'all-or-nothing' rule, finding the practice was not an

exaggerated response under *Turner* [*v. Safely*, 482 U.S. 79, 89–90]."  Mot. 13 (quoting

*Thornburgh*, 490 U.S. at 418–19).  This misconstrues the Court's decision in *Thornburgh*.

While the Court declined to require prison staff to redact or tear out offending pages, this

conclusion was based on the district court's factual finding that the prison had proven that such

methods would create "more discontent" than rejecting entire publications.  490 U.S. at 418.

The Court did not hold that such an alternative would *never* be required under any set of facts

(*i.e.*, as a matter of law).

Indeed, since *Thornburgh*, the Tenth Circuit has required prison officials to demonstrate

their basis for rejecting an entire publication.  In *Shabazz v. Parsons*, the district court had asked

a prison to demonstrate whether there was "any rational basis" for denying entire issues of a

publication based on very few objectionable lines.  127 F.3d 1246, 1249 (10th Cir. 1997).  The

court ultimately found that the prison's evidence showing that the costs of redaction would be

"prohibitive," and that redaction would "prevent the prisoner from obtaining meaningful

administrative review," were sufficient justification.  *Id.* at 1249.

Neither *Thornburgh* nor *Shabazz* found that claims of an obvious alternative to wholesale censorship failed as a matter of law. That the government ultimately prevailed on the *facts* of those cases cannot deprive PLN of the opportunity to take discovery on the issue and present its own evidence that redaction is a feasible alternative under the facts of this case. *See Thornburgh*, 490 U.S. at 432 (Stevens, J., concurring in part and dissenting in part) ("There is no evidence that delivery of only part of a publication would endanger prison security . . . [G]eneral speculation that some administrative burden might ensue should not be sufficient . . . .").

**B.     PLN's Complaint States a Plausible Due Process Claim.**

BOP contends that PLN's due process claim (Count II) fails to state a plausible claim for relief. Mot. 13–14. In Count II, PLN alleges that BOP's repeated failure to articulate a specific rationale for censorship violates the Due Process Clause because it fails to provide adequate notice to PLN of the specific reasons for censorship that would permit PLN to effectively challenge the decision. Compl. ¶ 62. As alleged in the Complaint, the rejection notices issued by ADX are boilerplate, generally stating only that the issue was rejected because it discussed individuals incarcerated at BOP facilities or a BOP staff member. *Id.* ¶¶ 39–40, 63. In the absence of an explanation by ADX of the reason it believes a mention of an ADX inmate or employee could be inflammatory or otherwise harmful, PLN is left to guess at the underlying rationale for the rejection, depriving it of a meaningful opportunity to appeal any given rejection. *Id.* ¶ 63; *see also id.* ¶¶ 37–40. In addition, PLN alleges that it has not received a meaningful opportunity to be heard through appeals to the Regional Director, which have entailed similarly vague rejections of PLN's arguments. *Id.* ¶¶ 41–47.

16

BOP argues that the mere fact it has provided "*some* kind of notice and . . . *some* kind of hearing" satisfies the Constitution.  Mot. 16 (quoting *Moore v. Bd. of Cty. Comm'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007)).  But that does not mean *any* notice or *any* hearing is sufficient; rather, the type of notice and hearing required by the Due Process Clause varies based on the circumstances.  As the Supreme Court has explained, the "timing and content of the notice and the nature of the hearing will depend on appropriate accommodation of the competing interests involved."  *Goss v. Lopez*, 419 U.S. 565, 579 (1975).  BOP's contention that due process is satisfied by the mere fact of notice and a hearing—without regard to their adequacy—is fundamentally at odds with the nature of due process:  "[T]he interpretation and application of the Due Process Clause are intensely practical matters and . . . '(t)he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'"  *Id.* at 578 (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

Accordingly, PLN may pursue a claim that the notice and hearing it received were inadequate under the circumstances of this case.  *See Abbott v. Meese*, 824 F.2d 1166, 1174 (D.C. Cir. 1987) ("We have not examined every statement of reasons for rejection, but there are some, at least, which cannot be deemed findings of an adequate causal nexus between a rejected publication and a breach of security or order or interference with rehabilitation"), *vacated and remanded on other grounds by*, *Thornburgh*, 490 U.S. 401.  These "intensely practical" issues should be explored through discovery and resolved at trial—not on a motion to dismiss.[5]

---

[5] BOP's other merits arguments rely on exhibits from BOP's records to demonstrate that BOP sent notices to PLN.  *See* Mot. 17.  But these assertions raise factual questions as to whether and when PLN actually *received* such notice.  Compl. ¶ 37 (alleging that PLN learned of the November 2011 rejection "only from letters that its inmate subscribers sent to PLN").

BOP also argues that PLN is protected by only "minimal procedural safeguards" in the context of prison mail.  Mot. 14 (citing *Procunier v. Martinez*, 416 U.S. 396, 417–18 (1974)).  *Martinez*, however, provided that "the author of [a] letter [must] be given a *reasonable* opportunity to protest that decision."  416 U.S. at 418 (emphasis added).  Thus, even assuming, *arguendo*, *Martinez* applies in this case, it is consistent with PLN's claim that the ADX's perfunctory notices deprive PLN of a "reasonable" opportunity for appeal.

