# Exhibit B

**COVINGTON**

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Peter A. Swanson

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T +1 202 662 5111
pswanson@cov.com

**Via Federal Express**

June 30, 2015

The Honorable Sally Q. Yates
Office of the Deputy Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**Re: Censorship of *Prison Legal News* at ADX Florence**

Dear Ms. Yates:

We write on behalf of our client the Human Rights Defense Center (HRDC) to address the illegal censorship of HRDC's publication *Prison Legal News* (PLN) at the United States Penitentiary, Administrative Maximum Facility in Florence, Colorado ("ADX Florence" or ADX). This censorship is a serious problem that we have been investigating with our co-counsel, Professor David M. Shapiro of the Northwestern University School of Law and the law firm of Levine Sullivan Koch & Schulz, LLP. Because ADX Florence's practices raise grave constitutional and other questions, we are prepared to initiate appropriate legal action if we are unable to resolve the issue with the Department of Justice, the Bureau of Prisons (BOP), and cognizant ADX officials.

As you may know, PLN is a monthly journal of prison-related news and analysis with a 25-year history of continuous publishing. Each issue contains writings from legal scholars, attorneys, prisoners, and news wire services. PLN currently has about 7,000 subscribers, including incarcerated people in state and federal prisons in all fifty states. PLN has 22 subscribers currently imprisoned at ADX Florence.

To our knowledge, ADX Florence has rejected at least twelve issues of PLN in their entirety since January 2010—and given the prison's uneven record of providing rejection notices to PLN, it may well have rejected more. ADX's notices of rejection, to the extent it has provided them to PLN, assert that the censored issues were rejected because they contained information about ADX inmates or staff members.

An example of the kind of material that ADX has been censoring is the July 2013 issue. This issue contained a two-page article about a court decision holding that a federal prisoner seeking to challenge his transfer to ADX must file an action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), rather than under 28 U.S.C. § 2241. (The article is attached hereto as Exhibit A.) This information is highly relevant to, and potentially quite useful for, other people incarcerated at ADX. ADX, however, rejected the article—and the entire 64-page issue—with a notice stating that "[t]he publication has been

**COVINGTON**

The Honorable Sally Q. Yates
June 30, 2015
Page 2

rejected because [two] pages discuss individuals incarcerated at U.S. Penitentiary Florence (ADX)." By this statement, ADX appears to have been referring to the article's identification of Jesus Hector Palma-Salazar, the prisoner who sought to challenge his transfer to ADX. The only personal information disclosed about Mr. Palma-Salazar is that he was indicted on drug cartel-related charges and had held a leadership role in the Sinaloa Cartel. These same facts also appear in the Tenth Circuit's published opinion. *See Palma-Salazar v. Davis*, 677 F.3d 1031, 1034 (10th Cir. 2012).

ADX's censorship of this and other issues of PLN is extremely concerning because, among other things:

- The information that ADX censors is already common knowledge among ADX inmates and/or is readily available to them through sources other than PLN. For example, ADX inmates have access to a law library and can look up the crime for which Mr. Palma-Salazar is incarcerated. They also generally know the gang affiliations of their fellow inmates—affiliations that, after all, are often advertised via tattoos and other means. In addition, prisoners can learn about ADX, its guards, and their fellow prisoners through television and radio programs to which they have access. Hence, censoring this information when it appears in PLN does not rationally serve any interest in preserving security and order within the facility, particularly when it appears within an article providing important legal information to subscribers incarcerated at ADX.

- ADX inmates are subject to intense security constraints. *See, e.g.*, Mark Binelli, "This Place is Not Designed for Humanity," *N.Y. Times Magazine*, March 29, 2015, at MM38 ("Inmates at the ADX spend approximately 23 hours of each day in solitary confinement" in cells with "thick concrete walls and double sets of sliding metal doors (with solid exteriors, so prisoners can't see one another)"); *id.* at MM40 (inmates exercise by taking "solo trips to an indoor 'gym' (a windowless cell with a single chin-up bar)" or visiting an "outdoor rec yard (where each prisoner nonetheless remains confined to an individual cage)"). The censorship of PLN thus adds nothing to the security measures already in place.

- To our knowledge, ADX is the only federal prison to censor PLN since 2012, making it an outlier. Other federal prisons recognize that even when their inmates and staff are mentioned in PLN, censorship is not the answer. With its intensive security protocols, ADX is in an even better position to come to the same conclusion.

- The rejection of entire monthly issues based on only one or two pages—and often only one or two sentences—prevents PLN's subscribers from receiving valuable legal and other news that is important to them and to which ADX has articulated no objection. This practice is a gross overreaction to any concerns ADX might have (ill-founded though those concerns may be) regarding information contained in a very small portion of an issue.

**COVINGTON**

The Honorable Sally Q. Yates
June 30, 2015
Page 3

- For at least one issue, ADX provided no notice to PLN that it was rejecting the issue. ADX thus violated its own regulations and deprived PLN of a timely opportunity to appeal the censorship. (PLN eventually learned of the censorship through correspondence from its subscribers.)

- Where ADX provides rejection notices, the notices are sometimes extremely late (up to nine months after the issue arrived at ADX), and they consist only of uninformative boilerplate language, vitiating PLN's right to effectively appeal the censorship and its subscribers' rights to receive information on a timely basis.

In our view, this persistent pattern of unjustifiable censorship of PLN demonstrates that ADX routinely violates our client's rights under the First Amendment, the Due Process Clause of the Fifth Amendment, and the Administrative Procedure Act. We therefore request that the government commit to immediately stop censoring PLN at ADX. While we are willing to discuss this issue with you, we plan to proceed with a lawsuit addressing these violations of PLN's rights if you are unable to provide such a commitment by July 31, 2015.

Sincerely,

Peter A. Swanson

Attachment

cc: Paul Wright, Executive Director, Human Rights Defense Center
Professor David M. Shapiro, Northwestern University School of Law
Steven D. Zansberg, Levine Sullivan Koch & Schulz, LLP

\*   \*   \*

Charles E. Samuels, Jr., Director, Federal Bureau of Prisons
Paul M. Laird, Regional Director, North Central Region of the Bureau of Prisons
John Oliver, Warden, ADX Florence