# Exhibit G

IN THE UNITED STATES DISTRICT COURT   RECEIVED
FOR THE DISTRICT OF COLORADO
                                        MAR 18 2004
Civil Action No. 03-D-2516 (PAC)
                                        GENDLER & MANN, LLP
PRISON LEGAL NEWS,

       Plaintiff,

v.

ROBERT A. HOOD, in his official and individual capacity,
MICHAEL V. PUGH, in his official and individual capacity,
HARLEY G. LAPPIN, in his official and individual capacity, and
KATHLEEN HAWK SAWYER, in her official and individual capacity,

       Defendants.

---

## DEFENDANTS' MOTION TO DISMISS

---

Defendants Robert A. Hood, Michael V. Pugh, Harley G. Lappin, and Kathleen

Hawk Sawyer, in their official capacities, move to dismiss the First Amended Complaint

(Complaint) pursuant to Fed. R. Civ. P. 12(b)(1), and (6).  Defendants Lappin and Hood,

in their individual capacities, move to dismiss the Complaint pursuant to Fed. R. Civ. P.

12(b)(1), (2) and (6).[1]  As grounds for this motion the Defendants state as follows:

### I. OFFICIAL CAPACITY CLAIMS

Plaintiff, the publisher of the monthly magazine Prison Legal News (PLN), asserts

jurisdiction pursuant to the United States Constitution, 28 U.S.C. § 1331 (federal

---

    [1]   No individual capacity responses are required by Pugh and Hawk Sawyer
because they have not been personally served or waived service.

question), and 28 U.S.C. § 2201 (Declaratory Judgment Act). *First Amended Complaint (Complaint) ¶ 2.*

In the First Cause of Action, Plaintiff alleges that the Defendants, in their official capacities as employees of the federal Bureau of Prisons (BOP), violated Plaintiff's First Amendment rights when the warden of the United States Penitentiary, Administrative Maximum (ADX), did not permit inmates to receive issues of PLN in March 2001, May 2001, August 2001, September 2001, October 2001, February 2002, and April 2003. These issues were rejected pursuant to Program Statements 5266.09 and 5266.10. The pertinent parts of these Program Statements allow the warden to reject a publication which, "depicts, describes or encourages activities, which may lead to the use of physical violence or group disruptions." Plaintiff contends that the rejected issues did not depict, describe, or encourage any activities which might lead to the use of physical violence or group disruptions. *Complaint ¶¶ 14 - 16 & 20.*

Plaintiff seeks a declaration that its magazine is core political speech protected by the First Amendment, and that the rejection of the magazine based on Program Statements 5266.09 and 5266.10, does not advance any legitimate penological goals, and therefore, violates Plaintiff's First Amendment rights. Plaintiff also seeks a declaration that the misapplication of these program statements violates its First Amendment rights. *Complaint ¶ 21 & Prayer for Relief ¶¶ 2 & 3.* Additionally, Plaintiff seeks an injunction prohibiting Hood and Lappin, and all persons acting in concert with them, from

improperly applying these Program Statements. *Complaint - Prayer for Relief ¶ 3.*

In the Second Cause of Action, Plaintiff alleges that the warden of ADX rejected issues of its magazine in January 2002, March 2002, and April 2002, based on Institutional Supplements FLM 5265.11B and C, Correspondence, § 5(L) *(Exhs. A-1 & A-2)*, which prohibit inmate to inmate correspondence. *Complaint ¶¶ 17, 18 and 23.* Plaintiff seeks a declaration that the Institutional Supplements, as applied, violate Plaintiff's First Amendment rights. *Complaint - Prayer for Relief ¶ 4.* Plaintiff also seeks an injunction prohibiting Hood and Lappin, and all persons acting in concert with them, from refusing to deliver PLN on the ground that constitutes inmate to inmate correspondence. *Complaint ¶¶ 24 - 26 & Prayer for Relief ¶ 5b.*

## A. No Waiver of Sovereign Immunity

The federal government cannot be sued without its consent. *Block v. North Dakota,* 461 U.S. 273, 287 (1983). A Congressional waiver of sovereign immunity cannot be implied; it must be unequivocally expressed by statute. *United States v. Mitchell,* 445 U.S. 535, 538 (1980). Sovereign immunity applies to actions for injunctive or declaratory relief. *United States v. Murdock Mach. and Engineering Co. of Utah,* 81 F.3d 922, 929 (10th Cir. 1996). Suits against government officials in their official capacities are suits against the United States. *Wyoming v. United States,* 279 F.3d 1214, 1225 (10th Cir. 2002). Sovereign immunity is not waived by general jurisdictional statutes such as 28 U.S.C. § 1331. *Lonsdale v. United States,* 919 F.2d 1440, 1443-44 (10th Cir.

1990). Nor does 28 U.S.C. § 2201 waive sovereign immunity. *Progressive Consumers Federal Credit Union v. United States*, 79 F.3d 1228, 1230 (1st Cir. 1996).

Injunctive suits against government officials in their <u>individual</u> capacities are not barred by sovereign immunity if: (1) there is a statute limiting the officer's powers, and his actions are beyond those powers, or (2) those powers, or their exercise in the particular case, are unconstitutional. *Wyoming v. United States*, 279 F.3d at 1225. However, when the allegation is that a federal official is erroneously exercising delegated powers, the suit is against the sovereign and may not proceed absent a waiver of sovereign immunity. *Id.* at 1229 -30.

The complaint in this case alleges that the warden of ADX has erroneously rejected issues of the PLN because the rejected issues actually did not depict, describe, or encourage any activities which might lead to the use of physical violence or group disruptions, or did not constitute inmate to inmate correspondence. The court lacks jurisdiction over these claims because they are claims that the warden acted erroneously, not that he acted in excess of his statutory authority. Thus, there is no waiver of sovereign immunity.

## B. The Program Statements and Institutional Supplement are not Unconstitutional

BOP regulations generally permit inmates to subscribe to publications without prior approval, but authorize wardens to reject a publication if determined to be detrimental to the security, good order, or discipline of the institution, or if it might

4

facilitate criminal activity. 28 C.F.R. § 540.71(b). The warden is prohibited from establishing an excluded list of publications; each issue must be reviewed separately. *Id.* at § 540.71(c). A publisher may obtain an independent review of the warden's rejection by timely writing the Regional Director of BOP. *Id.* at § 540.71(e). These regulatory provisions are supplemented by Program Statements and Institutional Supplements.

