# Exhibit 1
# Declaration of Jack Fox

*Prison Legal News v. Federal Bureau of Prisons*,
No. 15-cv-02184-RM-STV

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS,
a project of the Human Rights Defense Center,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

---

## DECLARATION OF JACK FOX

---

      I, Jack Fox, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above entitled matter.

      1.      I am employed by the Federal Bureau of Prisons (Bureau) as the Warden at the United States Penitentiary – Administrative Maximum (ADX), located in Florence, Colorado.   I have been in this position since December 2015.

      2.      As Warden at the ADX, I am responsible for security and day-to-day operations of the ADX.   As part of my official duties, I have access to records maintained in the ordinary course of business by the Bureau, including policy documents such as Institution Supplements,

1

training materials, inmate central files, and information maintained in the SENTRY[1] database. All attachments provided herein are true and accurate copies of Bureau records.

     3.     I am familiar with the procedures for processing incoming publications at ADX Florence. These procedures are outlined in the declaration of Todd Chapman, filed in this case as Doc. 31-1 and attachments thereto (Docs. 31-2 to 31-8). I fully adopt and incorporate all information and assertions presented in that declaration, which are accurate in every respect.

### A.    Statistics Regarding ADX Incoming Publication Rejections

     4.     As noted in Mr. Chapman's Declaration (Doc. 31-1), during the first six-month period after implementation of the current ADX Florence institution supplement (from February through July 12, 2016), 30 incoming publications were rejected. Doc 31-1 at ¶ 21 (nine publications rejected for reasons other than nudity and estimating that, during that same time period, approximately 9,000 incoming publications were received at the ADX).

     5.     Since February 2016, no incoming publication at the ADX has been rejected solely because it contained the name of a Bureau staff member or Bureau inmate. *See also* Doc. 31-1 at ¶¶ 21-22.

     6.     From July 12, 2016, the last date reflected in Mr. Chapman's declaration (Doc. 31-1 at ¶ 21), through December 2016[2], 19 incoming publications have been rejected. *See*

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

[2] It should be noted that, from February 2, 2016, through December 31, 2016, 30 incoming publications were rejected because they contained sexually explicit material or depicted nudity. *See* Attachment 1. These rejections are mandated by federal statute and are not a matter of BOP discretion. *See* 18 U.S.C. § 4042 (commonly known as the "Ensign Amendment"). Of the total number of rejected incoming publications during this time period, many of the incoming publication rejections pertained to inmates who are subject to Special Administrative Measures, or "SAMs." *Id.* (identifying five incoming publications rejected for SAMs inmates from July – December 2016). For

Attachment 1, Incoming Publication Rejection Comparisons (2015-2016).    It is again estimated that approximately 9,000 incoming publications were received during this time period at the ADX.

7.      Of these rejected incoming publications, nine were rejected because they contained sexually explicit material and/or nudity.   *See* 28 C.F.R. § 540.71(b)(7).   For the remaining ten incoming publications that were rejected, five were rejected because they endorsed violence against Americans, one discussed a security threat group which promotes racial superiority, one discussed advanced operations of electrical systems, two promoted violence as a means to overthrow established government to include law enforcement, and one was written in code.

8.      The following chart indicates the decrease in the total number of all incoming publications rejected at the ADX in 2015 and 2016:

| Time Period | Number of Rejections and Reasons | Reference |
|---|---|---|
| (1) February 2015 – December 31, 2015 | 106 (total)<br>25 (sexually explicit or nudity-based)<br>81 (non-sexually explicit or nudity-based) | Doc. 31-1 at ¶ 23; Att. 1 |
| (2) February 2, 2016 – July 12, 2016 | 30 (total)<br>21 (sexually explicit or nudity-based)<br>9 (non-sexually explicit or nudity-based) | Doc. 31-1 at ¶ 21; Att. 1 |
| (3) July 12, 2016 – December 31, 2016 | 19 (total)<br>9 (sexually explicit or nudity-based)<br>10 (non-sexually explicit or nudity based)<br>Of these, 5 SAMs (all of which were non-sexually explicit or nudity-based) | Att. 1 |

inmates with SAMs, outside law enforcement officers review incoming publications and provide appropriate recommendations to the Warden.

9.      The implementation of the new review procedures in the February 2016 Policy resulted in a 54% decrease in the number of incoming publication rejections from 2015 to 2016 and a 37% decrease from early 2016 to late 2016.   *See* Attachment 1.   For non-nudity/non-sexually explicit rejections, there was a 77% decrease from 2015 to 2016.   *Id.*

10.     No issue of *Prison Legal News* has been rejected at the ADX since April 2014, a period of nearly three years.

11.      The implementation of the current ADX Florence institution supplement concerning incoming publications, with its enhanced review procedures, has resulted in a more thorough screening of incoming publications for objectionable material.   As indicated above, one past practice that has changed with the implementation of the current institution supplement is that a publication is not rejected solely because it identifies and discusses an ADX or Bureau inmate, or Bureau staff member.

