IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

---

**BUREAU OF PRISONS' APPEAL OF ORDER DENYING MOTION TO STAY DISCOVERY [DOC. 62]**

---

The order denying the BOP's motion to stay non-jurisdictional discovery, *see* Doc. 62 at 27-30, rests on a clear error that is contrary to the established law in the Tenth Circuit. The Tenth Circuit has made clear that, until this Court ensures that subject-matter jurisdiction exists, it can take no other actions in this case. As for discovery specifically, discovery should be limited to only that which is necessary to resolve the jurisdictional question. PLN has had that jurisdictional discovery, but this Court has not made a final decision about subject-matter jurisdiction. Until it does, PLN should not be allowed to pursue additional discovery on issues that go beyond the question of subject-matter jurisdiction. A stay of non-jurisdictional discovery is especially appropriate under the circumstances here, where the anticipated non-jurisdictional discovery must necessarily focus on hypothetical questions unconnected to a concrete dispute between PLN and the BOP.

**A.**     **The BOP's evidence shows that jurisdiction is lacking as to all claims.**

PLN brought this lawsuit because the ADX rejected eleven issues of its magazine between January 2010 and April 2014. *See generally* Doc. 1 ¶¶ 22-36. The reason for those rejections was the former ADX practice of rejecting publications because they mentioned staff or inmate names, even

if those names posed no security concern in and of themselves.  Decl. of ADX Executive Assistant Todd Chapman, Doc. 31-1 ¶¶ 24, 28 (eleven issues rejected because they identified a BOP inmate or staff member); *see also* Decl. of ADX Warden Jack Fox, Doc. 59-1 ¶ 3 (adopting statements of Mr. Chapman).  The BOP's undisputed evidence shows that the ADX has abolished the name-only rejection practice.

The BOP explained that it eliminated that practice by adopting new publication-review procedures that require input from investigative and legal personnel before any publication can be rejected.  Doc. 66 at 2-3; *see also* Doc. 31-1, FLM 5266.11C, *Incoming Publications* ("February 2016 Policy")).[1]  Since the February 2016 Policy was put in place, the ADX no longer rejects publications simply because they mention the name of an inmate or staff member.  Doc. 59-1 ¶ 5; Doc. 66-1 ¶ 1.  And the procedures additionally ensure that *no* publication will be rejected without a legitimate security reason for doing so.  Doc. 31-1 ¶¶ 18, 29; Doc. 59-1 ¶¶ 16, 17; *see also* 28 C.F.R. § 540.71(b) (Warden may reject publication that is "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity").  On the rare occasions when a publication is rejected, the ADX has identified a legitimate security reason for the rejection.  Doc. 66-1 ¶ 3; Doc. 31-1 ¶ 21.  Rejections of incoming publications at the ADX overall have been reduced to a very small number.  Doc. 59-1 ¶¶ 4, 6, 8, 9; Doc. 66-1 ¶¶ 2-3.

In addition to eliminating the practice that prompted PLN to sue the BOP, the BOP has also delivered the previously rejected issues of PLN's magazines to ADX inmate subscribers.  Doc. 66-1 ¶ 4 (magazines delivered to ADX inmates on March 1, 2017).  At this point, the BOP is aware

---

[1] The detailed description of this evidence set forth in the BOP's objections to the Recommendation, Doc. 66 at 2-3, is incorporated herein by reference pursuant to Fed. R. Civ. P. 10(c), as are the BOP's legal arguments demonstrating the jurisdictional defects present in this case. *Id.* at 6-20.

2

of no issue of PLN's magazine that has been withheld at the ADX since January 2010.

**B.     Discovery should not proceed unless and until jurisdiction is confirmed.**

Based on these facts, the BOP has argued that there is no longer a live case or controversy between the BOP and PLN.  While the Magistrate Judge has recommended that the BOP's motion to dismiss be denied, the question of subject-matter jurisdiction has not been settled.  The BOP has filed objections in which it argues that the Court lacks subject-matter jurisdiction over PLN's entire lawsuit, including its procedural-due-process claim.  Doc. 66.  The order erred in finding that non-jurisdictional discovery should proceed before the Court decides the subject-matter jurisdiction question.  The Court cannot take *any* action—including allowing non-jurisdictional discovery—until it determines that it has jurisdiction.

