IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

## BUREAU OF PRISONS' MOTION
## FOR ENTRY OF A PROTECTIVE ORDER PURSUANT TO FED. R. CIV. P. 26(c)
## AND TO VACATE THE SCHEDULING CONFERENCE

The BOP respectfully requests that the Court enter a protective order that prohibits PLN from seeking the specific merits government discussed in this motion and further detailed in the attached exhibit. The Court should not allow discovery on non-jurisdictional matters until the Court issues a final order on the BOP's motion to dismiss this case for lack of subject-matter jurisdiction. Related to this request, the BOP further asks that the Court vacate the Scheduling Conference, currently set for April 10, 2017, and all related deadlines. The factual and legal bases supporting these requests are detailed in the BOP's objections to the Recommendation issued by the United States Magistrate Judge, Doc. 66, and the BOP's appeal of the order denying its motion to stay discovery. Doc. 67.[1]

Pursuant to Fed. R. Civ. P. 26(c), the BOP certifies that it has in good faith conferred with PLN in an effort to resolve this matter without court action. However, the parties have different

---

[1] The BOP respectfully incorporates those filings by reference and summarizes its factual and legal arguments in this motion. *See* Fed. R. Civ. P. 10(c).

views of the issue and were unable to reach a compromise.  PLN opposes the relief requested here.

**I.     There is a pending motion to dismiss for lack of subject-matter jurisdiction and a pending appeal of the Magistrate Judge's order denying the BOP's motion to stay discovery.**

As a brief background, PLN brought this case after the ADX rejected eleven issues of *Prison Legal News* between January 2010 and April 2014.  At the time PLN filed this case in 2015, the ADX had a practice of rejecting publications because they mentioned staff or inmate names, even if those names, in and of themselves, posed no security concern.  That practice was the reason the eleven issues of PLN's magazine were rejected in the past and the reason PLN filed this lawsuit.

The BOP decided to change this practice.  It did that in February 2016 by making official policy changes at the ADX that eliminated the former name-alone rejection practice and that further ensure that no publication—from any publisher—is rejected without a legitimate security reason for doing so.  *See* 28 C.F.R. § 540.71(b) (Warden may reject a publication upon determining that its content is "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity").

In completely reworking its publication-review process, the ADX has taken on significant new burdens, including mandating a review by security personnel and attorneys who would not otherwise be required to review publications and requiring quarterly training for all personnel involved in the review process.  As a result of these enhanced review procedures and mandatory training, the ADX has reduced the total number of rejected publications to a tiny fraction of the incoming publications received.  Importantly, no issue of *Prison Legal News* has been rejected since April 2014, and all of the previously rejected issues have been returned to ADX inmates.  In other words, ADX inmates have received *every* issue of *Prison Legal News* from April 2010 to the present.

After officially changing its publication-review procedures at the ADX, the BOP filed a

motion to dismiss.  Doc. 31.  It argued that PLN's claims were both constitutionally and prudentially moot.  On February 23, 2017, the Magistrate Judge issued a recommendation to deny the BOP's motion to dismiss.  Doc. 62.  The Magistrate Judge recommended that the Court find that PLN's First Amendment claim was not moot based on the possibility that the Court still might resolve certain abstract disputes.  *Id.* at 12-16.  Those abstract legal disputes—such as whether the law would prevent the ADX from rejecting a publication whenever the objectionable material is "public" information—are not related to any dispute about the previously rejected issues of PLN's magazines or the changes to the ADX publication-review procedures.  *See* Doc. 66 at 13-17.

The BOP filed objections to the Recommendation on March 16, 2017, arguing that the Court lacks subject-matter jurisdiction over PLN's case in its entirety.  *Id.*  The BOP concurrently appealed the order denying its motion to stay discovery, Doc. 62 at 26-30, explaining that discovery should not proceed until the Court determines that it has subject-matter jurisdiction.  Doc. 67 at 3-8.  These very recently filed objections and appeal are pending.

## II. There is good cause for a protective order because the Court should not allow broad merits discovery until it confirms that it has subject-matter jurisdiction.

The BOP cooperated with PLN by providing extensive jurisdictional discovery related to the issues raised in the BOP's motion to dismiss.  *See* Doc. 37 at 3 (noting the parties' agreement to engage in jurisdictional discovery).  The BOP does *not* seek to be protected from continuing to update its responses to PLN's jurisdictional discovery, if there is new responsive information.

