# Exhibit 1

**Discovery Requests for which a Protective Order Is Sought**

*Prison Legal News v. Federal Bureau of Prisons*,
No. 15-cv-02184-RM-STV

# COVINGTON

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Stephen Kiehl

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 5872
skiehl@cov.com

**By Email**                                    February 27, 2017

Susan Prose
Assistant United States Attorney
United States Attorney's Office for the District of Colorado
1225 Seventeenth St., Suite 700
Denver, CO 80202
susan.prose@usdoj.gov

> **Re:   Prison Legal News v. Federal Bureau of Prisons, No. 1:15-cv-02184-RM-STV (D. Colo.)**

Dear Susan:

I write in regard to discovery in the above-captioned case. As you know, Prison Legal News ("PLN") served discovery requests on August 4, 2016, and the Bureau of Prisons ("BOP") moved to stay discovery on August 5, 2016 (Doc. 34). We subsequently agreed to limited jurisdictional discovery so that PLN would be able to appropriately respond to BOP's motion to dismiss.

On February 23, 2017, the Magistrate Judge recommended denial of BOP's motion to dismiss. The Magistrate Judge also denied BOP's motion to stay discovery and ordered discovery to go forward notwithstanding any objections BOP may assert with respect to the Magistrate's recommendation on the motion to dismiss. (Doc. 62, at 26–29.) In light of this ruling, PLN requests that BOP respond to PLN's discovery requests no later than March 27, 2017, which is 30 days from the date of the Magistrate Judge's order.

For clarity, the written discovery requests to which BOP has not provided responses are:

- Request for Production Nos. 2, 3, 7, 8, 9, 13, 14, 15, 16, 17, 18, 19, 20, 23, 24 and 25

- Interrogatory Nos. 4, 5, 6, 8, 9, 10, 12, 14, 16.

To the extent BOP withheld documents or information responsive to any of the other RFPs or interrogatories on the ground that the documents or information was not relevant to jurisdictional discovery, we request that you withdraw the objection and provide those documents or information. Further, in regards to RFP No. 22, we request that BOP produce rejection notices and packets for publications rejected since BOP's last production of the same. Please also confirm that all responsive documents to RFP No. 10 have been produced.

**COVINGTON**

Susan Prose
February 27, 2017
Page 2


Please promptly confirm that BOP will provide responses to these requests by March 27. Otherwise, please let us know your availability for a meet-and-confer this week.

Sincerely,

Stephen Kiehl

cc:     Steven D. Zansberg

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**Civil Action No.: 1:15-cv-02184-RM**

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,
    Plaintiff,

             v.

FEDERAL BUREAU OF PRISONS,
    Defendant.
_____

**PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT**
**FEDERAL BUREAU OF PRISONS**
_____

      Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure and Local Civil

Rules, Plaintiff Prison Legal News ("Plaintiff" or "PLN"), by its undersigned attorneys, serves

this First Set of Interrogatories (the "Interrogatories") upon Defendant Federal Bureau of

Prisons.  Defendant must serve its answers and objections to these Interrogatories in writing,

under oath, and within thirty (30) days of service of the Interrogatories.  Defendant's answers

and objections should be provided to Stephen W. Kiehl at the offices of Covington & Burling

LLP, One CityCenter, 850 Tenth Street NW, Washington, D.C. 20001.

      The Interrogatories shall be deemed continuing, and if Defendant or its counsel discovers,

between the time answers to the Interrogatories are made and the time of trial, additional

information as to matters inquired of in the Interrogatories, supplemental or amended answers

must be made at the earliest practicable date informing counsel for Plaintiff of such information.

<u>**DEFINITIONS**</u>

      1.    **"ADX"** refers to United States Penitentiary, Administrative Maximum

Facility at Florence, Colorado and any facility operated by or on behalf of the Federal Bureau of

Prisons that provides support or services to personnel or prisoners at the United States Penitentiary, Administrative Maximum Facility at Florence, Colorado on a temporary or ongoing basis.

2.      **"ADX Staff"** refers to any officer, employee, agent, representative, consultant, volunteer, contractor, attorney, or servant of BOP whose appointment, employment, duty, assignment, or service, whether past, present, or future, occurred at ADX; whose job responsibilities at any point in time involved supervision of ADX officers, employees, agents, representatives, consultants, volunteers, contractors, attorneys, or servants; or whose job responsibilities included the provision of services to ADX.

3.      The terms and phrases **"concerning"** or **"relating to"** mean constituting, comprising, consisting of, containing, evincing, setting forth, proposing, showing, disclosing, describing, discussing, mentioning, explaining, summarizing, dealing with, identifying, analyzing, demonstrating, addressing, involving, containing, regarding, affecting, reflecting, pertaining to, or touching upon, in whole or in part, the subject matter of the relevant Interrogatory, or being in any way legally, logically, or factually connected with the subject matter of the relevant Interrogatory.

4.      The terms **"Defendant," "BOP," "you,"** and **"your"** refer to both BOP in its institutional capacity and all ADX Staff as described above in Definition 2.

