**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

     Defendant.

---

## ORDER

---

     This matter is before the Court on the February 23, 2017 Recommendation of United States Magistrate Judge Scott T. Varholak ("Recommendation") (ECF No. 62) to deny both Defendant Federal Bureau of Prisons' ("Defendant") Motion to Dismiss for Failure to State a Claim ("Motion to Dismiss") (ECF No. 31) and Motion to Stay Discovery and to Vacate the Scheduling Conference and Related Deadlines ("Motion to Stay") (ECF No. 34).   Defendant filed timely Objections to the Recommendation ("Objections") (ECF Nos. 66 & 67).[1]   The Recommendation is incorporated herein by reference.   *See* 28 U.S.C. § 636(b)(1)(B); FED. R. CIV. P. 72(b).

     For the following reasons, this Court REJECTS the Magistrate Judge's Recommendation.

---

[1] Accompanying Defendant's Objections is a Supplemental Declaration of Jack Fox, ADX Florence's current Warden, dated March 14, 2017.   (ECF No. 66-1.)   Plaintiff filed no response to Defendant's Objections and the deadline to do so has passed.   (*See generally* Dkt.)   Before issuing his Recommendation, the Magistrate Judge held an oral hearing regarding the two Motions on February 17, 2017.   (*See* ECF No. 61.)

I.       **BACKGROUND AND LEGAL STANDARDS**

A.       **Background**

The Magistrate Judge set forth the relevant background facts of this case in his

Recommendation (ECF No. 62 at 1-8), which this Court adopts and reproduces below:

>    Plaintiff Prison Legal News ("PLN"), . . . a not-for-profit entity organized under the laws of the State of Washington, . . . publishes *Prison Legal News*, a monthly magazine that provides news about legal decisions affecting prisoners and information designed to help prisoners navigate the judicial system.   [ECF No. 1 at ¶¶ 1, 6.]   *Prison Legal News* has thousands of subscribers, including nineteen inmates at the United States Penitentiary – Administrative Maximum Facility at Florence, Colorado ("ADX") as of the filing of the Complaint.   [*Id.* at ¶ 1.] . . . Defendant Federal Bureau of Prisons ("BOP") is the federal agency responsible for administering all federal correctional institutions, including ADX. [*Id.* at ¶ 7.]   BOP has adopted regulations for all of its facilities, including ADX, permitting inmates to subscribe to or receive publications without prior approval, except where prohibited by statute.   [*Id.* at ¶ 16 (citing 28 C.F.R. § 540.70).]   The regulations permit rejection of an incoming publication if the facility determines that the publication is "detrimental to the security, discipline, or good order of the institution or . . . might facilitate criminal activity."   [*Id.*; *see also* 28 C.F.R. § 540.70(b).]
>
>    BOP regulations set forth certain steps that the Warden must undertake with respect to the rejection of any publication.   First, the Warden must "review the individual publication prior to rejection of that publication."   [*Id.* at ¶ 17 (citing 28 C.F.R. § 540.71(c)).] Second, upon rejection of the publication, the Warden must "promptly advise the inmate [in writing] of the decision and the reasons for" the rejection.   [*Id.* at ¶ 18 (citing 28 C.F.R. § 540.71(d)).]   Finally, the Warden must provide the "publisher or sender" with a copy of the rejection letter sent to the inmate.   [*Id.* at ¶ 19 (citing 28 C.F.R. § 540.71(e)).]   BOP regulations allow both inmates and publishers to appeal rejection decisions.   [*Id.* at ¶ 20.] While inmates may appeal rejections through the BOP's Administrative Remedy Program, publishers have the right to "obtain an independent review of the rejection by writing to the Regional Director [of BOP] within 20 days of receipt of the rejection letter."   [*Id.* at ¶ 20; *see also* 28 C.F.R. § 540.71(d, e).]   Unless an inmate files for review, the Warden must return a rejected publication to its sender.   [*Id.*; *see also* 28 C.F.R. § 540.71(e).]
>
>    The instant litigation arises out of the rejection by ADX Wardens of at least eleven issues of *Prison Legal News* between January 2010 and April 2014.   [*Id.* at ¶ 22.]   The issues were rejected in their entirety.   [*Id.*]   For each, the Warden who rejected the issue signed a rejection notice stating that the issue "has been rejected in accordance with BOP Program Statement 5266.10, Incoming Publications, which states in part, 'The Warden may reject a publication if it is determined detrimental to the security, good order, or discipline of the institution or if it may facilitate criminal activity.' "   [*Id.* at ¶ 23.]   "Each notice then provides a single sentence purporting to identify the material that caused the issue to be censored."   [*Id.* at ¶ 24.] . . . [F]or most of the rejected issues, the notices claim that the issue was censored due to references in the magazine "to ADX inmates or ADX or other BOP personnel" but do not give any further description of how that content "is detrimental

