**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 15-CV-02184-RM-STV

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

      Plaintiff,

      v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

_____

**PLAINTIFF PRISON LEGAL NEWS'S RESPONSE TO DEFENDANT FEDERAL
BUREAU OF PRISONS' OBJECTIONS TO THE RECOMMENDATION (DOC. 66)[1]**

_____

      The Magistrate Judge correctly found that PLN's challenge to censorship of its

publication *Prison Legal News* at the United States Penitentiary – Administrative Maximum

Facility ("ADX") presents a live case or controversy.  In its Objections to the Recommendation

(Doc. 66) ("Objs."), BOP does not dispute that its post-suit actions fail to address (a) PLN's as-

applied First Amendment claim, which challenges whether any of the eleven censored issues

could be constitutionally censored as a security risk; (b) PLN's claim that the ADX violated the

First Amendment by rejecting entire issues instead of redacting or removing the allegedly

objectionable material (often a tiny fraction of the entire issue); or (c) PLN's due process claim,

which relates to the sufficiency and timing of the censorship notice that ADX provides.  Instead,

_____

[1] PLN files this Response pursuant to the Court's Order (Doc. 74) of March 29, 2017, vacating its Order rejecting the Recommendation and granting BOP's motion to dismiss (Doc. 71) and the Final Judgment (Doc. 72).  For the reasons explained in this Response to BOP's Objections, PLN respectfully disagrees with the now-vacated order of dismissal, and urges the Court to adopt the Magistrate's Recommendation.

1

BOP contends that PLN need not worry about these unchanged practices because future censorship is unlikely.  Although BOP retains the right to censor *Prison Legal News* in the future, BOP suggests it is unlikely to exercise this right given its post-Complaint conduct, including the purported (and unwritten) elimination of ADX's blanket practice of censoring any publication that mentions an ADX inmate or staff member, added layers of review at the ADX, and the decision to deliver the eleven censored issues (three to seven years after publication).

BOP's speculation about the prospect of future censorship rings hollow given its refusal to agree that the eleven issues of *Prison Legal News* should not have been censored as security risks ***at the time*** they were published.  The elimination of the blanket practice does nothing to ensure that the underlying content in those issues does not meet the ADX's definition of a security threat—to the contrary, the ADX has insisted that it may continue to censor the same type of content, including reports on published legal decisions directly applicable to ADX prisoners.  Even if the Court were to agree that there is not a significant risk of censorship at the present time, this case falls squarely within the voluntary cessation exception, as BOP's refusal to change its substantive censorship policy leaves the door wide open for future censorship.

This Court can and should hold a trial to determine whether the censorship of the eleven issues of *Prison Legal News* was a constitutional application of BOP's censorship policy (*i.e.*, whether the issues constituted legitimate security threats), whether the rejection of the issues in their entirety (as opposed to redacting or removing content) was constitutional, and whether the rejection notices comported with the Due Process Clause.  The Court has the power to issue injunctive relief on each of these claims to address any constitutional violations that are found. Moreover, contrary to BOP's argument, declaratory relief is a permissible remedy by itself,

because a declaratory judgment that certain censored issues of *Prison Legal News* were unlawfully rejected will govern the behavior of PLN and BOP prospectively.  PLN is not asking the Court to adjudicate hypothetical future rejections, but rather to set constitutional boundaries on BOP's authority based on past unconstitutional conduct.

PLN is a publisher that will continue to send magazines to the ADX discussing prisoners and prison legal issues.  This is the second time in less than a decade that PLN, a small non-profit organization, has brought suit to enjoin unlawful censorship, and the second time BOP has attempted to evade judicial review of its rejection criteria.  PLN should not have to wait for the next instance of censorship (to the detriment of PLN and its subscribers) when there is a live dispute over how ADX applies its censorship policy.  The Court should adopt the Recommendation of the Magistrate Judge and deny BOP's Motion to Dismiss.

## FACTUAL BACKGROUND

Published since 1990, *Prison Legal News* is a monthly magazine that provides news about legal decisions affecting prisoners and information designed to help prisoners navigate the judicial system.  Compl. (Doc. 1) ¶¶ 1, 11–12.  *Prison Legal News* has thousands of subscribers, including nineteen inmates at the ADX as of the filing of the Complaint.  *Id.* ¶ 1.

Since January 2010, ADX wardens have rejected at least eleven issues of *Prison Legal News*.  *Id.* ¶ 22.  Each issue was rejected pursuant to a BOP Program Statement permitting censorship of incoming publications that are "detrimental to the security, discipline, or good order of ADX."  *Id.* ¶ 23 (quoting BOP Program Statement 5266.10, Incoming Publications).  As explained in the Complaint, the censored content often relates to legal proceedings or other newsworthy events that are highly relevant to prisoners at ADX.  *Id.* ¶ 26.  For example, the

ADX censored the July 2013 issue of *Prison Legal News* based on an article about a published Tenth Circuit decision regarding the legal mechanisms for ADX prisoners to challenge their placement at ADX.  *Id.* ¶ 28; *see also* Compl., Ex. A (Doc. 1-1) at 38–39.

The rejections of *Prison Legal News* were based on a small fraction of the content in each issue.  Compl. ¶ 35; *see also, e.g.*, *id.* Ex. A.  Yet rather than redact or tear out the allegedly objectionable content, ADX rejected each issue in its entirety.  Compl. ¶ 35.  This resulted in the censorship of a significant amount of admittedly unobjectionable content.  *Id.*

Count I of PLN's Complaint alleges that the censorship of *Prison Legal News* violates the First Amendment.  This claim squarely challenges the ADX's practice of censoring publications that do not "pose any risk to the security, discipline, or good order of ADX," *id.* ¶ 54, and the practice of censoring entire editions of a monthly publication based upon as little as a single name or sentence in an article contained therein, *id.* ¶ 56.  Count II alleges violations of the Due Process Clause of the Fifth Amendment in connection with the rejection notices provided by ADX and the process for appealing rejections.  *Id.* ¶¶ 59–70.  Count III alleges that BOP's conduct also violated the APA.  *Id.* ¶¶ 71–81.

BOP claims that, after the commencement of this action, it "fundamentally revised its official policies and procedures."  Objs. at 2.  This new policy makes two principal changes:  (1) it provides for additional personnel to review proposed rejections, *see* Mot. to Dismiss, Ex. 1 (Chapman Decl.), Att. 2, Institution Supp. FLM 5266.11C, *Incoming Publications*, § IV.B (Doc. 31-3) ("February 2016 Policy"); and (2) it provides for quarterly training for ADX staff involved in the publication review process, *see id.* § IV.Q.

4

Although BOP asserts that all eleven issues of *Prison Legal News* were rejected pursuant to the blanket practice of censoring any publication based on the mere mention of an ADX inmate or staff member, Objs. at 2, the February 2016 Policy did not purport to change this practice.  Instead, BOP submitted a declaration of the ADX Executive Assistant—and, in connection with BOP's reply brief, a declaration from the Warden—claiming that the practice had nevertheless been abolished.  *See* Chapman Decl. (Doc. 31-1) ¶ 25; Def.'s Reply, Ex. 1 (Fox Decl.) (Doc. 59-1) ¶ 19.  According to the Warden, the February 2016 Policy did not address the elimination of the blanket practice because this purportedly would have confused ADX personnel.  Fox Decl. ¶ 19.

BOP made no other policy changes, and has not committed to refrain from censorship on any other basis.  Nevertheless, BOP's motion contended that the changes made in the February 2016 Policy, and the return of the eleven rejected issues, rendered Count I moot.  BOP's Mot. to Dismiss (Doc. 31) ("Mot.") at 6–8.  BOP also argued that PLN's due process claim, Count II, failed to state a claim upon which relief can be granted.  *Id.* at 15.[2]  On February 23, 2017, after holding oral argument, the Magistrate issued his Order and Recommendation recommending that this Court deny the motion to dismiss for all counts.  Doc. 62 ("Rec.").

## ARGUMENT

Written objections to the recommendation of a magistrate judge are reviewed *de novo* by the district judge.  28 U.S.C. § 636(b)(1)(C).  The objecting party may not raise new arguments

---

[2] BOP advanced several arguments in its motion to dismiss that it has since dropped:  (a) whether PLN has stated a claim that the First Amendment requires BOP to redact or remove objectionable material, *see* Def.'s Reply in Support of Its Motion to Dismiss (Doc. 59) at 11; (b) whether PLN has stated a due process claim, *see* Objs. at 19, and (c) whether PLN has standing to assert its arguments concerning the retention of issues on appeal, *see* Objs. at 20.

that were not presented to the magistrate. *See Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996) (explaining that arguments raised for first time an objection to magistrate's recommendation are deemed waived).

BOP objects to the Magistrate Judge's conclusion that PLN's First Amendment claim is not moot. BOP does not object to the Magistrate's rejection of BOP's Rule 12(b)(6) argument on PLN's due process claim, and BOP instead argues, for the first time, that the claim is moot.

## I.   The Magistrate Judge Correctly Concluded That BOP Failed to Demonstrate That PLN's First Amendment Claim Is Moot.

Federal courts may only hear "actual 'Cases' or 'Controversies.'" *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2661 (2014) (quoting U.S. Const., art. III, § 2). A federal court may lose jurisdiction, properly invoked, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Chafin v. Chafin*, 133 S. Ct. 1017, 1023 (2013) (quoting *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 726 (2013)); *see also Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (explaining that a case is moot if "the plaintiff no longer suffers actual injury that can be redressed by a favorable judicial decision"). The defendant bears a "heavy" burden of proving mootness. *Cty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979). Here, BOP has raised both constitutional and prudential mootness arguments as to PLN's First Amendment claim. The Magistrate Judge correctly rejected both.

### A.   PLN's First Amendment Claim Is Not Constitutionally Moot.

BOP has failed to show that its actions, taken subsequent to the commencement of this case, deprive this Court of subject matter jurisdiction over PLN's First Amendment claim. First, neither BOP's alleged policy changes, nor the return of the eleven censored issues of *Prison Legal News*, are sufficient to moot the claim because both actions leave the core of PLN's claim

intact.  Compl. ¶¶ 26–34.  Second, the voluntary cessation of illegal conduct exception to

mootness applies regardless of whether BOP's actions moot PLN's claim.

<h3 style="text-align:center;">1.      BOP Fails to Show That PLN's First Amendment Claim Is Moot.</h3>

<h3 style="text-align:center;">a)      PLN Alleges Several Live First Amendment Violations That Are Not Addressed by BOP's Post-Suit Actions.</h3>

BOP does not dispute that it has failed to change the policies or practices underlying two

core First Amendment violations alleged in the Complaint: (1) the eleven censored issues of

*Prison Legal News* did not pose a legitimate security threat at ADX at the time they were

censored, thereby rendering the censorship unconstitutional; and (2) even if the content had been

appropriately censored, the First Amendment required ADX to redact or remove potentially

objectionable content while delivering the remainder of the issue to subscribers.

First, prison regulations, such as the policy permitting BOP to reject publications, must

be "reasonably related to legitimate penological interests" in order to pass constitutional muster.

*Turner v. Safley*, 482 U.S. 78, 87 (1987).  BOP has not agreed to any affirmative policy change

that would govern its determination of what constitutes a legitimate security threat at ADX, other

than, perhaps, that it will not censor *Prison Legal News* "solely because [it] discuss[es] an ADX

or Bureau inmate, or Bureau staff member."  Fox Decl. ¶ 19.  The text of the February 2016

Policy itself is totally devoid of any substantive, content-based rules for when a publication may

permissibly be rejected.  *See* Institution Supp. FLM 5266.11C (Doc. 31-3).  Indeed, BOP

continues to insist that it can censor *any* publication that it deems "detrimental to the security,

good order, or discipline of the institution or . . . might facilitate criminal activity."  *Id.* ¶ 25

(quoting Doc. 31-2 at 2) (internal quotation marks omitted).  Thus, a live dispute remains

regarding whether BOP's past censorship of *Prison Legal News* under this policy violates the First Amendment.  *See also* Reply at 6–8.

For example, the July 2013 issue of *Prison Legal News* was rejected based on information from a *published* decision of the Tenth Circuit.  *See* Compl., Ex. A (Doc. 1-1), at 37–38.  BOP refuses to acknowledge that this issue was improperly censored, even if the Tenth Circuit decision is available to inmates through ADX's own Electronic Law Library.  To the contrary, the Warden has maintained his authority to censor publicly available information, including information available through the law library.  Fox Decl. (Doc. 59-1) ¶ 18.  This contrasts with the statement of the previous ADX Warden that "future issues of *Prison Legal News* . . . will be more thoroughly reviewed to ensure information contained therein is not already publicly available through the Electronic Law Library or other federal publications." Pl.'s Opp'n to Mot. to Dismiss, Att. 1 (Shapanka Decl.), Ex. E (Doc. 55-6) (letter from J. Oliver to Peter A. Swanson, Esq.).  As the Magistrate concluded, the revised policy and the return of issues do not moot PLN's allegation that this and other issues were improperly censored "based upon information that is publicly available or otherwise already known to inmates," Rec. at 13, and the disagreement between two ADX Wardens on whether such information is properly censored only confirms that a live controversy exists.

Second, as the Magistrate explained, a live dispute remains with respect to the BOP's practice of rejecting entire issues of publications based on very small amounts of objectionable content.  Rec. at 15.  A typical issue of *Prison Legal News* contains between 52 and 72 pages of content, yet issues have been censored for as little as a single sentence or a single name.  *See* Shapanka Decl., Ex. A (Chapman Dep.) (Doc. 55-2) at 80:3–4.  PLN challenged this practice in

the Complaint, arguing that redaction or removal of the small amount of objectionable content would only impose a minimal burden on prison officials.  Compl. ¶¶ 35–36, 76.  As the Magistrate Judge concluded, a live case or controversy remains with respect to whether redaction or removal of objectionable content is consistent with the First Amendment, because BOP has done nothing to modify this "all-or-nothing" policy.  Indeed, BOP "has not made any representations with regard to whether or not future editions of *Prison Law* [*sic*] *News* containing similar content would be rejected" wholesale.  Rec. at 16.

**b)       BOP's Objections to the Recommendation Lack Merit.**

BOP makes three primary arguments, none of which has any merit.

<u>First</u>, BOP erroneously argues that PLN's request for a declaration that the past censorship was unconstitutional is moot in light of the delivery of the eleven rejected issues. Objs. at 7.  That is not so.  As the Tenth Circuit has explained, a "claim for declaratory relief is not moot where the district court must determine whether a past constitutional violation occurred which will in turn affect the parties' current rights or future behavior."  *Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006).  Here, a declaratory judgment that the past censorship violated PLN's First Amendment rights *would* affect the current and future relationship between the parties because it would establish rules as to what content (if any) the ADX may censor in the future.  This declaratory relief alone is sufficient to establish a case or controversy.  *See Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974) (claim for declaratory relief could proceed even though subsequent events had mooted claim for injunctive relief).

Because PLN will continue to send its publication to the ADX on at least a monthly basis, this case is easily distinguishable from the cases the government cites where the plaintiffs'

9

underlying "wrong" had been remedied.  *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1975–76 (2016) (declaratory judgment would have no effect once a contract was fulfilled); *Prier v. Steed*, 456 F.3d 1209, 1213–14 (10th Cir. 2006) (declaration that an employee had a right to carry a firearm would not compel her employer to reinstate her); *Alvarez v. Smith*, 558 U.S. 87, 92–93 (2009) (declaratory judgment that a car was wrongfully seized would have no effect if the car were returned).  Each of these is inapposite because they involved a single interaction between the plaintiff and the defendant that had been completed—a declaratory judgment truly would have had no effect on the relationship between the parties.  PLN, by contrast, <u>will</u> repeatedly send issues of *Prison Legal News* to the ADX so long as any subscribers are incarcerated there.

Here, the February 2016 Policy continues to cast a shadow over PLN's access to the prison.  For example, some of the eleven rejected issues contained discussion of gang affiliations, which Mr. Chapman testified would pose a security risk.  Shapanka Decl., Ex. A (Doc. 55-2) (Chapman Dep.) at 73:15–20.  A declaratory judgment that such a discussion does not pose a security risk (because, for example, gang affiliations are already known to inmates), would affect BOP's authority to reject issues discussing this matter in future issues of *Prison Legal News*—*e.g.*, in the context of reporting on published judicial decisions in which ADX prisoners challenge their assignment to ADX, or their classifications as members of Security Threat Groups (*i.e.*, prison gangs) which affect housing block assignments.  *See, e.g.*, *Chesser v. BOP*, No. 15-cv-01939-NYW, 2017 WL 698794, at *2 (D. Colo. Feb. 22, 2017) (challenging plaintiff's placement at ADX).

Second, BOP argues, for the first time in its Objections, that PLN lacks standing to seek prospective relief.  Objs. at 8.  BOP improperly conflates the concept of standing with mootness. The Tenth Circuit has explained that "standing is determined at the time the action is brought . . . and we generally look to when the complaint was filed, not to subsequent events to determine if a plaintiff has standing." *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citation and internal quotation marks omitted); *see also Davis v. FEC*, 554 U.S. 724, 735 (2008) ("[T]he standing inquiry remains focused on whether the party invoking jurisdiction had the requisite stake in the outcome *when the suit was filed.*") (emphasis added).

At the time it filed its Complaint, PLN unquestionably had standing to seek relief under the First Amendment.  PLN had been censored at least eleven times since 2010, Compl. ¶ 22, and a favorable decision from this Court would have redressed PLN's claims.  BOP's motion to dismiss relies solely on events subsequent to the filing of the case, and thus raises the issue of mootness—not standing.  *See WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1182 (10th Cir. 2012) ("Mootness usually results when a plaintiff has standing at the beginning of a case, but, due to intervening events, loses one of the elements of standing during litigation.").  As the Tenth Circuit has explained, this distinction is "significant" because "although the plaintiff bears the burden of demonstrating standing, the defendant bears the burden of proving mootness"—a burden that "is even greater when the defendant moots the case by voluntarily ceasing its offending conduct."  *Id.* at 1183.

In arguing that "PLN cannot show it has standing to seek" injunctive relief, Objs. at 9, BOP improperly attempts to shift the burden of proof to PLN.  The question is whether **BOP** has

met its "heavy" burden to show its post-suit actions have mooted PLN's requests for relief.  BOP has failed to meet this burden.[3]

Third, with respect to mootness, BOP argues that the Magistrate Judge erred because the "capable of repetition" exception is inapplicable.  Objs. at 9–11.  But neither the Magistrate nor PLN invoked this exception.  Nevertheless, BOP asserts that the Magistrate's ruling could only be justified under this exception, which BOP then argues does not apply.

BOP's straw-man argument disregards the Magistrate's reasoning.  The Magistrate rejected BOP's mootness argument not because the challenged practice is short-lived in nature and thus may evade review, *see Roe v. Wade*, 410 U.S. 113, 124 (1973), but because the policy change "does not have any impact on many of the violations alleged" in the Complaint.  Rec. at 12.  BOP contends that it has changed its "name-alone" policy, which was the "practice that led to the rejections at issue in this case."  Objs. at 11.  But this does not resolve whether (a) the eleven rejected issues constituted legitimate security risks and thus were properly rejected even aside from the "name-alone" policy; or (b) the ADX's practice of rejecting entire issues rather than making redactions complies with the First Amendment.  Absent a change to its definition of a security risk that would exclude the eleven rejected issues, or an agreement to stop its all-or-nothing rejection practice, BOP has failed to carry its burden on mootness.

### 2.    The Voluntary Cessation Exception to Mootness Applies.

---

[3] BOP's reliance on *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 493 (10th Cir. 1998), is misplaced.  There, the plaintiff could not make the "adequate showing," *at the time the complaint was filed*, that she would reapply to the university and be subject to the disputed admissions policy again.  *Id.* at 493.  Here, PLN has shown that it is a monthly magazine that will continue delivering to subscribers at ADX, and thus will be subject to the disputed censorship policy, on a monthly basis for the foreseeable future.  Compl. ¶¶ 1, 11; Opp'n at 5, 10.

BOP argues that the voluntary cessation of illegal conduct exception to mootness does not apply to this case.  Objs. at 11.  At the outset, BOP is wrong that the Magistrate Judge did not adopt the voluntary cessation argument.  The Magistrate Judge discussed the legal standard for voluntary cessation, explaining that "[v]oluntary actions will moot litigation if . . . '(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  Rec. at 11 (citing *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010)).  The Magistrate goes on to state, "Applying *these standards*, the Court cannot conclude that the February 2016 change in the ADX institution supplement renders Count One constitutionally moot."  *Id.* at 12 (emphasis added).

As the Magistrate concluded, the doctrine does apply here, because BOP has failed to meet "the formidable burden of showing that it is absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur."  *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016) (quoting *Already*, 133 S. Ct. at 727).  Neither the February 2016 policy change nor the return of censored issues were initiated until after PLN filed this lawsuit, and the issues themselves were not returned until March 2017—more than a year-and-a-half into the litigation.  Nor was the instant case PLN's first communication with BOP regarding unlawful censorship.  PLN engaged in months of pre-suit communications with then-ADX Warden John Oliver and at least four formal appeals to the BOP Regional Director.  Compl. ¶¶ 41–47, 50; Shapanka Decl., Exs. B, D (Docs. 55-3, 55-4).  Warden Oliver's responses to PLN's letters refused to acknowledge the improper nature of ADX's censorship and reasserted BOP's authority to reject publications.  *See* Shapanka Decl., Exs. C, E (Docs. 55-4, 55-5).  Having had ample opportunity

to change its behavior before suit, BOP has failed to show that its post-suit actions are not merely a "reluctant submission" subject to the voluntary cessation exception. *Brown*, 822 F.3d at 1167.

Nor does it matter whether or not BOP acted in good faith when it changed the policy. A case is only moot if "the allegedly wrongful conduct could not reasonably be expected to recur." *Already*, 133 S. Ct. at 727. As the Tenth Circuit explained in *Brown*, this analysis does not depend on "whether a government official has acted out of tactical motives." 822 F.3d at 1177 (citing *Beta Upsilon Chi Upsilon Chapter at the Univ. of Fla. v. Machen*, 586 F.3d 908, 915 (11th Cir. 2009) ("We are not concerned with [the defendant's] motivation for changing its . . . policy, but only with whether a justiciable controversy exists.")). Regardless of motive, if "the defendant 'retains the authority and capacity to repeat an alleged harm,'" the case is not moot. *Porter v. Clarke*, No. 16-7044, 2017 WL 1103010, at *5 (4th Cir. Mar. 24, 2017) (holding that a change in policy by the Virginia Department of Correction was not moot where the government retained the "authority and capacity" to revert to its old policy, and has not committed to never resuming the prior practice).

BOP argues that a drop in censorship at ADX to "a tiny fraction of the number of incoming publications" since the adoption of the February 2016 Policy shows that PLN's risk of future censorship is speculative. Objs. at 12. But the drop in rejections is not accompanied by any change to the ADX's definition of what constitutes a security risk (besides, perhaps, the name-only policy). Even assuming, *arguendo*, that BOP is currently applying a constitutionally appropriate definition, the failure to commit to this definition leaves BOP free to revert to a broader interpretation if this case is dismissed, and to censor the same or similar content as contained in the eleven rejected issues.

14

The voluntary cessation exception also applies to the purported elimination of the name-only policy.  BOP refuses to put that policy in the institution supplement—the document that embodies ADX's censorship policies.  Fox Decl. ¶ 16.  According to the Warden, a written policy would confuse ADX personnel, who may misunderstand the policy as *requiring* the acceptance of any publication that mentions an ADX inmate or staff member.  *Id.* ¶ 19.  This explanation is belied by the fact that such personnel purportedly receive training on the censorship policy and are otherwise trusted to apply it.  But in any case, the failure to memorialize this in writing leaves open the possibility that, in the future, the practice could be resumed.

Finally, BOP's unlawful censorship of *Prison Legal News* can reasonably be expected to recur, because it *has already recurred* under similar circumstances.  In 2003, PLN filed a lawsuit against the ADX warden alleging that beginning in March 2001, ADX rejected issues of *Prison Legal News* because, *inter alia*, they mentioned ADX inmates.  Shapanka Decl., Ex. F (Doc. 55-7).  But after PLN voluntarily dismissed the case in 2005, BOP resumed censoring issues of *Prison Legal News* in 2010 on the ground that the issues "discussed an ADX or Bureau inmate, or Bureau staff member."  Mot. at 2–3.  The fact that ADX has previously resumed censorship following a litigation-induced promise not to censor belies BOP's present claim that any threat of future censorship of *Prison Legal News* is no more than "speculative."  Objs. at 14.

**B.      PLN's First Amendment Claim Is Not Prudentially Moot.**

BOP spends several pages arguing that the Court should dismiss the case as prudentially moot (including making several arguments not in its motion).  As an initial matter, the Supreme Court recently made clear that federal courts have a "virtually unflagging" "obligation to hear

and decide cases" within their jurisdiction.  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013) (internal quotation marks omitted)).  In *Lexmark*, the Court stated that where constitutional and statutory requirements are met, a court "cannot limit a cause of action that Congress has created merely because 'prudence' dictates."  *Id.* at 1388.  Because, as described above, this case is not moot as a constitutional matter, the Court should not decline jurisdiction on prudential grounds.  *Id.*

First, contrary to BOP's assertions, nothing about this case is "abstract" or "unclear." PLN's Complaint raises concrete legal and factual issues as to whether the rejection of eleven issues of *Prison Legal News* censored between 2010 and 2014 was constitutionally permissible—*i.e.*, whether the eleven rejected issues constituted a security threat at ADX at the time they were published.  This is not an "abstract" or "hypothetical" legal question.  The Constitution requires that ADX demonstrate a reasonable relationship between censorship and a legitimate penological interest.  *See Turner*, 482 U.S. at 87.  PLN's Complaint alleges that BOP cannot demonstrate such a relationship with respect to the rejected issues, and this allegation is a well-pleaded First Amendment claim ripe for judicial resolution.  This Court can conduct a trial to hear evidence from BOP and PLN concerning whether BOP demonstrated the "reasonable relationship" between each rejected issue of *Prison Legal News* and a legitimate penological interest—at the time of such rejection—required to pass muster under the Constitution.  Any relief, whether declaratory, injunctive, or both, would be based on the Court's specific findings and would give prospective effect to findings of past unconstitutionality.

Second, BOP's arguments regarding the specific relief PLN may obtain are incorrect and premature. If this Court—after discovery and trial—determines that ADX improperly censored the eleven rejected issues of *Prison Legal News*, it has the power to grant an injunction against "similar" violations in the future. *City of L.A. v. Lyons*, 461 U.S. 95, 111–12 (1983) (explaining that there is no entitlement to an injunction "absent sufficient likelihood that [plaintiff] will again be wronged in a similar way"). Indeed, the very "purpose of an injunction is to prevent future violations[.]" *Roe v. Cheyenne Mountain Conference Resort, Inc.*, 124 F.3d 1221, 1230 (10th Cir. 1997) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Although BOP suggests that it would be impossible to fashion injunctive relief in this case, the Court need not resolve precisely the scope of a potential injunction at the motion to dismiss stage. However, prospective relief for PLN could take several forms. For example, if after discovery and trial, this Court finds that it would not be unduly burdensome for BOP to redact or remove redact or remove offending content from issues of *Prison Legal News*, it could order BOP to engage in such redaction or removal. Moreover, if this Court finds that censorship of information contained in published federal court decisions that bear directly on a prisoner's conditions of confinement and may prove useful to his preparation of a legal case violate the First Amendment, it could fashion an injunction that requires inmates to receive access to publications that reprint that information. The Court could also simply prohibit the censorship of publications based on information contained in a description of a federal court case.

Regardless of the hypothetical injunction PLN or BOP might conjure up *ex ante*, adjudication after discovery and trial of PLN's as-applied challenge will allow the Court to fashion appropriate relief based on specific findings with respect to each rejection that violates

the Constitution.[4]  For the same reason, BOP's theoretical injunction against censorship of all "publicly available" information, Objs. at 14, is a straw man: PLN has not requested such relief.

Third, BOP's suggestion that the Court requires PLN to wait for the *next* rejection before seeking prospective relief is inefficient, and would cause PLN ongoing harm.  As the Magistrate recognized at oral argument, there is a time value to news, and timely delivery of a news publication is essential to both the publication's mission, and to its subscribers' interest in receiving timely information.  Accordingly, each time an issue of *Prison Legal News* is rejected improperly, there is harm to both PLN and its subscribers resulting from the violation of their constitutional rights.  Further, requiring PLN to bring a new lawsuit each time BOP censors an issue—even if the rejection is later overturned by a court, or if BOP delivers the issues to subscribers in the shadow of litigation—is an inefficient use of the Court's resources and a significant burden on a small nonprofit like PLN.  The Court can and should adjudicate the constitutional limits of BOP's censorship power in this case.

Nor is BOP's argument that "the special deference offered to the BOP . . . supports finding this case prudentially moot" persuasive.  Objs. at 18.  While "the remedial commitments of the coordinate branches of the United States government bear special gravity," *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012), the deference offered to federal agencies cannot be unlimited.  BOP has shown repeatedly that it will censor *Prison Legal News* on unconstitutional bases, that it will refuse to make its remedial commitments in writing,

---

[4] BOP's argument that the Prison Litigation Reform Act (PLRA) would so significantly limit the relief in this case that the Court should dismiss PLN's claims under the prudential mootness doctrine is a red herring.  Even assuming, *arguendo*, that the PLRA is applicable, it does not prohibit the Court from entering an injunction, but rather only requires that the injunction be narrowly tailored.  18 U.S.C. § 3626(a)(1)(A).

and that it will ignore PLN's pleas for accountability in its censorship decisions.  Rather than

"support the Court staying its hand here," Objs. at 18, these factors should compel the Court to

exercise its jurisdiction to bring constitutional oversight to the BOP.

## II.   BOP's Mootness Challenge to the Due Process Claim Should Be Rejected.

For the first time in its Objections, BOP argues that PLN's procedural due process claims

are moot, as BOP has since delivered to ADX prisoners the eleven magazines it had rejected.

Objs. at 19.  BOP "does not object to the recommendation to deny its Rule 12(b)(6) motion to

dismiss the procedural-due-process argument," *id*. at 19 n.6, instead relying entirely on its new

mootness argument.  The Court should reject this argument.

A procedural due-process claim may be mooted if the plaintiff receives the "precise

remedy he has requested."  *Veal v. Jones*, 349 Fed. App'x. 270, 272 (10th Cir. 2009).  BOP has

done nothing to address the procedural concerns raised by PLN's complaint; BOP rests its entire

mootness argument on its delivery of eleven magazines that it previously censored.  The delivery

of these magazines, however, does not provide to PLN the "precise remedy [it] has requested."

*Id*.  In its Prayer for Relief, PLN also requested, *inter alia*, a declaration that BOP's censorship

and lack of due process violates the Fifth Amendment and a permanent injunction requiring

BOP, as to any future censored issues, to provide PLN with timely and detailed notice, a timely

opportunity to be heard and contest the decision, and to retain censored issues until a resolution

of PLN's administrative appeals.  Compl. at 16.  BOP has not committed to providing any

greater detail in its notices, or any of the other procedural protections PLN has requested in its

Complaint.  "Where a plaintiff receives less than the complete relief he seeks, his claims are not

moot." *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1235 (D.N.M. 2011) (citing *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248 (10th Cir. 2004)).

## CONCLUSION

For the foregoing reasons, the Court should adopt the Magistrate Judge's Recommendation and deny BOP's motion to dismiss.

DATED:        April 4, 2017

/s/ Matthew S. Shapanka
Peter A. Swanson
Stephen W. Kiehl
Matthew S. Shapanka
Covington & Burling LLP
One CityCenter, 850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
FAX: (202) 662-6291
E-mail: pswanson@cov.com
         skiehl@cov.com
         mshapanka@cov.com

*Of Counsel:*
Elliot Mincberg
Washington Lawyers' Committee for
Civil Rights & Urban Affairs
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Email: elliot_mincberg@washlaw.org

Respectfully Submitted,
Steven D. Zansberg
Levine Sullivan Koch & Schulz LLP
1888 Sherman Street, Suite 370
Denver, CO 80203
Telephone: (303) 376-2409
FAX: (303) 376-2401
E-mail: szansberg@lskslaw.com

Sabarish Neelakanta
Human Rights Defense Center
PO Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Email: sneelakanta@humanrightsdefensecenter.org

David M. Shapiro
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
Telephone: (312) 503-0711
Email: david.shapiro@law.northwestern.edu

*Attorneys for Plaintiff Prison Legal News*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of April, 2017, I electronically filed the foregoing with the Clerk of the Court using the ECF/CM electronic filing system, which will send electronic notification to all counsel of record.

*/s/ Matthew S. Shapanka*
Matthew S. Shapanka