IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

　　Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

　　Defendant.

## BUREAU OF PRISONS' REPLY IN SUPPORT OF THE COURT'S ORDER [DOC. 71]

The Court has not vacated its order dismissing this case, nor should it.[1] The Court got the facts right. It got the law right. There is no live controversy between PLN and the BOP.

The Court correctly found, based on the undisputed evidence, that the claims PLN brought in this lawsuit are moot. Neither PLN nor the Magistrate Judge disputed the evidence showing that the ADX eliminated the former "name-alone" rejection practice. That abolished practice was the reason for the past rejections of PLN's magazine and the impetus for this lawsuit. The BOP ensured the demise of the old practice by completely overhauling the procedures for reviewing publications at the ADX. Hard evidence shows that, applying these enhanced review procedures, the ADX complies with the standard for reviewing publications established by federal regulation. *All* publications, not just PLN's, are delivered unless their content is detrimental to the security of the prison or might facilitate criminal activity.

---

[1] PLN states that the order granting the motion to dismiss (Doc. 71) was vacated, *see* Doc. 76 at 1, but the Court vacated only the *Judgment* (Doc. 72) and not the *order*. *See* Doc. 74 (specifically referencing the continued existence of the order and giving PLN permission "to file a response in order *to address the Court's March 28, 2017 Order*") (emphasis added).

PLN has pointed to no rejections of any of its issues since 2014. Rather, it explains that it seeks a forward-looking declaration "establish[ing] *rules* as to *what content (if any)* the ADX may censor in the future." Doc. 76 at 9 (emphasis added). This request for broad relief based on potential future rejections of *Prison Legal News* relates to speculative content, of uncertain length, sent to unidentified inmates, where the hypothetical rejection would be based on as-yet-unknown penological concerns, under unknown circumstances at the institution, at some unknown point in the future. PLN does not have standing to seek this kind of sweeping prospective relief. In addition, considerations of prudence and comity for the remedial actions of a coordinate branch of the federal government support the Court's refusal to consider PLN's request for this expansive relief. The Court properly declined PLN's invitation to take on, under these undefined circumstances, "the role of executive policy maker for the BOP." Doc. 71 at 10.

## UNDISPUTED FACTS RELATED TO PLN'S CLAIMS

PLN brought First Amendment, due-process, and APA claims that challenged past rejections of its magazine at the ADX and that sought delivery of the issues, as well as a declaration and broad prospective relief.[2] This Court evaluated the undisputed evidence and concluded that it lacks subject-matter jurisdiction to award any of the relief that PLN sought. The Court is correct.

The Court defined the proper framework for analyzing subject-matter jurisdiction here:

> This case arises with respect to eleven issues of *Prison Legal News* magazine that were rejected between 2010 and 2014 and, accordingly, not delivered to inmates at the ADX on the *sole* basis of the magazine's having identified and discussed ADX or BOP inmates or staff members—the then-screening practice at the ADX.

Doc. 71 at 7 (emphasis in original). Because the name-alone practice is the reason that PLN's

---

[2] PLN sought (1) an order requiring the delivery of the previously rejected issues to ADX inmates, Doc. 1 at ¶ B(i); (2) a declaration that the prior rejections violated the First and Fifth Amendments and the Administrative Procedure Act; *id.* ¶ A; and (3) broad prospective relief mandating how the BOP must evaluate and process future incoming publications at the ADX. *Id.* ¶¶ B(ii), C.

magazines were rejected, the jurisdictional analysis hinges on the elimination of that practice. The Court correctly concluded, based on the unrefuted evidence, that the name-only practice is defunct.

The Court found that the ADX eliminated the practice by "fundamentally revis[ing] its official policies and procedures with respect to review of publications." Doc. 71 at 7 (citations omitted); *see also* Doc. 31-3 ("February 2016 Policy")). The Court summarized the voluminous supporting evidence submitted by the BOP, including a detailed description of the procedural changes. The Court took note of the mandatory review of every proposed rejection by ADX Special Investigative Services personnel and ADX attorneys. Doc. 71 at 8. The Court emphasized that, "without agreement from ADX Legal services," *no* recommendation for rejection can be forwarded to the Warden, and that all personnel involved in the publication-review process are required to attend quarterly training conducted by ADX attorneys, who specifically instruct ADX personnel that "a publication may not be rejected solely because it discusses [a BOP] staff member or inmate." *Id.*

The Court also acknowledged the critical testimony of two high-level ADX officials, including the ADX Warden, who swore under penalty of perjury that "the ADX will not utilize the fact that an incoming publication discusses an ADX or Bureau inmate, or Bureau staff member, standing alone, as a basis to find that the incoming publication is 'detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity" under 28 C.F.R. § 540.71(b). *Id.* The Tenth Circuit has emphasized that such a declaration is compelling evidence in support of mootness. *Brown v. Buhman*, 822 F.3d 1151, 1171 (10th Cir. 2016), *cert. denied*, 137 S. Ct. 828 (2017) (where official publicly adopts a governmental policy under penalty of perjury, the risk that the official "will revoke or ignore the [policy] is minimal at best, and certainly not enough to sustain a live case or controversy").

After the BOP adopted the February 2016 Policy, it reviewed previously rejected issues of

3

PLN's publication "under the new policy. Each has been approved. Each has been delivered to ADX inmates. No issue of Plaintiff's publication has been rejected since April 2014." Doc. 71 at 8. The issues of *Prison Legal News* that post-date April 2014—and which have been delivered—contain numerous articles identifying BOP inmates or staff members by name and, in many cases, vociferously criticizing the BOP. Doc. 66-2.

## THE COURT LACKS SUBJECT-MATTER JURISDICTION OVER PLN'S CLAIMS

I.  **The Court correctly found that it does not have subject-matter jurisdiction over the First Amendment claim challenging the rejection of PLN's magazines.**

   A.  **PLN's demand for delivery of the rejected magazines is moot.**

The Court correctly concluded that the delivery of the previously rejected magazines "moots Plaintiff's request for injunctive relief of '"compelling Defendant and its agents to deliver all past issues of *Prison Legal News* that have been previously censored and withheld from PLN's subscribers at ADX."'" Doc. 71 at 9 (quoting Doc. 1 at 16 ¶ B(i)). PLN does not dispute this. Instead, it focuses on its desire for declaratory and prospective relief to govern the BOP's future practices.

   B.  **PLN's demand for a declaration about the constitutionality of the past rejections is moot because those issues have been delivered and the BOP abolished the practice that prompted those rejections.**

A declaration that the BOP violated the law when it rejected the eleven issues of *Prison Legal News* would be wholly without effect in the real world and amount to nothing more than an advisory opinion. *Rio Grande Silvery Minnow v. Bureau of Recl.*, 601 F.3d 1096, 1109-10 (10th Cir. 2010) (declaratory judgment not an advisory opinion when it settles "some dispute which affects *the behavior of the defendant toward the plaintiff*") (emphasis added). That is because the BOP changed course, abolished the practice that prompted the rejections, adopted new procedures, and provided the relief requested (delivering the magazines). As this Court put it, "Plaintiff seeks . . . relief with respect to practices no longer employed (rejection based on mere identification or discussion of an

4

inmate or staff member)," and that means "the matter is moot."  Doc. 71 at 9; *see also* Doc. 66 at 7-8 (analyzing why request for declaratory relief related to past rejections cannot support jurisdiction).

PLN fails to show that a declaration that the past issues should have been accepted would affect the BOP's review of future, different issues.  A declaration about past conduct is not an injunction that governs future conduct.  PLN also fails to take into account the fact that the magazines were rejected for a *reason*, and that reason was the ADX's routine adherence, in the past, to the now-abolished name-alone rejection practice.  The Tenth Circuit has emphasized that when a governmental policy is eliminated or replaced, the Court loses jurisdiction to issue a declaration about actions taken pursuant to the supplanted policy.  *Silvery Minnow*, 601 F.3d at 1111-12 (request for a declaration that certain federal agency regulations were "legally infirm" was moot; the court was "not situated to issue a *present* determination with real-world effect because those regulations no longer are operational—for all material purposes, they no longer exist") (emphasis in original).[3]

Here, as with the supplanted regulations in *Silvery Minnow*, the name-alone practice that was the reason for the past rejections of *Prison Legal News* is "no longer . . . operational."  *Id.*  There is no "substantial controversy, of sufficient immediacy and reality, to warrant the issuance of a declaratory judgment."  *Id.* at 1111 n.12 (quotations omitted).  At this point, the "legal interest impacted by the litigation" of PLN's request for declaratory relief would be nothing more than "simply the satisfaction" of PLN obtaining a declaration that it "was wronged" in the past.  *Green v. Branson*, 108

---

[3] The cases PLN cites, Doc. 76 at 4, are not relevant here because those cases involved challenges to existing governmental policies.  *Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) (claim for declaratory relief not moot in case where city denied parade permits to protesters and there was no evidence that city had changed the ordinance or practices regulating issuance of permits); *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 123 (1974) (claim for declaratory relief not moot where the subject of the action was a "fixed and definite" governmental policy that "has not ceased").  Here, in contrast, no issue of *Prison Legal News* has been rejected at the ADX since the new procedures were adopted, and the ADX eliminated the old practice.

5

F.3d 1296, 1299 (10th Cir. 1997).  That is not a legally proper declaration.

The fact that PLN will continue to send new (though different) issues of its magazine to ADX subscribers does not show that a declaration would control those future issues.  Doc. 76 at 10.  Mootness is not judged by whether the parties may have *any* future interactions; the environmental activists who sued in *Silvery Minnow* were almost certain to have repeated contact with the Bureau of Reclamation, and inmates who bring claims against the BOP will continue to be subject to its control.  *Jordan v. Sosa*, 654 F.3d 1012, 1033 (10th Cir. 2011) (action challenging ban on publications featuring sexually explicit material rendered constitutionally moot by inmate's transfer to another BOP facility).  Mootness is judged by whether there is a live case or controversy between the parties.  *Clapper v. Amnesty Int'l, USA*, 133 S. Ct. 1138, 1146 (2013) ("no principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies").  What is significant here is the evidence showing that PLN's magazine will *not* be rejected for the reason that triggered this lawsuit, and that the possibility of rejections for some other reason is "far too speculative to support a claim for declaratory relief.  Any such relief would amount to an advisory opinion regarding the scope of [the BOP's] discretion and such an opinion would clearly be improper."  *Silvery Minnow*, 601 F.3d at 1112.

Indeed, PLN recognizes that even after the return of the past issues, the ADX Warden "continues to insist that [the BOP] can censor *any* publication that it deems detrimental to the security, good order, or discipline of the institution or might facilitate criminal activity."  Doc. 76 at 7 (internal quotation marks and ellipsis omitted) (emphasis in original).  Of course the BOP can do this, and would do after any declaration.  The Warden is authorized to do so by federal regulation.  *See* 28 C.F.R. § 540.71(b).  Although PLN repeatedly calls this security review of incoming materials "censorship," the Supreme Court has approved the use of this discretion by prison officials in

6

reviewing incoming materials. *See, e.g., Thornburgh v. Abbott*, 490 U.S. 401, 416 (1989) ("When the regulations at issue concern the entry of materials into the prison, we agree with the District Court that a regulation which gives prison authorities broad discretion is appropriate.").

### C. The Court correctly found that PLN lacks standing to seek broad prospective relief with regard to future rejections.

PLN confirms that it seeks broad, contextless prospective relief that is untethered to the actual reason for the past rejections of its magazines. It seeks an injunction "establish[ing] rules as to *what content (if any)* the ADX may censor in the future." Doc. 76 at 9 (emphasis added). It wants the BOP to agree, in advance, to an "affirmative policy change that would govern its determination of what constitutes a legitimate security threat at ADX[.]" *Id.* at 7.[4]

The Court correctly found that PLN lacks standing to pursue "broad-based relief with respect to a hypothetical rejection at some unknown point in the future on a basis not known at this time." Doc. 71 at 9 (PLN "suffers from a lack of standing with respect to these ill-defined matters"). As this Court found, PLN does not have standing to pursue prospective relief "unmoored from the prior bases for rejection" of its magazines. *Id.* at 10. And even if it did, the circumstances here show that the Court acted properly in staying its hand and declining to impose immutable rules governing how ADX Wardens must respond to future security threats.

PLN cannot meet its burden to establish standing because it has presented no evidence demonstrating a "real, impending or immediate threat of injury" of its magazine being censored in the future. *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983), and *Buchwald v Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 493 (10th Cir. 1998)); *see also Colo. Outfitters Ass'n v. Hickenlooper*, 823

---

[4] PLN acknowledges that the BOP has "perhaps" agreed to eliminate the name-only practice. Doc. 76 at 7. But that practice is the reason it brought this lawsuit. The BOP does not have to agree to any other change in order for PLN's claims to be moot.

F.3d 537, 544 (10th Cir. 2016) (plaintiff bears the burden of establishing standing). Indeed, all of the evidence in the record—the BOP's elimination of the name-alone practice, the delivery of the previously rejected issues, the ADX's demonstrated adherence to the standards in 28 C.F.R. § 540.71—shows that PLN does not face an imminent threat of future injury.

"Without the requisite threat or immediacy of injury, Plaintiff lacks standing." Doc. 71 at 9-10 (internal citations omitted). Given the absence of any withholding of PLN's issues since 2014, PLN has not shown that it faces an imminent rejection of an issue that contains "publicly available" information, or an issue that contains "similar" content to that in the previously rejected magazines, or of being subjected to the practice of withholding, rather than redacting, a publication that contains objectionable material.

PLN contends that the BOP (and, so too, this Court) conflate the concepts of standing and mootness. Doc. 76 at 11. That is incorrect. As this Court found, claims based on the rejection of PLN's magazines pursuant to the former name-alone practice are <u>moot</u> because "[t]he change in policy has removed the practice as to which relief was sought," and because the BOP delivered the magazines. Doc. 71 at 9. The curtain has fallen on those claims. But <u>standing</u> relates to Plaintiff's requests for relief regarding uncertain future events that *might* happen, some day—that the ADX might, at some point in the future, reject material that is "publicly available" or material that PLN might deem "similar" to the previously rejected material, or that the ADX might withhold an entire issue rather than redacting the objectionable material. *See* Doc. 66 at 12-13, 15-16. It is these uncertain future claims, which will arise under entirely different circumstances and without reference to the defunct name-alone policy, for which PLN must establish standing, which it has not.

### D. The Court was correct to consider these claims prudentially moot.

The Court also evaluated these speculative matters under the prudential mootness doctrine.

8

Doc. 71 at 10 (assessing "the possibility (considered by the Magistrate Judge) of future rejections of Plaintiff's publications because of 'similar content' to that which triggered past rejections, rejections based on matters which could be discerned from some other public record, and whether redactions should be required in all future instances of rejection (rather than rejection of the entire magazine)"). The Court correctly observed that "these possibilities lack any context.  And without context to decide a legal issue, the Court would effectively be placed in the role of executive policy maker for the BOP." *Id.*  Given the complete absence of information about the security context in which future rejections unrelated to the defunct name-alone policy will be made, PLN's request for prospective relief "is such a vague, uncertain, and abstract proposition that the Court finds that [it] is prudentially moot, even if it were not constitutionally so." *Id.* (citing *Jordan*, 654 F.3d at 1024).

The Court's analysis was correct.  PLN would have the Court establish bright-line rules that have nothing to do with the name-alone practice that triggered this lawsuit.  Those rules would prejudge security risks for future ADX Wardens, irrespective of the unknown content of future publications and without consideration of the unique characteristics and risks associated with unknown future inmate populations at a maximum-security prison.  Not only would awarding this relief make this Court the "executive policy maker for the BOP," it would run afoul of Supreme Court precedent according deference to the professional judgment of prison administrators. *Thornburgh*, 490 U.S. at 416 (according "broad discretion" to prison administrators' decisions about "entry of materials into the prison"); *Beard v. Banks*, 548 U.S. 521, 531-32 (2006) (policy restricting access to publications in long-term segregation unit was reasonable, even without "alternative means" of receiving information).

Nor is there any need for the Court to act.  The BOP's actions abolished the name-alone practice, committing extensive investigative, legal, and executive resources to the job, and improved

9

inmate access to all publishers. This is the quintessential case for honoring "the remedial commitment" of a "coordinate branch[]" of the United States government. *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1211 (10th Cir. 2012).

PLN suggests that the Supreme Court has cast doubt on the prudential mootness doctrine, Doc. 76 at 16, but that is not so. In the case PLN references, the Supreme Court found that it could not rely on "prudence" to limit a *cause of action* explicitly created by a federal statute. *Lexmark Internat'l v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (2014). That is not the "prudential mootness" at issue here, where a constitutional claim has become attenuated as a result of a government entity's actions to remedy the harm.[5]

PLN asserts the BOP must demonstrate that the previous rejections pass the *Turner* legitimate penological interest test, Doc. 76 at 16, but that is a *merits* question that presupposes jurisdiction. It contends that the Court might be able to fashion some sort of relief to address claims about future rejections, but the relief it posits consists of bright-line rules intended to supersede the Warden's authority to make individualized security judgments based on specific facts. A mandate that the Warden allow, always and under all circumstances, "information contained in published federal court decisions," Doc. 76 at 17, would ignore the obvious point that not all "published" information is benign in a prison environment—including "public" information that identifies inmates who are government informants or convicted child sex offenders, or that describes incitements to riots or violence against prison personnel. The injunctions PLN contemplates would stymie the Warden's ability to consider context when exercising correctional judgment. Indeed, there is a sound correctional basis for the Warden's decision to revise procedures

---

[5] After *Lexmark*, the Tenth Circuit continues to recognize the viability of the prudential mootness doctrine. *Brown*, 822 F.3d at 1160 n.4; *Citizen Center v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014).

rather than issuing a *diktat* about acceptable or objectionable material. Doc. 59-1 ¶ 19 (blanket statements about content may "lead to potentially objectionable incoming publications being received by the ADX inmate population without a thorough review, thus creating safety and security concerns for inmates, staff members, and the public"). The Warden decided that the better approach is to require a rigorous review by investigatory and legal staff, while also providing mandatory quarterly training in which staff are instructed that the name-alone rejection practice has been abolished. *Id.* ¶¶ 15-16.[6]

PLN claims it will be more "efficient" for it to pursue its speculative claims, rather than waiting for an actual case to arise in the future, but this argument carries no legal weight. Doc. 76 at 18. Nor does the claim that it would face a burden by filing a new case when and if an actual controversy arises. It is clearly more efficient to litigate a claim with a clearly defined context. The Court also can take judicial notice of the fact that PACER lists PLN as a plaintiff in **over 70 cases**, and PLN is obviously represented by sophisticated and able counsel in this case. The claims that PLN projects, based on possible future rejections, are "not fit for judicial resolution" now because they involve "uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Morgan v. McCotter*, 365 F.3d 882, 890 (10th Cir. 2004).

## E. The Court correctly found that the exceptions to mootness do not apply.

### 1. PLN failed to prove the capable-of-repetition exception applies.

The Recommendation against mootness rested on the finding that the February 2016 Policy "did not have an impact" on practices other than the name-alone practice—practices which the

---

[6] PLN tries to gin up a dispute between the current and former ADX Wardens about the past rejections of PLN's magazine, based on a letter that a former Warden sent to PLN's counsel in September 2015. Doc. 76 at 8. This "disagreement" is of no moment when it comes to the mootness analysis. *After* the former Warden wrote to PLN, the ADX adopted the February 2016 Policy and delivered every previously rejected issue of PLN's magazine.

11

Magistrate Judge found might be repeated in the future.  Doc. 62 at 12.  As PLN notes, the Magistrate Judge did not mention the capable-of-repetition exception (or its limitations).  But that exception is in fact the basis on which he allowed PLN's claims to go forward.  That was an error.

PLN purports not to rely on this doctrine, but nevertheless suggests throughout that past alleged wrongs will be repeated.  PLN has not met its burden to show that the exception applies. *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1215 (10th Cir. 2015).  "The 'capable of repetition' exception can hardly be said to apply where the rejection basis complained of – solely mentioning inmates or staff – is no longer ADX policy.  And whatever may be within the parameters of 'similar content,' it is not a 'repetition.'"  Doc. 71 at 10.  PLN identifies no legal error in the Court's finding.

PLN has not met its burden to prove that this is an "exceptional situation" where "(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to *the same action* again." *Am. Wild Horse Preservation Campaign v. Jewell*, 847 F.3d 1174, 1185 (10th Cir. 2016) (emphasis added).  The duration of the challenged action is not "too short to be fully litigated." *Id.* PLN can challenge any future rejection.  And, as this Court found, the elimination of the name-alone practice means that any future rejection would not be a "repeat" of the former practice.  PLN cannot show that the BOP will act "in substantially, if not identically, the same manner" as it did before.  *Compare Wild Horse*, 847 F.3d at 1186 (exception applied where BLM continued to interpret the same "Act in substantially, if not identically, the same manner" as that which triggered the prior challenged conduct).  The prior practice at issue here is gone.

### 2.     The BOP proved the voluntary-cessation exception does not apply.

This Court found that the ADX's adoption of new procedures is not a mere "voluntary cessation" of the old name-alone practice:  "[I]n light of the fact that the Warden has sworn that

12

publications will not be rejected merely for naming staff or inmates and that the new policy benefits security considerations (*see* ECF No. 59-1 at ¶ 20), the Court does not find this to be an instance of 'voluntary cessation' for the purpose of strategic manipulation . . . to avoid the litigation." Doc. 71 at 10.  That conclusion is compelled under binding Tenth Circuit law on these undisputed facts.

PLN presents nothing new for the Court to consider.  It argues again that the ADX did not adopt the February 2016 Policy until after PLN filed this lawsuit, and that the BOP has "refused to acknowledge" the allegedly "improper nature of ADX's censorship[.]"  Doc. 76 at 13.  Neither point shows that voluntary cessation applies.  Adopting the policy after PLN filed this lawsuit argues *in favor of* mootness.  *Brown*, 822 F.3d at 1171 (policy adopted during litigation may "make it more likely the policy will be followed").  And the BOP need not concede that its past decisions were somehow illegal in order for its new practices to moot PLN's claim.  *Id.* at 1177 ( "[m]ootness turns on future threats, not upon penance"; official's "continued belief in the Statute's constitutionality does not show he will disregard the statements he made to the district court under penalty of perjury").

PLN again complains that the ADX has not "memorialize[d]" the abolition of the name-alone practice "in writing."  Doc. 76 at 15.  In fact, the ADX has done more than that.  It has insisted that ADX personnel actually learn and apply the proper standards.  It has required that investigators and attorneys concur with ever proposed rejection.  These actions are a far more effective guarantee of genuine "self-correction" than a bare written statement devoid of mechanisms to implement the rule.  *Silvery Minnow*, 601 F.3d at 1118 (agency did not make "a mere informal promise" where it "established a new regulatory context for assessing the propriety of [the agency's] conduct").  And it is notable that PLN refuses to countenance the fact that the BOP *has* "memorialized" the rule against name-only rejections in the most compelling written form:  two public declarations from high-level ADX officials, submitted under penalty of perjury. Doc. 31-1 ¶

13

25; Doc. 59-1 ¶ 17.[7]

PLN wants the ADX to go beyond abandoning its past practice, and instead prospectively "commit to" "a constitutionally appropriate definition" of the exact content that it will reject, or not reject, in the future.  Doc. 76 at 14.  Such a definition cannot be generated in advance, without consideration for the unique context in which a possible rejection may arise.  That is the very reason the regulation gives the Warden discretion to determine, in context, what content is "detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity." *See* 28 C.F.R. § 540.71(b).  The Warden has committed to abide by this legal standard.  Doc. 31-1 ¶ 29; Doc. 59-1 ¶ 3.  And when he conducts the required evaluation, he has also committed to "adhere to the standard that an incoming publication will *not* be rejected solely because it discusses an ADX or Bureau inmate, or Bureau staff member." *Id.* (emphasis in original); *see also* Doc. 59-1 ¶ 17.

The undisputed facts here show that the risk that the BOP "will revoke or ignore" the requirements of the February 2016 Policy or resume the name-alone rejection practice "is minimal at best, and certainly not enough to sustain a live case or controversy." *Brown*, 822 F.3d at 1170. PLN's First Amendment claim is moot, both constitutionally and prudentially.

## II.     The Court correctly found that it lacks subject-matter jurisdiction over PLN's procedural-due-process claim.

PLN challenged the past rejections based on the process that was used in rejecting them; that claim became moot once those issues were delivered.  Doc. 66 at 19-20 (explaining that the appropriate remedy for a due-process violation is some form of additional process and analyzing cases).  "With the decision [to reject the magazines] having been reconsidered, and the issues

---

[7] The rule is also presented in writing to ADX personnel in materials disseminated at the mandatory quarterly trainings.  Doc. 59-1 ¶ 16.  Though PLN thinks that is not the right way for the Warden to conduct ADX business, Doc. 76 at 15, the Warden is authorized to make that judgment.

distributed, the outcome sought to be achieved by 'better process' has been achieved. There is nothing more to be obtained by process or otherwise with respect to the once rejected issues." Doc. 71 at 11. There is no error in the Court's conclusion. PLN does not deny that there is nothing more that additional process could provide with regard to the previously rejected issues.

Instead, PLN contends that it has not received "the precise remedy [it] has requested" in connection with "*future* censored issues"—"rejections" that are no more than a speculative possibility at this time. Since there have been no rejections of PLN's issues under the new procedures, and no rejections at all since April 2014, PLN cannot show a likelihood that there will both be a rejection, and, in addition, a related alleged due process violation of some sort. As discussed above, PLN lacks standing to pursue relief demanding procedural protections in connection with speculative rejections. PLN's "speculative chain of possibilities" is not enough to show a "certainly impending" injury. *Clapper*, 133 S. Ct. at 1150. Nor would such a claim be ripe. *See Morgan*, 365 F.3d at 890. The Court was right to refrain from considering PLN's due-process claim.

### III.  Conclusion

The Court should sustain its order and dismiss PLN's complaint in its entirety.

Respectfully submitted on April 11, 2017.

                                        ROBERT C. TROYER
                                        Acting United States Attorney

                                        s/ *Susan Prose*
                                        Susan Prose
                                        Assistant United States Attorney
                                        1801 California Street, Suite 1600
                                        Denver, Colorado 80202
                                        Tel.: (303) 454-0100
                                        Fax: (303) 454-0404
                                        E-mail: susan.prose@usdoj.gov

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on April 11, 2017, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

    Steven Zansberg
    Lance Weber
    Sabarish Neelakanta
    Peter Swanson
    Matthew Shapanka
    Elliot Mincberg
    David Shapiro
    Stephen Kiehl

                                          s/ *Susan Prose*
                                          Susan Prose
                                          United States Attorney's Office

Case No. 1:15-cv-02184-RM-STV   Document 78   filed 04/11/17   USDC Colorado   pg 16 of 16