IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Case No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS,

      Plaintiff,

v.

THE FEDERAL BUREAU OF PRISONS,

      Defendant.

---

## ORDER

---

On March 28, 2017, this Court entered an Order ("the March 28 Order"), *inter alia*, rejecting the Report and Recommendation ("R&R") of U.S. Magistrate Judge Scott T. Varholak, granting defendant The Federal Bureau of Prisons' ("defendant") motion to dismiss (ECF No. 31) ("the motion to dismiss"), denying as moot defendant's motion to stay (ECF No. 34) ("the motion to stay"), and dismissing this case. (ECF No. 71.) At the same time, the Court also entered Final Judgment in favor of defendant. (ECF No. 72.)

A day later, plaintiff Prison Legal News ("plaintiff") moved to vacate the March 28 Order and the Final Judgment on the ground that both had been entered prior to plaintiff having an opportunity to file a response to defendant's objection to the R&R. (ECF No. 73.) The same day, the Court granted plaintiff's motion to vacate, agreeing that the March 28 Order and Final Judgment had been entered before the time to file a response expired. (ECF No. 74.) In doing so, the Court allowed plaintiff until April 4, 2017 to file its response to defendant's objection, as well as to the

March 28 Order, and allowed defendant until April 11, 2017 to file a reply.  (*Id.*)  Finally, the Court

vacated the Final Judgment only.  (*Id.*)

The Court now VACATES the March 28 Order in its entirety.  This is for two principal

reasons.  First, the Court did not provide plaintiff an opportunity to respond to defendant's objection,

and thus the March 28 Order did not take into account any such response.  Second, from the Court's

perspective, the Court did not sufficiently discuss various matters in the March 28 Order, including

the mootness doctrine itself and the "voluntary cessation" exception to the mootness doctrine.

The Court now begins again, and reviews the R&R, defendant's objection, plaintiff's

response, and defendant's reply anew.

## I.      Review of a Magistrate Judge's Report and Recommendation

A district court may refer pending motions to a magistrate judge for entry of a report and

recommendation.  28 U.S.C. §636(b)(1)(B); Fed. R. Civ. P. 72(b).  The court is free to accept, reject,

or modify, in whole or in part, the findings or recommendations of the magistrate judge.  28 U.S.C.

§636(b)(1); Fed. R. Civ. P. 72(b)(3).  A party is entitled to a *de novo* review of those portions of the

report and recommendation to which specific objection is made.  *See* Fed.R.Civ.P. 72(b)(2), (3).

"[O]bjections to the magistrate judge's report and recommendation must be both timely and specific

to preserve an issue for de novo review by the district court or for appellate review."  *United States*

*v. 2121 E. 30 St.*, 73 F.3d 1057, 1060 (10th Cir. 1996); *see also See Summers v. Utah*, 927 F.2d

1165, 1167 (10th Cir. 1991) ("In the absence of timely objection, the district court may review a

magistrate's report under any standard it deems appropriate.").  Furthermore, arguments not raised

before the magistrate judge need not be considered by this Court.  *Marshall v. Chater*, 75 F.3d 1421,

1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

## II.     Factual Background

This case involves, *inter alia*, the rejection, between January 2010 and April 2014, of eleven (11) issues of plaintiff's legal news publication that is sent to prison-inmate subscribers at institutional facilities such as the Administrative Maximum Facility ("ADX") in Florence, Colorado. (ECF No. 1 at ¶¶ 11-12, 14, 22.) Plaintiff also challenges defendant's alleged failure to provide timely and adequate notice of the rejection of its publication, including the alleged failure to provide specific reasons for rejection. (*Id*. at ¶¶ 3, 45.)

Plaintiff alleges as follows. The Bureau of Prisons' regulations allow for rejection of an incoming publication if an institution determines that it is "detrimental to the security, discipline, or good order of the institution or might facilitate criminal activity. (*Id*. at ¶ 16 (ellipsis omitted)). Upon rejection of a publication, a warden is required to "promptly advise the inmate of the decision and the reasons for it." (*Id*. at ¶ 18.) The warden is also required to provide the publisher or sender of the publication with a copy of the rejection letter sent to an inmate, as regulations allow both inmates and publishers to appeal rejections. (*Id*. at ¶¶ 19-20.)

Each of plaintiff's rejected publications was rejected in its entirety. (*Id*. at ¶ 35.) For most of the publications rejected, a rejection notice stated that this occurred due to content therein referring to ADX inmates, ADX personnel, or other personnel of the Bureau of Prisons. (*Id*. at ¶ 25.) The content cited in the rejection notices constituted a "fraction" of the information contained in the rejected publications. (*Id*. at ¶ 35.)

Defendant provided no notice of a publication being rejected in November 2011. (*Id*. at ¶ 37.) Notice for some of the other rejected publications did not reach plaintiff until six to nine months after the actual rejection. (*Id*. at ¶ 38.) None of the notices provided an explanation for why the cited content was detrimental to the security, discipline, or good order of ADX. (*Id*. at ¶ 39.) Plaintiff appealed the rejection of at least four publications. (*Id*. at ¶ 41.) Each appeal was rejected in a letter from the Bureau of Prisons' Regional Director for the region covering ADX. (*Id*. at ¶ 45.) None of those letters provided specific reasons for the rejection. (*Id*.)

In June 2015, plaintiff sent a letter to, *inter alia*, the then current warden of ADX, Warden John Oliver. (*Id*. at ¶ 48.) Among other things, the letter requested that the Bureau of Prisons commit to stop "illegal censorship" of plaintiff's publications at ADX. (*Id*. at ¶ 49.) Thereafter, Warden Oliver indicated future publications that may contain personal information about an ADX inmate would be "more thoroughly reviewed" to ensure information contained in the publication was not already publicly available to inmates. (*Id*. at ¶ 50.)

On February 2, 2016, a new institution supplement regarding incoming publications was issued ("the February 2016 supplement"). (ECF No. 31-1 at ¶ 16.) The Court has reviewed the February 2016 supplement, as well as the supplements that existed previously ("the prior supplements").[1] As far as the Court can discern, the relevant paragraphs from the February 2016 supplement are B, C, and Q, while the relevant paragraphs from the prior supplements are B and C. All of the remaining paragraphs from the February 2016 supplement are essentially the same as those

---

[1] There were apparently four prior versions of the institution supplement, all of which were essentially the same with respect to the relevant provisions. (ECF No. 31-1 at ¶¶ 12-13.) The Court, thus, uses the most recent of the prior versions, dated December 8, 2014. (*See* ECF No. 31-7.)

in the prior supplements.  Because of their obvious importance to matters presented in the motion

to dismiss, the Court recites the relevant paragraphs from both, with the prior supplements first.

> B.  When the Mail Room Officer questions the acceptability of any publication, it will be forwarded to the Case Management Coordinator before referring the publication to the Warden.
>
> C.  The Case Management Coordinator or designee will review each individual publication and[,] if rejection is recommended, will have a letter prepared for the Warden's signature.

(ECF No. 31-7 at ¶¶ B, C.)

********

> B.  The receiving Correctional Systems Officer will review all incoming publications for potentially objectionable content in accordance with 28 C.F.R. § 540.70 *et seq.*  If content is preliminarily deemed objectionable by the receiving Correctional Systems Officer, the objectionable incoming publication will be forwarded to the Special Investigative Services (SIS) Department for additional review in accordance with 28 C.F.R. § 540.70 et seq.  The SIS Department will review each individual incoming publication and, if rejection is recommended, draft a letter prepared for the Warden's signature.  All recommended rejection letters must notate, in writing, specific objectionable pages and content, as well as the national policy and Code of Federal Regulations citation.
>
> C.  Prior to being sent to the Warden for formal action, all recommended rejection packets will be forwarded to the Legal Services Department for review.
>
> Q.  The Legal Services Department will conduct quarterly training with Correctional Systems Department and Special Investigative Services Department staff regarding the procedures outlined in Program Statement 5266.11 and this supplement.

(ECF No. 31-3 at ¶¶ B, C, Q.)

Personnel in the Special Investigative Services ("SIS") Department have expertise in

assessing potential security risks.  (*Id.* at ¶ 17.)  If the Legal Services Department does not concur

that an incoming publication should be rejected, the rejection packet is not forwarded to the Warden and the incoming publication is not rejected.  (*Id*. at ¶ 19.)

When the warden at ADX determines that a publication's content includes material that should be rejected, the entire publication is withheld, even if the basis for rejection is "only a few pages" in the publication.  (ECF No. 31-1 at ¶ 7.)

No issue of plaintiff's publication has been rejected in either 2015 or 2016.  (*Id*. at ¶¶ 22-23.) Under the February 2016 supplement, a publication will not be rejected solely because it identifies an ADX or Bureau of Prisons inmate or staff member.  (*Id*. at ¶¶ 24-25.) Instead, when a publication identifies and discusses an ADX or Bureau of Prisons inmate or staff member, the warden of ADX will make an individualized assessment of each publication, "taking into account specific information about the inmate or staff member, the content of the article, and how that information may affect institutional security at the ADX."  (*Id*. at ¶ 26.)  The warden must conduct this analysis even if the information contained in the publication is publicly available, as the fact that information is publicly available does not automatically mean it is suitable for introduction to ADX.  (*Id*.)

The 11 rejected issues of plaintiff's publication were reviewed in accordance with the February 2016 supplement, and the warden of ADX determined that all of those issues could be provided to inmate subscribers.  (*Id*. at ¶ 28.)

## III.   The Magistrate Judge's Findings and Defendant's Objections

First, the Magistrate Judge addressed defendant's arguments that this case was moot.  The Magistrate Judge found that Count One of the operative Complaint was not rendered constitutionally moot by the February 2016 supplement.  (ECF No. 62 at 12.)  The Magistrate Judge found that the February 2016 supplement did not have any impact on many of the violations alleged in the

Complaint. (*Id*. at 12-16.) The Magistrate Judge also found that the doctrine of prudential mootness did not apply. (*Id*. at 17.) The Magistrate Judge then addressed defendant's arguments that the Complaint failed to state a claim. The Magistrate Judge found that Count One alleged a plausible claim, observing that defendant's arguments in this respect were not entirely clear and, in any event, appeared to be premature. (*Id*. at 18-22.) The Magistrate Judge next found that the Complaint alleged a plausible claim under the Due Process Clause because it alleged that defendant violated procedural safeguards in several ways. (*Id*. at 23-25.) The Magistrate Judge also found that Count Three of the Complaint alleged a plausible claim under the Administrative Procedures Act. (*Id*. at 25-26.) Finally, the Magistrate Judge addressed the motion to stay, finding that it should be denied. (*Id*. at 26-30.)

Defendant objects to the Magistrate Judge's findings that this case is not moot. (*See generally* ECF No. 66.) Defendant argues that it has provided the 11 issues of plaintiff's publication at issue, and has eliminated its "old name-alone policy" that defendant asserts prompted the rejections. (*Id*. at 4.) Defendant argues that plaintiff's request for declaratory relief is insufficient to support subject matter jurisdiction alone, and plaintiff cannot seek the broad prospective relief it allegedly requests because plaintiff does not face an imminent injury. (*Id*. at 7-9.) Defendant further argues that the voluntary cessation exception to the mootness doctrine does not apply because the 11 issues of plaintiff's publication have been provided, and there is no evidence showing that ADX is likely to resume the challenged practice of rejecting publications that mention inmates or staff. (*Id*. at 11-13.) Defendant also argues that this Court should exercise its discretion to dismiss this case as prudentially moot, and that plaintiff's due process claim is moot. (*Id*. at 13-20.)

The Court agrees with defendant that, given the breadth of its objections to the Magistrate Judge's findings with respect to the question of whether this case is moot, the best course is to review that issue *de novo*.

## IV.   Discussion

This case is not moot.  The Court reaches that finding for two principal reasons.  <u>First</u>, the February 2016 supplement changes very little if anything about ADX's treatment of incoming publications.  The Court acknowledges that the February 2016 supplement does make one principal change to the procedures governing incoming publications—the levels of review.  Under the prior supplements, a mail room employee would preliminarily review an incoming publication, which, if questioned, would then be sent to the next level of review with a case management coordinator. (ECF No. 31-7 at ¶¶ B, C.)  That was the extent of the review, as the next step was for a letter to be prepared for the warden's signature.  (*Id*. at ¶ C.)  Under the February 2016 supplement, the first level of review is performed by a correctional systems officer, and, if an incoming publication is deemed objectionable, it is then sent to the SIS Department for review.  (ECF No. 31-3 at ¶ B.)  On top of this, another layer of review is performed by the Legal Services Department.  (*Id*. at ¶ C.)

The problem for defendant is that not one part of the Complaint is premised upon ADX's incoming publication procedures having an insufficient number of review layers or with the type of employee reviewing a publication.  Those are the principal changes wrought by the February 2016 supplement.  Notably, the February 2016 supplement changes nothing about *how* an incoming publication will be reviewed.  That will still continue to be performed pursuant to 28 C.F.R. § 540.70 *et seq.* and the relevant program statement.  (*See id*. at 2 & ¶ B; *see also* ECF No. 31-7 at 2.)[2]  And

---

[2] Although the prior supplements do not state that incoming publications were reviewed in accordance with 28 C.F.R. § 540.70 *et seq.*, and more specifically § 540.71, it is undisputed that § 540.70 *et*

it is *how* plaintiff's rejected publications were reviewed—specifically the application of the governing regulation's statement that publications may be rejected when detrimental to the "security, good order, or discipline of the institution"—that is one of the main issues in this case. (*See* ECF No. 1 at ¶¶ 54, 75.)

This, of course, fails to address additional changes that are mentioned in a declaration from one of ADX's employees, Executive Assistant Todd Chapman ("the Chapman declaration").  It is these changes that make up the heart and bones of defendant's argument of mootness, as defendant's principal argument is that the so-called "name-alone policy" has been eliminated. (*See* ECF No. 66 at 4, 9, 12, 15, 18.)  The "name-alone policy," however, was not eliminated in the February 2016 supplement—there is no mention of it therein.  Instead, the "name-alone policy" appears to have been eliminated, at least for the first time (and formally), in the Chapman declaration.

Putting that aside, <u>second</u>, defendant's argument, that elimination of the so-called "name-alone policy" moots this case, mischaracterizes plaintiff's claims.  As the Court reads the Complaint, plaintiff's claims are not premised upon names alone.  Instead, plaintiff's claims are premised upon defendant considering names of inmates and staff to be detrimental to the security, good order, or discipline of ADX.  (*See* ECF No. 1 at ¶¶ 23, 25.)  The Court reads the two allegations as inextricably intertwined.  In other words, it is defendant's construction of the regulation's language as encompassing inmate and staff members' names that troubles plaintiff.  It is not simply the mentioning of names, unmoored from the governing regulation (as if the governing regulation was not a part of defendant's thinking in rejecting plaintiff's publications), that troubles plaintiff.

---

*seq.* was the relevant governing guideline (*see* ECF No. 31-1 at ¶ 4), and thus, the Court finds it hard to believe that an incoming publication reviewed pursuant to the prior supplements was not reviewed in accordance with the governing regulation.

When viewed in this light, the Chapman declaration reveals that *nothing* has changed under ADX's new policy. Notably, the Chapman declaration states that, when an incoming publication identifies an inmate or staff member, the warden of ADX will make an individualized assessment of each publication, taking into account various factors and relying upon the warden's own correctional experience and judgment. That may be a perfectly adequate way to deal with incoming publications identifying inmates and staff. That, however, is a merits question. The question, here, is whether that policy moots plaintiff's concerns. The only answer the Court can reach is that it does not because, in order to find otherwise, the Court would have to assume that, prior to the Chapman declaration, wardens at ADX did not perform an individualized assessment of such matters. Put another way, the Court would have to assume that, rather than assessing whether an incoming publication was detrimental to the security, good order, or discipline of ADX, wardens just rejected any incoming publication that mentioned an inmate or staff member.

To be clear, the Court is not prepared to assume—when it has not been affirmatively conceded or stated—that wardens at ADX *ignored* their governing regulations and presumably applied their own standards. To the extent this involves a construction of the evidence presented, the Court construes the evidence, including the Chapman declaration, against defendant in this respect. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (explaining that a court may resolve factual disputes in assessing a challenge to the Court's subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) without converting the underlying motion to dismiss into a motion for summary judgment or a Fed.R.Civ.P. 12(b)(6) motion).

Viewed in this light, the Court also does not find anything exceptional about the assertion in the Chapman declaration that no issue of plaintiff's publication was rejected in 2016. (*See* ECF

No. 31-1 at ¶ 22.)  The same is true about 2015, *when the old "name-alone policy" was allegedly in effect*.  (*See id*. at ¶ 23.)  As such, as the Court said at the outset, very little has clearly changed in defendant's policy.  Whether plaintiff will win in any subsequent merits battle over that policy is debatable at best, but that does not mean that the debate cannot take place.

Ultimately, a case is moot "when a plaintiff no longer suffers an actual injury that can be redressed by a favorable judicial decision."  *Ind v. Colorado Dep't of Corr.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quotation and internal quotation omitted).  Here, plaintiff has suffered an injury—the rejection of its publication for including, *inter alia*, names of inmates and/or staff members on the ground that the same were deemed detrimental to the security, good order, or discipline of ADX—and that may (although not necessarily will) be resolved by a favorable judicial decision—i.e., finding the inclusion in publications of inmate and/or staff names not to be detrimental to the security, good order, or discipline of ADX.

The Court reaches a similar conclusion, although for different reasons, with respect to plaintiff's procedural due process claim.  Defendant now argues that, that claim is also subject to dismissal as being moot.[3]  (ECF No. 66 at 19-20.)  Defendant argues that, because plaintiff's rejected publications have been delivered, plaintiff has received the "best outcome" that more process could yield.  (*Id*. at 19.)  Defendant further argues that plaintiff lacks standing to pursue relief related to

---

[3] The Court notes that defendant did not raise this argument before the Magistrate Judge.  (ECF No. 66 at 19 n.7.)  The Court does not condone defendant raising this argument for the first time now, especially when so much time and effort was spent in the original briefing.  As far as the Court is concerned any rule that allows defendant to do so merely wastes time (that of the Magistrate Judge) and encourages misguided lawyering.  Alas, rules appear in place to aid the misguided and dilatory lawyer.  *Cf. McZeal v. Ocwen Loan Servicing, LLC*, 679 F. App'x 674, 679 (10th Cir. 2017) (explaining that, because an argument that a magistrate judge lacked authority does not affect subject matter jurisdiction, an objection to that lack of authority may be waived).

future publications because there is no "certainly impending" injury associated with defendant's procedures. (*Id*. at 19-20.)

As for the "best outcome" argument, the Court views things differently. Defendant cites cases in this regard for the proposition that the purpose of procedural due process is to produce "procedural protections as the particular situation demands" or to give a party an opportunity to refute a charge. (ECF No. 66 at 19 (citations omitted)). The Court does not find that delivering plaintiff's prior rejected publications provides plaintiff with the procedural protections it requests or with an opportunity to refute a charge. Notably, the Complaint alleges that defendant's current procedural protections do not allow plaintiff the opportunity to refute the charge that its publications can be rejected. (*See* ECF No. 1 at ¶¶ 37-39, 45.) And there is no argument that the February 2016 supplement will change those pre-existing procedural conditions. The February 2016 supplement is entirely silent on the subjects of timeliness of notice and providing reasons for a rejection. Viewed in that light, it appears that the February 2016 supplement will change nothing about those conditions.

In addition, the Court rejects defendant's argument that any future injuries rest on a "speculative chain of possibilities." (*See* ECF No. 66 at 20 (quotation omitted)). Although the Court acknowledges that no issue of plaintiff's publication has been rejected since April 2014, the fact that the last rejection was more than three years ago is not the issue for the Court. Instead, the issue is that, *when an issue is rejected*, it is guaranteed (based on the experience of every prior rejection) that plaintiff will not receive any explanation for the rejection. (*See* ECF No. 1 at ¶¶ 39, 45.) The same level of certainty may not exist with respect to the notice (or lack thereof) that plaintiff may receive, but it still appears a strong bet that plaintiff will receive untimely notice of a rejection. (*See id*. at ¶ 38.) Moreover, although less important, this is an easy procedural fix. The February 2016

12

supplement could have easily provided for procedures that require notifications to be sent on a more timely basis, but did not.

As a result, the Court does not find that the procedural injuries alleged in the Complaint to have been rendered moot by the delivery of the rejected issues of plaintiff's publication.

Although not a necessity, in light of finding this case not to be moot, the Court chooses to address one of the exceptions to the mootness doctrine—the "voluntary cessation" exception—for the purpose of making the record clear. That is, even if the Court had found this case (and every claim) to be completely one hundred percent moot, the Court would have found that the "voluntary cessation" exception applied, and thus, kept this case alive.

"A plaintiff's claim is not rendered moot by the voluntary cessation of a challenged practice which the defendant is free to resume at any time." *Ind*, 801 F.3d at 1214. "This exception to mootness exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id*. (quotation omitted). The exception clearly applies here, as, according to defendant, it has voluntarily ceased its "name-alone policy," and the February 2016 supplement and/or the statements in the Chapman declaration could be changed at any time, just like those documents allegedly changed previous practices.

The issue here is whether an exception to the voluntary cessation exception applies. Notably, voluntary cessation may still moot a case if two conditions are satisfied: "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Ind*, 801 F.3d at 1214. "The defendant bears the *heavy burden* of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id*. (quotation and internal quotation omitted) (emphasis added). "Moreover, voluntary cessation of offensive conduct will only moot

13

litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Id*. (quotation omitted). In *Ind*, the Tenth Circuit concluded the record was devoid of evidence that a prisoner's change from administrative segregation to the general population was a "ploy" to deprive the district court of jurisdiction; instead, the evidence showed that the prisoner was placed in the general population after successfully completing required phases of administrative segregation. *Id*. The Tenth Circuit also rejected the district court's finding that there was a real possibility that the prisoner would be returned to administrative segregation, having spent more than half of his prison sentence there. The Tenth Circuit concluded that the district court's finding ignored a well-established principle that a party seeking relief, such as the prisoner, would not repeat the type of misconduct that put him at risk of injury in the first place. *Id*.

Unlike *Ind*, the Court finds that there is evidence in the record that any change in defendant's practices have been a "ploy" to avoid this Court's jurisdiction. As an initial matter, for purposes of considering the first condition defendant must satisfy, the Court will assume that past wardens at ADX ignored the governing regulation and implemented a "name-alone policy" that was not based upon detriment to the institution's security, good order, or discipline, and thus, the statements in the Chapman declaration changed that practice. Even making that severe assumption in defendant's favor, there is evidence (or at least allegations that have not been refuted) of a ploy.

It comes from the Complaint. Specifically, the Complaint alleges that plaintiff appealed the rejection of four of its publications. (ECF No. 1 at ¶ 41.) In one of those appeals, plaintiff explained that its publication reported on a published opinion from the Tenth Circuit. (*Id*. at ¶ 44.) In a letter dated September 30, 2013 upholding that rejection, the Bureau of Prisons' Regional Director stated that the publication was properly rejected as it contained information on individuals incarcerated at

ADX.[4]  (*Id*. at ¶ 46.)  In other words, rather than changing the "name-alone policy," defendant affirmed it.

The Complaint further alleges that, on June 30, 2015, i.e., again prior to initiation of this lawsuit on October 1, 2015, defendant was presented with another opportunity to correct its practices.  Notably, defendant was sent a letter, explaining that the rejection of entire issues of plaintiff's publication and the failure to provide timely and adequate notice of rejections violated the U.S. Constitution.  (*Id*. at ¶¶ 48-49.)  The letter requested that defendant stop these practices.  (*Id*. at ¶ 49.)  Did defendant do so?  No.  Instead, the then warden of ADX, Warden John Oliver, stated that future issues of plaintiff's publication would be more thoroughly reviewed to ensure that information contained in the same was not publicly available to prisoners.  (*Id*. at ¶ 50.)

To summarize, when given the opportunity *pre-suit* to change its practices, defendant chose to take a different road and stick by them.  It was only when this case began—in fact, more than ten months after initiation—that defendant decided to allegedly change course.  What is the one thing that has changed between defendant's refusal to change and its new course?  *This case.*  Thus, the Court finds that the facts here are entirely different to the facts in *Ind*, where the thing that changed was the prisoner's satisfactory completion of required phases of administrative segregation.  *See also Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) (explaining that the Circuit had no reason to question the government's good faith where it was "unlikely the government suspended [special administrative measures] on a prisoner whom it thought posed a threat of serious bodily injury to American citizens just to moot a case it won below on the merits.").

---

[4] The Court notes that the September 30, 2013 letter from the Regional Director is further evidence that the February 2016 supplement and the Chapman declaration changed nothing about defendant's past practices.  The letter expressly stated that an incoming publication could *only* be rejected if it was deemed detrimental to security, good order, or discipline, and then—*in the next sentence*—stated that a publication was properly rejected as it contained information on individuals incarcerated at ADX.

In this light, the Court finds that, based upon the unrefuted allegations of the Complaint, there is evidence in the record that defendant was effectively dragged *by this case* to allegedly change some of its practices, and that is enough for the Court to find that defendant has not met its heavy burden of satisfying this Court that its challenged practices cannot reasonably be expected to recur. Although the Court acknowledges that, despite defendant's heavy burden in this regard, the Tenth Circuit has stated that "[i]n practice," this burden "has not prevented government officials from discontinuing challenged practices and mooting a case," *see Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010), the burden must mean something however much "solicitude" is given to public servants, *see id.* at 1116 n.15.  At the very least, the Court finds that, in light of the unrefuted allegations in the Complaint, defendant is not entitled to a presumption of good faith.  *See id*.  The timing of events both pre and post-suit is simply too much for the Court to afford defendant any such presumption.

That is simply the first condition of the two conditions defendant must satisfy.  The Court also finds that defendant has failed to satisfy the second condition—interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.  First, as explained *supra*, the Court does not find that defendant's practices have changed at all in this case.  The warden at ADX is still required to consider whether the mention of an inmate or staff member in an incoming publication poses a detriment to security, good order, or discipline.  Assuming, *arguendo*, that, that practice has somehow changed, the past practice has certainly not been *completely and irrevocably eradicated*.

Even if the Court was willing to make that later assumption as well, there are still alleged violations the effects of which are still in place.  Notably, the February 2016 supplement and the Chapman declaration do nothing to change defendant's apparent belief that 28 C.F.R. § 540.71(d)

16

does not apply to it.  That provision requires a warden to advise an inmate of the *reasons* for a publication being found unacceptable.  28 C.F.R. § 540.71(d).  Nowhere does the February 2016 supplement or the Chapman declaration explain that defendant's practice of not providing any reasons for its rejections has changed.  In addition, plaintiff also challenges defendant's practice of rejecting entire issues of its publication, rather than removing purportedly offensive portions therein. (ECF NO. 1 at ¶ 35.)  The Chapman declaration makes perfectly clear that, that practice will remain notwithstanding any other changes.  (ECF No. 31-1 at ¶ 7.)  It is, thus, hard to discern how the Court could find that the all-or-nothing practice has been completely and irrevocably eradicated.

As a result, the Court finds that neither the first nor the second condition has been satisfied, and thus, the voluntary cessation exception applies here, and thus, this case has not been rendered moot by any post-suit changes that defendant may have put in place at ADX.

Accordingly, the Court DENIES the motion to dismiss because this case is not moot and/or the "voluntary cessation" applies, and ADOPTS the R&R to the extent consistent with this Order.[5]

This leaves the motion to stay.  That motion is premised solely upon this case being stayed while the Court considers whether it has subject matter jurisdiction and whether plaintiff has alleged plausible claims.  (*See generally* ECF No. 34.)  Because the Court has resolved both of those issues against defendant, the Court DENIES the motion to stay.

********

---

[5] For substantially similar reasons to those expressed herein, the Court declines to exercise its discretion to find this case prudentially moot, as, on the current record, there is nothing "attenuated" about the controversies in this case.  (*See* ECF No. 66 at 13.)  The Court also notes that defendant raises no objection to the Magistrate Judge's findings with respect to defendant's arguments that plaintiff has failed to allege plausible claims.  (*See generally* ECF No. 66.)  As a result, the Court ADOPTS those findings herein.

Having reviewed this case in its entirety, the Court does make the following observations about matters to come. As far as the Court can discern, there appears little need in this case for much, let alone extensive, discovery. Moreover, although defendant has not accepted or attempted to change all of the alleged violations in the Complaint, formal movement has been made. Notably, the policy enunciated in the Chapman declaration about performing individualized assessments of each publication, taking into account specific factors, and allowing the warden of ADX to apply his or her experience (*see* ECF No. 31-1 at ¶ 26), appears a substantial and noteworthy formal acknowledgment of defendant's practice for reviewing incoming publications. At this juncture, the Court sees little wrong with it. Undoubtedly there *may* be room to go. Not least with respect to defendant's failure to acknowledge (unlike the aforementioned practice) that it is required by regulation to give reasons for any rejection of an incoming publication, as well as the potentially weak ground that defendant's all-or-nothing policy may stand. The Court does not mean to make conclusive findings with respect to any of these matters now. The Court simply makes these observations in the hope that it will facilitate the parties' future conduct in this case.

## V.     Conclusion

For the reasons discussed herein, the Court DENIES the motion to dismiss (ECF No. 31) and the motion to stay (ECF No. 34). The Court ADOPTS the R&R (ECF No. 62) to the extent consistent with this Order, and REJECTS defendant's objections to the R&R (ECF No. 66). The March 28 Order (ECF No. 71) is VACATED and the Clerk is instructed to STRIKE the same from the record.

The parties are instructed to hold a pre-scheduling conference pursuant to Fed.R.Civ.P. 26 and file a proposed scheduling order within twenty-eight (28) days of entry of this Order. Within

seven (7) days of entry of this Order, the parties should contact the chambers of the Magistrate Judge

to arrange a scheduling conference under Fed.R.Civ.P. 16.

**SO ORDERED.**

DATED this 14th day of August, 2017.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge