# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

     Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

     Defendant.

---

**DEFENDANT'S SECOND SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES**

---

     Pursuant to Fed. R. Civ. P. 33, Defendant Federal Bureau of Prisons ("Defendant" or "BOP"), through undersigned counsel, hereby supplements its responses to Plaintiff's First Set of Interrogatories as follows:

**<u>SECOND SUPPLEMENTAL RESPONSES</u>**

     **Interrogatory No. 1:** Identify each mailing sent from PLN, including issues of *Prison Legal News*, to a prisoner at the ADX that any ADX or other BOP officer, employee, agent, representative or servant decided not to deliver to the prisoner at any point in the mail review or publication review process (whether or not such decision was later overturned) from January 1, 2005 to the present.

**<u>RESPONSE:</u>** Objection. First, the BOP objects to the interrogatory insofar as "each mailing sent by PLN" is undefined and vague. The BOP is not aware of any "mailings" other than issues of *Prison Legal News* that PLN may have sent to ADX inmates. Second, the BOP objects to the interrogatory to the extent it may seek privileged information, including information protected by

the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges.  Third, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons:  (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a); (2) only the processing of incoming publications at the ADX, and not "mail" generally, is at issue in this case; (3) only ADX procedures regarding incoming publications originally set forth in Institution Supplement FLM 5266.11C, *Incoming Publications* (February 2, 2016) (the "February 2016 Policy"), as updated in Institution Supplement FLM 5266.11D, *Incoming Publications* (May 30, 2017) (the "May 2017 Policy"), are at issue in this case, which raises claims only for injunctive and declaratory relief; and (4) in order to respond to the interrogatory as written, the BOP would be required to conduct a search of the individual files of every current or former ADX inmate for a period of almost twelve years.

The BOP maintains no electronic database that would allow it to search for information about rejections of publications at the ADX.  The BOP has not conducted a hand search of individual inmate files in preparing its response to this interrogatory.  The BOP has searched mailroom files at the ADX containing paper copies of rejection packets for incoming publications.  The BOP also searched the record database at the BOP's North Central Regional Office for information associated with Plaintiff's appeals of four of the rejections referenced in this response.

Subject to, and without waiving these objections, the BOP incorporates here its previous response to this interrogatory.  Since its previous response, the BOP has not identified any other issue of *Prison Legal News* that was not delivered to ADX inmate subscribers.

**Interrogatory No. 2:**  To the extent you contend that the rejection of any mailing identified in response to Interrogatory No. 1 was lawful, describe with specificity, for each such mailing, the complete factual and legal basis for your contention, including a detailed description of any alleged security risks posed by the mailing.

**RESPONSE:**  Objection.  First, the BOP objects to the interrogatory to the extent it seeks privileged information, including information protected by the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges.  Furthermore, asking whether the BOP's decisions were "lawful" and for the "legal basis" for the BOP's position not only implicates both the attorney-client privilege and attorney work product, but also seeks a legal opinion on an issue that is for the Court to resolve.  Second, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons:  (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a); (2) only the processing of incoming publications at the ADX, and not "mailing[s]" generally, is at issue in this case; and (3) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises claims only for injunctive and declaratory relief.  Third, the BOP does not waive its argument that PLN's claims are moot and, therefore objects to this interrogatory because the Tenth Circuit has found that whether a prior practice or action was "lawful" has no bearing on the mootness analysis.  *Brown v. Buhman*, 822 F.3d 1151, 1177 (10th Cir. 2016) ("It is not a purpose of the [voluntary cessation] doctrine to require an admission from the defendant that the now ceased conduct was illegal.  Mootness turns on future threats, not upon penance.") (quoting *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 n.9 (1st Cir. 2013)).

Subject to, and without waiving these objections, the BOP incorporates here its previous response to this interrogatory, dated January 13, 2017.  The BOP does contend that its decisions concerning the eleven previously rejected of *Prison Legal News* were in accordance with the discretionary authority accorded to the Warden under federal law, including the federal regulation that allows a Warden to exercise his correctional judgment to reject a publication that "is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity."  *See* 28 C.F.R. § 540.71(b).  The Warden's reasons for exercising his discretionary authority to reject each of the eleven issues are as set forth in the BOP's January 13, 2017, response, as well as in the rejection packets produced at BOP 52-477. Thus, "the burden of deriving or ascertaining the answer will be substantially the same for either party[.]"  *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining ... a party's business records, … the responding party may answer by … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]").

In addition to the responses previously provided, the BOP states as follows:

**October 2011**:  In the Warden's correctional judgment, the "detailed information" about inmates, some of whom were housed at the Federal Correctional Complex in Florence, Colorado ("FCC Florence"), as well as information concerning the criminal indictment of an FCC Florence staff member, were detrimental to the security, good order and discipline of the institution.  In particular, one article discussed a murder carried out by four inmates at FCC Florence, described as having been prompted by a "disrespect" issue involving the Surenos gang.  Concern exists that this murder may have been an unsanctioned hit on the victim, thus endangering the perpetrators in a prison setting.  Such information could not have been placed in rejection notices to the

4

inmates without highlighting this potential issue and increasing the risk to the inmates who were potential targets.

**November 2011**:  In the Warden's correctional judgment, an article revealing that an inmate in a United States Penitentiary had cooperated with a BOP investigation was "detrimental to the security, good order, or discipline of the institution or [might] facilitate criminal activity." Although the inmate was not identified, and was not incarcerated at the ADX at the time of the investigation, the article provided sufficient details concerning a publicly filed lawsuit to allow inmates at the ADX to identify the inmate.  Moreover, the population of the ADX is not static; ADX inmates are routinely transferred to other institutions, raising a serious concern that they would encounter the inmate-cooperator referenced in the article.  Inmates who cooperate with BOP investigations—who are viewed as "snitches"—face serious security risks in prisons, particularly at the ADX, which houses the leaders of many major prison gangs who have the authority to order hits on others.  The article itself presented the idea that correctional staff can turn bad and pose dangers to "snitching" inmates; the inmate who cooperated was allegedly attacked by a correctional officer for participating in the BOP investigation.

**June 2012**:  In the Warden's correctional judgment, an article discussing a then-ADX inmate and former BOP staff member was "detrimental to the security, good order, or discipline of the institution or [might] facilitate criminal activity."  The article detailed the inmate's history as a BOP employee and exposed his criminal background, making him a target among other inmates.  Former law enforcement personnel who are in prison face special dangers from inmates who harbor resentment toward them.  Again, putting details about the ADX inmate in the

rejection notice would have triggered the very dangers that withholding the magazine was designed to prevent.

Furthermore, the Wardens' security analyses about the past rejected issues of *Prison Legal News* were undertaken in the uniquely dangerous context of the ADX. The ADX is a correctional environment in which safety and security are maintained only by constant care and attention to a delicate balance of competing interests and priorities. The ADX houses the most violent, predatory, disruptive, and escape-prone inmates in the BOP.

This is the unusually dangerous context in which the Wardens decided that eleven past issues of *Prison Legal News* included content that was too dangerous to be disseminated. In this context, the fact of identifying inmates and staff by name is not presumptively benign—even if an inmate may be able to obtain the information from another source. That an inmate could conceivably learn the same information about a staff member or inmate through legal research or television is beside the point. The Wardens were not obliged to assume that the entire ADX inmate population will necessarily know, or take steps to discover, every fact the editors of *Prison Legal News* deem to be newsworthy. It is an equally plausible assumption that an ADX inmate will *not* know that information. The fact that a publication highlights potentially dangerous, albeit "public" information, can create risks in a violent population where most "public" information is not widely known. It was imperative for the Wardens to make predictive judgments about what *might* occur as a consequence of disseminating the magazines, and how that information *might* compromise the safety and security of staff, inmates, and the public. They exercised their correctional judgment to predict inmate behavior and to plan for the worst-

case scenario.  At the ADX, erring on the side of caution can mean the difference between life and death.

In February 2017, the current ADX Warden was able to review and decide to disseminate to inmate subscribers the eleven previously rejected issues in light of changed circumstances that have mitigated some of the risks originally identified by the reviewing Wardens.  For example, many years have passed between the original rejection dates, and many of the inmates discussed in the articles are no longer in the ADX.

**Interrogatory No. 3:**  Identify any notices of rejection sent to PLN between January 1, 2005 and the present including the dates on which such notices were mailed.

**<u>RESPONSE</u>:**  Objection.  The BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons:  (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a); (2) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises claims only for injunctive and declaratory relief; and (3) in order to respond to the interrogatory as written, the BOP would be required to conduct a search of the individual files of every current or former ADX inmate for a period of almost twelve years.  The BOP maintains no electronic database that would allow it to search for information about rejections of publications at the ADX.  The BOP has not conducted a hand search of individual inmate files in preparing its response to this interrogatory.  The BOP has searched mailroom files at the ADX containing paper copies of rejection packets for incoming publications.

Subject to, and without waiving these objections, the BOP incorporates here its previous response to this interrogatory.  Since its previous response, the BOP has not identified any other

issue of *Prison Legal News* that was not delivered to ADX inmate subscribers, and, therefore, there are no additional notices of rejection that are responsive to this interrogatory.

**Interrogatory No. 4**:  Identify all television programs, movies or motion pictures, Internet websites, newspapers, magazines, or other periodical subscriptions, books, publications, or any other media which ADX prisoners may receive, view, or otherwise access by means other than through the mail. Your response should include any media, publications, or information available through the ADX library, and the circumstances under which prisoners may access such media, including their use of the ADX library.

**<u>RESPONSE</u>**:  Objection.  The BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case because only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which seeks only injunctive and declaratory relief.  Moreover, this case does not involve access to media (television, movies, and Internet websites) generally by inmates at the ADX.

Subject to, and without waiving these objections, at the ADX, most inmates are permitted to have a television in their cells that is connected to a basic cable television channel line-up that shows television programming.  Inmates may choose to watch any programming that is available through the television channels.  The ADX Channel Line Up for Direct TV is produced at BOP 2038.

Inmates at the ADX do not have Internet access.

Periodically, the Recreation Department shows movies through the in-cell television (a closed circuit television channel specifically designated for this purpose) on a rotating schedule.

A document listing the videos that have been or will be shown at the ADX from December 26, 2016, through October 15, 2017, is produced at BOP 1986-2037.

Whether a publication can be made available to ADX inmates consistent with sound correctional judgment is evaluated pursuant to the standards set forth in Program Statement 5266.11D, *Incoming Publications*, the February 2016 Policy, and the May 2017 Policy, as well as 28 C.F.R. § 540.71(b).  *See* Defendant's Response to Interrogatory No. 2, which is incorporated herein by reference.  The books available to ADX inmates from the ADX leisure library have been found to meet these standards.  Various categories of reading books, magazines, and reference materials are available in the library.  The leisure library consists of ten separate libraries.  Each housing unit is assigned one of the libraries, with one in reserve at all times.  Current booklists available through the ADX leisure library for the various ADX housing units are produced at BOP 1819-1985.  The libraries are rotated on a quarterly basis with updates when needed.  New booklists are distributed to each inmate quarterly, specifying the books available to them.  Inmates must use the most recent booklist to request books.  *See* FLM 1542.06L, *Inmate Library Services* (March 17, 2015), produced at BOP 2134-2135.  Inmates may send a request to the Education Department, identifying the book(s) they would like to check out.  The books are then delivered to their cell.

ADX inmates may access information and documents via the Electronic Law Library (ELL).  A document describing the content of the ELL available to ADX inmates is produced at BOP 2129-2133.  For access to the ELL, inmates make a written request to housing unit officers.  At the appointed time, correctional officers escort the inmate to the ELL, which is located in the housing unit in another cell.  Access to, and the review process for, incoming publications is thoroughly explained in Mr. Chapman's declaration (*see* Doc. 31-1) and the declaration of

9

Warden Fox (*see* Doc. 59-1).  *See also* FLM 1315.07J, *Legal Activities, Inmate* (July 19, 2017), produced at BOP 2041-2044; BOP's Response to Requests for Production Nos. 8-9.

**Interrogatory No. 5**: Describe the process, procedure, or manner by which the media, publications, and information identified in your response to Interrogatory No. 4 are reviewed by ADX Staff before they are received, viewed, or otherwise accessed by ADX prisoners.

**RESPONSE**: Objection.  The BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case because only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which seeks only injunctive and declaratory relief.  Moreover, this case does not involve access to media (television, movies, and Internet websites) generally by inmates at the ADX.

Subject to, and without waiving this objection, at the ADX, broadcast television is regulated by the Federal Communications Commission ("FCC").  There is no other scrutiny or review of television programming other than that provided by the FCC.

For the movies shown to inmates by the Recreation Department, the Recreation Supervisor exercises sound correctional judgment and follows statutory restrictions when selecting video movie rentals.  No movies rated R, X, or NC-17 may be shown to inmates. However, institutions may show R and NC-17 rated movies that have been edited for general public viewing.  *See also* 28 C.F.R. § 544.33 and Program Statement 5370.11, *Inmate Recreation Programs* (June 25, 2008), produced at BOP 2136 to 2161.

The books, magazines, and other reference material available in the ADX library are reviewed for suitability similarly to the review process for incoming publications, as described in Mr. Chapman's declaration (Doc. 31-1) and the declaration of Warden Fox (Doc. 59-1).  The

Supervisor of Education is responsible for overseeing the operations of the ADX library.  The selection of materials is made on the basis of the safety, security, and orderly running of the institution, as well as the needs of the users of the library, utilizing sound correctional judgment. A balance between reference materials and recreational reading is sought.  Additional requests from inmates are considered when purchasing new materials.

For ELL access, information posted is controlled by the specific subscription details that the BOP has with Lexis Nexis, the proprietor of the content.  No further review of the materials is conducted by ADX officials.

The review process for incoming publications is thoroughly explained in the declarations of Mr. Chapman (*see* Doc. 31-1) and Warden Fox (*see* Doc. 59-1).  *See also* Responses to Request for Production Nos. 8-9.

**Interrogatory No. 6**:  Describe with specificity any and all security measures taken at ADX to regulate the movement, behavior, and activities undertaken by prisoners at ADX, including: ratios of corrections officers to inmates; design of prisoners' cells; limitations on movement of prisoners; procedures for moving prisoners between cells or between their cell and any other areas of the prison; procedures by which prisoners receive mail, meals, and personal items within their cells; the amount of time spent by prisoners outside of their cells; the circumstances under which prisoners are removed from their cells; the circumstances under which prisoners might interact with one another, and the security procedures undertaken to ensure prisoner and ADX Staff safety during such interactions; and policies and practices intended to prevent access to contraband.

<u>**RESPONSE**</u>:  Objection.  The BOP objects to the interrogatory to the extent it may seek privileged information, including information protected by the attorney-client, attorney-work-

11

product, deliberative-process, and/or law-enforcement privileges.  Likewise, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case because only ADX procedures set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which seeks only injunctive and declaratory relief, and this interrogatory seeks information about every conceivable security aspect of the ADX and therefore has no relevance or bearing on the litigation.  Moreover, in effect, every single decision and protocol that affects ADX inmates might properly be characterized as a "security measure" to address the risks associated with this extremely violent and disruptive population.  Finally, the BOP objects that this interrogatory is compound, consisting of at least thirteen separate interrogatories.

Subject to, and without waiving these objections, without greater specificity, the BOP is unable to respond to this Interrogatory at this time.  If Plaintiff will narrow and clarify the scope of this interrogatory, the BOP will reevaluate this response.

**Interrogatory No. 8:**  Identify all ADX Staff whose duties at any point since January 1, 2005 through the present have included inspecting, processing, or reviewing incoming mail addressed to prisoners at ADX, or whose duties have included deciding whether or not to deliver such mail to the addressee at any stage of the initial mail review process or at any level of appeal, including for both the prisoner Administrative Review Procedure and the appellate review afforded to publishers and other senders of mail, and, for each such person, state the dates during which his or her duties have included handling or processing incoming mail addressed to prisoners and/or deciding whether certain pieces of mail should be delivered to prisoners and describe his or her duties during each time period.

**RESPONSE:**  Objection.  First, the BOP objects to the interrogatory to the extent it may seek privileged information, including materials containing information protected by the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges. Second, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons: (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a); (2) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which seeks only injunctive and declaratory relief; and (3) the BOP does not maintain rosters of employees for each department that is tasked with reviewing incoming publications at the ADX, making it extremely difficult to identify all employees requested in this interrogatory.  The BOP is unable to conduct a hand search of all individual employee personnel files.  Therefore, in preparing this response, the BOP was required to rely on the collective memory of persons who are still employed by the agency.

Subject to and without waiving these objections, the following staff, from 2010 to present, have been involved in the incoming publications review process:

Correctional Systems staff conduct an initial review of the incoming publication at the ADX for contraband and for objectionable material.  This primarily consists of reviewing incoming publications for sexually explicit material or nudity.  Correctional Systems staff members at the ADX, from 2010 to present, include[1] Dan Roy (retired), Rick Martinez (retired), Sandra O'Donnell (current), Donald Hand (current), Shawn Quenelle (current), Brian Sandoval

---

[1] Unless noted otherwise, Correctional Systems staff members were/are Correctional Systems Officers.

(current), Timothy Poland, Supervisory Correctional Systems Specialist (former), David Nelson, Supervisory Correctional Systems Specialist (current), and DeeDee McEvoy, Complex Case Management Coordinator (current).

Special Investigative Services staff conduct a more thorough review of all incoming publications received at the ADX for objectionable material.  Special Investigative Services staff members at the ADX, from 2010 to present, include[2] Kelee Dell (former), Dianna Krist, Special Investigative Agent (former), Hope Redden (former) Jose Guadian (former), Steve Smith (former), Mikeal Thompson (former), Lisa Braren (former), Michelle Bond (former), James Cabel (retired), Matthew Santistevan (former), Kami Allen (former), Brianne Smith (former), Roman Manjarrez (former), Michael McAlister (former), Marty Bier, Lieutenant and Special Investigative Agent (former), Billy Eischen, Lieutenant (former), Todd Carpenter, Lieutenant (retired), Rigoberto Lopez (current), Rodney Marquez (current), Dale Bilbrey (current), Michael Massey (current), Richley Turner (current), Alan Oliver, Linguist (current), Shawn Scarbrough, Lieutenant (former), Danny LNU (former), Simon Jones, Lieutenant (former), FNU Trapp, Lieutenant (former), Amy Kelley, Lieutenant (current), Ryan Taillon, Lieutenant (current), Kari Hicks (current), Ana Callahan-Knote, Lieutenant (former), Adam Sapp, Lieutenant (current), Charles Alvarez, Lieutenant (former), Michael Banuelos, Lieutenant (former), Brenton Braggan, Lieutenant (former), Hubert Kosakowski, Lieutenant (former), Anthony Roe, Lieutenant (retired), Jean Pierre Espino (current), Patrick Gourn, Lieutenant (former), FNU Fitzgerald, Lieutenant (former), David Rhodes, Special Investigative Agent (former), and Debra Payne, Special Investigative Agent (current).

---

[2] Unless noted otherwise, Special Investigative Services staff members were/are Special Investigative Services Technicians.

Attorneys in the Legal Services Department may be consulted for legal advice and conduct a review of the incoming publication that has been flagged as objectionable and has proceeded through the rejection review process.  Attorneys in the Legal Services Department at the ADX, from 2010 to present, include Christopher Synsvoll, Supervisory Attorney (current), Clay C. Cook, Senior Attorney Advisor (current), James Wiencek, Senior Attorney Advisor (current), Krista Klett, Senior Attorney Advisor (current), Benjamin Brieschke, Senior Attorney Advisor (former), Theresa Montoya, Senior Attorney Advisor (former), Kara Lundy, Senior Attorney Advisor (former), Megan Marlow, Senior Attorney Advisor (current), Kaitlin Turner, Senior Attorney Advisor (current), and Debbie Locke, Senior Attorney Advisor (former).

Associate Warden Secretaries and the Warden Secretary review the proposed rejection packets for clerical and grammatical errors.  From 2010 to present at the ADX, such individuals include April Cromer (former), Paula Trujillo (former), Angela Burch (current), and Beverly Hays (current).

Associate Wardens at the ADX participate in the review of the draft rejection packet. Associate Wardens at the ADX, from 2010 to present, include Louis Milusnic (former), Michael Carr (current), Donna Davis (current), Jack Fox (current), Leann LaRiva (retired), Mark Munson (retired), Dennis Stamper (retired), Kevin Johnson (retired), Sean Kuta (retired), William True, Tara Hall (retired), Angel Levi (retired), Stephen Julian (retired), and Tonya Hawkins (former). *See also* Response to Interrogatory No. 15 (identifying prior ADX Wardens).

**Interrogatory No. 9:**  Identify all publications, from any sender, that have been censored since October 1, 2015.

**RESPONSE:**  Objection.  First, the BOP objects to the interrogatory to the extent it may seek privileged information, including materials containing information protected by the attorney-

client, attorney-work-product, deliberative-process, and/or law-enforcement privileges.  Second, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case because (1) only rejections of *Prison Legal News* are at issue, not rejections of other incoming publications at the ADX, and (2) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises claims only for injunctive and declaratory relief.  Third, the BOP objects that the term "censored" is vague, ambiguous, and undefined.  The BOP interprets "censored" to mean "rejected" pursuant to the Warden's discretionary authority under 28 C.F.R. § 540.71(b).

Without waiving these objections, the BOP has produced rejection packets from February 2016 to the present at bates range BOP 787 to 1055 and BOP 1296 to 1818.  Plaintiff, in the same manner as the BOP, is able to derive the answer to this interrogatory from these documents.  Thus, "the burden of deriving or ascertaining the answer will be substantially the same for either party[.]"  *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining ... a party's business records, … the responding party may answer by … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]").

**Interrogatory No. 10:**  Describe with specificity the procedure for appeal of a decision to reject a publication, including the specific factors considered in deciding such an appeal, and any BOP personnel involved in such decision.

**RESPONSE:**  Objection.  First, the BOP objects to the interrogatory to the extent it may seek privileged information, including materials containing information protected by the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges.  Second, the BOP objects to this interrogatory as overly broad and not proportional to the needs of the

case because only the appeal process for a publisher, not appeal rights in general (*i.e.*, for inmates) are at issue.

Without waiving these objections, the incoming publication rejection appeal process for a publisher is explained in Mr. Chapman's declaration (*see* Doc. 31-1 at ¶ 9), 28 C.F.R. § 540.71(e), and Program Statement 5266.11, *Incoming Publications*. The Regional Director is the final authority on appeals submitted by publishers regarding a rejected incoming publication. The Regional Director may consider any or all of the following non-exclusive factors in rendering a decision at the publisher appeal stage: the content of the incoming publication that was subject to rejection and appeal, applicable regulations and policy (28 C.F.R. § 540.71 *et seq.*, and Program Statement 5266.11, *Incoming Publications*), the mission of the institution from which the incoming publication was rejected, the justification included in the rejection packet and supporting documentation (e.g., memorandum from Special Investigative Services), information provided by the publisher during appeal process, and legal counsel.

**Interrogatory No. 11:** Identify any changes made to the ADX incoming publications institutional supplement or any other ADX policy between January 1, 2005 and the present, including Institutional Supplement No. FLM 5266.11C: Incoming Publications (effective Feb. 2, 2016), and any ADX Staff who proposed, drafted, edited, commented on or otherwise participated in the making of such changes, and describe with specificity the rationale for any such changes.

**RESPONSE:** Objection. First, the BOP objects to the interrogatory to the extent it seeks privileged information, including information protected by the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges. Second, the term "*any other ADX policy*" (emphasis added) is undefined and vague. Third, the BOP objects that the

interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons:  (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a) and (2) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises only claims for injunctive and declaratory relief. Fourth, the BOP objects to the interrogatory because it is compound and consists of at least three interrogatories.

Subject to, and without waiving these objections, the BOP incorporates here its previous responses to this interrogatory on September 5, 2016, and January 13, 2017.  Subsequently, pursuant to the procedures for routine reviews of Institution Supplements, the February 2016 Policy was updated on May 30, 2017, but no changes were made.  This new policy is titled FLM 5266.11D, *Incoming Publications*.  *See* BOP 2045 to 2049.

**Interrogatory No. 12:**  Describe with particularity all actions taken by ADX Staff to inform or train other ADX Staff about the recent revisions to Institution Supplement No. FLM 5266.11C (effective March 4, 2016) and identify all ADX Staff who were responsible for informing and training other staff.

**RESPONSE:**  Objection.  First, the BOP objects to the interrogatory to the extent it seeks privileged information, including information protected by the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges.  Second, the term "inform or train" is ambiguous, vague, and undefined.  Third, the BOP understands the policy referenced in this interrogatory to be the February 2016 Policy, which was in fact implemented on February 2, 2016 and updated on May 30, 2017.  *See* BOP 2045 to 2049.   Finally, the BOP objects to the interrogatory because it is compound and consists of at least two interrogatories.

Without waiving these objections, as outlined in the February 2016 Policy and May 2016 Policy, the Legal Services Department conducts quarterly training with Correctional Systems Department and Special Investigative Services Department staff regarding the procedures outlined in Program Statement 5266.11, *Incoming Publications*, and the ADX institution supplement (FLM 5266.11C and FLM 5266.11D).  These quarterly trainings have occurred on the following dates and were led by the following individuals:

- February 24, 2016 – Clay C. Cook, Senior Attorney Advisor;

- July 19, 2016 – Clay C. Cook, Senior Attorney Advisor;

- September 8, 2016 – James Wiencek, Senior Attorney Advisor;

- November 29, 2016 – Christopher Synsvoll, Supervisory Attorney;

- February 1, 2017 – Krista Klett, Senior Attorney Advisor;

- May 18, 2017 – Clay C. Cook, Senior Attorney Advisor; and

- August 22, 2017 – Clay C. Cook, Senior Attorney Advisor.

Plaintiff is referred to the quarterly training documents that that have been produced at bates range BOP 731 to 786, BOP 1182 to 1189, BOP 2050 to 2060, and BOP 2109 to 2128. Plaintiff, in the same manner as the BOP, is able to derive the answer to this interrogatory from these documents.  Thus, "the burden of deriving or ascertaining the answer will be substantially the same for either party[.]"  *See* Fed. R. Civ. P. 33(d) ("If the answer to an interrogatory may be determined by examining ... a party's business records, … the responding party may answer by … specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could[.]").

**Interrogatory No. 13:**  Identify all lawsuits or other legal proceedings filed in any federal court from January 2, 2005 to the present that included claims or allegations concerning the delivery (or non-delivery) of mail to or from prisoners at ADX.

**RESPONSE:**  Objection.  First, the term "other legal proceedings" is undefined and vague. Second, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons:  (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a); (2) only the processing of incoming publications at the ADX, and not "mail" generally, is at issue in this case; (3) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises claims only for injunctive and declaratory relief; and (4) information about other lawsuits and "legal proceedings" has no bearing on this case.

Subject to, and without waiving these objections, the BOP incorporates its previous response to this interrogatory.

**Interrogatory No. 14:**  Identify all mail received between January 1, 2005 and the present for which ADX Staff have redacted material rather than rejected the entire publication outright, and describe with specificity the reason(s) or rationale(s) for such redaction, including the reasons for redacting rather than rejecting the material deemed objectionable.

**RESPONSE:**  Objection.  First, the term "redacted" is ambiguous, vague, and undefined. Second, the BOP objects that the interrogatory is overbroad, unduly burdensome, and not proportional to the needs of the case, for multiple reasons:  (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a); (2) only the processing of incoming publications at the ADX, and not

"mail" generally, is at issue in this case; and (3) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises claims only for injunctive and declaratory relief.  Third, the BOP objects that this interrogatory is compound and consists of at least two separate interrogatories.

Without waiving these objections, the BOP does not excise objectionable material or otherwise redact objectionable information from incoming publications at the ADX.

**Interrogatory No. 15:**  Identify all wardens of ADX from January 1, 2005 to the present.

**RESPONSE:**  Objection.   The BOP objects that the interrogatory is not proportional to the needs of the case, for multiple reasons: (1) the time period exceeds the six-year statute of limitations for injunctive relief claims against an agency of the United States, *see* 28 U.S.C. § 2401(a) and (2) only ADX procedures regarding incoming publications set forth in the February 2016 Policy and May 2017 Policy are at issue in this case, which raises claims only for injunctive and declaratory relief.  ADX Wardens whose tenure predates the adoption of the February 2016 Policy will not have information about the February 2016 Policy or the May 2017 Policy.

Subject to, and without waiving these objections, the BOP incorporates here its previous responses to this interrogatory on September 5, 2016, and January 13, 2017.

**Interrogatory No. 16:**  Identify each person who supplied information contained in or relied upon in your answers to these Interrogatories.

**RESPONSE:**  Objection.  The BOP objects to the interrogatory to the extent it seeks privileged information, including information protected by the attorney-client, attorney-work-product, deliberative-process, and/or law-enforcement privileges.

Subject to and without waiving this objection, the BOP responds as follows: Todd Chapman, Executive Assistant; Daniel Armendariz, SIS Technician; David Nelson, Supervisory Correctional Systems Specialist; Paula Trujillo, Paralegal Specialist; Ryan Taillon, Lieutenant; and Clay C. Cook, Senior Attorney Advisor.

I, _____, do hereby verify pursuant to 28 U.S.C. § 1746, Federal Rule of Civil Procedure 33, and under penalties of perjury, that the foregoing responses to interrogatories are true and correct to the best of my information, knowledge, and belief, based upon information provided to me in my official capacity.

Executed this ___ day of September, 2017.

s/

DATED September 22, 2017.

As to legal objections:

ROBERT C. TROYER
Acting United States Attorney

s/ *Susan Prose*
Susan Prose
Marcy E. Cook
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0404
E-mail: susan.prose@usdoj.gov
marcy.cook@usdoj.gov

Counsel for the Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

   I hereby certify that on September 22, 2017, I sent the foregoing document by electronic mail to:

  Stephen Kiehl
  Matthew Shapanka
  Peter Swanson

             s/ *Susan Prose*
             Susan Prose
             United States Attorney's Office