# EXHIBIT 19


Caution
As of: January 11, 2018 10:24 PM Z

# Al-Owhali v. Holder

United States Court of Appeals for the Tenth Circuit

August 7, 2012, Filed

No. 11-1274

**Reporter**
687 F.3d 1236 *; 2012 U.S. App. LEXIS 16401 **; 2012 WL 3181832

MOHAMED RASHED D. AL-OWHALI, Plaintiff-Appellant, v. ERIC H. HOLDER, in his official capacity as U.S. Attorney General; HARLEY G. LAPPIN, in his official capacity as Director, Federal Bureau of Prisons; BLAKE DAVIS, in his official capacity as Warden, USP Florence ADMAX; FEDERAL BUREAU OF INVESTIGATION, Defendants-Appellees.

**Prior History: [**1]** Appeal from the United States District Court for the District of Colorado. (D.C. No. 1:07-CV-02214-LTB-BNB).

*Al-Owhali v. Holder, 2011 U.S. Dist. LEXIS 7905 (D. Colo., Jan. 27, 2011)*

## LexisNexis® Headnotes

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

*HN1*[ ] **Protection of Rights, Prisoner Rights**

Special Administrative Measures (SAMs) may be imposed as reasonably necessary to protect persons against the risk of death or serious bodily injury. *28 C.F.R. § 501.3(a)*. With the Attorney General's approval, each SAM may be imposed for up to one year. *§ 501.3(c)*. They may be extended in one-year increments, and modified from year to year. *§ 501.3(c)*. The inmate must be provided with written notification of the restrictions imposed and the basis for these restrictions. *§ 501.3(b)*. However, the notice's statement as to the basis may be limited in the interest of prison security or safety or to protect against acts of violence or terrorism. *§ 501.3(b)*.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN2*[ ] **Motions to Dismiss, Failure to State Claim**

A circuit court of appeals reviews de novo a district court's dismissal of a claim under *Fed. R. Civ. P. 12(b)(6)*.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

*HN3*[ ] **Motions to Dismiss, Failure to State Claim**

A complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Although the court must accept as true all factual allegations asserted in the complaint, dismissal is appropriate where the well-pleaded facts do not

Lori Ruth

PLN_0001767

permit the court to infer more than the mere possibility of misconduct.

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

*HN4*[ ] **Protection of Rights, Prisoner Rights**

In addition to the pleading burden imposed by Iqbal, inmates face additional hurdles when challenging a prison regulation as unreasonable. As a general matter, when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests. Four factors are used to guide the Turner inquiry: (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights. Among these factors, the first is the most important; it is not simply a consideration to be weighed but rather an essential requirement.

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

*HN5*[ ] **Protection of Rights, Prisoner Rights**

Analysis of the four Turner factors is necessary at the summary judgment stage. But in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is reasonably related to a legitimate penological interest. Thus, while it is critical that a complaint address Turner's core holding, the four Turner factors need not be part of the analysis at the pleading stage.

Civil Procedure > ... > Defenses, Demurrers & Objections > Motions to Dismiss > Failure to State Claim

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

*HN6*[ ] **Motions to Dismiss, Failure to State Claim**

Taken together, Iqbal and Turner require an inmate to plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest. This is not to say that an inmate must identify every potential legitimate interest and plead against it. However, he is required to recite facts that might well be unnecessary in other contexts to surmount a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*.

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

Evidence > Burdens of Proof > Allocation

*HN7*[ ] **Protection of Rights, Prisoner Rights**

It is a prisoner's burden to demonstrate that there is no legitimate, rational basis for the increased communication restrictions.

Civil Rights Law > Protection of Rights > Prisoner Rights > Freedom of Association

*HN8*[ ] **Prisoner Rights, Freedom of Association**

The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution.

Lori Ruth

Civil Procedure > ... > Justiciability > Mootness > Evading Review Exception

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

Constitutional Law > ... > Case or Controversy > Mootness > Conduct Capable of Repetition

HN9[ ]  Mootness, Evading Review Exception

In order to fall within the capable of repetition yet evading review exception to mootness, a prisoner must show that the Special Administrative Measures are in effect for a duration too short to be fully litigated prior to their cessation and there is a reasonable expectation that he will be subjected to the same action again.

Civil Rights Law > Protection of Rights > Prisoner Rights > General Overview

HN10[ ]  Protection of Rights, Prisoner Rights

Even if a restriction appears commonplace and within a warden's discretion, a court is not divested of its responsibility to determine if the restriction passes constitutional muster.

Civil Procedure > Appeals > Reviewability of Lower Court Decisions > Preservation for Review

HN11[ ]  Reviewability of Lower Court Decisions, Preservation for Review

When a party disavows a particular theory of the case, it is not an appellate court's proper role to make the disavowed argument for him.

**Counsel:** Jeffrey Hoard, Student Attorney (Daniel E. Manville, Director, Civil Rights Clinic, Michigan State University College of Law; Joyce Ellen Rosendahl, Law Offices of Joyce Ellen Rosendahl, on the briefs), Michigan State University College of Law, East Lansing, Michigan, for the Plaintiff-Appellant.

John A. Drennan (John F. Walsh, United States Attorney, Susan Prose, Assistant United States Atttorney, and Lisa O. Monaco, Assistant Attorney General for National Security, with him on the briefs), U.S. Department of Justice, National Security Division, Washington, DC, for the Defendants-Appellees.

**Judges:** Before LUCERO, EBEL, and MATHESON, Circuit Judges.

**Opinion by:** LUCERO

## Opinion

 [*1239]  LUCERO, Circuit Judge.

Mohamed Rashed Al-Owhali, an inmate in a federal high-security prison, brought a suit challenging several Special Administrative Measures ("SAMs") imposed upon him. The district court dismissed the suit, finding that Al-Owhali failed to allege plausible facts to support his claims. In light of concessions made by Al-Owhali before argument, we exercise jurisdiction under 28 U.S.C. § 1291 and affirm the district court's  [**2] dismissal.

I

Al-Owhali was convicted of several terrorism-related offenses stemming from the 1998 bombing of the United States embassy in Nairobi, Kenya. He is currently serving a life sentence without the possibility of parole at the United States Penitentiary, Administrative Maximum, in Florence, Colorado. Since his arrest, Al-Owhali has been subject to SAMs, which impose special

restrictions on his imprisonment.[1] Starting in 2004, Al-Owhali's SAMs prohibited him from corresponding with his nieces and nephews through letters. His 2004 SAMs further forbid him from receiving two Arabic-language newspapers that he had previously been provided. In addition to these explicit SAMs restrictions, Al-Owhali alleges that officials prohibited him from receiving a copy of former President Jimmy Carter's book Palestine: Peace, Not Apartheid.

In 2009, Al-Owhali filed his second amended complaint in federal district court, alleging that these restrictions and others violated his constitutional rights. Invoking Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the court concluded that Al-Owhali had not alleged sufficient facts to make his claim facially plausible and dismissed the complaint under Fed. R. Civ. P. 12(b)(6). Al-Owhali then filed a motion to reconsider and a motion to file a third amended complaint, both of which were denied. He then appealed.

On the eve of oral argument, however, Al-Owhali conceded most of the arguments he had briefed. According to the concession, he continues to contest only the three restrictions listed above: the prohibitions on communication with his nieces and nephews, the two Arabic-language newspapers, and President Carter's book.

II

HN2[↑] We review de novo a district court's dismissal of a claim under Fed. R. Civ. P. 12(b)(6).

---

[1] HN1[↑] SAMs may be imposed as "reasonably necessary to protect persons against the risk of death or serious bodily injury." 28 C.F.R. § 501.3(a). With the Attorney General's approval, each SAM may be imposed for up to one year. § 501.3(c). They may be extended in one-year increments, and modified from year to year. Id. The inmate must be provided with written notification [**3] of the restrictions imposed and the basis for these restrictions. § 501.3(b). However, "[t]he notice's statement as to the basis may be limited in the interest of prison security or safety or to protect against acts of violence or terrorism." Id.

Khalik v. United Air Lines, 671 F.3d 1188, 1190 (10th Cir. 2012). [**4] Under Iqbal, HN3[↑] "a complaint must contain enough allegations of fact, taken as true, to state a claim to relief that is plausible on its face." 556 U.S. at 678 (quotation omitted). "A claim has facial plausibility when the plaintiff pleads factual [*1240] content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although we must accept as true all factual allegations asserted in the complaint, dismissal is appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id. at 679; see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

HN4[↑] In addition to the pleading burden imposed by Iqbal, inmates face additional hurdles when challenging a prison regulation as unreasonable. As a general matter, "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987). We use four factors to guide our Turner inquiry:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced [**5] as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

Beerheide v. Suthers, 286 F.3d 1179, 1185 (10th Cir. 2002) (citing Turner, 482 U.S. at 89-91). Among these factors, the first is the most important; as we have noted, it is "not simply a consideration to be weighed but rather an essential

Lori Ruth

PLN_0001770

requirement." *Boles v. Neet, 486 F.3d 1177, 1181 (10th Cir. 2007)* (quotation omitted).

**HN5**[ ] Analysis of the four *Turner* factors is necessary at the summary judgment stage. See *Jones v. Salt Lake Cnty., 503 F.3d 1147, 1153-59 (10th Cir. 2007)*. But in ruling on a motion to dismiss, a court need only assess, as a general matter, whether a prison regulation is "reasonably related to a legitimate penological interest." *Gee v. Pacheco, 627 F.3d 1178, 1187 (10th Cir. 2010)*. Thus, while it is critical that a complaint address Turner's core holding, the four Turner factors need not be part of the analysis **[**6]** at the pleading stage. See id.

**HN6**[ ] Taken together, Iqbal and Turner require an inmate to "plead facts from which a plausible inference can be drawn that the action was not reasonably related to a legitimate penological interest." *Gee, 627 F.3d at 1188*. "This is not to say that [Al-Owhali] must identify every potential legitimate interest and plead against it." Id. However, he is required to "recite[] facts that might well be unnecessary in other contexts" to surmount a motion to dismiss under *Fed. R. Civ. P. 12(b)(6)*. *Gee, 627 F.3d at 1185*.[2]

**A**

In his pleadings, Al-Owhali asserts that the 2004 SAMs prohibited him from writing letters **[**7]** to his nieces and nephews, even though he had previously been permitted to do so. He further pleads that **[*1241]** the government imposed these new restrictions despite his compliance with previous SAMs, and contends that they violate BOP regulations and his *First Amendment* rights. **HN7**[ ] It is Al-Owhali's burden to demonstrate that there is no legitimate, rational basis for the increased communication restrictions. See *Gee, 627 F.3d at 1185* (a prisoner must "explain why the usual justifications for the complained-of acts do not apply" in his pleadings). Yet nothing in the pleadings speaks to the rationale underlying the new restrictions or the apparent concerns surrounding Al-Owhali's contact correspondence with his nieces and nephews.

These deficiencies in his pleadings are especially clear given the government's proffered justifications for imposing SAMs. According to the 2008 SAMs extension,[3] which included the correspondence restrictions at issue, the warden believed that Al-Owhali had a "proclivity for violence" based on his conviction for acts of terrorism. The warden expressed his concern that "communications or contacts with persons could result in death or serious bodily injury to persons." **[**8]** Even if this reasoning does not explicitly address the new restrictions, it is a coherent explanation of the government's policy that Al-Owhali does not rebut in his pleadings. See *Jones v. N.C. Prisoners' Labor Union, Inc., 433 U.S. 119, 126, 97 S. Ct. 2532, 53 L. Ed. 2d 629 (1977)* (**HN8**[ ] "The concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution."). Al-Owhali's pleadings include no facts indicating that the government lacks a legitimate penological interest in limiting his correspondence or that the new restrictions are unrelated to this interest. See *Turner, 482 U.S. at 89*.

In order to survive the government's 12(b)(6) motion, Al-Owhali was not required to substantively rebut the government's justifications

---

[2] The district court misstated the standard by dismissing Al-Owhali's claim on the grounds that "it is equally plausible as not that each of the four Turner factors favors the imposition of the SAMs." See *Iqbal, 556 U.S. at 678* ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). Moreover, as discussed above, an analysis of the Turner factors is unnecessary at the pleading stage. Despite this misstatement, however, dismissal of Al-Owhali's claims was proper.

[3] A copy of the 2004 SAMs extension is not before us, but at oral argument, Al-Owhali's counsel informed the court that SAMs restrictions from 2004 are the same as those from 2008. Given that the justifications for the restrictions in the 2008 SAMs are coupled with the restrictions themselves, we presume the same was true with the 2004 SAMs.

for the new restrictions. See *Gee, 627 F.3d at 1188* ("We do not intend that pro se prisoners must [**9] plead, exhaustively, in the negative in order to state a claim."). Rather, he simply needed to plead some plausible facts supporting his claim that the ban on communicating with his nieces and nephews did not serve the purpose of preventing future terrorist activity. See, e.g., *Mohammed v. Holder, 07-CV-02697-MSK-BNB, 2011 U.S. Dist. LEXIS 111571, 2011 WL 4501959 (D. Colo. Sept. 29, 2011)* (concluding that an inmate's challenge to SAMs was plausible where his pleadings pointed to a recommendation from the warden that the inmate's privileges be expanded). Looking to his pleadings, the only supporting fact Al-Owhali offers is that he did not violate any SAMs before the new restrictions were imposed. This assertion fails to address whether the restriction was supported by a rational penal interest. Accordingly, dismissal of this claim was appropriate.

## B

Al-Owhali's complaint also asserts that the 2004 SAMs violated his *First Amendment* rights by preventing him from subscribing to two Arabic-language newspapers—Al-Quds Al-Arabi and Al-Hayat. Although the government previously permitted Al-Owhali to receive these papers, the 2004 restrictions prevented him from accessing any media outlets other than television and radio [**10] news stations and USA Today. The 2008 SAMs explain that [*1242] mass communications restrictions were imposed to "prevent [Al-Owhali] from receiving and acting upon critically-timed information or information coded in a potentially undetectable manner."

As an initial matter, the government contends that this claim is moot because the SAMs currently in effect do not prohibit Al-Owhali from receiving these newspapers. This argument is problematic because it potentially allows for a constitutional violation that is "capable of repetition yet evades review." *Murphy v. Hunt, 455 U.S. 478, 482, 102 S. Ct. 1181, 71 L. Ed. 2d 353 (1982)* (quotation omitted).

HN9[ ] In order to fall within this exception to mootness, Al-Owhali must show that the SAMs are in effect for a "duration too short to be fully litigated prior to [their] cessation" and there is a "reasonable expectation that [he will] be subjected to the same action again." *Jordan v. Sosa, 654 F.3d 1012, 1035 (10th Cir. 2011)*. Based on the record before us, we have no trouble concluding that Al-Owhali has made both these showings, and that his claim is thus not moot. All SAMs expire, at the latest, one year after they are imposed. See *28 C.F.R. § 501.3(c)* (permitting SAMs to "be imposed [**11] for up to 120 days or, with the approval of the Attorney General, a longer period of time not to exceed one year"). If we prohibited any challenge to a lapsed SAM, inmates would only have one year to litigate and appeal a case. This feat will often be impossible, as this case illustrates: Years have elapsed since Al-Owhali first brought his claim. Moreover, there is nothing preventing the government from introducing more restrictive SAMs in any given year. As this case shows, a prisoner can reasonably expect SAMs to change from year to year and fluctuate in severity. Given these facts, we refuse to cast Al-Owhali's challenge to older SAMs as moot.

Even though Al-Owhali's claim is properly before us, our precedent nonetheless dictates that dismissal was appropriate. In *Gee*, we held that an inmate's allegations that the prison "forced him to dispose of magazines to which he subscribed" failed to state a viable claim. *627 F.3d at 1190*. Noting that such restrictions were common in the prison setting, we dismissed the claim because the inmate failed to offer plausible "allegations showing that the restrictions were imposed in violation of prison regulations or that the regulations invoked [**12] were unconstitutional in the circumstances." *Id*. As with the inmate in *Gee*, Al-Owhali pleads no facts indicating that the new restrictions were an abuse of the warden's broad discretion to limit incoming information. See

Lori Ruth

PLN_0001772

Thornburgh v. Abbott, 490 U.S. 401, 415-19, 109 S. Ct. 1874, 104 L. Ed. 2d 459 (1989) (upholding restrictions on prisoners' incoming mail); Van den Bosch v. Raemisch, 658 F.3d 778, 788 (7th Cir. 2011) (permitting confiscation of newsletters in prison); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (stating that complaint about undelivered catalogues did not raise a constitutional issue). Nor does he address the government's logical safety rationale for limiting his access to Arabic-language media—namely, the need to prevent Al-Owhali from acting upon contemporary information or receiving coded messages.[4] As such, dismissal was proper.

## C

Al-Owhali's [**13] third *First Amendment* claim, regarding his alleged inability [*1243] to obtain President Carter's book, is the most compelling. We cannot imagine how this book could have raised safety concerns or facilitated terrorist activity. Any penal justification for restricting the book under Turner would be questionable at best. However, we conclude that Al-Owhali's sparse pleadings on this claim fail to allege a plausible constitutional violation under Iqbal. The only reference to the book in the pleadings reads:

> On information and belief, Mr. Al-Owhali has been restricted from receiving the book Palestine: Peace Not Apartheid, written by former President Jimmy Carter. The non-SAMs inmates have not been precluded from ordering this book. The Defendants or their agents have not provided notice to Mr. Al-Owhali or the publisher that President Carter's book was banned, the reason for that ban[,] or the opportunity to challenge such ban.

This vague allegation that he was "restricted from receiving the book" is lacking any factual context. We do not know if Al-Owhali even requested the book at all. If he did, the pleadings shed no further light on the matter. Instead, he implies the existence of a secret [**14] list of banned publications. We cannot credit such implications; they remain unfounded allegations reminiscent of the claims dismissed in Iqbal. See 556 U.S. at 682-83 (allegation of existence of discriminatory policy, without facts supporting existence of policy, was insufficient); Twombly, 550 U.S. at 564-65 (same for assertion that companies agreed to price-fix, without factual allegations that would show existence of agreement). Thus, by not including the most basic facts about the challenged restriction, Al-Owhali has failed to "nudge[] [his] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

Al-Owhali did not face a high threshold to establish his claims. But a mere assertion that he believes that there is a secret policy in place that prevents him from obtaining the book is not enough. We emphasize that the facts that Al-Owhali was required to plead to push his claim past the plausibility threshold were minimal. For example, if he had indicated that prison officials had informed him that he could not receive the book or that he had explicitly requested it and received no response, Iqbal would pose no barrier to his claim going forward. However, [**15] by stating his belief that the book was banned while also admitting that he was not informed of the ban, Al-Owhali has merely highlighted the theoretical basis of his claim.

At bottom, Al-Owhali claims without substantiation that he believes there is a secret policy in place that prevents him from obtaining the book. Such a claim, without more, is simply too speculative.

## D

Finally, Al-Owhali asserts that his *Fifth Amendment* right to due process was violated when

---

[4] HN10[ ] Even if a restriction appears commonplace and within a warden's discretion, a court is not divested of its responsibility to determine if the restriction passes constitutional muster. Al-Owhali's claim fails because he did not address the explicit and reasonable concerns underlying the government's decision to limit his access to certain forms of media.

prison officials imposed additional restrictions without specific explanations in the 2004 SAMs. We decline to consider this claim. In his concession, Al-Owhali states that the following claim remains viable in this appeal:

> His *Fifth Amendment* claim found in Claim 4 of his Second Amended Complaint alleging that the Appellees violated his *Fifth Amendment* due process rights in restricting his written communications with nephews, nieces, and others; his ability to receive two Arabic newspapers; and his ability to receive Palestine: Peace Not Apartheid, written by former President Jimmy Carter in 2004.

 [*1244] Looking to Claim 4 of Al-Owhali's amended complaint, we do not find a due process claim. Rather, Claim 4 asserts:

> Defendants' policies, [**16] practices, acts, and omissions in connection with the imposition, extension, and enforcement of the SAMs deprive Al-Owhali of freedom of speech, freedom of expression, freedom of association, and the right to receive information consistent with his status as an inmate, and deprive Al-Owhali of the equal protection of the law . . . .

(emphasis added).

It is not enough that Claim 4 "re-alleges and incorporates by reference" all previous paragraphs. It is not ours to piece together Al-Owhali's arguments for him. United States v. Yelloweagle, 643 F.3d 1275, 1284 (10th Cir. 2011); see Vaz Dos Reis v. Holder, 606 F.3d 1, 4 (1st Cir. 2010) (HN11[⬆] "When a party disavows a particular theory of the case, it is not an appellate court's proper role to make the disavowed argument for him."). We do not engage in guessing games to determine which arguments Al-Owhali may be asserting. We take him at his word.

For the foregoing reasons, we **AFFIRM** the district court's dismissal.

End of Document

IV

Lori Ruth

PLN_0001774