# EXHIBIT 35

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

---

**DEFENDANT'S FIRST SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S FIRST INTERROGATORIES**

---

Pursuant to Fed. R. Civ. P. 33, Defendant Federal Bureau of Prisons ("Defendant" or "BOP") supplements its responses to Plaintiff's First Set of Interrogatories as follows[1]:

**SUPPLEMENTAL RESPONSES TO INTERROGATORIES**

**Interrogatory No. 2:**  To the extent you contend that the rejection of any mailing identified in response to Interrogatory No. 1 was lawful, describe with specificity, for each such mailing, the complete factual and legal basis for your contention, including a detailed description of any alleged security risks posed by the mailing.

**RESPONSE:**  The BOP incorporates its objections set forth in its prior response to this interrogatory.

Without waiving these objections, the BOP states that, when assessing whether an incoming publication is appropriate for introduction into the United States Penitentiary –

---

[1] By providing this supplement, the BOP does not waive any objections or responses set forth in its previous responses to these interrogatories, all of which are incorporated herein by reference.

Administrative Maximum ("ADX"), the Warden must take into account the heightened security concerns associated with inmates who meet the criteria for placement in that institution. The Warden must also consider the fact that inmates housed in the ADX have opportunities to communicate with other inmates in the prison, including during recreation and in the ADX Step-Down Unit Program. Inmates in the ADX Step-Down Unit Program have direct, physical contact with one another. ADX inmates also have many opportunities to communicate with people outside the prison (social and legal telephone calls, mail correspondence, social visits, legal visits, pastoral visits, etc.). And, while inmates at the ADX have access to an electronic law library, they may have no reason to search for specific information concerning another inmate or BOP staff member. Incoming publications may prompt such searches, resulting in jeopardy to the security of the institution or the safety of the inmates and/or the public. Such security risks can be difficult to evaluate and to predict, especially for inmates who are particularly prone to violence and who have dangerous contacts within and outside the prison.

Based on these concerns, ADX personnel rejected eleven issues of *Prison Legal News* between January 2010 and April 2014. Some of the issues presented additional, particular concerns:

**January 2010:**

An article in this issue of *Prison Legal News* identified an inmate who killed another inmate, after a BOP staff member asked him to assault the inmate. The inmate was housed at the ADX in January 2010, but his cooperation and collaboration with a corrupt staff member against another inmate makes him a target at any prison in which he might be housed.

**June 2010:**

An article in this issue of *Prison Legal News* identified an inmate who refused to engage in a gang-led riot at a United States penitentiary. High-ranking members of that gang, who are housed at the ADX, have the ability to put a hit on that inmate—either in the prison or on the street.

**June 2012:**

An article in this issue of *Prison Legal News* again identified the inmate who collaborated with a corrupt BOP staff member, resulting in the death of another inmate. *See* the discussion of the January 2010 issue, above.

**November 2012:**

An article in this issue of *Prison Legal News* identified an inmate who witnessed a prisoner-on-prisoner killing and testified for the government against a violent prison gang. Knowledge that an inmate cooperated with the government can put an inmate in jeopardy in the prison. The inmate was housed at the ADX in November 2012.

**April 2014:**

An article in this issue of *Prison Legal News* identified an inmate who murdered a member of a prison gang. High-ranking members of that gang and other associated gangs, who are housed at the ADX, have the ability to put a hit on that inmate.

**Interrogatory No. 11:** Identify any changes made to the ADX incoming publications institutional supplement or any other ADX policy between January 1, 2005 and the present, including Institutional Supplement No. FLM 5266.11C: Incoming Publications (effective Feb. 2, 2016), and any ADX Staff who proposed, drafted, edited, commented on or otherwise

3

participated in the making of such changes, and describe with specificity the rationale for any such changes.

**RESPONSE:**  The BOP incorporates its objections set forth in its prior response to this interrogatory.

Without waiving these objections, the BOP supplements its previous response as follows:

On August 1, 2007, the ADX Institution Supplement addressing the procedures for handling incoming communications was revised to "to outline the procedures at the [ADX], and Federal Prison Camp (FPC), Florence, Colorado for implementing Program Statement 5266.10, Incoming Publications."  *See* Doc. 31-4 at 2, § 2.  The following changes from the previous version of the Institution Supplement, dated January 24, 2005 (*see* BOP 1203-1208), were made:

- § 4.C.: "Assistant Inmate Systems Manager" was changed to "Case Management Coordinator."
- § 4.E.: "Assistant Inmate Systems Manager" was changed to "Mail Room Officer."
- §§ 4.K. and 4.L., addressing incoming correspondence containing newspapers or magazine clippings from non-commercial sources and materials generated directly form the internet, were added.

On March 1, 2011, the Institution Supplement was revised to update the format of the supplement.  *See* Doc. 31-5 at 2.  On January 24, 2013, the supplement was revised to amend § IV.P., concerning incoming publications for inmates who are subject to Special Administrative Measures.  *See* Doc. 31-6 at 2, § II.; *see also id.* at 4, § IV.P.  In addition, the Institution

4

Supplement was revised to apply only to inmates at the ADX, and not inmates housed in the Federal Prison Camp at the Federal Correction Complex in Florence, Colorado.

On December 8, 2014, the Institution Supplement was changed to update the Warden's signature block.  *See* Doc. 31-7 at 2, § II.  Finally, on February 2, 2016, the Institution Supplement was revised to incorporate the additional review procedures and training requirements that are discussed at length in the BOP's motion to dismiss, Doc. 31, and Mr. Chapman's declaration.  *See* Doc. 31-1 at ¶¶ 16-19.

In addition to Warden Jack Fox, Senior Attorney Clay Cook, and Supervisory Attorney Christopher Synsvoll, each of whom were involved in the process preceding the adoption of the February 2016 Policy, other ADX personnel had an opportunity to review and to comment on the February 2016 Policy prior to its implementation.  *See* BOP 1263-1295 (emails "Re: Supplement for Review – Incoming Publications FLM 5266.11C, and related privilege log). The business address and telephone number for these ADX personnel are:

> United States Penitentiary – Administrative Maximum
> 5880 Highway 67 South.
> P.O. Box 8500
> Florence, CO  81226
> (719) 784-9464

**Interrogatory No. 15:**  Identify all wardens of ADX from January 1, 2005 to the present.

**RESPONSE:**  The BOP incorporates its objections set forth in its prior response to this interrogatory.

Without waiving these objections, the BOP supplements its response as follows:

Ron Wiley served as ADX Warden from May 1, 2005, to October 7, 2009, before any of the rejections of PLN's magazine at issue in this case.  The BOP does not have a current business address for Mr. Wiley.

5

<u>Blake Davis</u> served as Warden of the ADX from October 11, 2009, to April 21, 2012.

His current business address and telephone number are:

>GEO Group
>13777 Ballantyne Corporate Place, Suite 200
>Charlotte, NC  28277
>(704) 543-3400

<u>David Berkebile</u> served as Warden of the ADX from May 6, 2012, to September 30, 2014.  His current business address and telephone number are:

>Adams County Correctional Center
>20 Hobo Fork Road
>Natchez, MS  39120
>(601) 304-2500

<u>John Oliver</u> served as Warden of the ADX from October 5, 2014, to September 26, 2015.

His current business address and telephone number are:

>Big Spring Correctional Center
>1701 Apron Drive
>Big Spring, TX 79720
>(432) 264-6285

<u>Jack Fox</u> has served as the Warden of the ADX since December 13, 2015.  His business address and telephone number are:

>United States Penitentiary – Administrative Maximum
>5880 Highway 67 South.
>P.O. Box 8500
>Florence, CO  81226
>(719) 784-9464

6

I, Todd Chapman, do hereby verify pursuant to 28 U.S.C. § 1746, Federal Rule of Civil Procedure 33, and under penalties of perjury, that the foregoing responses to interrogatories, are true and correct to the best of my information, knowledge, and belief, based upon information provided to me in my official capacity.

Executed this 13th day of January, 2017.

s/ *Todd Chapman*
Todd Chapman
Executive Assistant
ADX, Florence, Colorado
Federal Bureau of Prisons

DATED January 13, 2017.

        As to legal objections:

        ROBERT C. TROYER
        Acting United States Attorney

        s/ *Susan Prose*
        Susan Prose
        Assistant United States Attorney
        1225 Seventeenth Street, Suite 700
        Denver, Colorado 80202
        Telephone: (303) 454-0100
        Fax: (303) 454-0404
        E-mail: susan.prose@usdoj.gov

        Counsel for the Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

  I hereby certify that on January 13, 2017, I sent the foregoing document by electronic mail to:

  Stephen William Kiehl
  Counsel for Prison Legal News

          s/ *Susan Prose*
          Susan Prose
          United States Attorney's Office

9