# EXHIBIT 38

Case No. 1:15-cv-02184-RM-STV Document 104-41 filed 05/14/18 USDC Colorado pg 2
of 14
Case 1:15-cv-02184-RM-STV Document 31-1 Filed 07/27/16 USDC Colorado Page 1 of 13

# Exhibit 1
# Declaration of Todd Chapman

*Prison Legal News v. Federal Bureau of Prisons*,
No. 15-cv-02184-RM-NYW

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02184-RM-NYW

PRISON LEGAL NEWS,
a project of the Human Rights Defense Center,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

## DECLARATION OF TODD CHAPMAN

      I, Todd Chapman, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above entitled matter.

      1.      I am employed by the Federal Bureau of Prisons (Bureau) as the Executive Assistant at the United States Penitentiary – Administrative Maximum (ADX), located in Florence, Colorado.

      2.      As part of my official duties, I have access to records maintained in the ordinary course of business by the Bureau, including administrative remedy requests of federal inmates,

1

information maintained in the SENTRY[1] database, and inmate central files. All attachments provided herein are true and accurate copies of Bureau records.

3. I am familiar with the procedures for processing incoming publications at ADX Florence. These procedures are outlined in federal regulations (28 C.F.R. § 540.70 *et seq.*), national Bureau policy (Attachment 1, Program Statement 5266.11, *Incoming Publications*, dated Nov. 9, 2011), and ADX Florence institutional policy (Attachment 2, FLM 5266.11C, *Incoming Publications*, dated Feb. 2, 2016).

## I. BUREAU REGULATIONS AND POLICY

4. The Bureau "permits an inmate to subscribe to or to receive publications without prior approval and has established procedures to determine if an incoming publication is detrimental to the security, discipline, or good order of the institution or if it might facilitate criminal activity." 28 C.F.R. § 540.70. "At . . . administrative institutions, an inmate may receive softcover publications . . . only from the publisher, from a book club, or from a bookstore." 28 C.F.R. § 540.71(a)(2). "The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." 28 C.F.R. § 540.71(b).

5. Publications which may be rejected by a Warden include, but are not limited to, publications which meet one of the following criteria:

(1) The publication depicts or describes procedures for the construction or use of weapons, ammunition, bombs or incendiary devices;

(2) It depicts, encourages, or describes methods of escape from correctional

---

[1] SENTRY is the Bureau's national database which tracks various data regarding an inmate's confinement, including, but not limited to, an inmate's institutional history, sentencing information, participation in programs, administrative remedies, and discipline history.

                facilities, or contains blueprints, drawings or similar descriptions of Bureau of Prisons institutions;

   (3)      It depicts or describes procedures for the brewing of alcoholic beverages, or the manufacture of drugs;

   (4)      It is written in code;

   (5)      It depicts, describes or encourages activities which may lead to the use of physical violence or group disruption;

   (6)      It encourages or instructs in the commission of criminal activity;

   (7)      It is sexually explicit material which by its nature or content poses a threat to the security, good order, or discipline of the institution, or facilitates criminal activity.

28 C.F.R. § 540.71(b)(1)-(7).

      6.     Pursuant to Program Statement 5266.11, *Incoming Publications*, "[o]nly the Warden may reject an incoming publication. In the Warden's absence, only the Acting Warden may perform this function." *See* Attachment 1 at 4.

      7.     When the Warden determines that a publication's content includes material that should be rejected, the entire publication is withheld, even if the basis for the rejection is one article in a magazine or only a few pages in a book or other publication. *See* 28 C.F.R. § 540.71(e) (the Warden "shall return the rejected publication to the publisher or sender of the material").

      8.     "Where a publication is found unacceptable, the Warden shall promptly advise the inmate in writing of the decision and the reasons for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable. The Warden shall permit the inmate an opportunity to review this material for purposes of filing an appeal under the Administrative Remedy Program unless such review may provide the inmate with information of a nature which is

Case 1:15-cv-02184-RM-STV Document 31-1 Filed 07/27/16 USDC Colorado Page 5 of 14

deemed to pose a threat or detriment to the security, good order or discipline of the institution or to encourage or instruct in criminal activity." 28 C.F.R. § 540.71(d). "In questionable cases, institution staff should consult with legal staff." *See* Attachment 1 at 4.

9. "The Warden shall provide the publisher or sender of an unacceptable publication a copy of the rejection letter. The Warden shall advise the publisher or sender that he may obtain an independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. The Warden shall return the rejected publication to the publisher or sender of the material unless the inmate indicates an intent to file an appeal under the Administrative Remedy Program, in which case the Warden shall retain the rejected material at the institution for review. In case of appeal, if the rejection is sustained, the rejected publication shall be returned when appeal or legal use is completed." 28 C.F.R. § 540.71(e).

10. The Warden must retain the rejected publication for 20 days from the date that the inmate is sent written notification of the rejection. *See* Attachment 1 at 4-5. This 20-day period is to allow the inmate the opportunity to file an appeal through the Administrative Remedy Program. *Id.* If the inmate does not file an appeal within 20 days, the rejected publication may be returned to the publisher. *Id.* If the inmate does file an appeal, the Warden will retain the rejected publication at the institution. *Id.* The rejected publication (or the offensive portion of it) must be reviewed prior to a staff response being prepared for the Request for Administrative Remedy or appeal thereof. *Id.*

11. However, even if the inmate does not appeal the rejection, ADX staff retain a copy of the material that prompted the rejection. This enables Bureau Regional Office personnel to review the rejected material if the publisher, but not the inmate, appeals the rejection.

4

A.      **Former ADX Florence Institution Supplement (*Incoming Publications*)**

12.     From August 1, 2007, to February 1, 2016, four versions of an institution supplement entitled *Incoming Publications* were in effect at the ADX.  *See* Attachment 3, FLM 5266.10C, Incoming Publications, dated Aug. 1, 2007; Attachment 4, FLM 526611D, *Incoming Publications*, dated Mar. 1, 2011; Attachment 5, FLM 5266.11A, *Incoming Publications*, dated Jan. 24, 2013; and Attachment 6, FLM 5266.11B, *Incoming Publications*, dated Dec. 8, 2014.  An institution supplement is a document that more fully implements federal regulations (Code of Federal Regulations) and national policy (Program Statements) at a particular institution.  At least one of these institution supplements was in effect during the period when the eleven issues of *Prison Legal News* referenced in this lawsuit were rejected.[2]

13.     These institution supplements set forth the procedures for review of incoming publications during the time they were in effect, through February 2, 2016, when the current institution supplement was implemented.  *See* ¶ 16, below.  The relevant review provisions were the same in each of the institution supplements that predated February 2, 2016.  For convenience, the January 24, 2014, institution supplement is discussed here.

14.     Under the review procedures that predated February 2, 2016, an incoming publication was x-rayed and searched by ADX mailroom personnel. *See* Attachment 5, FLM 5266.11B, *Incoming Publications*, at 1, dated Jan. 24, 2014 ("All incoming inmate publications will be x-rayed by the receiving Correctional Systems Officer prior to entering the facility.  A further physical search will be conducted by the mail room staff.").   If the mailroom officer

---

[2] The changes in the institution supplements that predated February 2, 2016, were as follows:   FLM 5266.10D (updated the format of the supplement); FLM 5266.11A (added a provision regarding inmates subject to Special Administrative Measures and removed a reference to the Federal Prison Camp in Florence); FLM 526611B (updated the Warden's signature block).

5

questioned whether the publication might include unacceptable content under 28 C.F.R. § 540.70 *et seq.*, the officer forwarded the publication to the ADX Case Management Coordinator for review. *Id.* at 2 ("When the Mail Room Officer questions the acceptability of any publication, it will be forwarded to the Case Management Coordinator before referring the publication to the Warden."). The ADX Case Management Coordinator is the supervisor over the mailroom operations. *Id.* Then, if the Case Management Coordinator determined that the publication should be recommended for rejection, the Case Management Coordinator prepared a draft rejection notice for the Warden's signature. *Id.*[3] ("The Case Management Coordinator or designee will review each individual publication and if rejection is recommended, will have a letter prepared for the Warden's signature.").

15. If the Warden rejected the publication and an appeal was lodged, mailroom personnel retained the publication until the administrative remedy process was completed. *Id.* ("The Mail Room Officer will contact the Administrative Remedy Coordinator and/or review the appeal status in SENTRY before returning any publications, to ensure that the inmate has not filed an appeal. If an appeal is lodged, the materials will be held until the complete process, including Regional and Central Office appeals, have been exhausted.").

### B. Current ADX Florence Institution Supplement (*Incoming Publications*)

16. As referenced above, on February 2, 2016, the current ADX Florence institution supplement regarding incoming publications was issued. *See* Attachment 2. Significantly, the current institution supplement built in additional review procedures before a publication may be

---

[3] If a technical or specialized publication was being reviewed, the Case Management Coordinator would forward the publication for review by the head of a specific ADX department with knowledge in the field—for example, publications that discuss building construction are forwarded to the ADX Facilities Department. *See* Att. 5 at 2.

6

rejected and included quarterly training requirements for staff involved in the incoming publication review process. *Id.* at 1.

17. Under the current institution supplement, ADX mailroom personnel continue to x-ray and search incoming publications to identify potentially objectionable content in accordance with federal regulations and national Bureau policy. Att. 2 at § IV.A. However, instead of forwarding the incoming publication to the Case Management Coordinator, the incoming publication is forwarded to the ADX Special Investigative Services (SIS) Department for additional review. *Id.* at § IV.B. The SIS Department is responsible for investigating inmates for violating Bureau rules or engaging in potential criminal conduct. SIS personnel have expertise in assessing potential security risks.

18. The SIS Department reviews each individual incoming publication that is deemed preliminarily objectionable. *Id.* If the SIS Department decides to recommend rejection of the publication, SIS personnel draft a notice prepared for the Warden's signature. *Id.* "All recommended rejection letters must notate, in writing, specific objectionable pages and content, as well as the national policy and Code of Federal Regulations citation." *Id.* The "national policy" is Program Statement 5266.11, *Incoming Publications*. *See* Att. 1.

19. There is yet another step in the review process before it reaches the Warden's desk. The SIS Department forwards the completed rejection recommendation packet to the Legal Services Department for review. *Id.* at § IV.C. ("Prior to being sent to the Warden for formal action, all recommended rejection packets will be forwarded to the Legal Services Department for review."). If Legal Services does not concur that the incoming publication should be rejected, the rejection packet is not forwarded to the Warden and the incoming publication is not rejected.

20. Bureau personnel involved in the incoming publication review process receive mandatory training on these procedures. "The Legal Services Department will conduct quarterly training with Correctional Systems Department and SIS Department staff regarding the procedures outlined in federal regulations, national Bureau policy, and the current ADX Florence institution supplement." *Id.* at § IV.A. The Bureau has conducted that training. The first quarterly training occurred on February 24, 2016, and the second quarterly training occurred on July 19, 2016. A third quarterly training is scheduled for September 2016.

21. Since implementing the current ADX Florence institution supplement (from February 2 to July 12, 2016), 30 incoming publications have been rejected. It is estimated that, during that same time period, nine thousand incoming publications were received at the ADX. Of these rejected incoming publications, 21 were rejected because they contained sexually explicit material and/or nudity. *See* 28 C.F.R. § 540.71(b)(7). For the remaining nine incoming publications that were rejected, three were rejected because they endorsed violence against Americans, one described advanced war tactics, one called for a nationwide prison shutdown by inmates, three identified sensitive and non-public information about ADX inmates, and one described advanced mind-control techniques.

22. In accordance with the current institution supplement, each of these rejected publications was reviewed by, at a minimum, mailroom staff, SIS Department staff, an attorney in the Legal Services Department, and the Warden, the approving official. None of the publications were rejected solely because they discussed an ADX or Bureau inmate, or Bureau staff member. It is anticipated that the number of rejections of incoming publications will remain consistent with these reduced levels. No issues of *Prison Legal News* have been rejected in 2016.

8

Case No. 1:15-cv-02184-RM-STV Document 104-41 filed 05/14/18 USDC Colorado pg 11
Case 1:15-cv-02184-RM-STV Document 31-1 Filed 07/27/16 USDC Colorado Page 10 of 13
of 14

23.     In comparison, from February 2015 to the end of July 2015, 66 incoming publications were rejected at ADX Florence under the procedures set forth in the previous institution supplements.  Some of these publications were rejected solely because they discussed an ADX or Bureau inmate, or Bureau staff member.  No issues of *Prison Legal News* were rejected in 2015.

24.      The implementation of the current ADX Florence institution supplement, with its enhanced review procedures, has resulted in a more thorough screening of incoming publications for objectionable material.  One past practice that has changed with the implementation of the current institution supplement is that a publication is not rejected solely because it identifies and discusses an ADX or Bureau inmate, or Bureau staff member.  That practice, which the ADX followed prior to the implementation of the current institution supplement in February 2016, was the primary basis for the rejection of the eleven issues of *Prison Legal News* at issue in this lawsuit.

25.     The ADX will not utilize the fact that a publication discusses an ADX or Bureau inmate, or Bureau staff member, standing alone, as a basis for the Warden to find that the incoming publication is "detrimental to the security, good order, or discipline of the institution or … might facilitate criminal activity.'"  *See* Attachment 1 at 2 (quoting 28 C.F.R. § 540.71(b)).  Under the procedures adopted since the implementation of the February 2, 2016, institution supplement, an incoming publication that only discusses an ADX or Bureau inmate, or Bureau staff member, is not rejected solely on that basis.

26.     When a publication identifies and discusses an ADX or Bureau inmate, or Bureau staff member, the Warden makes an individualized assessment of each such publication, taking into account specific information about the inmate or staff member, the content of the article, and how that information may affect institutional security at the ADX.  The Warden must undertake

9

this contextual analysis, even if the information contained in the article is publicly available. The fact that information may be publicly available, or even available to an inmate by means of the prison's Electronic Law Library, does not automatically mean that it is also suitable for introduction into a maximum security institution in the form of an incoming publication that highlights the information. The Warden relies upon his correctional experience, using sound correctional judgment, in making this individualized assessment.

27. Therefore, while it is impossible for the ADX to issue a blanket statement that a publication that identifies and discusses an ADX or Bureau inmate, or Bureau staff member, will never be rejected, the ADX will not reject a publication for that reason alone.

28. The eleven issues of *Prison Legal News* referenced in the complaint in this case were rejected because they discussed an ADX or Bureau inmate, or Bureau staff member. Those eleven issues of *Prison Legal News* have now been reviewed in accordance with the review procedures set forth in the current institution supplement as annotated above. As a result of that review, the Warden determined that all of those previously rejected issues of *Prison Legal News* could be provided to the inmate subscribers. Counsel for *Prison Legal News* has been informed of that decision. The BOP is in the process of identifying the inmate subscribers for the rejected issues and will provide the issues to those inmates who are currently housed at the ADX.

29. The ADX is committed to continuing to implement the current institution supplement, including the enhanced review procedures described in this declaration. The ADX will evaluate a publication to determine whether it may be detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity, *see* 28 C.F.R. § 540.71(b), taking into account the seven non-dispositive factors that may warrant rejection of an incoming publication. *See id.* In undertaking that evaluation, the ADX will adhere to the standard that an

incoming publication will *not* be rejected solely because it discusses an ADX or Bureau inmate, or Bureau staff member.

11

Pursuant to the provisions of 28 U.S.C. § 1746, declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this 26th day of July 2016, in Florence, Colorado.

*s/ Todd Chapman*
Todd Chapman
Executive Assistant
FCC Florence, Colorado
Federal Bureau of Prisons

**Attachments**

Attachment 1, Program Statement 5266.11, *Incoming Publications*, dated Nov. 9, 2011

Attachment 2, FLM 5266.11C, *Incoming Publications*, dated Feb. 2, 2016

Attachment 3, FLM 5266.10C, *Incoming Publications*, dated Aug. 1, 2007

Attachment 4, FLM 5266.11D, *Incoming Publications*, dated Mar. 1, 2011

Attachment 5, FLM 5266.11A, *Incoming Publications*, dated Jan. 24, 2014

Attachment 6, FLM 5266.11B, *Incoming Publications*, dated Dec. 8, 2014