Likewise, BOP's reliance on previous PLN cases is misplaced.  Mot. 14–15 (citing *PLN v. Crews*, No. 4:12cv239, 2014 WL 11411829 (N.D. Fla. Aug. 11, 2014); *PLN v. Werholtz*, No. 02-4054007, 2007 WL 2875113 (D. Kan. Oct. 1, 2007)).  In neither *Crews* nor *Werholtz* did the court consider whether PLN's due process arguments stated a claim under Rule 8; both decisions were entered after the parties had the opportunity to conduct discovery.  *See Crews*, 2014 WL 11411829, at *1 (cross-motions for summary judgment); *Werholtz*, 2007 WL 2875113, at *1 (findings of fact and conclusions of law after trial).  Moreover, neither case held that conclusory rejection notices such as those provided by BOP in this case satisfied due process requirements.  To the contrary, the notification in *Werholtz* required the prison to "provide reference to the specific portions or pages of the publication which are objectionable or other reason for rejection, the [prison] regulations or policies which are applicable *and the reasons for the decision to reject*."  *Id.* at *6 (emphasis added).

In this case, PLN has alleged that the notices failed to provide "the reasons for the decision to reject," *id.*, and were otherwise inadequate to allow for meaningful appeals.  Compl. ¶¶ 23–25, 37–47, 62–66.  "At the motion to dismiss stage, [w]e must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable

to the plaintiff." *Cressman v. Thompson*, 719 F.3d 1139, 1152 (10th Cir. 2013). Thus, PLN's due process claim states a plausible claim for relief.

### III.   PLN Has Standing to Challenge BOP's Policy of Returning Rejected Publications.

BOP separately seeks dismissal of a single allegation in Count II relating to BOP's policy of returning rejected publications to a publisher rather than waiting until after the publisher's appeal is exhausted. Compl. ¶ 65. BOP first contends that PLN lacks standing to challenge this policy. Mot. 19. But PLN is not challenging this policy in isolation; rather, it is one of several reasons why PLN claims it failed to receive sufficient due process in violation of the Fifth Amendment. *See* Compl. ¶¶ 59–70. There is no dispute that PLN has standing to bring this due process claim. The issue of whether ADX retained the rejected issues of *Prison Legal News* (in contravention of BOP regulations), and, if so, whether the Regional Director actually reviewed the issues when evaluating PLN's appeals, are factual questions that are not appropriately decided at this stage. *See Petrella v. Brownback*, 697 F.3d 1285, 1293 (10th Cir. 2012) (factual allegations establishing standing must be taken as true at the motion to dismiss stage, and "general factual allegations of injury resulting from the defendant's conduct may suffice").

BOP's second argument—that this allegation fails to state a claim, Mot. 19—is similarly meritless. Again, PLN has not asserted a claim based on this policy alone; it is simply one allegation supporting PLN's due process claim (which, as discussed above, states a claim for relief). BOP's factual disagreement as to whether BOP maintained a copy or whether this was necessary to provide for a meaningful appeal is not a proper basis for dismissal under Rule 12(b)(6): "[I]t is generally not the role of trial courts at the motion to dismiss stage to pass on the

plausibility of otherwise well-pled factual allegations." *Valdez v. NSA*, No. 2:15-CV-00584-RJS-DBP, 2017 WL 87025, at *2 (D. Utah Jan. 10, 2017).

**IV.    The Court Should Deny BOP's Motion to Dismiss PLN's APA Claim.**

BOP argues that PLN's APA claim (Count III) should be dismissed for the same reasons as the constitutional claims.  Mot. 19–20.  BOP presents no additional reasons for dismissal of the APA claim, and thus its request to dismiss this claim should be rejected for the reasons explained above.

**CONCLUSION**

For the foregoing reasons, the Court should deny BOP's motion to dismiss.

DATED:        January 30, 2017                    Respectfully Submitted,

*/s/ Matthew S. Shapanka*

Peter A. Swanson                                     Steven D. Zansberg
Stephen W. Kiehl                                     Levine Sullivan Koch & Schulz LLP
Matthew S. Shapanka                                  1888 Sherman Street, Suite 370
Covington & Burling LLP                              Denver, CO 80203
One CityCenter, 850 Tenth Street NW                  Telephone: (303) 376-2409
Washington, DC 20001                                 FAX: (303) 376-2401
Telephone: (202) 662-6000                            E-mail: szansberg@lskslaw.com
FAX: (202) 662-6291
E-mail: pswanson@cov.com
        skiehl@cov.com                               Sabarish Neelakanta
        mshapanka@cov.com                            Human Rights Defense Center
                                                     PO Box 1151
                                                     Lake Worth, Florida 33460
*Of Counsel:*                                        Telephone: (561) 360-2523
                                                     Email: sneelakanta@humanrightsdefensecenter.org
Elliot Mincberg
Washington Lawyers' Committee for                    David M. Shapiro
Civil Rights & Urban Affairs                         Northwestern University School of Law
11 Dupont Circle NW, Suite 400                       375 E. Chicago Avenue
Washington, DC 20036                                 Chicago, IL 60611
Telephone: (202) 319-1000                            Telephone: (312) 503-0711
Email: elliot_mincberg@washlaw.org                   Email: david.shapiro@law.northwestern.edu

                                                     *Attorneys for Plaintiff Prison Legal News*

20

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of January, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF/CM electronic filing system, which will send electronic notification to all counsel of record.


*/s/ Matthew S. Shapanka*
Matthew S. Shapanka