Prison regulations and policies that restrict the receipt of publications by inmates do not violate the First Amendment if they are reasonably related to legitimate penological interests. *Thornburgh v. Abbott*, 490 U.S. 401, 414-19 (1989). The pertinent parts of the challenged Program Statements allow the warden to reject any publication which, "depicts, describes or encourages activities, which may lead to the use of physical violence or group disruptions." Obviously, there is a legitimate penological interest in preventing inmates from receiving this type of communication because it could jeopardize the security of the institution. *Id.* Therefore, the Program Statements do not violate the First Amendment.

The BOP generally prohibits correspondence between inmates for security reasons, but wardens do have the authority to permit such communications in certain circumstances. 28 C.F.R. § 540.17. In order to prevent unauthorized communications between inmates through publications, Institutional Supplements FLM 5265.11B and C, Correspondence, § 5(L) defined inmate to inmate correspondence as articles or publications that contain specific information written by or about an inmate or inmates

and their causes, or any publication that references a particular inmate or inmates. *Exhs. A-1 & A-2.* These Institutional Supplements were not unconstitutional because restricting inmate to inmate correspondence through publications is reasonably related to legitimate security concerns. *Turner v. Safley*, 482 U.S. 78, 91 - 93 (1987).

## C. Plaintiff's Claim Regarding the Institutional Supplement Is Moot

Plaintiff's claim regarding the Institutional Supplements is moot because they have been modified by Warden Hood, and no longer define inmate to inmate correspondence as articles or publications that contain specific information written by or about an inmate or inmates and their causes, or any publication that references a particular inmate or inmates. *Exh. A-3. See McAlpine v. Thompson*, 187 F.3d 1213, 1216-17 (10th Cir. 1999).

## II. INDIVIDUAL CAPACITY CLAIMS

The Complaint alleges that Robert Hood is currently the warden of ADX and is personally responsible for rejecting issues of PLN. *Complaint ¶ 6.* The Complaint alleges that Harley Lappin is the Director of the Bureau of Prisons and is responsible for overseeing all federal penal institutions. *Complaint ¶ 7.* It does not allege that Director Lappin personally participated in any decision to reject any issues of PLN. The Defendants are sued in their individual capacities pursuant to *Bivens v. Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for allegedly violating Plaintiff's First Amendment rights.

6

## A. Failure to State a Claim (Qualified Immunity)

A court may dismiss an action pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim if it appears the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief. *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir.1991). A court is to judge the sufficiency of the complaint by accepting as true, the well-pleaded factual allegations and drawing all reasonable inferences in favor of the plaintiff. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir. 1987). "[T]he court need accept as true only the plaintiff's well-pleaded factual contentions, not his conclusory allegations." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

Liability under *Bivens* requires personal participation in the alleged unconstitutional conduct. *Gates v. Unified School Dist. No. 449 of Leavenworth City, Kan.,* 996 F.2d 1035, 1042 (10th Cir. 1993); *Kite v. Kelly,* 546 F.2d 334, 337-38 (10th Cir. 1976). Furthermore, government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is immunity from suit, not merely from liability. *Hunter v. Bryant,* 502 U.S. 224, 227 (1991). It protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986).

7

Once the defense of qualified immunity is asserted in a motion to dismiss, the complaint must be examined to determine if it contains the necessary factual allegations to establish that the defendant violated a clearly established constitutional right. *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir.), *cert. denied,* 122 S. Ct. 543 (2001). Before deciding whether a constitutional right has been clearly established, the court must determine if the plaintiff has alleged the violation of a constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

In order to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other circuits must establish the constitutional right. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Plaintiff has the burden of establishing that the law was clearly established. *Herring v. Keenan*, 218 F.3d 1171, 1175-76 (10th Cir. 2000), *cert. denied*, 534 U.S. 840 (2001).

The Complaint should be dismissed against Defendant Lappin because it fails to allege that he personally participated in rejecting any issues of the PLN. The Complaint should be dismissed against both Lappin and Hood because it fails to allege facts that establish that either one violated clearly established First Amendment rights. As discussed above, it is not a violation of the First Amendment to prohibit magazines that

8

depict, describe or encourage activities, which may lead to the use of physical violence or group disruptions. *Thornburgh v. Abbott*, 490 U.S. 401, 414-19. Nor is it a constitutional violation to restrict inmate to inmate correspondence. *Turner v. Safley*, 482 U.S. at 91-93. Thus, Plaintiff has failed to allege the violation of a constitutional right at all.

Furthermore, the Complaint fails to allege the violation of a clearly established constitutional right because there is a lack of precedent that defines the contours of when an article depicts, describes or encourages activities, which may lead to the use of physical violence or group disruptions, or defines what constitutes inmate to inmate communication. The warden of an institution is given the discretion to make a judgment call in each case as to whether the publication fits the prohibited criteria. The Supreme Court has recognized that prison administrators are afforded considerable deference in regulating relations between prisoners and the outside world. *Id.* at 407-08. Plaintiff's disagreement with a warden's judgment that the contents of a particular article might affect security, or constitutes inmate to inmate communication, does not state the violation of a clearly established First Amendment right.

A plaintiff cannot simply identify a constitutional right in the abstract, and allege the defendant has violated it. *Herring v. Keenan*, 218 F.3d at 1175-76. The Complaint fails to allege sufficient facts from which the Court could conclude that <u>no</u> reasonable warden could have believed that the rejected issues depicted, described or encouraged activities, which might have led to the use of physical violence or group disruptions, or

9

that they contained inmate to inmate communication. Thus, the Defendants are entitled to qualified immunity.

## B. Lack of Personal Jurisdiction

The complaint should be dismissed against Director Lappin for lack of personal jurisdiction. Plaintiff bears the burden of establishing personal jurisdiction. The Complaint does not allege that Director Lappin is a resident of Colorado, or that he had any meaningful contacts with this District. Colorado's long-arm statute, C.R.S. § 13-1-124, is limited by the due process clause of the United States Constitution. *Mr. Steak, Inc. v. District Court*, 574 P.2d 95, 96 (Colo. 1978)(en banc). The due process clause protects individuals from being subject to judgments of a forum with which the individual has established no meaningful contacts. In order for this court to have personal jurisdiction over a nonresident defendant, there must be minimum contacts between the defendant and the forum state. In order to establish minimum contacts, the defendant must have purposefully directed his activities at residents of the forum and the litigation must result from injuries that arise out of or relate to those activities. This requires some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state. *Burger King Corp. v. Rudzewiczi*, 471 U.S. 462, 471-72 (1985).

Even if minimum contacts exist, the court must still consider whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice.

10

This requires the court to make a determination of whether personal jurisdiction is reasonable in light of the circumstances surrounding the case. *Burger King*, 471 U.S. at 476-77.

The Complaint does not make any factual allegations that would allow the Court to conclude that Director Lappin has the necessary minimum contacts with Colorado to satisfy the due process clause, or that personal jurisdiction is reasonable in light of the circumstances alleged.

## C. Statute of Limitations

A *Bivens* claim is subject to the general personal injury statute of limitations of the state where the claim arose. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985); *Industrial Constructors v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). Plaintiff's constitutional claims arose in Colorado. Colorado's general statute of limitations for personal injury claims provides that a claim must be brought within two years after the action accrues. Colo. Rev. Stat. § 13-80-102.

This case was filed on December 10, 2003. Thus, Plaintiff's claims that PLN was rejected in March 2001, May 2001, August 2001, September 2001, and October 2001 are time-barred.

Dated this _15th_ day of March, 2004.

Respectfully submitted,

JOHN W. SUTHERS
United States Attorney

William G. Pharo
Assistant United States Attorney
1225 Seventeenth St., Suite 700
Denver, Colorado 80202
Telephone: (303) 454-0100

12

## CERTIFICATE OF MAILING

I hereby certify that on the ____15th____ day of March, 2004, a true and correct copy of the foregoing **DEFENDANTS' MOTION TO DISMISS** was mailed, postage prepaid, to:

William Trine
1435 Arapahoe Avenue
Boulder, CO 80302-6390

Michael W. Gendler
1424 Fourth Avenue, Suite 1015
Seattle, WA 98101

Office of the United States Attorney

13

EXHIBIT A-1



**UNITED STATES PENITENTIARY**
ADMINISTRATIVE MAXIMUM FACILITY
**Florence, Colorado 81226**

| | |
|---|---|
| | **Number** : **FLM** 5265.11B |
| **INSTITUTION** | **Date** : November 27, 2000 |
| **SUPPLEMENT** | **Subject** : Correspondence |

1.  **PURPOSE:** This institution supplement is prepared to outline the procedures at the United States Penitentiary, Administrative Maximum, Florence, Colorado, for implementing Bureau of Prisons policy governing correspondence. This institution supplement must be read in conjunction with the directives referenced for a clear understanding of policy.

2.  **DIRECTIVES REFERENCED:**

    Program Statement 5265.11, Correspondence, dated July 9, 1999.

    Program Statement 5800.10, Mail Management Manual, dated November 3, 1995.

    \*   Program Statement 1315.07, Inmate Legal Activities, dated November 5, 1999.      \*

    **DIRECTIVES RESCINDED:**

    \*   Institution Supplement FLM 5265.11A, Correspondence, dated September 21, 1999.
        \*

3.  **STANDARDS REFERENCED:**

    ACA Standards 2-CO-5D-01 and 3-4042 through 3-4438.

4.  **RESPONSIBILITY:**

    Unit staff shall inform the inmate, upon his arrival at the institution (normally in Receiving and Discharge) of this institution's correspondence rules and shall have the inmate sign forms BP-407, Acknowledgment of Inmate, and BP-408, Acknowledgment of Inmate Continuation Sheet. Unit staff shall inform the inmate that letters placed in the U.S. Mail are placed there at the request of the inmate and that the inmate must assume responsibility for the contents of each letter. The Admission and Orientation

Handbook and mail presentation in the A&O video are also used to inform inmates of these responsibilities.

Should the inmate wish to execute the Form BP-407, and wants his general correspondence or funds returned to sender, the Unit Counselor shall notify the Mail Room Inmate Systems Officer via a copy of the executed BP-407.

5.   **PROCEDURES:**

A.   **AUTHORIZATION TO RECEIVE A PACKAGE, FORM BP-331**

For the purposes of correspondence, a package is defined as something wrapped, boxed, or an envelope having a thickness of one inch or more. Further, a package may be any mailing with contents that are not identifiable unless opened.   Packages containing publications should be endorsed "authorized publications enclosed" or similar language to prevent the package from being refused as unauthorized.

Packages require a prior authorization from a staff member.   Packages received for which there is no authorization on file will be refused at the Post Office in compliance with the Program Statement on Mail Management.

(1)   **Authority to approve packages will not be delegated below department head level.**

The following department heads only are authorized to approve packages relating to their respective departments:

(a)   **HEALTH SERVICES ADMINISTRATOR** - Only for those items, deemed by Health Services, as essential to the inmate's health, and are not available through regular inmate health programs.

(b)   **UNIT MANAGERS** - For release or court clothing and for repair on warrantied items such as headphones, etc.

(2)   **Arrival of authorized packages.**

When an authorized package arrives at the institution, the authorizing department will be notified that the package has arrived at the institution by the Mail Room Inmate Systems Officer.

The department authorizing the package will come to R&D to inspect the package, ensuring that the contents are authorized and in conjunction

with what was listed on the BP-331. The package will then be issued to the inmate by the authorizing department. The completed form will be distributed to each department by the staff member issuing the package.

## B.   OUTGOING SPECIAL MAIL:

All outgoing Special Mail may be sealed. Outgoing Special Mail must specifically identify the addressee on the envelope. For example, John Doe, Attorney; John Doe, Reporter, Channel 12 WWAF, etc. Special Mail addressed to a government position or title does not require the individual's specific name. For example, U.S. District Judge, U.S. Attorney, Director of Corrections of the State of Colorado, etc. Special Mail not correctly addressed will be rejected by the Mail Room and returned to the sender.

The back of the envelope must have a minimum of 3 square inches of open space in order to affix the Special Mail stamp which is required on all outgoing Special Mail. Envelopes not allowing sufficient space for this endorsement will be returned to the sender for repackaging.

## C.   INCOMING SPECIAL MAIL:

Incoming Special Mail is defined as legal correspondence that meets certain criteria and requires special handling, specifically the opening of the correspondence in the presence of the inmate. The following criteria is provided that sets guidelines for mail that is intended to be opened in the presence of the inmate only:

(1)   Private Practice Attorneys - To receive special handling, correspondence from attorneys must have the sender's full name, title and the *specific* instructions that the correspondence is to be opened in the presence of the inmate only. Markings such as "special/legal mail," "attorney-client confidential" or "privileged correspondence" do not meet the intent of this criteria. Return addresses that have a "last name(s) only" law firm, such as "Jones and Jones, Attorneys at Law," do not constitute proper identification of the specific sender.

(2)   Congressional and Judicial Mail - Clearly identified mail from the Chambers of a Judge or a member of the U.S. Congress shall automatically receive special mail handling with no requirement for a special mail marking.

(3)   Public Defenders - Public defenders (federal, state and local) will follow the same criteria as private practice attorneys.

(4)   Clerk of the Court and/or U. S. Probation - To receive special handling, these envelopes do not require a specific sender's name on the envelope. Since most documents mailed by these offices are public documents, they will require the special mail handling instructions on the envelope, denoting that the correspondence is to be opened in the presence of the inmate. The common marking, "legal/special mail" does not meet the required criteria for special handling and such mail will be treated as general correspondence.

(5)   U.S. Marshals, U.S. Attorneys and other Federal, State or Local Law Enforcement - Correspondence from these agencies will be handled with the same criteria as Clerk of the Court mail.

(6)   Any other legal correspondence that may require special handling should be referred to the Inmate Systems Manager.

Self-addressed stamped envelopes that an inmate sends out to receive legal correspondence will not be afforded special mail handling privileges when mailed back to the institution, regardless of the markings. In addition, stamps or stamped items received in special mail envelopes will be returned to the sender as an unauthorized item.

The mail room will be responsible for the pickup and delivery and logging of all special mail received. Shakedown procedures for incoming special mail are outlined in the Institution Supplement on Mail Management.

The mail room will maintain a log book of incoming Special Mail which will have the inmate's name, register number, the sender's name, city and state, the date and time the mail was received by the inmate and the inmate's signature.

Any funds received in special mail will be returned to the mail room by the staff member who found the funds in an envelope with the inmate's name, number, type of funds received and amount (example: Money Order - $25.00), date and method of receipt (example: Special Mail 01/31/94) and the inmate's housing unit, written on the outside of the envelope. Once funds for that day have been posted, the funds and temporary receipt will be deposited in the Main Control Center's overnight depository by the receiving staff.

D.   **POSTAGE:**

An inmate will be authorized to possess the dollar equivalent of 60 first class postage stamps at any one time. All postage stamps in excess of this amount

will be considered contraband. Special mailings of any items which require additional postage will require authorization of the Unit Team.

An inmate may receive free postage of five first class stamps, upon his request, for <u>maintaining community ties,</u> providing he does not have any funds in his account. An inmate may receive free stamps (not to exceed <u>five</u>) for this purpose each <u>month</u>, providing he has no funds available (balance less than the equivalent of one first class stamp). However, if the inmate has spent money for commissary purposes during the previous two months, he will be required to sign a Form BP-199, Request for Withdrawal of Inmate's Personal Funds, for the cost of the stamps.

Inmates who are without funds (inmate's commissary account shows a balance of less than the equivalent of one first class stamp) may obtain up to five free stamps per <u>week</u> for <u>legal mail</u> (attorneys and courts) and administrative remedy appeal forms. In such situations, the inmate will submit a request to his unit counselor, who will verify the inmate's commissary account. If an inmate without funds has qualified legal mailings which will require more than five stamps, the inmate will be advanced additional stamps, on the condition he signs the advance agreement form (Attachment 1) and the commissary withdrawal form BP-199. By signing this forms, the inmate is acknowledging that if he obtains funds in his commissary account, those funds will be used to repay the amount of extra legal postage. Any questions regarding the issuance of extra postage will be referred to the Unit Manager.

In the case of qualified legal mailings, the inmate will give the sealed legal mail to his unit counselor. The staff member will print the inmate's name, number and the number of stamps issued in the stamp log. Staff will make note if the postage was social, legal or extra legal for which a BP-199 was signed by the inmate. The staff member will initial the entry, and the inmate will sign as receiving the stamps. The counselor will apply the postage to the legal mail and then deliver the mail to the mail room.

These same provisions apply to pre-sentence and sentenced holdovers housed at this institution.

The Unit Manager is responsible for the issuing and accounting for all stamps in accordance with the following provisions:

(1)    All stamps will be stored in locked cabinets.

(2)    Logs will be stored with the stamps.

(3)     Unit secretaries will not issue stamps to inmates, but may be assigned duties related to preparation of accounting reports to the business office.

The Controller will audit units quarterly, inspecting the extra stamps log. Discrepancies will be reported in writing to the Warden, with copies to the Associate Warden (Programs) and the Case Management Coordinator.   In order to ensure maximum accountability and security, each unit will follow these procedures:

(1)     Maintain all signature logs for at least two years.

(2)     Standardize log books for all units.

(3)     Obtain inmate's signature in the log book for all extra stamps.

## E.     PORNOGRAPHY AND NUDE PHOTOGRAPHS:

Pornographic photographs and publications will be defined and handled in accordance with current national policy as outlined in the Program Statements on Mail Management and Incoming Publications, along with their respective Institution Supplement.

## F.     MAIL ADDRESS AND REQUIREMENTS:

All outgoing inmate mail must contain the inmate's name and register number. The return address must be on the front of all mailings. The intent of national policy for the institution name in the return address prohibits any abbreviations or any shortening of the name that would not fully identify the facility as a federal prison.  Any outgoing mail that fails to meet this policy will be returned to the sender.

SAMPLE OF PROPERLY ADDRESSED MAIL
Committed Name
Register Number
U.S. Penitentiary, MAX
Post Office Box 8500
Florence, CO 81226

## G.     FOREIGN LANGUAGE CORRESPONDENCE:

To ensure the security, discipline and orderly operation of this facility, correspondence in languages other than English will be subject to translation,

review, and verification, which may cause a delay in receipt. Correspondence which cannot be reasonably translated may be rejected.

**H.     SECURITY OF INCOMING AND OUTGOING CORRESPONDENCE:**

All incoming and outgoing correspondence will be x-rayed. All incoming correspondence will be x-rayed prior to entering the facility. All outgoing correspondence will be x-rayed prior to delivery to the U.S. Post Office.

**I.     SUPERVISION OF INMATE CORRESPONDENCE:**

The Inmate Systems Manager has been designated as the staff person to supervise all inmate correspondence.

**J.     MONITORING PROCEDURES:**

All incoming and outgoing inmate mail will be monitored by any ADX staff member. Certain inmate correspondence may be subject to additional monitoring based on the inmate being placed on a formal review list. This additional monitoring may be conducted by designated staff as necessary. All first class mail will ordinarily be inspected and delivered to the inmate within the time limits prescribed in the local supplement on mail management.

**K.     SPECIAL PURPOSE LETTERS:**

Inmates who are on restricted correspondence may be permitted, at the appropriate Approving Official's discretion, to correspond with persons other than those on the inmate's approved mailing list for certain one-time purposes only. Requests for a special purpose letter shall be generated by the inmate's Case Manager and routed through the Unit Manager and Associate Warden to the Warden for approval. Those inmates who were placed on restricted correspondence by an official other than the Warden shall refer the request to that same person for approval.

**L.     INMATE TO INMATE CORRESPONDENCE:**

In many cases, former inmates are not permitted to have contact with convicted persons, as a condition of their release. Former inmates under any type of post-confinement supervision, who wish to correspond with an ADX inmate will require the approval of their probation officer and the appropriate ADX approving official.

Due to the possibility of unauthorized messages or information being passed, the following will be defined as inmate to inmate correspondence, thereby requiring advance approval:

(1)     Any article, publication, advertisement, etc., that contains specific information written by or about an inmate or inmates and their causes.

(2)     Any correspondence or publication from a third party that references a particular inmate or inmates.

(3)     Any photograph that contains an inmate or group of inmates, regardless of the background setting or relationship of the subject to the intended receiver.

**M.     REJECTED INMATE CORRESPONDENCE**

Bureau of Prisons form BP-327, Returned Correspondence, will be used to notify both the sender and the inmate of rejected correspondence. Local security concerns dictate only the sender's name will be included on the form. No return address will be noted to prevent further unauthorized correspondence.

6.      **OFFICE OF PRIMARY INTEREST**: Inmate Systems Manager.

_____
Michael V. Pugh, Warden

_____
Date

**DISTRIBUTION:**

Directives Libraries                                    AFGE
All Department Heads                              Correctional Programs, NCRO
Associate Warden (Programs)
Associate Warden (Operations)
Inmate Law Library

**FLM 5265.11B**
**Attachment 1**

**United States Penitentiary**
**Administrative Maximum**
**Florence, Colorado 81226**

Date: _____

I, _____, am requesting an advance of stamps for legal purposes as I am without funds.  I understand that an inmate without funds may receive up to five postage stamps per week for legal correspondence.  By requesting an advance of _____ for legal stamps, I understand and agree that even if I remain without funds, I will not be eligible for legal stamps until _____, as I am using up my legal stamps for the next _____weeks.

_____
**DATE**

_____
**INMATE SIGNATURE & REGISTER NO.**

_____
**DATE**

_____
**STAFF WITNESS & TITLE**

EXHIBIT A-2



**UNITED STATES PENITENTIARY**
**ADMINISTRATIVE MAXIMUM FACILITY**
**Florence, Colorado 81226**

| | |
|---|---|
| **INSTITUTION SUPPLEMENT** | **Number** : **FLM** 5265.11C |
| | **Date** : April 5, 2002 |
| | **Subject** : Correspondence |

1. <u>**PURPOSE**</u>: This institution supplement is prepared to outline the procedures at the United States Penitentiary, Administrative Maximum, Florence, Colorado, for implementing Bureau of Prisons policy governing correspondence. This institution supplement must be read in conjunction with the directives referenced for a clear understanding of policy.

2. <u>**DIRECTIVES REFERENCED**</u>:

   Program Statement 5265.11, Correspondence, dated July 9, 1999.

   Program Statement 5800.10, Mail Management Manual, dated November 3, 1995.

   Program Statement 1315.07, Inmate Legal Activities, dated November 5, 1999.

   <u>**DIRECTIVES RESCINDED**</u>:

   Institution Supplement FLM 5265.11B, Correspondence, dated November 27, 2000.*

3. <u>**STANDARDS REFERENCED**</u>:

   ACA Standards 2-CO-5D-01 and 3-4042 through 3-4438.

4. <u>**RESPONSIBILITY**</u>:

   Unit staff shall inform the inmate, upon his arrival at the institution (normally in Receiving and Discharge) of this institution's correspondence rules and shall have the inmate sign forms BP-407, Acknowledgment of Inmate, and BP-408, Acknowledgment of Inmate Continuation Sheet. Unit staff shall inform the inmate that letters placed in the U.S. Mail are placed there at the request of the inmate and that the inmate must assume responsibility for the contents of each letter. The Admission and Orientation

Handbook and mail presentation in the A&O video are also used to inform inmates of these responsibilities.

Should the inmate wish to execute the Form BP-407, and wants his general correspondence or funds returned to sender, the Unit Counselor shall notify the Mail Room Inmate Systems Officer via a copy of the executed BP-407.

5.   **PROCEDURES:**

A.   **AUTHORIZATION TO RECEIVE A PACKAGE, FORM BP-331**

For the purposes of correspondence, a package is defined as something wrapped, boxed, or an envelope having a thickness of one inch or more. Further, a package may be any mailing with contents that are not identifiable unless opened.   Packages containing publications should be endorsed "authorized publications enclosed" or similar language to prevent the package from being refused as unauthorized.

Packages require a prior authorization from a staff member.  Packages received for which there is no authorization on file will be refused at the Post Office in compliance with the Program Statement on Mail Management.

(1)   **Authority to approve packages will not be delegated below department head level.**

The following department heads only are authorized to approve packages relating to their respective departments:

(a)   **HEALTH SERVICES ADMINISTRATOR** - Only for those items, deemed by Health Services, as essential to the inmate's health, and are not available through regular inmate health programs.

(b)   **UNIT MANAGERS** - For release or court clothing and for repair on warrantied items such as headphones, etc.

(2)   **Arrival of authorized packages.**

When an authorized package arrives at the institution, the authorizing department will be notified that the package has arrived at the institution by the Mail Room Inmate Systems Officer.

The department authorizing the package will come to R&D to inspect the package, ensuring that the contents are authorized and in conjunction

with what was listed on the BP-331. The package will then be issued to the inmate by the authorizing department. The completed form will be distributed to each department by the staff member issuing the package.

**B.    OUTGOING SPECIAL MAIL:**

All outgoing Special Mail may be sealed.   Outgoing Special Mail must specifically identify the addressee on the envelope.  For example, John Doe, Attorney;   John Doe, Reporter, Channel 12  WWAF, etc.   Special Mail addressed to a government position or title does not require the individual's specific name.  For example, U.S. District Judge, U.S. Attorney, Director of Corrections of the State of Colorado, etc.  Special Mail not correctly addressed will be rejected by the Mail Room and returned to the sender.

The back of the envelope must have a minimum of 3 square inches of open space in order to affix the Special Mail stamp which is required on all outgoing Special Mail. Envelopes not allowing sufficient space for this endorsement will be returned to the sender for repackaging.

**C.    INCOMING SPECIAL MAIL:**

Incoming Special Mail is defined as legal correspondence that meets certain criteria and requires special handling, specifically the opening of the correspondence in the presence of the inmate.  The following criteria is provided that sets guidelines for mail that is intended to be opened in the presence of the inmate only:

(1)    Private Practice Attorneys - To receive special handling, correspondence from attorneys must have the sender's full name, title and the *specific* instructions that the correspondence is to be opened in the presence of the inmate only.  Markings such as "special/legal mail," "attorney-client confidential" or "privileged correspondence" do not meet the intent of this criteria.  Return addresses that have a "last name(s) only" law firm, such as "Jones and Jones, Attorneys at Law," do not constitute proper identification of the specific sender.

(2)    Congressional and Judicial Mail - Clearly identified mail from the Chambers of a Judge or a member of the U.S. Congress shall automatically receive special mail handling with no requirement for a special mail marking.

(3)    Public Defenders - Public defenders (federal, state and local) will follow the same criteria as private practice attorneys.

(4)     Clerk of the Court and/or U. S. Probation - To receive special handling, these envelopes do not require a specific sender's name on the envelope. Since most documents mailed by these offices are public documents, they will require the special mail handling instructions on the envelope, denoting that the correspondence is to be opened in the presence of the inmate. The common marking, "legal/special mail" does not meet the required criteria for special handling and such mail will be treated as general correspondence.

(5)     U.S. Marshals, U.S. Attorneys and other Federal, State or Local Law Enforcement - Correspondence from these agencies will be handled with the same criteria as Clerk of the Court mail.

(6)     Any other legal correspondence that may require special handling should be referred to the Inmate Systems Manager.

Self-addressed stamped envelopes that an inmate sends out to receive legal correspondence will not be afforded special mail handling privileges when mailed back to the institution, regardless of the markings. In addition, stamps or stamped items received in special mail envelopes will be returned to the sender as an unauthorized item.

The mail room will be responsible for the pickup and delivery and logging of all special mail received. Shakedown procedures for incoming special mail are outlined in the Institution Supplement on Mail Management.

The mail room will maintain a log book of incoming Special Mail which will have the inmate's name, register number, the sender's name, city and state, the date and time the mail was received by the inmate and the inmate's signature.

Any funds received in special mail will be returned to the mail room by the staff member who found the funds in an envelope with the inmate's name, number, type of funds received and amount (example: Money Order - $25.00), date and method of receipt (example: Special Mail 01/31/94) and the inmate's housing unit, written on the outside of the envelope. Once funds for that day have been posted, the funds and temporary receipt will be deposited in the Main Control Center's overnight depository by the receiving staff.           *

D.     POSTAGE:

An inmate will be authorized to possess the dollar equivalent of 60 first class postage stamps at any one time. All postage stamps in excess of this amount

will be considered contraband.  Special mailings of any items which require additional postage will require authorization of the Unit Team.

An inmate may receive free postage of five first class stamps, upon his request, for <u>maintaining community ties,</u> providing he does not have any funds in his account.  An inmate may receive free stamps (not to exceed <u>five</u>) for this purpose each <u>month</u>, providing he has no funds available (balance less than the equivalent of one first class stamp).  However, if the inmate has spent money for commissary purposes during the previous two months, he will be required to sign a Form BP-199, Request for Withdrawal of Inmate's Personal Funds, for the cost of the stamps.

Inmates who are without funds (inmate's commissary account shows a balance of less than the equivalent of one first class stamp) may obtain up to five free stamps per <u>week</u> for <u>legal mail</u> (attorneys and courts) and administrative remedy appeal forms.  In such situations, the inmate will submit a request to his unit counselor, who will verify the inmate's commissary account.  If an inmate without funds has qualified legal mailings which will require more than five stamps, the inmate will be advanced additional stamps, on the condition he signs the advance agreement form (Attachment 1) and the commissary withdrawal form BP-199.  By signing this forms, the inmate is acknowledging that if he obtains funds in his commissary account, those funds will be used to repay the amount of extra legal postage.  Any questions regarding the issuance of extra postage will be referred to the Unit Manager.

In the case of qualified legal mailings, the inmate will give the sealed legal mail to his unit counselor.  The staff member will print the inmate's name, number and the number of stamps issued in the stamp log.  Staff will make note if the postage was social, legal or extra legal for which a BP-199 was signed by the inmate.  The staff member will initial the entry, and the inmate will sign as receiving the stamps.  The counselor will apply the postage to the legal mail and then deliver the mail to the mail room. *

These same provisions apply to pre-sentence and sentenced holdovers housed at this institution.

The Unit Manager is responsible for the issuing and accounting for all stamps in accordance with the following provisions:

(1)     All stamps will be stored in locked cabinets.

(2)     Logs will be stored with the stamps.

(3)   Unit secretaries will not issue stamps to inmates, but may be assigned duties related to preparation of accounting reports to the business office.

The Controller will audit units quarterly, inspecting the extra stamps log. Discrepancies will be reported in writing to the Warden, with copies to the Associate Warden (Programs) and the Case Management Coordinator. In order to ensure maximum accountability and security, each unit will follow these procedures:

(1)   Maintain all signature logs for at least two years.

(2)   Standardize log books for all units.

(3)   Obtain inmate's signature in the log book for all extra stamps.

**E.     PORNOGRAPHY AND NUDE PHOTOGRAPHS:**

Pornographic photographs and publications will be defined and handled in accordance with current national policy as outlined in the Program Statements on Mail Management and Incoming Publications, along with their respective Institution Supplement.

**F.     MAIL ADDRESS AND REQUIREMENTS:**

All outgoing inmate mail must contain the inmate's name and register number. The return address must be on the front of all mailings. The intent of national policy for the institution name in the return address prohibits any abbreviations or any shortening of the name that would not fully identify the facility as a federal prison. Any outgoing mail that fails to meet this policy will be returned to the sender.

SAMPLE OF PROPERLY ADDRESSED MAIL
Committed Name
Register Number
U.S. Penitentiary, MAX
Post Office Box 8500
Florence, CO 81226

**G.     FOREIGN LANGUAGE CORRESPONDENCE:**

To ensure the security, discipline and orderly operation of this facility, correspondence in languages other than English will be subject to translation,

review, and verification, which may cause a delay in receipt. Correspondence which cannot be reasonably translated may be rejected.

**H.    SECURITY OF INCOMING AND OUTGOING CORRESPONDENCE:**

All incoming and outgoing correspondence will be x-rayed. All incoming correspondence will be x-rayed prior to entering the facility. All outgoing correspondence will be x-rayed prior to delivery to the U.S. Post Office.

**I.    SUPERVISION OF INMATE CORRESPONDENCE:**

The Inmate Systems Manager has been designated as the staff person to supervise all inmate correspondence.

**J.    MONITORING PROCEDURES:**

All incoming and outgoing inmate mail will be monitored by any ADX staff member. Certain inmate correspondence may be subject to additional monitoring based on the inmate being placed on a formal review list. This additional monitoring may be conducted by designated staff as necessary. All first class mail will ordinarily be inspected and delivered to the inmate within the time limits prescribed in the local supplement on mail management.

**K.    SPECIAL PURPOSE LETTERS:**

Inmates who are on restricted correspondence may be permitted, at the appropriate Approving Official's discretion, to correspond with persons other than those on the inmate's approved mailing list for certain one-time purposes only. Requests for a special purpose letter shall be generated by the inmate's Case Manager and routed through the Unit Manager and Associate Warden to the Warden for approval. Those inmates who were placed on restricted correspondence by an official other than the Warden shall refer the request to that same person for approval.

**L.    INMATE TO INMATE CORRESPONDENCE:**

In many cases, former inmates are not permitted to have contact with convicted persons, as a condition of their release. Former inmates under any type of post-confinement supervision, who wish to correspond with an ADX inmate will require the approval of their probation officer and the appropriate ADX approving official.

Due to the possibility of unauthorized messages or information being passed, the following will be defined as inmate to inmate correspondence, thereby requiring advance approval:

(1)     Any article, publication, advertisement, etc., that contains specific information written by or about an inmate or inmates and their causes.

(2)     Any correspondence or publication from or to a third party that references a particular inmate or inmates.

(3)     Any photograph that contains an inmate or group of inmates, regardless of the background setting or relationship of the subject to the intended receiver.

## M.     REJECTED INMATE CORRESPONDENCE

Bureau of Prisons form BP-327, Returned Correspondence, will be used to notify both the sender and the inmate of rejected correspondence. Local security concerns dictate only the sender's name will be included on the form. No return address will be noted to prevent further unauthorized correspondence.

6.     **OFFICE OF PRIMARY INTEREST**:  Inmate Systems Manager.

_____                    _____
Michael V. Pugh, Warden                          Date    4/5/02

DISTRIBUTION:

Directives Libraries                                    AFGE
All Department Heads                               Correctional Programs, NCRO
Associate Warden (Programs)
Associate Warden (Operations)
Inmate Law Library

FLM 5265.11C
Attachment 1

**United States Penitentiary**
**Administrative Maximum**
**Florence, Colorado 81226**

Date: _____

I, _____, am requesting an advance of stamps for legal purposes as I am without funds. I understand that an inmate without funds may receive up to five postage stamps per week for legal correspondence. By requesting an advance of _____ for legal stamps, I understand and agree that even if I remain without funds, I will not be eligible for legal stamps until _____, as I am using up my legal stamps for the next _____weeks.


_____
**DATE**

_____
**INMATE SIGNATURE & REGISTER NO.**


_____
**DATE**

_____
**STAFF WITNESS & TITLE**

EXHIBIT A-3



**UNITED STATES PENITENTIARY**
ADMINISTRATIVE MAXIMUM FACILITY
**Florence, Colorado 81226**

| | |
|---|---|
| **INSTITUTION SUPPLEMENT** | **Number** : **FLM** 5265.11D |
| | **Date** : June 20, 2003 |
| | **Subject** : Correspondence |

1. **PURPOSE**: This institution supplement is prepared to outline correspondence procedures at the United States Penitentiary, Administrative Maximum, Florence, Colorado. This institution supplement must be read in conjunction with the directives referenced for a clear understanding of policy.

2. **DIRECTIVES REFERENCED:**

   Program Statement 5265.11, Correspondence, dated July 9, 1999.

   Program Statement 5800.10, Mail Management Manual, dated November 3, 1995.

   Program Statement 1315.07, Inmate Legal Activities, dated November 5, 1999.

   **DIRECTIVES RESCINDED:**

   Institution Supplement FLM 5265.11C, Correspondence, dated April 5, 2002.

3. **STANDARDS REFERENCED:**

   ACA Standards 3-4042, 3-4254, 3-4262, 3-4263, 3-4267, 3-4429, 3-4430, 3-4431, 3-4433, 3-4434, 3-4436.

4. **RESPONSIBILITY:**

   Unit staff shall inform the inmate, upon his arrival at the institution (normally in Receiving and Discharge) of this institution's correspondence rules and shall have the inmate sign forms BP-407, Acknowledgment of Inmate, and BP-408, Acknowledgment of Inmate Continuation Sheet. Unit staff shall inform the inmate that letters placed in the U.S. Mail are placed there at the request of the inmate and that the inmate must assume responsibility for the contents of each letter. The Admission and Orientation

Handbook and mail presentation in the A&O video are also used to inform inmates of these responsibilities.

Should the inmate wish to execute the BP-407, and wants his general correspondence or funds returned to sender, the Unit Counselor shall notify the Mail Room via a copy of the executed BP-407.

5.   **PROCEDURES:**

   A.   **AUTHORIZATION TO RECEIVE A PACKAGE - BP-331**

   For the purposes of correspondence, a package is defined as something wrapped, boxed, or an envelope having a thickness of one inch or more. Further, a package may be any mailing with contents that are not identifiable unless opened.   Packages containing publications should be endorsed "authorized publications enclosed" or similar language to prevent the package from being refused as unauthorized.

   Packages require a prior authorization from a staff member.  Packages received for which there is no authorization on file will be refused at the Post Office in compliance with the Program Statement on Mail Management.

   (1)   <u>Authority to approve packages will not be delegated below department head level</u>.

   The following department heads only are authorized to approve packages relating to their respective departments:

   (a)   **HEALTH SERVICES ADMINISTRATOR** - Only for those items, deemed by Health Services, as essential to the inmate's health, and are not available through regular inmate health programs.

   (b)   **UNIT MANAGERS** - For release or court clothing.

   (c)   **EDUCATION SUPERVISOR** - Education courses coming directly from an educational institution only.

   (2)   <u>Arrival of authorized packages</u>.

   When an authorized package arrives at the institution, the authorizing department will be notified that the package has arrived at the institution by the Mail Room.

   The department authorizing the package will come to R&D to inspect the package, ensuring that the contents are authorized and in conjunction

with what was listed on the BP-331. The package will then be issued to the inmate by the authorizing department. The completed form will be distributed by the staff member issuing the package.

**B.    OUTGOING SPECIAL MAIL:**

All outgoing Special Mail may be sealed. Outgoing Special Mail must identify the addressee on the envelope. For example, John Doe, Attorney; John Doe, Reporter, Channel 12 WWAF, etc. Special Mail addressed to a government position or title does not require the individual's specific name. For example, U.S. District Judge, U.S. Attorney, Director of Corrections of the State of Colorado, etc. Outgoing Special Mail not correctly addressed will be returned to the inmate.

The back of the envelope must have a minimum of 3 square inches of open space in order to affix the Special Mail stamp which is required on all outgoing Special Mail. Envelopes not allowing sufficient space for this endorsement will be returned to the sender for re-packaging.

**C.    INCOMING SPECIAL MAIL:**

Incoming Special Mail is defined as legal correspondence that meets certain criteria and requires special handling, specifically the opening of the correspondence in the presence of the inmate. The criteria for mail that is intended to be opened in the presence of the inmate is outlined in the Institution Supplement entitled Mail Management Manual.

Self-addressed stamped envelopes that an inmate sends out to receive legal correspondence will not be afforded special mail handling privileges when mailed back to the institution, regardless of the markings. In addition, stamps or stamped items received in special mail envelopes will be returned to the sender as an unauthorized item.

The mail room will be responsible for logging of all special mail received. Shakedown procedures for incoming special mail are outlined in the Institution Supplement on Mail Management.

The mail room will maintain a master log book of incoming Special Mail which will have the inmate's name, register number, the sender's name, city and state, the date and time the mail was received by the inmate, the inmate's signature and the issuing staff members initials.

Any funds received in Special Mail will be maintained in the mail room and posted with that day's funds. If funds for that day have been posted, the funds

and a temporary receipt will be deposited in the Main Control Center's overnight depository by the receiving staff.

### D.   POSTAGE:

An inmate will be authorized to possess the dollar equivalent of 60 first class postage stamps at any one time. All postage stamps in excess of this amount will be considered contraband.

An inmate may receive free postage of five first class stamps per month, upon his request, for maintaining community ties, providing he meets the criteria for being an indigent inmate.

Inmates who are determined to be indigent may obtain up to five free stamps per week for legal mail (attorneys and courts) and administrative remedy appeal forms. In such situations, the inmate will submit a request to his Unit Counselor, who will verify the inmate's indigent status. If an indigent inmate has qualified legal mailings which will require more than five stamps, the inmate will be advanced additional stamps, on the condition he signs a TRUFACS withdrawal form. By signing this form, the inmate is acknowledging that if he obtains funds in his commissary account, those funds will be used to repay the amount of extra legal postage. Any questions regarding the issuance of extra postage will be referred to the respective Unit Manager.

In the case of qualified legal mailings, the inmate will give the sealed legal mail to his Unit Counselor. The staff member will print the inmate's name, number and the number of stamps issued in the stamp log. Staff will make note if the postage was social, legal or extra legal for which a TRUFACS withdrawal form was signed by the inmate. The staff member will initial the entry, and the inmate will sign as receiving the stamps. The counselor will apply the postage to the legal mail and then deliver the mail to the mail room. Free legal mail postage will not be left in the possession of the inmate.

These same provisions apply to pre-sentence and sentenced holdovers housed at this institution.

The Unit Manager is responsible for the issuing and accounting for all stamps in accordance with the following provisions:

(1)   All stamps will be stored in locked cabinets.

(2)   Logs will be stored with the stamps.

(3)   Unit secretaries will not issue stamps to inmates, but may be assigned duties related to preparation of accounting reports to the business office.

The Controller or designee will audit units quarterly, inspecting the extra stamps log. Discrepancies will be reported in writing to the Warden, with copies to the Associate Warden (Programs) and the Case Management Coordinator. To ensure maximum accountability and security, each unit will follow these procedures:

(1)     Maintain all signature logs for at least two years.

(2)     Standardize log books for all units.

(3)     Obtain inmate's signature in the log book for all extra stamps.

**E.     PORNOGRAPHY AND NUDE PHOTOGRAPHS:**

Pornographic photographs and publications will be defined and processed in accordance with current national policy as outlined in the Program Statements on Mail Management and Incoming Publications, along with their respective Institution Supplement.

**F.     MAIL ADDRESS AND REQUIREMENTS:**

All outgoing inmate mail must contain the inmate's name and register number. The return address must be on the front of all mailings. The intent of national policy for the institution name in the return address prohibits any abbreviations or any shortening of the name that would not fully identify the facility as a federal prison. Any outgoing mail that fails to meet this policy will be returned to the sender.

<u>SAMPLE OF PROPERLY ADDRESSED MAIL</u>
Committed Name
Register Number
U.S. Penitentiary, MAX
Post Office Box 8500
Florence, CO 81226

**G.     FOREIGN LANGUAGE CORRESPONDENCE:**

To ensure the security, discipline and orderly operation of this facility, correspondence in languages other than English will be subject to translation, review, and verification, which may cause a delay in receipt. Correspondence which cannot be reasonably translated may be rejected.

**H.    SECURITY OF INCOMING AND OUTGOING CORRESPONDENCE:**

All incoming correspondence will be x-rayed prior to entering the facility. All outgoing correspondence will be x-rayed prior to delivery to the U.S. Post Office.

**I.    SUPERVISION OF INMATE CORRESPONDENCE:**

The Inmate Systems Manager has been designated as the staff person to supervise all inmate correspondence.

**J.    MONITORING PROCEDURES:**

All incoming and outgoing inmate mail will be monitored by any ADX staff member. Certain inmate correspondence may be subject to additional monitoring based on the inmate being placed on a formal review list or if any questionable correspondence is indicated by monitoring staff. This additional monitoring may be conducted by designated staff as necessary. All first class mail will ordinarily be inspected and delivered to the inmate within the time limits prescribed in the local supplement on mail management.

**K.    SPECIAL PURPOSE LETTERS:**

Inmates who are on restricted correspondence may be permitted, at the appropriate Approving Official's discretion, to correspond with persons other than those on the inmate's approved mailing list for certain one-time purposes only. Requests for a special purpose letter shall be generated by the inmate's Case Manager and routed through the Unit Manager and Associate Warden to the Warden for approval. Those inmates who were placed on restricted correspondence by an official other than the Warden shall refer the request to that same person for approval.

**L.    INMATE TO INMATE CORRESPONDENCE:**

In many cases, former inmates are not permitted to have contact with convicted persons, as a condition of their release. Former inmates under any type of post-confinement supervision, who wish to correspond with an ADX inmate will require the approval of their probation officer and the appropriate ADX approving official.

**M.    REJECTED INMATE CORRESPONDENCE**

Returned Correspondence, BP-327, will be used to notify both the sender and the inmate of rejected incoming correspondence. Local security concerns

dictate only the sender's name will be included on the form.  No return address
will be noted to prevent further unauthorized correspondence.

6.      **OFFICE OF PRIMARY INTEREST**:  Inmate Systems Manager.


Robert A. Hood, Warden                     6/20/03
                                                  Date


DISTRIBUTION:

Directives Libraries                        AFGE
All Department Heads                        Correctional Programs, NCRO
Associate Warden (Programs)
Associate Warden (Operations)
Inmate Law Library