**B.      Quarterly Training**

12.     To date, Bureau attorneys in the Legal Services Department at the ADX have conducted quarterly training on five occasions.   *See* Attachment 2, Quarterly Training Outlines, Attendance Records, and Sample Training Packet.   These trainings have occurred on the following dates: February 24, 2016; July 19, 2016; September 8, 2016; November 29, 2016; and February 1, 2017.   *Id.*   These quarterly training sessions are attended by ADX personnel involved in the initial stages of the incoming publication review process, to include the Correctional Systems Management (CSM) Department staff (commonly referred to as mailroom

officers) and staff in the Special Investigative Services (SIS) Department, the investigative department of the ADX.   *Id.*

13.     During the training sessions, attendees receive a packet of materials, including the outline used by the attorney-trainer, the memorandum form that is to be used when recommending a rejection, relevant excerpts from the Bureau's national policy concerning incoming publications, and the ADX institution supplement on incoming publications where the current review process is further explained.   *Id.*

14.     While I have not personally attended any of the aforementioned training sessions, I am aware of the materials that have been covered, and I have personally received such training from Clay C. Cook, Senior Attorney Advisor.

15.     As part of this training, CSM/SIS staff and I are instructed on the following:

- the criteria for reviewing incoming publications;

- the initial review by CSM staff and further reviews, if a publication is recommended for rejection, by SIS staff and an attorney;

- regulation-based rejection standards;

- the mere reference to a Bureau inmate or Bureau staff member is not sufficient grounds for rejection of an incoming publication; CSM/SIS staff must be able to identify and annotate a security concern in addition to the reference to a Bureau inmate or Bureau staff member, in order to recommend rejection to me as the Warden; and

- CSM/SIS staff are reminded and encouraged to seek input from an attorney regarding an incoming publication at any time in the review process.[3]   *Id.*

16.    During future quarterly trainings, the training packets received by CSM and SIS staff will specifically include the following language: *"An incoming publication at the ADX may not be rejected solely because it discusses an ADX or Bureau inmate, or Bureau staff member. When a publication identifies and discusses an ADX or Bureau inmate, or Bureau staff member, CSM/SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and include an evaluation of the factors in 28 C.F.R. § 540.71(b).   CSM and SIS staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment."*

**C.    Conclusion**

17.    The ADX is committed to the current incoming publication review procedures, and the ADX will not utilize the fact that an incoming publication discusses an ADX or Bureau inmate, or Bureau staff member, standing alone, as a basis to find that the incoming publication is "detrimental to the security, good order, or discipline of the institution or … might facilitate criminal activity." *See* 28 C.F.R. § 540.71(b).   Under the procedures adopted since the implementation of the February 2016 Policy, an incoming publication that only discusses an

---

3 Specifically, in the training outlines provided by the attorney-trainers, it is noted that "at any time, an attorney from the Legal Services Department may be consulted by CSM/SIS staff with respect to rejecting incoming publications.   The goal being that the rejection draft memorandum is completed when rejection is also supported by the Legal Services Department."   *See* Attachment 2.

ADX or Bureau inmate, or Bureau staff member, is not rejected solely on that basis.

18.     When a publication identifies and discusses an ADX or Bureau inmate, or Bureau staff member, I make an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, and how that information may affect institutional security at the ADX.   I also take into account the recommendations by the reviewing CSM/SIS staff and attorney.   I undertake this individualized analysis even if the information contained in the article is publicly available.   The fact that information may be publicly available, or even available to an inmate by means of the prison's Electronic Law Library, does not automatically mean that it is also suitable for introduction into a maximum security institution in the form of an incoming publication that highlights the information.   I rely upon my correctional experience, using sound correctional judgment, in making this individualized determination.

19.     The February 2016 Policy, specifically the incoming publication review procedures, are working well for both ADX inmates and the Bureau.  Because of the positive benefits of the enhanced review procedures, the February 2016 Policy does not specifically include language that incoming publications at the ADX may not be rejected solely because they reference or discuss an ADX or Bureau inmate, or Bureau staff member.   The enhanced review procedures, quarterly training, and layers of final review, obviate the need for this language to be included in the February 2016 Policy.   Having such mandatory language in the February 2016 Policy would likely result in hindering open, frank, and unfettered internal review/discussion amongst CSM/SIS/Legal staff of the suitability of an incoming publication.   Such a blanket statement may thus lead to potentially objectionable incoming publications being received by the

7

ADX inmate population without a thorough review, thus creating safety and security concerns for inmates, staff members, and the public.

20.     The February 2016 Policy, with its enhanced review features, benefits ADX inmates by increasing the likelihood that they will have greater access to more incoming publications.   The current incoming publication review procedures provide an added security benefit as well.   The enhanced review and mandatory training procedures have made ADX staff, specifically CSM/SIS staff and me, more knowledgeable about the correct standards for evaluating incoming publications and more insightful when it comes to detecting genuine security threats—thus increasing the Bureau's ability to protect the safety of inmates, correctional staff, and the public.   To revert to a less-thorough review process would undermine this critical penological interest.

21.     Therefore, while it is impossible for the Bureau to issue a blanket statement that a publication that identifies and discusses an ADX or Bureau inmate, or Bureau staff member, will never be rejected, the ADX will not reject an incoming publication for that reason alone.

Pursuant to the provisions of 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 13th day of February 2017, in Florence, Colorado.


**s/ Jack Fox**
Jack Fox
Warden
ADX Florence, Colorado
Federal Bureau of Prisons


**Enclosures**

Attachment 1, Incoming Publication Rejection Comparisons (2015-2016)

Attachment 2, Quarterly Training Outlines, Attendance Records, and Sample Training Packet

# Attachment 1
# Declaration of Jack Fox

*Prison Legal News v. Federal Bureau of Prisons*,
No. 15-cv-02184-RM-STV

ADX Incoming Publications Rejection Comparisons from 2015 to 2016

| | 2015 | | | 2016 | |
|---|---|---|---|---|---|
| | Content Rejections | Sexually Explicit Rejections | | Content Rejections | Sexually Explicit Rejections |
| February | 4 | 2 | | 1 | 1 |
| March | 9 | 8 | | 1 | 3 |
| April | 12 | 5 | | 4 | 9 |
| May | 4 | 2 | | 0 | 1 |
| June | 5 | 1 | | 1 | 5 |
| July | 10 | 3 | | 4 (1 SAMs) | 3 (2 SAMs) |
| August | 10 | 2 | | 0 | 0 |
| September | 26 | 1 | | 2 | 0 |
| October | 0 | 1 | | 4 (3 SAMs) | 4 |
| November | 1 | 0 | | 2 (1 SAM) | 4 |
| December | 0 | 0 | | 0 | 0 |

# Attachment 2
# Declaration of Jack Fox[1]

*Prison Legal News v. Federal Bureau of Prisons*, No. 15-cv-02184-RM-STV

---

[1] Page numbers have been added to this document for ease of reference.

# ADX Florence – Incoming Publications Rejection Procedures
# February 24, 2016

1.  CSM staff will x-ray and physically search all incoming publications

2.  CSM staff will review incoming publications for potentially objectionable material

3.  If content deemed preliminarily objectionable by CSM staff, incoming publications will be sent to SIS staff for further review

4.  If rejection recommended by SIS staff, draft letter/memo will be prepared for the Warden's signature, detailing specific objectionable pages/content with citations to CFR, national policy, and/or institutional supplement.

5.  Recommended rejection packets, with all of the documents/information in No. 4 above, will be forwarded to Legal Services (attn.: Chris Synsvoll) for review.

    *   **Note:** at any time, an attorney from the Legal Services Department may be consulted by CSM/SIS staff with respect to rejecting incoming publications.  The goal being that the rejection draft letter/memo is completed when rejection is also supported by the Legal Services Department.

6.  If a technical/specialized incoming publication is at issue, consultation with appropriate department head is required (e.g., HVAC incoming publication requires consultation with Facilities Department head)

## Miscellaneous

*   Newspaper/magazine clippings and Internet materials will be limited to 50 pages per incoming general correspondence mailing; if exceed this amount, may be rejected.

**001**

## ADX Florence – Quarterly Incoming Publications
## Training Participants

### February 24, 2016, at 1 p.m.
### ADX Courtroom

| Name (Print) | BOP Number | Title | Signature |
|---|---|---|---|
| CLAY COOK | 00906 | ATTORNEY | *Clay Cook* |
| DANIEL ARMENDARIZ | 10740 | SIS | *signature* |
| M. Santistevan | 45712 | SIS | *signature* |
| J. MUNOZ | 11064 | SIS | *signature* |
| S. O'Donnell | 11187 | R&D | *signature* |
| B Smith | 40133 | SIS | *signature* |
| D. McEvoy | 10252 | DCMC | *signature* |
| B. Winn | 11456 | CBD | *signature* |
| A. Kelly | 45928 | SIS | *signature* |
| D. Payne | 36091 | SIA | *signature* |
| J. Espino | 11407 | SIS TECH | *signature* |
| K. Lewis | 45319 | SZS Sec | *signature* |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**002**

# ADX Florence – Incoming Publications
# Quarterly Training
# July 19, 2016

## Incoming Publications Review Procedures

1.   CSM staff will x-ray and physically search all incoming publications

2.   CSM staff will review incoming publications for potentially objectionable material

3.   If content deemed preliminarily objectionable by CSM staff, incoming publications will be sent to SIS staff for further review

4.   If rejection recommended by SIS staff, draft memorandum will be prepared for the Warden's signature, detailing specific objectionable pages/content with citations to CFR, national policy, and/or institutional supplement.  **USE THE REVISED MEMORANDUM**

5.   Recommended rejection packets, with all of the documents/information in No. 4 above, will be forwarded to Legal Services (attn.: Chris Synsvoll, Supervisory Attorney) for review.

     *   **Note:** at any time, an attorney from the Legal Services Department may be consulted by CSM/SIS staff with respect to rejecting incoming publications.  The goal being that the rejection draft memorandum is completed when rejection is also supported by the Legal Services Department.

6.   If a technical/specialized incoming publication is at issue, consultation with appropriate department head is required (e.g., HVAC incoming publication requires consultation with Facilities Department head)

## 28 C.F.R. § 540.71(e) and Program Statement 5266.11 at pp. 4-5

*   When incoming publication is rejected, sender must receive notification that they may appeal the rejection to the Regional Director.  This is part of the notice completed by CSM staff.  Policy requires the sender to receive a copy of the rejection notice that is provided to the inmate (BP-A0953).  This notice advises the sender of the right to appeal to the Regional Director.

**003**

# ADX Florence – Quarterly Incoming Publications
## Training Participants

### July 19, 2016, at 10 a.m.
### ADX Courtroom

| Name (Print) | BOP Number | Title | Signature |
|---|---|---|---|
| J. Espino | 11407 | SIS TECH | |
| A. Kelley | 45928 | SIS | |
| R. Smith | 40133 | SIS | |
| D. Bilbrey | 46677 | SIS | |
| D. Armendariz | 10740 | SIS | |
| J. Munoz | 11064 | SIS | |
| R. Turner | 11208 | SIS | |
| R. Taillon | 10680 | SIS Lt. | |
| J Wiencek | 49897 | Atty | |
| D. Payne | 36091 | SIA | |
| D. McCoy | 10752 | CMC | |
| S. Donnell | 11186 | C80 | |
| A. Trauth | 11003 | C.S.O. | |
| Clay Cook | 00906 | ATTORNEY | |
| | | | |
| | | | |
| | | | |

**004**

# ADX Florence – Incoming Publications
# Quarterly Training
# September 8, 2016

## Incoming Publications Review Procedures

1.   CSM staff will x-ray and physically search all incoming publications

2.   CSM staff will review incoming publications for potentially objectionable material

3.   If content deemed preliminarily objectionable by CSM staff, incoming publications will be sent to SIS staff for further review

4.   If rejection recommended by SIS staff, draft memorandum will be prepared for the Warden's signature, detailing specific objectionable pages/content with citations to CFR, national policy, and/or institutional supplement.  **USE THE REVISED MEMORANDUM**

5.   Recommended rejection packets, with all of the documents/information in No. 4 above, will be forwarded to Legal Services (attn.: Chris Synsvoll, Supervisory Attorney) for review.

   *   **Note:** at any time, an attorney from the Legal Services Department may be consulted by CSM/SIS staff with respect to rejecting incoming publications.  The goal being that the rejection draft memorandum is completed when rejection is also supported by the Legal Services Department.

6.   If a technical/specialized incoming publication is at issue, consultation with appropriate department head is required (e.g., HVAC incoming publication requires consultation with Facilities Department head)

## 28 C.F.R. § 540.71(e) and Program Statement 5266.11 at pp. 4-5

   *   When incoming publication is rejected, sender must receive notification that they may appeal the rejection to the Regional Director.  This is part of the notice completed by CSM staff.  Policy requires the sender to receive a copy of the rejection notice that is provided to the inmate (BP-A0953).  This notice advises the sender of the right to appeal to the Regional Director.

**005**

## ADX Florence – Quarterly Incoming Publications
## Training Participants

### September 8, 2016, at 9:30 a.m.
### ADX Courtroom

| Name (Print) | BOP Number | Title | Signature |
|---|---|---|---|
| James Wiencek | 49897 | Atty | |
| A. Kelley | 45428 | SIS | |
| D. Payne | 36091 | SIS | |
| D. Armendariz | 10740 | SIS | D. A |
| R. Taillon | 10680 | SIS | |
| J. Espino | 11407 | SIS | |
| D. Bilbrey | 46677 | SIS | |
| H. Oliver | 10676 | SIS | |
| Megan Marlow | 1892 | Atty | |
| Krista Klett | 46862 | Attorney | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

# ADX Florence – Incoming Publications
# Quarterly Training
# November 29, 2016

## <u>Incoming Publications Review Procedures</u>

1.   CSM staff will x-ray and physically search all incoming publications

2.   CSM staff will review incoming publications for potentially objectionable material

3.   If content deemed preliminarily objectionable by CSM staff, incoming publications will be sent to SIS staff for further review

4.   If rejection recommended by SIS staff, draft memorandum will be prepared for the Warden's signature, detailing specific objectionable pages/content with citations to CFR, national policy, and/or institutional supplement.  **USE THE REVISED MEMORANDUM**

5.   Recommended rejection packets, with all of the documents/information in No. 4 above, will be forwarded to Legal Services (attn.: Chris Synsvoll, Supervisory Attorney) for review.

   *   **Note:** at any time, an attorney from the Legal Services Department may be consulted by CSM/SIS staff with respect to rejecting incoming publications.  The goal being that the rejection draft memorandum is completed when rejection is also supported by the Legal Services Department.

6.   If a technical/specialized incoming publication is at issue, consultation with appropriate department head is required (e.g., HVAC incoming publication requires consultation with Facilities Department head)

## <u>28 C.F.R. § 540.71(e) and Program Statement 5266.11 at pp. 4-5</u>

   *   When incoming publication is rejected, sender must receive notification that they may appeal the rejection to the Regional Director.  This is part of the notice completed by CSM staff.  Policy requires the sender to receive a copy of the rejection notice that is provided to the inmate (BP-A0953).  This notice advises the sender of the right to appeal to the Regional Director.

**007**

## ADX Florence – Quarterly Incoming Publications
## Training Participants

### November 29, 2016, at 9:00 a.m.
### ADX Courtroom

| Name (Print) | BOP Number | Title | Signature |
|---|---|---|---|
| JEAN PIERRE Espino | 11407 | SIS TECH | |
| Ryan Taillon | 10680 | SIS Lt. | |
| Kari Lewis | 45319 | SIS Tech | |
| Dale Bilbrey | 46677 | SIS Tech | |
| B. Bragen | 33870 | SIS LT | |
| D. Payne | 36091 | SIA | |
| D. Metsur | 10452 | CCMC | |
| J. Cooser | 10920 | SIS | |
| D. ARMENDARIZ | 10740 | SIS | |
| R. Marques | 39405 | SIS | |
| R. Lopez | 49560 | SIS | |
| L. Synsvo II, Trainer | 10693 | Legal | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**008**

# ADX Florence – Incoming Publications
# Quarterly Training
# February 1, 2017

## Incoming Publications Review Procedures

1. CSM staff will x-ray and physically search all incoming publications

2. CSM staff will review incoming publications for potentially objectionable material

3. If content deemed preliminarily objectionable by CSM staff, incoming publications will be sent to SIS staff for further review

4. If rejection recommended by SIS staff, draft memorandum will be prepared for the Warden's signature, detailing specific objectionable pages/content with citations to CFR, national policy, and/or institutional supplement. **USE THE REVISED MEMORANDUM**

5. Recommended rejection packets, with all of the documents/information in No. 4 above, will be forwarded to Legal Services (attn.: Chris Synsvoll, Supervisory Attorney) for review.

   * **Note:** at any time, an attorney from the Legal Services Department may be consulted by CSM/SIS staff with respect to rejecting incoming publications. The goal being that the rejection draft memorandum is completed when rejection is also supported by the Legal Services Department.

6. If a technical/specialized incoming publication is at issue, consultation with appropriate department head is required (e.g., HVAC incoming publication requires consultation with Facilities Department head)

## 28 C.F.R. § 540.71(e) and Program Statement 5266.11 at pp. 4-5

* When incoming publication is rejected, sender must receive notification that they may appeal the rejection to the Regional Director. This is part of the notice completed by CSM staff. Policy requires the sender to receive a copy of the rejection notice that is provided to the inmate (BP-A0953). This notice advises the sender of the right to appeal to the Regional Director.

**009**

## ADX Florence – Quarterly Incoming Publications
## Training Participants

### February 1, 2017, at 9 a.m.
### ADX Courtroom

| Name (Print) | BOP Number | Title | Signature |
|---|---|---|---|
| Lopez, Riroberto | 49560 | SIS | |
| Hand, Donald | 10556 | CSO | |
| McEtry, D | 101152 | CCMC | |
| SAPP, ADAM | 31073 | SISLT | |
| Taillon, Ryan | 10680 | SIS Lt. | |
| Lewis, Kari | 45319 | S2S | |
| Bilbrey, Dale | 46677 | SIS | |
| ESPINO, JEAN P. | 11407 | SIS | |
| Marquis, Rodney | 39405 | SIS | |
| Riki Turner | 11208 | SIS | |
| D. ARMENDARIZ | 10740 | SIS | |
| A. Kelley | 45928 | SIS | |
| K. Klett | 46862 | Legal | |
| J. Wiencek | 49887 | legal | |
| | | | |
| | | | |
| | | | |

**010**

b. **Program Objectives**.   Expected results of this program are:

- Inmates will be permitted to receive and retain publications that do not threaten the security, good order, or discipline of the institution, or that may facilitate criminal activity, or are otherwise prohibited by law.
- Publications determined detrimental to the security, good order, or discipline of the institution or that may facilitate criminal activity, or are otherwise prohibited by law, will be excluded from Bureau facilities.
- A safer environment for staff and inmates will be provided by strengthening procedures to prevent the introduction of contraband.

c.   **MCC/MDC/FDC/FTC Application.**   Procedures in this Program Statement apply to Metropolitan Correctional Centers, Metropolitan Detention Centers, Federal Detention Centers, and Federal Transportation Centers, all of which are referred to as "administrative institutions" for the purposes of this Program Statement.

2.   **PROCEDURES**

**§ 540.71 Procedures.**

**(a)(1)   At all Bureau institutions, an inmate may receive hardcover publications and newspapers only from the publisher, from a book club, or from a bookstore.**

The sender's address must be clearly identified on the outside of the package.

**(2)   At medium security, high security, and administrative institutions, an inmate may receive softcover publications (for example, paperback books, newspaper clippings, magazines, and other similar items) only from the publisher, from a book club, or from a bookstore.**

**(3)   At minimum security and low security institutions, an inmate may receive softcover publications (other than newspapers) from any source.**

**(4)   The Unit Manager may make an exception to the provisions of paragraphs (a)(1) and (2) of this section if the publication is no longer available from the publisher, book club, or bookstore.   The Unit Manager shall require that the inmate provide written documentation that the publication is no longer available from these sources.   The approval of any request for an exception is to be documented, in writing, on an Authorization to Receive a Package which will be used to secure the item.**

**(b)   The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity.   The Warden may not reject a publication solely because its content is**

religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant.   Publications which may be rejected by a Warden include but are not limited to publications which meet one of the following criteria:

(1)   It depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;

(2)   It depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of Bureau of Prisons institutions;

(3)   It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;

(4)   It is written in code;

(5)   It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;

(6)   It encourages or instructs in the commission of criminal activity;

(7)   It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.

Only the Warden may reject an incoming publication.   In the Warden's absence, only the Acting Warden may perform this function.

Section 3 of this Program Statement contains procedures for returning a publication under the Ensign Amendment.   In Section 3, "sexually explicit" and "nudity" are defined in terms of pictorial depictions only.   Publications not subject to return under Section 3 (for example, material that does not meet a definition in that section) may still be rejected under this section.

To help staff determine which materials may pose the type of threat that warrants exclusion, the following guidelines are provided.

A Warden may determine that sexually explicit material of the following types will be excluded, as potentially detrimental to the security and good order or discipline of the institution, or as facilitating criminal activity:

- Sadomasochistic.
- Bestiality.
- Involving children.

In addition:

P5266.11   11/9/2011   Federal Regulations from 28 CFR: this type.   Implementing instructions: this type.   3

012



**U. S. Department of Justice**
Federal Bureau of Prisons

INSTITUTION SUPPLEMENT

OPI:      Correctional Systems
NUMBER:  FLM 5266.11C
DATE:    February 2, 2016

# Incoming Publications

*/s/*
Approved:   *Jack Fox, Warden*
               ADX Florence

I.    **PURPOSE AND SCOPE:**  This institution supplement is prepared to outline the procedures at the United States Penitentiary, Administrative Maximum (ADX), Florence, Colorado, for implementing Program Statement 5266.11, Incoming Publications.  This institution supplement must be read in conjunction with the program statement for a clear understanding of the policy.

II.   **SUMMARY OF CHANGES:**  To incorporate additional review procedures and training requirements.

III.  **DIRECTIVES AFFECTED:**

    A.   **Directives Rescinded:**  FLM 5266.11B, Incoming Publications, dated December 8, 2014.

    B.   **Directives Referenced:**  Program Statement 5266.11, Incoming Publications, dated November 9, 2011.

    C.   **Standards Referenced:**  American Correctional Association 4th Edition Standards for Adult Correctional Institution:  4-4490

IV.  **PROCEDURES:**

    A.   All incoming inmate publications will be x-rayed by the receiving Correctional Systems Officer prior to entering the facility.  A further physical search will be conducted by the mail room staff.

**B.**    The receiving Correctional Systems Officer will review all incoming publications for potentially objectionable content in accordance with 28 C.F.R. § 540.70 *et seq.*  If content is preliminarily deemed objectionable by the receiving Correctional Systems Officer, the objectionable incoming publication will be forwarded to the Special Investigative Services (SIS) Department for additional review in accordance with 28 C.F.R. § 540.70 et seq.  The SIS Department will review each individual incoming publication and, if rejection is recommended, draft a letter prepared for the Warden's signature.  All recommended rejection letters must notate, in writing, specific objectionable pages and content, as well as the national policy and Code of Federal Regulations citation.

**C.**    Prior to being sent to the Warden for formal action, all recommended rejection packets will be forwarded to the Legal Services Department for review.

**D.**    When a technical or specialized incoming publication is questioned for acceptability, in addition to the above procedures, it will also be forwarded to the department head with knowledge in that field for further review and a recommendation of approval or disapproval.

**E.**    The Mail Room Officer will contact the Administrative Remedy Coordinator and/or review the appeal status in SENTRY before returning any publications, to ensure that the inmate has not filed an appeal.  If an appeal is lodged, the materials will be held until the complete process, including Regional and Central Office appeals, have been exhausted.  Appeal procedures for publications rejected due to its feature of nudity or sexual explicitness vary from other publication rejections and are outlined in the national directive.

**F.**    Inmates involved in approved education courses which require books that must be purchased or obtained on loan from local colleges may arrange to obtain these books through the Supervisor of Education.  When the books arrive, a staff member from the Education Department will complete an appropriate inspection, annotate the authorization form, stamp each book as inmate personal property with the inmate's name, register number, date received and the staff member approving the publication and provide for book delivery to the inmate.

**G.**    Publications will be limited to three publications per parcel.  This includes all publications received from an authorized source.  Any package received that includes a number of publications over the established per mailing limit will result in the entire package being returned to the sender as unauthorized.

**H.**    Publications containing metal or thick plastic bindings will not be permitted and will be rejected by the mail room staff.

**I.**    Inmates are not required, but it is highly recommended, that they consult with unit staff or the Supervisor of Education prior to ordering a publication.

**J.**     To ensure the security, discipline and orderly operation, publications in a language other than English will be subject to translation, review, and verification, which may cause a delay in receipt.  This review is necessary to ensure compliance with the national directive.  Publications which cannot be reasonably translated may be rejected.  Foreign publications must be received directly from the publisher, a bookstore or book club.

**K.**     Inmates will be permitted to receive incoming general correspondence containing newspapers or magazine clippings from non-commercial sources, if after review, it is determined the newspaper or magazine clipping poses no threat to institution security, and the quantity of materials does not adversely affect the ability of mail room staff to effectively monitor incoming general correspondence.  For purposes of this section, incoming general correspondence containing in excess of 50 pages of newspaper or magazine clippings adversely affects the ability of staff to effectively monitor incoming general correspondence.

**L.**     Materials printed directly from the internet will be treated as incoming general correspondence, and inmates will be allowed to receive such materials in quantities which do not adversely affect staff's ability to effectively monitor incoming general correspondence for contraband and other threats to institutional security and good order.  Such materials are subject to rejection for content.  For purposes of this section, incoming general correspondence containing in excess of 50 pages of materials printed directly from the Internet adversely affects the ability of staff to effectively monitor incoming general correspondence.

**M.**     Any publication which includes any markings or notations may be regarded as a possible code and will be considered for rejection.  Examples of this include, but are not limited to folded or tagged pages, underlining, highlighting, or any written comments within the publication.

**N.**     Unit staff should consult with the Mail Room Officer before approving any magazine subscription for purchase by an inmate.  Prohibited materials that have photographs or drawings entirely cut out or removed by the sender, will be authorized, should there be no other prohibited sections.  Attempts to "cover" nude or sexually explicit pictures will not make a publication acceptable for introduction.

**O.**     Hardcover books received in the mail will have the covers removed by mail room staff.  The inmate must indicate on the hardcover book approval form (Attachment 1) that they are voluntarily authorizing the removal of the cover.  Lack of such authorization will cause the entire package to be returned to the sender.

**P.**     Publications which are permitted pursuant only to a Special Administrative Measures (SAM) will be received and processed in accordance with national directives.

**Q.**     The Legal Services Department will conduct quarterly training with Correctional Systems Department and Special Investigative Services Department staff regarding the procedures outlined in Program Statement 5266.11 and this supplement.



**U.S. Department of Justice**

**Federal Bureau of Prisons**

*Federal Correctional Complex*

*Administrative Maximum Security Institution*

*High Security Institution*

*Medium Security Institution*

*Minimum Security Institution*

*Florence, CO 81226*

February 18, 2016

MEMORANDUM FOR    Supervisory Correctional Systems Specialist

FROM:                          _____, Special Investigation Agent

Via: _____/SIS Technician

**SUBJECT:**      **Correspondence Rejection: Doe, John, Reg. No. XXXXX-XXX**

The attached correspondence is submitted for rejection due to the following reasons:

1.  PUBLICATION/CORRESPONDENCE WHICH CONTAINS INFORMATION THAT MAY JEOPARDIZE THE SECURITY OF THE INSTITUTION AND THEREFORE POSES A THREAT:

2.  INMATE TO INMATE CORRESPONDENCE WHICH IS NOT APPROVED:

3.  INMATE TO INMATE VIA A THIRD PARTY:

4.  **CONTAINS POSSIBLE CODES AND THEREFORE A SECURITY THREAT EXISTS:**

5.  CONTAINS MAPS:

6.  CONTAINS DRAWINGS OR PHOTOS OF CELLS, REC. YARDS, PERIMETER FENCE, ETC. (SECURITY THREATS):

7.  FOREIGN LANGUAGE THAT CAN NOT BE TRANSLATED:

8.  OTHER/COMMENTS:



**U.S. Department of Justice**
Federal Bureau of Prisons

*Federal Correctional Complex*
*Administrative Maximum Security Institution*
*High Security Institution*
*Medium Security Institution*
*Minimum Security Institution*

---

*Special Investigative Services Department*                    *Florence, CO 81226*

February XX, 2016

MEMORANDUM FOR TIMOTHY POLAND, SUPERVISORY CORRECTIONAL SYSTEMS
                                SPECIALIST


THRU:                    D. Payne, Special Investigative Agent


THRU:                     Christopher B. Synsvoll, Supervisory Attorney


FROM:                _____, Special Investigative Services Technician

SUBJECT:            Incoming Publications Rejection
                    John Doe, Register No. XXXXX-XXX

The attached incoming publication, (TITLE OF INCOMING PUBLICATION), is recommended
for rejection pursuant to 28 C.F.R. § 540.71(b) and Program Statement 5266.11, Incoming
Publications.   Specifically, the attached incoming publication is recommended for rejection
because it is determined to be detrimental to the security, good order, or discipline of the
institution or it might facilitate criminal activity.   28 C.F.R. § 540.71(b).   Further rationale is
provided below in support of the recommended rejection.   The applicable incoming publications
rejection criterion/criteria are highlighted and annotated below [FOR EACH APPLICABLE
CRITERION, THE ANNOTATION SHOULD INCLUDE THE PAGE NUMBER,
APPLICABLE QUOTES, AND DETAILS ON HOW THE INFORMATION IN THE
INCOMING PUBLICATION VIOLATES THE APPLICABLE CRITERION/CRITERIA OR
HOW IT IS DETRIMENTAL TO ADX SECURITY, GOOD ORDER, AND DISCIPLINE].

1

1.      The incoming publication "depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices" (28 C.F.R. § 540.71(b)(1)).

2.      The incoming publication "depicts, encourages, or describes methods of escape from correctional facilities, or contains blueprints, drawings or similar descriptions of Bureau of      Prisons institutions" (28 C.F.R. § 540.71(b)(2)).

3.      The incoming publication "depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs" (28 C.F.R. § 540.71(b)(3)).

4.      The incoming publication "is written in code" (28 C.F.R. § 540.71(b)(4)).

5.      The incoming publication "depicts, describes or encourages activities which may lead to the use of physical violence or group disruption" (28 C.F.R. § 540.71(b)(5)).

6.      The incoming publication "encourages or instructs in the commission of criminal activity"       (28 C.F.R. § 540.71(b)(6)).

7.      The incoming publication "is sexually explicit material which by its nature or content poses   a threat to the security, good order, or discipline of the institution, of facilitates criminal activity" (28 C.F.R. § 540.71(b)(7)).

2

**018**

BP-A0953          **Notification to Inmate and Publisher/Sender of**
OCT 11                  **Rejected Publication** CDFRM

**U.S. DEPARTMENT OF JUSTICE**                    **FEDERAL BUREAU OF PRISONS**

(TO BE USED WHEN REJECTING A PUBLICATION UNDER SECTION 2.a.-e. OF PS 5266.11)


Inmate:_____

Register Number:_____

Institution:_____

RE:_____    Issue:_____


The above-named publication/material from  [insert publisher/sender name]
has been rejected in accordance with the Bureau's Program Statement **Incoming
Publications**, which provides in part:

        **A publication may be rejected only if it is determined detrimental
        to the security, good order, or discipline of the institution or if
        it might facilitate criminal activity.**


The above-named publication has been rejected because:
[provide reference to the specific article(s) or material(s) considered
objectionable and the reason(s) for the decision to reject].




A copy of this notification has been sent to the publisher/sender, who may obtain
an independent review of this rejection by writing to the Regional Director.
                        [Name and Address]
_____
Inmates may seek review of this determination through the Administrative Remedy
Program within twenty (20) days of receipt of that copy.



_____    _____
Warden                              Date


cc:_____



*PDF*                      Prescribed by PS 5266


**019**

Rejection Comparisons from 2015 to 2016
February to July

| | 2015 | | | 2016 | |
| | Content Rejections | Sexually Explicit Rejections | | Content Rejections | Sexually Explicit Rejections |
|---|---|---|---|---|---|
| February | 4 | 2 | | 1 | 1 |
| March | 9 | 8 | | 1 | 3 |
| April | 12 | 5 | | 4 | 9 |
| May | 4 | 2 | | 0 | 1 |
| June | 5 | 1 | | 1 | 5 |
| July | 10 | 3 | | 2 | 2 |