The Tenth Circuit has made clear that the determination of subject-matter jurisdiction is a threshold question of law which must be decided before any aspect of the case can move forward. *Madsen v. U.S. Army Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987) (recognizing that, if a court is deprived of subject-matter jurisdiction, further proceedings are void).  Subject-matter jurisdiction implicates the Court's very "*power* to adjudicate the case." *Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1225 (10th Cir. 2004) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002) (emphasis in original)).  "Simply put, once a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Cunningham v. BHP Petroleum Great Britain PLC*, 427 F.3d 1238, 1245 (10th Cir. 2005) (holding that all of the district court's post-removal orders were void and vacating those orders because the court never had subject-matter jurisdiction) (citation omitted).  The Court cannot make any assumptions about jurisdiction, but must decide the matter before it can take any other action in the case. *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 544 n.5 (10th Cir. 2016) (vacating trial's court's judgment where the court had made "generous

assumptions" about standing: "[A] ruling that assumes the plaintiffs' standing—and by extension assumes the district court's jurisdiction—is necessarily incomplete. In fact, if the district court's assumptions were wrong, that 'complete' ruling is no ruling at all."); *see also, e.g., Brown v. Francis*, 75 F.3d 860, 866 (1996) ("A court may not . . . exercise authority over a case for which it does not have subject matter jurisdiction.").

Unresolved questions about subject-matter jurisdiction affect the extent to which discovery should be allowed. The Tenth Circuit has limited discovery to the jurisdictional issue until the question is decided. *See, e.g., Sizova v. Nat. Institute of Standards & Technology*, 282 F.3d 1320, 1325 (10th Cir. 2002) ("When a defendant moves to dismiss for lack of jurisdiction, either party should be allowed discovery on the factual issues *raised by that motion*.") (emphasis added) (quotation omitted). PLN had the opportunity to conduct such jurisdictional discovery here. *See* Doc. 37 at 3 (noting the parties' agreement to allow PLN to conduct jurisdictional discovery "to allow PLN to respond to the BOP's Motion to Dismiss"). The Court should not allow non-jurisdictional discovery—or take any other action—until it verifies that it has subject-matter jurisdiction, *i.e.*, the *power* to act in this case.

That principal is reflected in numerous orders issued by this Court. When the defense of lack of subject-matter jurisdiction has been raised as to all claims, this Court frequently has stayed discovery until that fully dispositive motion is resolved. *See, e.g., Harper v. Receivables Performance Mgmt., LLC*, 12-CV-02443-PAB-KMT, 2013 WL 589184, *2 (D. Colo. Feb. 14, 2013) (finding that any prejudice to plaintiff in proceeding with discovery was "outweighed by the burden on the Defendant going forward with discovery while a Motion for Clarification regarding subject matter jurisdiction is pending"); *Sandoval v. United States*, No. 11-cv-01533-REB-KLM, 2011 WL 3682768, *3 (D. Colo. Aug. 23, 2011) (weighing factors in *String Cheese Incident, LLC v. Stylus Shows, Inc.*, No.

4

02-cv-01934-LTB-PA, 2006 WL 894955, *2 (D. Colo. Mar. 30, 2006), and concluding that a stay of discovery was appropriate "in light of the law favoring a stay of discovery when sovereign immunity and subject matter jurisdiction are at issue");[2] *cf. Breckenridge v. Vargo*, No. 16-cv-011176-WJM-MEH, 2016 WL 7015702, *2 (D. Colo. Nov. 28, 2016) (denying motion to stay where "Defendant's motion to dismiss does *not* challenge the Court's jurisdiction") (emphasis added).

The Court should stay discovery here, too. The Magistrate Judge analyzed the motion to stay based on the BOP's motion to dismiss, which challenged subject-matter jurisdiction only as to PLN's First Amendment claim. The Magistrate Judge was not able to assess the additional subject-matter jurisdiction arguments in the BOP's objections, including the argument that PLN's due-process claim also should be dismissed for lack of subject-matter jurisdiction. These expanded subject-matter jurisdiction arguments strengthen the case for staying discovery because the entire case must be dismissed if the Court does not have jurisdiction over any claim.

---

[2] *Accord, e.g., United Food & Commercial Workers Int'l Union, Local No. 7 v. King Soopers, Inc.*, No. 13-cv-02335-RM-KMT, 2014 WL 2536489, *1 (D. Colo. June 5, 2014) ("Courts have routinely recognized that discovery may be inappropriate where the court's jurisdiction is at issue.") (citations omitted); *Castro v. Holmberg*, 14-cv-00791-LTB-KMT, 2014 WL 4122175, *2 (D. Colo. Aug. 21, 2014) ("Turning to the *String Cheese Incident* factors, the court acknowledges that Plaintiff has an interest in proceeding expeditiously with this case. However, the court finds that this interest is overcome by the burden Defendants might face if they were forced to proceed with discovery only to have the case dismissed for lack of subject matter jurisdiction."); *Stine v. Fetterhoff*, No. 07-cv-02203-WYD-KLM, 2008 WL 1924978, *1 (D. Colo. Apr. 30, 2008) ("Courts have routinely recognized that discovery is inappropriate while jurisdictional questions are being resolved.") (citations omitted); *Maynard v. Colorado Supreme Court Office of Attorney Regulation Counsel*, No. 09-cv-02052-WYD-KMT, 2010 WL 231555, *2 (D. Colo. Jan. 13, 2010) ("In weighing the factors for determination of the propriety of a stay, the Court finds that a stay is appropriate here. It is in both parties' interests to determine if this court has subject matter jurisdiction before engaging in expensive discovery.").

### C.     The Court cannot assume that subject-matter jurisdiction exists.

The order's analysis of the *String Cheese* factors, Doc. 62 at 27-30, assumes that the Court has the power to order the BOP to act in this case. But that is an assumption the Court should not make. *See Colo. Outfitters*, 823 F.3d at 549 ("the district court erred in making assumptions about [plaintiff's] standing in order to reach the merits of the plaintiff's claims"). Rather, the Court should evaluate the BOP's evidence and make a final decision about jurisdiction before taking any further action in this case, including ordering non-jurisdictional discovery.

Because the Court has not yet resolved the subject-matter jurisdiction question, the *String Cheese* balancing test does not overcome any defects in jurisdiction or confer power on the Court to adjudicate this case. *See Gad v. Kan. State Univ.*, 787 F.3d 1032, 1035 (10th Cir. 2015) ("Our subject-matter jurisdiction is a constitutional prerequisite to hearing a case and 'because it involves a court's power to hear a case, can never be forfeited or waived.'") (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)). In this context where the question of jurisdiction is pending, each of the *String Cheese* factors favors the BOP.

As for the first and second *String Cheese* factors, prejudice to PLN and the burden on the BOP, PLN's interest "in proceeding expeditiously . . . is overcome by the burden [the BOP] might face if it were forced to proceed with discovery only to have the case dismissed for lack of subject matter jurisdiction." *Castro*, 2014 WL 4122175, *2. The record here shows that any past harm associated with the rejection of PLN's magazine has been rectified by the delivery of the magazines and that PLN faces no certainly impending threat of having its magazine rejected at the ADX again—either for the name-alone practice that prompted the rejections of the eleven issues in the past or for the abstract reasons on which the Recommendation focused. *See Clapper v. Amnesty International USA*, 133 S. Ct. 1138, 1147 (2013); *see also* Doc. 62 at 12-13, 16. By contrast, the BOP

6

*will* be harmed if it is forced to engage in unnecessary discovery about hypothetical claims for which this Court lacks subject-matter jurisdiction.

As for *String Cheese* factor number three, the Court's convenience, if the Court lacks subject-matter jurisdiction, it should not be forced to deal with discovery at all—nor does it have the authority to issue any orders concerning discovery. Finally, as to factors four and five, nonparties and the public have no right to press the Court to resolve any claim for which subject-matter jurisdiction is lacking.

In short, the Court should not let discovery proceed until it confirms that the "constitutional prerequisite" of subject-matter jurisdiction is satisfied. *See*, *e.g.*, *Sandoval*, 2011 WL 3682768, *3 (weighing *String Cheese* factors and concluding that, "when sovereign immunity and subject matter jurisdiction are at issue, the Court concludes that a stay of discovery is appropriate, pending the District Court's adjudication of Defendant's motion to dismiss").

**D.     Non-jurisdictional discovery is improper because it will focus on questions unrelated to any actual dispute between the parties.**

The BOP's evidence unequivocally established that PLN's magazines were rejected in the past because of the now-abolished name-alone practice. Had it not been for this past practice, the magazines would never have been rejected and PLN would have had no cause to sue the BOP. The BOP has now delivered complete copies of the rejected magazines to ADX inmates. And the possibility that PLN's magazine will ever be rejected again at the ADX is highly speculative.

PLN already obtained discovery about these jurisdictional facts. Non-jurisdictional discovery will necessarily delve into topics that bear no relation to the actual reasons for rejecting PLN's magazine because there is no remaining dispute about those rejections. At this point, the nature of the dispute to be litigated is abstract and unclear. *See* Doc. 66 at 13-20. And because there

is no live dispute between PLN and the BOP, PLN must seek discovery about purely hypothetical scenarios. Such discovery will be difficult to cabin and difficult for the BOP to address. The Court should not allow discovery that is untethered to any actual dispute between the parties to this case.

**E.     Conclusion**

The Court should reverse the order denying the BOP's motion to stay discovery and stay discovery until it determines that subject-matter jurisdiction exists.

                                          ROBERT C. TROYER
                                          Acting United States Attorney

                                          s/ *Susan Prose*
                                          Susan Prose
                                          Assistant United States Attorney
                                          1801 California Street, Suite 1600
                                          Denver, Colorado 80202
                                          Tel.: (303) 454-0100
                                          Fax: (303) 454-0404
                                          E-mail: susan.prose@usdoj.gov

                                          Counsel for the Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

  I hereby certify that on March 16, 2017, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

  Steven Zansberg
  Lance Weber
  Sabarish Neelakanta
  Peter Swanson
  Matthew Shapanka
  Elliot Mincberg
  David Shapiro
  Stephen Kiehl

           s/ *Susan Prose*
           Susan Prose
           United States Attorney's Office