The protective order the BOP seeks here is limited to PLN's pending requests **for non-jurisdictional discovery only**.  On February 27, 2017, before the BOP's deadline to file objections to the Recommendation and to appeal the order denying the motion to stay, PLN notified the BOP that it expects responses to non-jurisdictional interrogatories and requests for production by March

3

27, 2017. *See* Ex. 1 (letter from PLN's counsel, interrogatories, and requests for production).

There is good cause for the Court to exercise its broad discretion to protect the BOP from having to respond to this merits discovery until the question of subject-matter jurisdiction is resolved. Fed. R. Civ. P. 26(c)(1)(A) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery[.]"); *see also*, *e.g.*, *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-36 (1984) (recognizing that "[t]he unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders," and that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required"). The BOP has completely reworked the publication-review procedures at the ADX to address the issue that PLN highlighted in this lawsuit, committing extensive resources to the task. The uncontradicted evidence shows that these efforts have yielded benefits for inmates, publishers, the public, and the prison. *See* Doc. 59-1 at ¶ 20 (ADX Warden's testimony concerning the benefits of the review procedures, including "increasing the Bureau's ability to protect the safety of inmates, correctional staff, and the public. To revert to a less-thorough review process would undermine this critical penological interest."). What's more, the unrefuted evidence shows that PLN faces no imminent threat that its publication will be rejected at the ADX without a legitimate security reason for doing so.

Notwithstanding this evidence, PLN wants detailed discovery on a wide range of topics, including ADX "security measures"; the processing of "mail" generally (not just incoming publications) at the ADX; and myriad ADX policies, including policies about ADX "security and safety measures." *See generally* Ex. 1. For many of the requests, the timeframe for which PLN seeks responsive information is more than twelve years—since January 1, 2005. *See id.*

4

The BOP should not have to respond to this broad merits discovery from PLN until the Court decides whether this lawsuit has been rendered moot by the BOP's extensive, good-faith efforts to improve the publication-review procedures at the ADX.  *See* Doc. 67 at 3-9 (discussing cases staying discovery until a motion to dismiss for lack of subject-matter jurisdiction is resolved, and analyzing the *String Cheese* factors in light of a pending, fully dispositive jurisdictional motion); *see also Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210-11 (10th Cir. 2012) (observing, in finding that a claim was rendered prudentially moot by a national recall of vehicles pursuant to federal statute, that "the remedial commitments of the coordinate branches of the United States government bear special gravity").

In sum, the Court should not allow non-jurisdictional discovery, or take any other action, until it verifies that it has the power to act in this case.  *See, e.g., United States v. Cotton*, 535 U.S. 625, 630 (2002) (subject-matter jurisdictions implicates the court's "*power* to adjudicate the case") (emphasis in original).  It is a proper exercise of this Court's broad discretion to enter a protective order which states that the BOP is not required to respond to the pending discovery requests detailed in Exhibit 1.

**III.    The Court should vacate the Scheduling Conference until jurisdiction is confirmed.**

For the same reasons, the BOP respectfully requests that the Court vacate the Scheduling Conference currently set for April 10, 2017, at 9 a.m., *see* Doc. 62 at 30, and all related deadlines. The focus of any proposed Scheduling Order will necessarily be on establishing a discovery schedule for merits discovery.  The BOP should not be compelled to engage in merits discovery until the Court is certain that it has subject-matter jurisdiction to resolve this case.  *Colo. Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543, 544 n.5 (10th Cir. 2016) (vacating trial court's judgment where the court had erroneously made "generous assumptions" about jurisdiction).

5

As the BOP explained in its objections and its appeal of the order denying the motion to stay discovery, what remains in the case at this point is PLN's desire to resolve general, abstract legal questions that are not tied to any specific ongoing case or controversy. There should be no Scheduling Conference until this Court determines whether or not it has subject-matter jurisdiction to resolve those abstract legal issues.

Respectfully submitted on March 20, 2017.

> ROBERT C. TROYER
> Acting United States Attorney
>
> s/ *Susan Prose*
> Susan Prose
> Assistant United States Attorney
> 1801 California Street, Suite 1600
> Denver, Colorado 80202
> Tel.: (303) 454-0100
> Fax: (303) 454-0404
> E-mail: susan.prose@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on March 20, 2017, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

    Steven Zansberg
    Lance Weber
    Sabarish Neelakanta
    Peter Swanson
    Matthew Shapanka
    Elliot Mincberg
    David Shapiro
    Stephen Kiehl

                                      s/ *Susan Prose*
                                      Susan Prose
                                      United States Attorney's Office