5.      The terms **"document," "record,"** and **"material"** are used herein in the broadest sense permitted by Rule 34 of the Federal Rules of Civil Procedure and include any graphic or written matter, however produced or reproduced, of any kind or description, including but not limited to the following: writings, files, contracts, agreements, notes, memoranda, telegrams, reports, records, schedules, correspondence, telex messages, cables, transcripts,

minutes of telephone conversations, letters, drafts, diaries, invoices, purchase orders,

requisitions, meeting minutes, appraisals, manuals, forms, written statements, recorded

interviews, audiotapes, videotapes, sound recordings, maps, photographs, moving or still

pictures, diagrams, plans, drawings, specifications, measurements, electronic mail messages,

computer discs, software, tapes, printouts, all records kept by electronic, photographic, or

mechanical means, stored electronic data on any medium, and items similar to any of the

foregoing.  A draft or non-identical copy, or an identical copy that is stored in a separate file or

location or held by a different custodian, is a separate document within the meaning of these

terms.  If copies, reproductions, or facsimiles of a document are non-identical by reason of

handwritten notations, initials, signatures, stamps, identification marks, or other modification,

each such non-identical copy is a separate document within the meaning of this definition.

6.      The terms **"officers," "employees,"** and **"agents"** refer to current and

former officers, employees, and agents.

7.      **"Plaintiff"** or **"PLN"** means Plaintiff Prison Legal News and its parent

entity, the Human Rights Defense Center ("HRDC").

8.      The term **"prisoner"** includes any individual incarcerated at ADX at any

point in time, regardless of pre-trial status, post-conviction status, or any other status or

classification.

9.      **"Policy"** means a policy, post order, standard course of action, procedure,

process, practice, regulation, guideline, manual, directive, rule, order, agreement, or training

manual, whether written or unwritten, formal or informal, nationwide, or specific to a single

prison complex or specific institution.

10.     The term **"publication"** refers to a book, magazine, periodical, article, newspaper, study, report, or printed literature of any nature.

## INSTRUCTIONS

1.     In answering the Interrogatories, please provide all information that is (a) within your knowledge; (b) contained in documents within your possession, custody, or control; or (c) available after a reasonable investigation.  A document is in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) can, as a practical matter, use, inspect, examine, or copy such document when you seek to do so.

2.     If you cannot answer an Interrogatory in full or in part after conducting a reasonable investigation, you should state the efforts you have made to obtain the unknown requested information.

3.     For any information no longer in existence or which cannot be located, identify the information, state how and when it passed out of existence or could no longer be produced and the reasons therefore, and identify each person or entity having knowledge relating to the disposition or loss of the information.

4.     Each Interrogatory shall operate and be construed independently.  No Interrogatory shall limit the scope of any other Interrogatory.

5.     In these Interrogatories, the singular of any word is meant to also include the plural of that word, and vice versa, and the masculine gender shall be deemed to include the feminine, and vice versa.

4

6.      Notwithstanding any definition below or above, each word, term, or phrase used in these Interrogatories is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

7.      The terms **"and," "or,"** and **"and/or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Interrogatory the greatest possible responsive information, and the terms "each," "any," and "all" shall mean "each and every."

8.      The term **"identify"** or **"identity":** (i) when used in reference to a natural person, require you to provide the person's full name, job title, rank, department, current or last known home and business addresses, date of birth, Social Security Number, date of hire, and, where applicable, date of termination of employment; (ii) when used in reference to a prisoner, require you to provide the full name and inmate number of the prisoner, and the dates during which the prisoner was incarcerated at ADX; (iii) when used in reference to communications, require you to provide the date and location of each communication, the identity of each participant in the communication, the nature and content of the communication, and the identity of any documents that concern the communication; (iv) when used in reference to any book, magazine, article, newspaper, study, or publication of any nature, require you to provide all of the following that apply: the title, publication date, author, publisher, and web address (URL); and (v) when used in reference to an instance, event, or action, require you to provide the date of the event or action, describe in detail the nature of the instance, event, or action, and to identify any individual persons (including both ADX Staff and prisoners), documents, communications, or judicial proceedings relating to the instance, event, or action.

9.      The term **"including"** means "including, but not limited to," and shall not be construed to limit a request.

10.     If any statement, communication, document, or information in any way responsive to these Interrogatories is withheld under any claim or assertion of the attorney-client privilege, the attorney work-product doctrine, or any other privilege, doctrine, or other valid ground for objection, you shall state the following in writing with regard to each statement, communication, document, or information:

a)  The name of the person or party writing, authoring, preparing, or otherwise responsible for the existence of the statement, communication, document, or information;

b)  The names and addresses of persons identified or referenced in the statement, communication, document, or information, as well as any other persons who heard, heard of, or received the statement, communication, document, or information;

c)  The date of the statement, communication, document, or information;

d)  A sufficient description of the subject matter in the statement, communication, document, or information to allow the court to rule upon the asserted privilege, doctrine, or other valid ground for objection;

e)  The precise privilege, doctrine, or other valid ground for objection asserted; and

f)  The name and address of the person or party having present custody or control of the statement, communication, document, or information.

11.     To the extent that you consider any of the following Interrogatories to be objectionable, answer that portion of the Interrogatory to which you have no objection and

separately identify the portion of the Interrogatory to which you lodge an objection, stating the specific grounds for your objection.

12.     If you encounter any ambiguity construing an Interrogatory, Definition, or Instruction herein, you shall make best efforts to interpret the Interrogatory, Definition, or Instruction within the context of this litigation and shall set forth the matter deemed ambiguous, and the construction or interpretation chosen or used in responding to the Interrogatory.

13.     If Defendant seeks to identify and produce business records in response to any interrogatory, the identification shall be in sufficient detail to permit Plaintiff to readily locate and identify the business records from which the answer may be ascertained.

14.     Where any portion of an answer is based upon information and belief, rather than upon actual knowledge, the answer should so state and specifically identify the source or sources of such information and belief.

15.     In the event that Defendant states it is unable to answer to any interrogatory due to a lack of information, the answer should explain in detail who, if anyone, would know the answer to that interrogatory, where the answer to that interrogatory might be found, and all efforts made by Defendant to obtain the answer to that interrogatory.

16.     The answers to these interrogatories shall be verified under oath, and any objections shall be signed by the attorney(s) making them.

**<u>INTERROGATORIES</u>**

**INTERROGATORY NO. 1**

Identify each mailing sent from PLN, including issues of *Prison Legal News*, to a prisoner at the ADX that any ADX or other BOP officer, employee, agent, representative, or servant decided not to deliver to the prisoner at any point in the mail review or publication

review process (whether or not such decision was later overturned) from January 1, 2005 to the present.

**INTERROGATORY NO. 2**

To the extent you contend that the rejection of any mailing identified in response to Interrogatory No. 1 was lawful, describe with specificity, for each such mailing, the complete factual and legal basis for your contention, including a detailed description of any alleged security risks posed by the mailing.

**INTERROGATORY NO. 3**

Identify any notices of rejection sent to PLN between January 1, 2005 and the present, including the dates on which such notices were mailed.

**INTERROGATORY NO. 4**

Identify all television programs, movies or motion pictures, Internet websites, newspapers, magazines, or other periodical subscriptions, books, publications, or any other media which ADX prisoners may receive, view, or otherwise access by means other than through the mail.  Your response should include any media, publications, or information available through the ADX library, and the circumstances under which prisoners may access such media, including their use of the ADX library.

**INTERROGATORY NO. 5**

Describe the process, procedure, or manner by which the media, publications, and information identified in your response to Interrogatory No. 4 are reviewed by ADX Staff before they are received, viewed, or otherwise accessed by ADX prisoners.

**INTERROGATORY NO. 6**

Describe with specificity any and all security measures taken at ADX to regulate the movement, behavior, and activities undertaken by prisoners at ADX, including:  ratios of corrections officers to inmates; design of prisoners' cells; limitations on movement of prisoners; procedures for moving prisoners between cells or between their cell and any other areas of the prison; procedures by which prisoners receive mail, meals, and personal items within their cells; the amount of time spent by prisoners outside of their cells; the circumstances under which prisoners are removed from their cells; the circumstances under which prisoners might interact with one another, and the security procedures undertaken to ensure prisoner and ADX Staff safety during such interactions; and policies and practices intended to prevent access to contraband.

**INTERROGATORY NO. 7**

Describe with specificity the procedure, process, or manner by which the decision to reject a publication is made, both under the policy in effect prior to the effective date of Institutional Supplement No. FLM 5266.11C: Incoming Publications (effective Feb. 2, 2016) ("February 2016 Revision"), and under the February 2016 revision, including the specific factors

or criteria considered in making a rejection decision and the timeframe for making such a decision.

**INTERROGATORY NO. 8**

Identify all ADX Staff whose duties at any point since January 1, 2005 through the present have included inspecting, processing, or reviewing incoming mail addressed to prisoners at ADX, or whose duties have included deciding whether or not to deliver such mail to the addressee at any stage of the initial mail review process or at any level of appeal, including for both the prisoner Administrative Review Procedure and the appellate review afforded to publishers and other senders of mail, and, for each such person, state the dates during which his or her duties have included handling or processing incoming mail addressed to prisoners and/or deciding whether certain pieces of mail should be delivered to prisoners and describe his or her duties during each time period.

**INTERROGATORY NO. 9**

Identify all publications, from any sender, that have been censored since October 1, 2015.

**INTERROGATORY NO. 10**

Describe with specificity the procedure for appeal of a decision to reject a publication, including the specific factors considered in deciding such an appeal, and any BOP personnel involved in such decision.

**INTERROGATORY NO. 11**

Identify any changes made to the ADX incoming publications institutional supplement or any other ADX policy between January 1, 2005 and the present, including Institutional Supplement No. FLM 5266.11C: Incoming Publications (effective Feb. 2, 2016), and any ADX Staff who proposed, drafted, edited, commented on or otherwise participated in the making of such changes, and describe with specificity the rationale for any such changes.

**INTERROGATORY NO. 12**

Describe with particularity all actions taken by ADX Staff to inform or train other ADX Staff about the recent revisions to Institution Supplement No. FLM 5266.11C (effective March 4, 2016) and identify all ADX Staff who were responsible for informing and training other staff.

**INTERROGATORY NO. 13**

Identify all lawsuits or other legal proceedings filed in any federal court from January 1, 2005 to the present that included claims or allegations concerning the delivery (or non-delivery) of mail to or from prisoners at ADX.

**INTERROGATORY NO. 14**

Identify all mail received between January 1, 2005 and the present for which ADX Staff have redacted material rather than rejected the entire publication outright, and describe with specificity the reason(s) or rationale(s) for such redaction, including the reasons for redacting rather than rejecting the material deemed objectionable.

**INTERROGATORY NO. 15**

Identify all wardens of ADX from January 1, 2005 to the present.

**INTERROGATORY NO. 16**

Identify each person who supplied information contained in or relied upon in your answers to these Interrogatories.

DATED: August 4, 2016

s/ Steven D. Zansberg

Lance Weber
Sabarish Neelakanta
Human Rights Defense Center
PO Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Email:
lweber@humanrightsdefensecenter.org
sneelakanta@humanrightsdefensecenter.org

*Of Counsel:*

Elliot Mincberg
Washington Lawyers' Committee for Civil
Rights & Urban Affairs
11 Dupont Circle NW
Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Email: elliot_mincberg@washlaw.org

Steven D. Zansberg
Levine Sullivan Koch & Schulz LLP
1888 Sherman Street, Suite 370
Denver, CO 80203
Telephone: (303) 376-2409
FAX: (303) 376-2401
E-mail: szansberg@lskslaw.com

Peter A. Swanson
Stephen W. Kiehl
Matthew S. Shapanka
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
FAX: (202) 662-6291
E-mail: pswanson@cov.com
         skiehl@cov.com
         mshapanka@cov.com

David M. Shapiro
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
Telephone: (312) 503-0711
Email: david.shapiro@law.northwestern.edu

*Attorneys for Plaintiff Prison Legal News*

13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2016, I served the foregoing by electronic mail, pursuant to consent received under Federal Rule of Civil Procedure 5(b)(2)(e), upon:

Susan Prose
Assistant United States Attorney
U.S. Attorney's Office for the District of Colorado
1225 17th Street, Suite 700
Denver, CO 80202
Susan.Prose@usdoj.gov

*Counsel for Defendant Bureau of Prisons*

*s/  Stephen Kiehl*

Stephen Kiehl

*Attorney for Prison Legal News*

14

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:15-cv-02184-REB

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

         *Plaintiff*,

    v.

FEDERAL BUREAU OF PRISONS,

         *Defendant*.

---

**PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS
TO DEFENDANT FEDERAL BUREAU OF PRISONS**

---

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure and Local Civil Rules, Plaintiff Prison Legal News ("Plaintiff" or "PLN"), by its undersigned attorneys, serves the following First Set of Requests for Production of Documents (the "RFPs") upon Defendant Federal Bureau of Prisons.  Defendant must serve its responses and objections to the RFPs and produce all requested documents within thirty (30) days of service of the RFPs.  Defendant's responses and objections and the responsive documents should be provided to Stephen W. Kiehl at the offices of Covington & Burling LLP, One CityCenter, 850 Tenth Street NW, Washington, D.C. 20001.

The RFP shall be deemed continuing, and if Defendant or its counsel discovers, between the time documents are produced and the time of trial, additional documents as to matters inquired of in the RFP, supplemental or amended productions must be made at the earliest practicable date informing counsel for Plaintiff of such information.

**<u>DEFINITIONS</u>**

1.      **"ADX"** refers to United States Penitentiary, Administrative Maximum Facility at Florence, Colorado and any facility operated by or on behalf of the Federal Bureau of

Prisons that provides support or services to personnel or prisoners at the United States

Penitentiary, Administrative Maximum Facility at Florence, Colorado on a temporary or ongoing

basis.

2. **"ADX Staff"** or **"ADX Employee"** refers to any officer, employee, agent,

representative, consultant, volunteer, contractor, attorney, or servant of BOP whose appointment,

employment, duty, assignment, or service, whether past, present, or future, occurred at ADX;

whose job responsibilities at any point in time involved supervision of ADX officers, employees,

agents, representatives, consultants, volunteers, contractors, attorneys, or servants; or whose job

responsibilities included the provision of services to ADX.

3. **"Communication"** or **"communications"** means any form of written or

oral communications or transmissions of any nature between one or more persons and one or

more other persons including, but not limited to, letters, memoranda, electronic mail, instant

messages, text messages, voicemail, telegrams, invoices, telephone or shortwave radio

conversations, face-to-face meetings, and any other form of communication or correspondence.

All such communications in writing shall include, but not be limited to, printed, typed,

handwritten, or other readable documents, whether in hardcopy, electronic mail or stored

electronically on a computer disk or otherwise, contracts, correspondence, diaries, drafts (initial

and subsequent), forecasts, invoices, letters, logbooks, memoranda, minutes, notes, reports,

statements, studies, surveys and any and all non-identical copies thereof.

4. The terms and phrases **"concerning"** or **"relating to"** mean constituting,

comprising, consisting of, containing, evincing, setting forth, proposing, showing, disclosing,

describing, discussing, mentioning, explaining, summarizing, dealing with, identifying,

analyzing, demonstrating, addressing, involving, containing, regarding, affecting, reflecting,

pertaining to, or touching upon, in whole or in part, the subject matter of the relevant RFP, or being in any way legally, logically, or factually connected with the subject matter of the relevant RFP.

5.      The terms **"Defendant," "BOP," "you,"** and **"your"** refer to both BOP in its institutional capacity and all ADX Staff as described above in Definition No. 2.

6.      The terms **"document," "record,"** and **"material"** are used herein in the broadest sense permitted by Rule 34 of the Federal Rules of Civil Procedure and include any graphic or written matter, however produced or reproduced, of any kind or description, including but not limited to the following: writings, files, contracts, agreements, notes, memoranda, telegrams, reports, records, schedules, correspondence, telex messages, cables, transcripts, minutes of telephone conversations, letters, drafts, diaries, invoices, purchase orders, requisitions, meeting minutes, appraisals, manuals, forms, written statements, recorded interviews, audiotapes, videotapes, sound recordings, maps, photographs, moving or still pictures, diagrams, plans, drawings, specifications, measurements, electronic mail messages, computer discs, software, tapes, printouts, all records kept by electronic, photographic, or mechanical means, stored electronic data on any medium, and items similar to any of the foregoing.  A draft or non-identical copy, or an identical copy that is stored in a separate file or location or held by a different custodian, is a separate document within the meaning of these terms.  If copies, reproductions, or facsimiles of a document are non-identical by reason of handwritten notations, initials, signatures, stamps, identification marks, or other modification, each such non-identical copy is a separate document within the meaning of this definition.

7.      The terms **"officers," "employees,"** and **"agents"** refer to current and former officers, employees, and agents.

8.      **"Plaintiff"** or **"PLN"** means Plaintiff Prison Legal News and its parent entity, the Human Rights Defense Center ("HRDC").

9.      The term **"prisoner"** includes any individual incarcerated at ADX at any point in time, regardless of pre-trial status, post-conviction status, or any other status or classification.

10.      **"Policy"** means a policy, post order, standard course of action, procedure, process, practice, regulation, guideline, manual, directive, rule, order, agreement, or training manual, whether written or unwritten, formal or informal, nationwide, or specific to a single prison complex or specific institution.

11.      The term **"publication"** refers to a book, magazine, periodical, article, newspaper, study, report, or printed literature of any nature.

## INSTRUCTIONS

1.      In responding to the Requests for Production of Documents, please provide all responsive documents within your possession, custody, or control that are available after a reasonable investigation.  A document is in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person and you (a) own such document in whole or in part; (b) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (c) have an understanding, express or implied, that you may use, inspect, examine, or copy such document on any terms; or (d) can, as a practical matter, use, inspect, examine, or copy such document when you seek to do so.

2.      If you cannot answer an RFP in full or in part after conducting a reasonable investigation, you should state the efforts you have made to obtain the unknown requested documents.

3.      Each RFP shall operate and be construed independently.  No RFP shall limit the scope of any other RFP.

4.      In these RFPs, the singular of any word is meant to also include the plural of that word, and vice versa, and the masculine gender shall be deemed to include the feminine, and vice versa.

5.      Notwithstanding any definition below or above, each word, term, or phrase used in these RFPs is intended to have the broadest meaning permitted under the Federal Rules of Civil Procedure.

6.      The terms **"and," "or,"** and **"and/or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the RFP the greatest possible number of responsive documents, and the terms "each," "any," and "all" shall mean "each and every."

7.      The term **"including"** means "including, but not limited to," and shall not be construed to limit a request.

8.      If any document in any way responsive to these RFPs is withheld under any claim or assertion of the attorney-client privilege, the attorney work-product doctrine, or any other privilege, doctrine, or other valid ground for objection, you shall state the following in writing with regard to each document:

a.      The name of the person or party writing, authoring, preparing, or otherwise responsible for the existence of the document;

b.      The names and addresses of persons identified or referenced in the document, as well as any other persons who received the document;

c.      The date of the document;

     d.      A sufficient description of the subject matter in the document to allow the court to rule upon the asserted privilege, doctrine, or other valid ground for objection;

     e.      The precise privilege, doctrine, or other valid ground for objection asserted; and

     f.      The name and address of the person or party having present custody or control of the document.

9.      To the extent that you consider any of the following RFPs to be objectionable, respond to that portion of the RFP to which you have no objection and separately identify the portion of the RFP to which you lodge an objection, stating the specific grounds for your objection.

10.      If you encounter any ambiguity construing an RFP, Definition, or Instruction herein, you shall make best efforts to interpret the RFP, Definition, or Instruction within the context of this litigation and shall set forth the matter deemed ambiguous, and the construction or interpretation chosen or used in responding to the RFP.

11.      Responsive documents that exist in electronic form, even if such documents also exist in paper form, shall be produced in electronic form according to the following protocol:

     a.      Electronic documents shall be produced electronically as single page, uniquely and sequentially numbered TIFF image files of not less than 300 dots per inch resolution, together with document level load files wherein the full text was extracted directly from the native file where possible.

     b.      For files produced in TIFF image form, each page of a produced document

shall have a legible, unique production number electronically "burned" onto the TIFF image in such a manner that information from the source document is not obliterated, concealed, or interfered with, preferably in the lower right corner of the document.  The production number shall contain at least six digits.  There shall be no other legend or stamp placed on the document image, unless a document qualifies for confidential treatment pursuant to the terms of any protective order in this matter, or if the document requires redaction.  In the case of confidential materials as defined by any protective order in this matter, any applicable designation may be "burned" onto the document's image at a location that does not obliterate or obscure any information from the source document, preferably in the lower left corner.

c.      Each document image file shall be named with the unique production number of the page of the document in question, followed by the extension ".tif".  File names should not be more than 20 characters long or contain spaces.

d.      For files produced in TIFF image format, each page of a document shall be electronically saved as an image file.  If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e.      TIFF images shall be accompanied by a standard load file containing the metadata and other fields identified in Paragraph 7(j) of these Instructions, below.  The load file shall be produced in one of the following industry-

standard formats:  (1) Concordance delimited file ("..dat"); (2) comma-separated value file ("..csv"); or (3) TAB delimited file.  TIFF images shall also be accompanied by either an Opticon delimited cross-reference file ("..opt") or IPRO View LFP comma-delimited file showing document breaks and appropriate document unitization.

f.     In addition to TIFF images, each production of electronic documents shall include searchable text files corresponding to the TIFF images for each document.  The full text of each native electronic document, excluding redacted documents, shall be extracted directly from the native file and produced in a document-level related text file (the "Extracted Text").  The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with the unique production number of the first page of the corresponding TIFF document followed by the extension "..txt".  YOU shall also perform OCR on certain types of non-text based static image ESI, such as native PDF image files, and produce the corresponding document-level related text files.  Searchable text files shall be generated from Extracted Text where available.

g.     Documents shall be produced on optical media (CD or DVD) or external hard drives or similar, readily accessible electronic media (the "Production Media").  Each piece of Production Media shall IDENTIFY a production number corresponding to the party and production with which the documents on the Production Media are associated (e.g., "MARY 001"),

as well as the volume of the material in that production (e.g., "- 001", "-002").  For example, if the first production wave by YOU comprises document images on three hard drives, YOU shall label each hard drive in the following manner:  "MARY 001-001", "MARY 001-002", and "MARY 001-003."  The face of each piece of Production Media shall also IDENTIFY:  (1) the production date; and (2) the production number range of the materials contained on the Production Media.

h.    Presentation documents (such as Microsoft PowerPoint documents) shall be produced with one slide per page together with any "Speaker's Notes" or similar pages appended to, or otherwise associated with, each slide. Presentation documents shall also be produced according to all other applicable Instructions set forth in this set of requests.

i.    Unless redaction is required, spreadsheet documents (such as Microsoft Excel documents) shall be produced in native format, together with a single page TIFF placeholder bearing the legend "Native File Produced" and load files containing the agreed upon metadata, extracted text, production numbers and any applicable confidentiality labels as described above.  If redaction is required, then spreadsheets shall be produced in TIFF image format as set forth above.

j.    For all documents for which metadata exists, the load files described above shall be produced including the following fields:

| Fields for all Documents | Description |
| --- | --- |
| BegProd | Beginning production number assigned to each document |

| EndProd | Ending production number assigned to each document |
|---|---|
| BegAttach | Beginning production number assigned to the group of documents to which the parent document and any attachment documents are associated |
| EndAttach | Ending production number assigned to the group of documents to which the parent document and any attachment documents are associated |
| Custodian | The name of the person or source from which the document was obtained |
| FileName | Original file name |
| FilePath | Original file path |
| DocExt | Document type as identified by metadata associated with the native document indicating the extension of the application that created the native document (e.g., .doc, .ppt, etc.) |
| HashValue | The unique identifying value assigned to a document based on hash coding algorithms |
| Author | The person or source that originated the document |
| DateCreated | Date that the document was created (as reflected by metadata) |
| LastModifiedDate | Date that the file was last modified (as reflected by metadata) |
| FullText | The path or link to the searchable Extracted or OCR text for a document |
| NativeFile | The path or link to a processed and produced native file, to the extent the production contains native files |

| Additional Fields for Email | Description |
|---|---|
| Confidentiality | The confidentiality designation for the document, as defined by any protective order in this matter |
| To | All information contained in the "To" field of an email |
| From | All information contained in the "From" field of an email |

| CC | All information contained in the "CC" field of an email |
|---|---|
| BCC | All information contained in the "BCC" field of an email |
| DateSent | Date the email was sent, including month, day and year |
| TimeSent | Time the email was sent, including hour, minute, second and time zone. To the extent this information is already included in the DateSent field in the metadata, YOU need not parse TimeSent as a separate field. |
| DateReceived | Date the email was received, including the month, day and year |
| TimeReceived | Time the email was received, including hour, minute, second and time zone. To the extent this information is already included in the DateReceived field in the metadata, YOU need not parse TimeReceived as a separate field. |
| Subject | Subject or "Re:" line, as stated in the email |

12.     If there are no responsive documents for a particular request, please so state in writing.

13.     If a request cannot be responded to in full, you shall respond to the extent possible, specify the reason for your inability to respond to the remainder, and provide whatever responsive documents you have regarding the portion to which you have not responded.  If your response is qualified in any particular manner, set forth the details of such qualification.

14.     If any document called for by these requests has been destroyed, lost, discarded, or is otherwise no longer in your possession, custody, or control, identify such document as completely as possible, and specify the date of disposal of the document, the manner of disposal, the reason for disposal, the person authorizing disposal, and the person disposing of the document.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST FOR PRODUCTION NO. 1:**  All policies in effect at ADX at any point since January 1, 2005, concerning:

- books, magazines, newspapers, or publications of any sort;

- notices and appeals given to senders when ADX Staff refuse to deliver mail (including letters, newspapers, magazines, and books) addressed to prisoners;

- notices and appeals given to prisoners when ADX Staff refuse to deliver mail (including letters, newspapers, magazines, and books) addressed to prisoners, including policies regarding BOP's Administrative Remedy Program;

- the standards or criteria used by ADX Staff when deciding whether or not to deliver publications to prisoners at any level of review;

- redaction practices or procedures of ADX Staff;

- security and safety measures;

- document retention and destruction; or

- ADX compliance with Court orders.

**REQUEST FOR PRODUCTION NO. 2:**  All documents and communications written, edited, approved, reviewed, ratified, possessed, or received by Defendant concerning the formulation or implementation of each ADX policy responsive to Request for Production Number 1.

**REQUEST FOR PRODUCTION NO. 3:**  All documents related to security measures taken at ADX to regulate the movement, behavior, and activities undertaken by prisoners at ADX, including.

**REQUEST FOR PRODUCTION NO. 4:**  A copy of Institution Supplement Number FLM 5266.11C, dated February 2, 2016, and any other subsequently or previously issued ADX documents or directives concerning (i) incoming publications, and/or (ii) notices provided to senders of mail regarding decisions not to deliver mail.

**REQUEST FOR PRODUCTION NO. 5:**  A copy of Program Statement 5266.11 and any other subsequently or previously issued BOP documents or directives concerning (i) incoming publications and/or (ii) notices provided to senders of mail regarding decisions not to deliver mail.

**REQUEST FOR PRODUCTION NO. 6:**  All documents (including class handouts, syllabi, attendance sheets, and lesson plans) concerning any training provided to ADX Staff concerning the processing and delivery (or non-delivery) of mail or publications addressed to prisoners at any time since January 1, 2005, including the provision of notice to senders and/or intended recipients of mail that ADX Staff decide not to deliver.

**REQUEST FOR PRODUCTION NO. 7:**  All documents issued, created, revised, or communicated at any time since January 1, 2005 to the present, concerning the non-delivery of any item of mail from PLN addressed to any ADX prisoner, including all notices of non-delivery and all documents concerning any appeals of decisions not to deliver mail from PLN.

**REQUEST FOR PRODUCTION NO. 8:**  Documents sufficient to identify all publications, television programs, movies or motion pictures, Internet websites, newspapers, magazines, or other periodical subscriptions, books, publications, or any other media which ADX prisoners may receive, view, or access by means other than through the mail, since January 1, 2005.

**REQUEST FOR PRODUCTION NO. 9:**  Documents sufficient to identify the legal books and publications received by and/or maintained by the ADX prisoner library, including publications by Westlaw, Lexis or LexisNexis, U.S. Reports, the Federal Reporter (e.g., F.3d), and the Federal Supplement, since January 1, 2005.

**REQUEST FOR PRODUCTION NO. 10:**  All documents submitted by ADX prisoners to ADX or any ADX Staff (including inmate request forms; Request to Staff Member forms; and any sort of complaints, grievances, requests, or inquiries), and all responses thereto, since January 1, 2005, concerning PLN, including mail or publications sent to any prisoner by PLN.

**REQUEST FOR PRODUCTION NO. 11:**  All documents created or used in any way from January 1, 2005 to the present that provide instruction or guidance to ADX Staff on the interpretation and/or implementation of any directives or orders (including the current and former versions of Institution Supplement Number FLM 5266.11C) concerning the processing and delivery (or non-delivery) of mail to and from prisoners, including the provision of notice to senders and/or intended recipients of mail that ADX Staff decide not deliver for any reason.

**REQUEST FOR PRODUCTION NO. 12:**  A blank copy of each form used by the ADX from January 1, 2005 to the present to (1) provide notice to prisoners that a mailing or publication addressed to a prisoner will not be delivered by the ADX, or (2) provide notice to a publisher or sender that a mailing or publication addressed to a prisoner will not be delivered by the ADX.

**REQUEST FOR PRODUCTION NO. 13:**  All documents in the possession, custody, or control of the ADX, created since January 1, 2005, concerning or mentioning PLN.

**REQUEST FOR PRODUCTION NO. 14:**  All documents showing the average or typical amount of publications addressed to prisoners and received at ADX prison mailrooms, and the average or typical total amount of mail received by the same and addressed to prisoners, at any point after January 1, 2005.

**REQUEST FOR PRODUCTION NO. 15:**  All documents showing the average or typical amount of publications addressed to prisoners and rejected by the ADX, and the average or typical total amount of mail rejected by the same and addressed to prisoners, at any point after January 1, 2005.

**REQUEST FOR PRODUCTION NO. 16:**   Copies of all complaints and answers, filed at any point from January 1, 2005 to the present, in lawsuits challenging ADX policies or practices concerning delivery of mail or publications to prisoners.

**REQUEST FOR PRODUCTION NO. 17:**   All documents concerning any reason, including any alleged penological or security interest, relied upon by you in support of any rejection or non-delivery of PLN's publications at the ADX.

**REQUEST FOR PRODUCTION NO. 18:**  Documents sufficient to identify all ADX Staff whose duties at any point since January 1, 2005 through the present have included inspecting, processing, or reviewing incoming mail addressed to prisoners at ADX, or whose duties have included deciding whether or not to deliver such mail to the addressee at any stage of the initial mail review process or at any level of appeal, including for both the prisoner Administrative Review Procedure and the appellate review afforded to publishers and other senders of mail.

**REQUEST FOR PRODUCTION NO. 19:**  Copies of all publications redacted by ADX Staff prior to delivery to prisoners at any point from January 1, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 20:**  All documents concerning the redaction or removal of material from publications as an alternative to the rejection of entire publications.

**REQUEST FOR PRODUCTION NO. 21:**  All documents concerning BOP's process for adjudicating appeals of decisions not to deliver mail or publications from January 1, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 22:**  All documents issued, created, revised, or communicated at any time since February 2, 2016 to the present, concerning the non-delivery of any publication addressed to any ADX prisoner, including all notices of non-delivery.

**REQUEST FOR PRODUCTION NO. 23:**  All documents concerning your Rule 26(a)(1) initial disclosures, responses to interrogatories, responses to requests for admission, and/or any supplements or amendments to any of the foregoing.

**REQUEST FOR PRODUCTION NO. 24:**  All documents reflecting communications with the U.S. Postmaster or Postmaster General, or representatives thereof, for the postal region including ADX concerning the delivery of mail to ADX prisoners, at any point from January 1, 2005 to the present.

**REQUEST FOR PRODUCTION NO. 25:**  All Documents on which you intend to rely at trial or in pre-trial practice in the present litigation.

DATED: August 4, 2016

_s/ Steven D. Zansberg_ _____

Lance Weber
Sabarish Neelakanta
Human Rights Defense Center
PO Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Email: lweber@humanrightsdefensecenter.org
sneelakanta@humanrightsdefensecenter.org

_Of Counsel:_

Elliot Mincberg
Washington Lawyers' Committee for Civil
Rights & Urban Affairs
11 Dupont Circle NW
Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Email: elliot_mincberg@washlaw.org

Steven D. Zansberg
Levine Sullivan Koch & Schulz LLP
1888 Sherman Street, Suite 370
Denver, CO 80203
Telephone: (303) 376-2409
FAX: (303) 376-2401
E-mail: szansberg@lskslaw.com

Peter A. Swanson
Stephen W. Kiehl
Matthew S. Shapanka
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
FAX: (202) 662-6291
E-mail: pswanson@cov.com
skiehl@cov.com
mshapanka@cov.com

David M. Shapiro
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
Telephone: (312) 503-0711
Email: david.shapiro@law.northwestern.edu

_Attorneys for Plaintiff Prison Legal News_

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2016, I served the foregoing by electronic mail, pursuant to consent received under Federal Rule of Civil Procedure 5(b)(2)(e), upon:

Susan Prose
Assistant United States Attorney
U.S. Attorney's Office for the District of Colorado
1225 17th Street, Suite 700
Denver, CO 80202
Susan.Prose@usdoj.gov

*Counsel for Defendant Bureau of Prisons*

*/s/  Stephen Kiehl*

Stephen Kiehl

*Attorney for Prison Legal News*