2

to the security, good order or discipline of ADX." [*Id.* at ¶ 25.] Instead, the rejections "appear to treat any reference to any ADX inmate or staff member—current or former—as a security risk." [*Id.*] The content that forms the basis for the rejections consists of articles about legal proceedings or other events pertaining to ADX or BOP. [*Id.* at ¶ 26.] With respect to the information about ADX inmates and staff, such information "is limited and often publicly available." [*Id.* at ¶ 28.] "[M]uch or all of this information is already available to prisoners at ADX through other sources," such as general-interest publications, television and radio. [*Id.* at ¶ 30.] Inmates at ADX also have access to a law library, which includes access to an electronic service containing court decisions and filings. [*Id.* at ¶ 31.]

According to the Complaint, ADX did not provide notice of its rejection of the November 2011 issue of *Prison Legal News* to PLN. [*Id.* at ¶ 37.] With respect to the remaining issues that were rejected, PLN did receive rejection notice letters, but some of those notices did not reach PLN until six to nine months after the rejection occurred. [*Id.* at ¶ 38.] PLN appealed at least four of these rejections. [*Id.* at ¶ 41.] Each appeal was rejected by the Regional Director reciting Program Statement 5266.11, which allows rejection of incoming publications that are "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." [*Id.* at ¶ 45.] None of the Regional Director's letters provides specific reasoning for the rejection. [*Id.*]

On October 1, 2015, PLN filed its Complaint in this action. [ECF No. 1.] Count One alleges censorship of constitutionally protected speech in violation of the First Amendment.[2] [*Id.* at ¶¶ 51-58.] Count Two alleges failure to provide due process in violation of the Fifth Amendment. [*Id.* at ¶¶ 59-70.] Count Three alleges violations of the Administrative Procedure Act ("APA"). [*Id.* at ¶¶ 71-81.][3]

---

[2] The Magistrate Judge notes that "[a]t oral argument, BOP conceded that Count One must be considered as a whole and that the Court should not engage in attempts to determine whether certain aspects of Count One were moot while others were not." (ECF No. 62 at 12 n.1.)

[3] At the end of the Complaint, in addition to costs, attorneys' fees, and other "just and equitable" relief, Plaintiff specifically requests:

A. A declaration that Defendant's censorship of Prison Legal News under 28 C.F.R. § 540 and lack of due process regarding such censorship violates the First and Fifth Amendments to the U.S. Constitution and the APA;

B. Permanent injunctive relief compelling Defendant and its agents to deliver (i) all past issues of Prison Legal News that have been previously censored and withheld from PLN's subscribers at ADX, and (ii) all future issues of Prison Legal News absent a legitimate penological interest supported by specific facts;

C. Permanent injunctive relief requiring Defendant and its agents, as to any future issues that are censored, (i) to provide PLN with timely, individualized, specific, and detailed notice that includes an explanation of why the article(s) or page(s) in question are subject to censorship under 28 C.F.R. § 540, (ii) to provide PLN with timely opportunity to be heard and contest the decision each time PLN's publication is censored, and (iii) to retain censored issues of *Prison Legal News* until either the resolution of PLN's appeals to the Regional Director or until the time for appeal has expired, whichever is later.

(ECF No. 1 at 16.)

**B.**     **Rule 12(b)(1) Motion**

Under Federal Rule of Civil Procedure 12(b)(1), a motion to dismiss for lack of subject matter jurisdiction may be brought in two forms: "facial" or "factual."   *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).   A "facial attack" as to subject matter jurisdiction challenges the sufficiency of the complaint and in reviewing such a challenge, the Court must accept the allegations in the complaint as true.   *Id*.   A "factual attack" as to subject matter jurisdiction challenges the facts upon which subject matter jurisdiction depends and in reviewing such a challenge, the Court has discretion to consider documents outside complaint.   *Id*. at 1003.   If undertaking a review of subject matter jurisdiction predicated upon a factual attack of the complaint, "a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion."   *Id*.

A Rule 12(b)(1) motion to dismiss must be determined without regard to mere conclusory allegations of jurisdiction.   *Hernandez v. United States*, 34 F. Supp. 3d 1168, 1175 (D. Colo. 2014) (citing *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971)).   Where jurisdictional issues raised in a Rule 12(b)(1) motion are intertwined with the case's merits, the Court should resolve the motion under either Rule 12(b)(6) or Rule 56.   *Hernandez*, 34 F. Supp. 3d at 1175 (citation omitted).

Regardless of the type of challenge to subject matter jurisdiction, the plaintiff retains the burden of establishing subject matter jurisdiction.   *Port City Props. v. Union Pacific R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008) (citation omitted).

**C.**     **Rule 12(b)(6) Motion**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   FED. R. CIV. P. 8(a)(2).

4

Pursuant to Federal Rules of Civil Procedure 12(b)(6), a complaint must be dismissed if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." *Id.* at 555 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.* A "plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citation omitted).

The Tenth Circuit has held "that plausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (internal quotation and citation omitted). The Tenth Circuit has further noted "that the nature and specificity of the allegations required to state a plausible claim will vary based on context." *Id.* (citation omitted.) Thus, the Tenth Circuit "concluded the *Twombly/Iqbal* standard is 'a middle ground between heightened

fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the [Supreme C]ourt stated will not do.'" *Id*. (citation omitted.)

For purposes of a Rule 12(b)(6) motion to dismiss, the Court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in a plaintiff's favor. *Morse v. Regents of the Univ. of Colo.*, 154 F.3d 1124, 1126-27 (10th Cir. 1998) (citation omitted); *Seamons v. Snow*, 84 F.3d 1226, 1231-32 (10th Cir. 1996) (citations omitted). However, "when legal conclusions are involved in the complaint 'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to [those] conclusions. . . .'" *Khalik*, 671 F.3d at 1190 (quoting *Iqbal*, 556 U.S. at 678). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Id*.

## II.   DISCUSSION

### A.   Mootness

The doctrine of mootness is an aspect of Article III's case or controversy requirement. A case becomes moot when the events occur which resolve the controversy underlying it, the issues involved are no longer "live," or the parties have no personal stake in the outcome. *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 395–96 (1980). In practical terms, a plaintiff's claim is moot if no reasonable expectation that the alleged violation will recur exists and interim events have eliminated the effects of the alleged violation. *Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1524 (10th Cir. 1992) (citation omitted). "In such a situation, a federal court decision provides no resolution between the parties to the lawsuit and therefore, constitutes a constitutionally impermissible advisory opinion." *United States v. Dominguez-Carmona*, 166

F.3d 1052, 1055 (10th Cir. 1999), *overruled on other grounds by United States v. Meyers*, 200

F.3d 715, 721–22 (10th Cir. 2000).   "[W]hen a favorable decision will not afford plaintiff relief,

and plaintiff's case is not capable of repetition yet evading review, [the Court has] no jurisdiction

under Article III."   *McAlpine v. Thompson*, 187 F.3d 1213, 1216 (10th Cir. 1999).

      The Court reviews this matter *de novo*.   This case arises with respect to eleven issues of

the *Prison Legal News* magazine that were rejected between 2010 and 2014 and, accordingly, not

delivered to inmates at the ADX on the *sole* basis of the magazine's having identified and

discussed ADX or BOP inmates or staff members—the then-screening practice at the ADX.   (*See*

ECF No. 1.)   In addition to complaining with respect to the non-delivery of particular issues of its

publication, Plaintiff also asserts a procedural due process claim.   Plaintiff challenges the

timeliness and adequacy of the notice of rejection provided to Plaintiff, as well as the degree of

specificity contained in the Regional Director's upholding of the rejection as part of the appeal

process.   (*Id.* at ¶¶ 59-70.)   Finally, on these same grounds – censorship and denial of procedural

due process – Plaintiff brings an additional claim for violation of the Administrative Procedure Act

("APA").   (*Id.* at ¶¶ 71-81.)   By these claims, Plaintiff seeks declaratory and injunctive relief

with respect to the previously rejected magazine issues and any future rejections.

      Although a variety of issues have been raised in the relevant pleadings, the Court finds one

to be largely dispositive – mootness.   After the litigation was filed in 2015, the ADX

fundamentally revised its official policies and procedures with respect to review of publications.

(*See* ECF Nos. 66 at 2-3; 59-1; 31-1.)   The new procedures provide, *inter alia*:

- separate (sequential) review by Special Investigative Services ("SIS") and ADX Legal

  Services before a recommendation for rejection of a publication can be forwarded to the

  Warden;

7

- any recommended rejection by SIS must explain the basis for rejection noting "specific objectionable pages [and] content" as well as the national policy and Code of Federal Regulations;

- rejections require an individual assessment of the publication and specific information as to how information may affect institutional security;

- without agreement from ADX Legal services, the recommendation of SIS does not get forwarded to the Warden;

- mandatory quarterly training conducted by ADX Legal Services is required to assure that staff understands and implements the new procedures; and

- staff are instructed that a publication may not be rejected solely because it discusses an ADX staff member or inmate.

*Id.*

Previously rejected issues of Plaintiff's publication have been reviewed under the new policy.   Each has been approved.   Each has been delivered to ADX inmates.   No issue of Plaintiff's publication has been rejected since April 2014.   (ECF No. 66-1.)   Two ADX officials have sworn, under penalty of perjury, that the revised policy will be continued into the future. (ECF Nos. 59-1; 66-1; 31-1.)   More specifically, Warden Fox made a specific declaration – under penalty of perjury – that "the ADX will not utilize the fact that an incoming publication discusses an ADX or Bureau inmate, or Bureau staff member, standing alone, as a basis to find that the incoming publication is 'detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity.' "   (ECF No. 59-1 at ¶ 17 (citing 28 C.F.R. § 540.71(b)).)

8

Defendant's delivery of previously rejected issues of Plaintiff's publication moots Plaintiff's request for injunctive relief of "compelling Defendant and its agents to deliver all past issues of *Prison Legal News* that have been previously censored and withheld from PLN's subscribers at ADX" in its Complaint (ECF No. 1 at 16 at ¶ B(i)).   Simply stated, there is no longer a live controversy with respect to these matters and any claims pertaining to these issues are thus moot.   *See Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) ("a live case or controversy is a constitutional prerequisite to federal court jurisdiction").

As for declaratory and injunctive relief with respect to future rejections – that is, prospective relief – that, too, is moot.   What Plaintiff seeks is either relief with respect to practices no longer employed (rejection based on mere identification or discussion of an inmate or staff member) or broad-based relief with respect to a hypothetical rejection at some unknown point in the future on a basis not known at this time.   As to the first, the matter is moot.   The change in policy has removed the practice as to which relief was sought.   As to the second, the matter is not only moot as to the claim raised in the Complaint, but it also suffers from a lack of standing with respect to these ill-defined matters.

For prospective relief, a real, impending or immediate threat on injury is required.   *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 493 (10th Cir. 1998).   Without this, there is no present controversy.   Yet there can be no impending or immediate threat of injury in the immediate future based on rejection of a magazine for reasons which once were policy, but now no longer are (solely for mentioning an inmate or staff member).   Indeed, as noted earlier, there has been no such rejection under the February 2016 policy and, in fact, no rejection whatsoever of Plaintiff's publication since April 2014.   (ECF No. 66-1 at ¶¶ 1 & 5; *see also* ECF Nos. 59-1 at ¶ 5; 31-1 at ¶¶ 21-22.)   Without the

requisite threat or immediacy of injury, Plaintiff lacks standing.

Finally, as for the possibility (considered by the Magistrate Judge) of future rejections of Plaintiff's publications because of "similar content" to that which triggered past rejections, rejections based on matters which could be discerned from some other public record, and whether redactions should be required in all future instances of rejection (rather than rejection of the entire magazine), these possibilities lack any context.   And without context to decide a legal issue, the Court would effectively be placed in the role of executive policy maker for the BOP.   Put another way, the prospective relief unmoored from the prior bases for rejection is such a vague, uncertain and abstract proposition that the Court finds that is prudentially moot, even if it were not constitutionally so.   *See Jordan v. Sosa*, 654 F.3d 1012, 1024 (10th Cir. 2011) (prudential-mootness doctrine applies where the case "is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand").

As for the exceptions to the mootness doctrine, the Court finds them to be inapplicable. The "capable of repetition" exception can hardly be said to apply where the rejection basis complained of – solely mentioning inmates or staff – is no longer ADX policy.   And whatever may be within the parameters of "similar conduct," it is not a "repetition."   And in light of the fact that the Warden has sworn that publications will not be rejected merely for naming staff or inmates and that the new policy benefits security considerations (*see* ECF No. 59-1 at ¶ 20), the Court does not find this to be an instance of "voluntary cessation" for the purpose of strategic manipulation matters to avoid the ligation.[4]

---

[4]  The Court finds unconvincing the argument that a similar dispute between these parties ten years ago which resulted in a mootness determination evidences a manipulative present intention on the part of the BOP.   (*See* ECF No. 55 at 10-11.)

The Court also finds the due process claim to be moot.   Simply put, Plaintiff sought process with respect to the rejection of eleven issues of its publication.   With the decision having been reconsidered, and the issues distributed, the outcome sought to be achieved by "better process" has been achieved.   There is nothing more to be obtained by process or otherwise with respect to the once rejected issues.

Finally, with respect to the APA claim, it is premised on the same facts and disputes as the other claims and subject to dismissal for the same reasons.

Dismissal of the Complaint moots any remaining stay and discovery matters raised by the Motion to Stay.   It also moots the "appeal" of the denial of the Motion to Stay (ECF No. 67).

In light of the foregoing discussion, consideration of Rule 12(b)(6) issues are unnecessary.

**B.**     **Motion to Stay**

Defendant's Motion to Stay depends on this matter's continuation.   Given the rulings above, the Court denies Defendant's Motion to Stay as moot.

**III.**   **CONCLUSION**

Based on the foregoing, the Court:

(1) REJECTS the Recommendation of the Magistrate Judge (ECF No. 62);

(2) GRANTS Defendant's Motion to Dismiss (ECF No. 31) and DISMISSES this matter without prejudice;

(3) DENIES as moot Defendant's Motion to Stay (ECF No. 34);

(4) DENIES as moot Defendant's Appeal of Order Denying Motion to Stay (ECF No. 67); and

11

(5) DIRECTS the Clerk of the Court to CLOSE the case.

DATED this 28th day of March, 2017.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge