# EXHIBIT 39

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Civil Action No. 15-cv-2184**

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

*Plaintiff*,

v.

THE FEDERAL BUREAU OF PRISONS,

*Defendant*.

## COMPLAINT

Plaintiff Prison Legal News ("PLN") brings this action pursuant to the First and Fifth Amendments of the United States Constitution, the Administrative Procedure Act, and the Declaratory Judgment Act to obtain injunctive and declaratory relief related to the unlawful censorship of the publication *Prison Legal News* at the United States Penitentiary, Administrative Maximum Facility at Florence, Colorado ("ADX"). PLN alleges as follows:

## INTRODUCTION

1. *Prison Legal News* is a monthly magazine consisting of writings from legal scholars, attorneys, inmates, and newswire services. Each month, *Prison Legal News* provides news about legal decisions affecting prisoners, and information designed to help prisoners navigate the judicial system. *Prison Legal News* has thousands of subscribers in the United States and abroad, including inmates in state and federal prisons in all fifty states. Currently, nineteen prisoners at ADX hold active subscriptions to *Prison Legal News*, some of whom have had subscriptions continuously for more than twenty years.

2. PLN brings this action to address the government's refusal to deliver numerous issues of *Prison Legal News* to inmate-subscribers at ADX. The censorship of these issues—which were often rejected based on public information about legal proceedings involving ADX inmates or personnel—lacks any rational relationship to security concerns or any other penological interest of ADX. Indeed, *Prison Legal News* often contains articles about Federal Bureau of Prisons ("BOP") inmates and personnel around the country, yet ADX is the only BOP institution to reject an issue of *Prison Legal News* since 2012.

3. Further, the government has failed to provide timely and adequate notice to PLN of the rejections. PLN receives inadequate standard-form notices of rejection as many as nine months after the initial censorship, depriving PLN of its right to pursue prompt and meaningful appeals of the improper rejections.

4. These actions violate the First and Fifth Amendments to the U.S. Constitution, the Administrative Procedure Act, and BOP regulations.

5. For these reasons, PLN seeks, *inter alia*, (a) a declaration that the government's actions described herein violate the First and Fifth Amendments to the U.S. Constitution and the Administrative Procedure Act, (b) an injunction compelling Defendant to deliver *Prison Legal News* to its subscribers incarcerated at ADX absent a legitimate penological interest supported by specific facts, and (c) an injunction compelling Defendant to provide timely and adequate notice of any future rejections and a process to appeal therefrom.

**PARTIES**

6. Plaintiff PLN is a project of the Human Rights Defense Center, a not-for-profit entity organized under the laws of the State of Washington and recognized as tax exempt under

2

§ 501(c)(3) of the Internal Revenue Code.  PLN is headquartered at 1013 Lucerne Ave, Lake Worth, FL 33460.  PLN publishes *Prison Legal News*.

7. Defendant BOP is the federal government agency within the United States Department of Justice ("DOJ") responsible for administering all federal correctional institutions, including ADX Florence, pursuant to 18 U.S.C. § 4042.  References to "Defendant" include both BOP and its current and former agents.

## JURISDICTION AND VENUE

8. This action arises under the First and Fifth Amendments of the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702, and, to the extent the claims seek declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202.

9. Venue properly lies in the District of Colorado pursuant to 28 U.S.C. § 1391(e) because (a) this action is brought against BOP, an agency of the United States, and (b) a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

### Prison Legal News

10. PLN is a project of the Human Rights Defense Center, a not-for-profit entity organized under the laws of the State of Washington and § 501(c)(3) of the Internal Revenue Code.

11. PLN has published *Prison Legal News*, a softcover magazine, each month since May 1990.

12. *Prison Legal News* contains reviews and analysis of prisoners' rights issues, reports on recent court decisions, and news relating to the criminal justice system.  The

publication helps inmates gain a better understanding of the legal issues affecting prisoners, and serves as a conduit to effective protection and enforcement of prisoners' legal rights. *See, e.g.*, Ex. A, *Prison Legal News*, July 2013.

13. Authors who have published in *Prison Legal News* include Noam Chomsky, Dan Savage, Ken Silverstein, Jennifer Vogel, and Noelle Hanrahan.

14. *Prison Legal News* has thousands of subscribers in the United States and abroad, including inmates in state and federal prisons in all fifty states. Inmates pay $30 per year for a 12-issue subscription to the magazine.

15. PLN also publishes and distributes a number of nonfiction reference books, including self-help legal resources designed for prisoners who are litigating their own cases and other educational resources such as the *Prisoner Diabetes Handbook*.

## Prison Mail Policies

16. The BOP has adopted regulations for all of its facilities—including ADX—that permit "an inmate to subscribe to or receive publications without prior approval" except where prohibited by statute. 28 C.F.R. § 540.70 (2014). These regulations permit rejection of an incoming publication if the facility determines that it is "detrimental to the security, discipline, or good order of the institution or . . . might facilitate criminal activity." *Id.*; *see also* BOP Prog. Statement 5266.10. At administrative facilities such as ADX, inmates may receive softcover publications, such as *Prison Legal News*, only if they are sent directly from a bookstore or publisher. 28 C.F.R. § 540.71(a)(2).

17. BOP regulations require the warden of a penal facility to "review the individual publication prior to rejection of that publication." *Id.* § 540.71(c).

18. Upon rejection of a publication, the warden is required to "promptly advise the inmate of the decision and the reasons for it." *Id.* § 540.71(d).

4

19. The warden is also required to provide the "publisher or sender" with a copy of the rejection letter sent to the inmate. *Id.* § 540.71(e).

20. BOP regulations allow both inmates and publishers to appeal rejection decisions. Inmates may appeal rejections through the BOP's Administrative Remedy Program, *see id.* § 542.10, while publishers have the right to "obtain an independent review of the rejection by writing to the Regional Director [of BOP] within 20 days of receipt of the rejection letter." *Id.* § 540.71(e). The warden must return a rejected publication to its sender unless the inmate files for review. *Id.*

21. As discussed further below, Defendant has failed to follow, and indeed has repeatedly violated, BOP's own policies and procedures with respect to issues of *Prison Legal News* sent to inmates at ADX.

## ADX's Censorship of *Prison Legal News*

22. Since January 2010, ADX wardens have rejected at least eleven issues of *Prison Legal News* in their entirety: January 2010, June 2010, October 2011, November 2011, June 2012, November 2012, February 2013, April 2013, July 2013, September 2013, and April 2014.

23. For each of the rejected issues, the ADX warden who rejected the issue signed a rejection notice. Each notice states that the issue "has been rejected in accordance with BOP Program Statement 5266.10, Incoming Publications, which states in part, 'The Warden may reject a publication if it is determined detrimental to the security, good order, or discipline of the institution or if it may facilitate criminal activity.'"

24. Each notice then provides a single sentence purporting to identify the material that caused the issue to be censored.

25. For most of the issues, the rejection notices claim that the issue was censored due to content in *Prison Legal News* that refers to ADX inmates or ADX or other BOP personnel.

5

However, the notices do not explain how such content is detrimental to the security, good order, or discipline of ADX. Instead, the rejections appear to treat any reference to any ADX inmate or staff member—current or former—as a security risk.

26. The content that forms the basis for these rejections consists of articles about legal proceedings or other newsworthy events pertaining to ADX or BOP, such as: (i) a report regarding lawsuits against ADX for the poor treatment of inmates (November 2012 issue); (ii) an article about developments in the legal options available to prisoners wishing to challenge their placement in ADX (February 2013 issue); (iii) an article about a court decision holding that a prisoner seeking to challenge his transfer to ADX must file an action under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 304 U.S. 388 (1971), rather than a petition under 28 U.S.C. § 2241 (July 2013 issue); and (iv) a report on "former federal prison guards" sentenced for abusing prisoners (September 2013 issue). The information in these articles is highly relevant to, and potentially useful for, individuals incarcerated at ADX.

27. None of the content cited in the rejection notices constitutes a security risk at ADX.

28. The information about ADX inmates or BOP personnel in these issues is limited and often publicly available. For example, the July 2013 article concerning a decision by the U.S. Court of Appeals for the Tenth Circuit, requiring federal inmates to challenge their placement at ADX via *Bivens* actions, appears to have been rejected for identifying Jesus Hector Palma-Salazar, the plaintiff-prisoner who sought to challenge his transfer to ADX. *See* Ex. A, *Prison Legal News*, July 2013. The only personal information about Mr. Palma-Salazar disclosed in the article is the same information published by the Tenth Circuit: that he was indicted on drug cartel-related charges and had held a leadership role in the Sinaloa Cartel.

6

29. The identity of prisoners at ADX and certain information about the prisoners, such as gang membership and offenses committed, is a matter of common knowledge within the prison. Indeed, prisoners often publicize such information via tattoos and other means.

30. In addition, much or all of this information is already available to prisoners at ADX through other sources. For example, prisoners at ADX have access to general-interest publications, television, and radio, including National Public Radio (NPR), *USA Today*, CNN, MSNBC, Fox News, and others. On information and belief, these media sources can and do reveal information about ADX and ADX inmates.

31. Prisoners at ADX also have use of a law library, which includes access to *LexisNexis*, an electronic service containing court decisions and filings. Published decisions in cases involving ADX inmates often contain the same information as the *Prison Legal News* articles rejected for reporting on such decisions. For example, the information about Mr. Palma-Salazar in the July 2013 issue was already publicly available in the published opinions on which the rejected articles were based. *See Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012). On information and belief, ADX has not barred inmates from accessing this decision.

32. Similarly, the February 2013 issue includes an article about a Tenth Circuit ruling in a terrorism case where the court held that former ADX inmates did not have a liberty interest in avoiding transfer to ADX. *See* Ex. B, *Prison Legal News*, Feb. 2013. The article named the inmates involved in the lawsuit—Omar Rezaq, Mohammed Saleh, El-Sayyid Nosair and Ibrahim Elgabrowny—and indicated that they were no longer housed at ADX at the time of the court's decision (or of the article's publication). *Id.* As with the article discussing Mr. Palma-Salazar contained in the July 2013 issue, the information about the inmates contained in the February 2013 issue was also available in the published opinion on which the rejected article was based.

7

*See Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012). On information and belief, ADX has not barred inmates from accessing this decision.

33. Dubbed the "Alcatraz of the Rockies," ADX is the highest-security prison in the United States. Prisoners at ADX are subject to numerous security measures, including at least the following: (a) small cells with no movable furniture, (b) approximately 23 hours of solitary confinement per day, (c) multiple correctional officers securing an inmate each time he is removed from his cell, (d) full shackling of inmates removed from their cells, (e) double doors between inmate cells and hallways, and (f) caged outdoor recreation areas. The extreme security measures at ADX eliminate or reduce any conceivable security risk posed by the content in *Prison Legal News*.

34. Despite these security measures, ADX is the only BOP facility to regularly reject *Prison Legal News*, and the only BOP facility to have rejected any issues of *Prison Legal News* since 2012.

35. The content cited in the rejection notices constitutes a fraction of the information in rejected issues of *Prison Legal News*. Each rejected issue of *Prison Legal News*, however, was rejected in its entirety. Accordingly, the rejection of entire issues of *Prison Legal News* has resulted in the censorship of significant amounts of admittedly unobjectionable content.

36. ADX made no effort to redact or remove the material to which ADX objected and deliver the unobjectionable portion to subscribers. Such redaction or removal of the allegedly objectionable material would not have imposed a significant burden on prison officials.

### ADX's Failure to Properly Notify PLN of Censored Issues

37. As noted above, ADX censored the November 2011 issue of *Prison Legal News*. On information and belief, ADX provided no notice to PLN of the rejected issue. PLN learned of the rejection only from letters that its inmate-subscribers sent to PLN.

8

38. For the remaining rejected issues of *Prison Legal News*, PLN received notice letters from the ADX warden at the time. Some of these notices did not reach PLN until six to nine months after the rejection occurred.

39. As discussed above, the notices provide no explanation for why the cited content is purportedly detrimental to the security, discipline, or good order of ADX.

40. For example, the rejection notice for the September 2013 issue stated that the warden rejected *Prison Legal News* on the grounds that pages 18 and 20 "contain[ed] the names of former BOP staff members that have been sentenced." On its face, the pages cited bear no connection to ADX or Florence, Colorado. The notice provides no explanation for why the content on these pages purportedly constitutes a threat to the "security, discipline, or good order of the institution."

## PLN's Appeals of Rejection Notices

41. PLN has appealed at least four rejections, including the rejections of the June 2012, July 2013, September 2013, and April 2014 issues, to the BOP Regional Director for the North Central Region, which includes ADX.

42. Each PLN appeal offers a detailed argument that the rejection notices from ADX fail to satisfy the constitutional standard for providing notice of a rejection.

43. Moreover, each appeal includes a substantive argument for why the material should not have been rejected.

44. For example, in its appeal of the censorship of the July 2013 issue of *Prison Legal News*, PLN explained that "[w]ith respect to the content of the article itself that is the source of this controversy . . . it is a report of a published court opinion from the Tenth Circuit United

9

States Court of Appeals that is presumably available to every prisoner in the facility in the facility's law library." Ex. C, Sept. 11, 2013, Letter from Lance T. Weber to Paul M. Laird.

45. Each appeal was rejected in a letter from the Regional Director reciting Program Statement 5266.11, which allows rejection of incoming publications that are "detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity." None of the Regional Director's letters provides specific reasoning for the rejection.

46. For example, the Regional Director's letter upholding the rejection of the July 2013 issue of *Prison Legal News* stated that "[a]fter review, we find the publication was properly rejected as it contains information on individuals incarcerated at the U.S. Penitentiary Florence. This material is not suitable for issuance in a correctional environment." Ex. D, Sept. 30, 2013, Letter from Paul M. Laird to Lance T. Weber. The letter provided no explanation or reasoning.

47. Upon receipt of BOP's letter, PLN sent the Regional Director a follow-up letter, which requested an explanation of why reference to an ADX inmate's name in connection with publically available information constituted a security risk. Ex. E, Oct. 9, 2013, Letter from Lance T. Weber to Paul M. Laird. The Regional Director's response merely reiterated the applicable BOP regulation and stated that "[s]pecific inmate names, location housed, case details, and other information *may* pose a security concern." Ex. F, Oct. 24, 2013, Letter from Paul M. Laird to Lance T. Weber (emphasis added). The letter provided no reasoning for how an inmate name "may" pose a risk to ADX security, especially where the inmate is the subject of a published court decision available to other inmates.

10

**Defendant's Refusal to Stop the Illegal Censorship of *Prison Legal News***

48. On June 30, 2015, counsel for PLN sent a letter to the current warden of ADX, John Oliver; the BOP Regional Director for the North Central Region; the Director of BOP; and the Deputy Attorney General.

49. The letter explained, *inter alia*, that the rejections of entire issues of *Prison Legal News* at ADX, and the failure to provide timely and adequate notice of said rejections to PLN and its inmate-subscribers, have violated both the U.S. Constitution and the APA. The letter requested that BOP commit to stop the illegal censorship of *Prison Legal News* at ADX.

50. After further correspondence, Warden Oliver indicated that "future issues of *Prison Legal News*, that may contain personal information about an ADX inmate, will be more thoroughly reviewed to ensure information contained therein is not already available publicly through the Electronic Law Library or other federal publications." However, Warden Oliver did not agree that any of the past censorship of *Prison Legal News* was improper, nor did he provide any explanation of why this publication purportedly constitutes a security risk at ADX. As of the filing of this Complaint, Defendant has not committed to stop the illegal censorship of *Prison Legal News* at ADX.

## CLAIMS FOR RELIEF

### COUNT I

**Censorship of Constitutionally Protected Speech in Violation of the First Amendment**

51. PLN hereby reasserts and incorporates by reference all allegations contained in paragraphs 1 through 50 of this Complaint.

52. Defendant's actions, as alleged herein, constitute state action and agency action.

11

53. Defendant has censored *Prison Legal News*, which contains speech protected by the First Amendment to the U.S. Constitution.

54. Defendant's censorship of *Prison Legal News* is not rationally related to any legitimate and neutral government purpose.  In particular, the allegedly objectionable information does not pose any risk to the security, discipline, or good order of ADX, particularly given the stringent security measures in place at ADX, and the fact that most or all of the information is already available or known to inmates at ADX.

55. Defendant's rejection of *Prison Legal News* leaves PLN with no alternative means to publish important legal and other news to its subscribers at ADX.

56. Further, Defendant's rejection of issues of *Prison Legal News* in their entirety results in the censorship of admittedly unobjectionable content.  Defendant has an obvious and easy alternative to full censorship of *Prison Legal News* that does not pose a threat to the security or good order of ADX, namely redaction or removal of articles deemed objectionable.

57. There exists a substantial threat that the improper censorship of *Prison Legal News* at ADX will continue.

58. Defendant's censorship causes ongoing and irreparable harm to PLN's exercise of its constitutional rights, for which there is no adequate remedy at law.

## COUNT II

### Failure to Provide Due Process in Violation of the Fifth Amendment

59. PLN hereby reasserts and incorporates by reference all allegations contained in paragraphs 1 through 58 of this Complaint.

60. Defendant's actions, as alleged herein, constitute state action and agency action.

12

61. In denying PLN its right to communicate with current and potential inmate-subscribers, Defendant has deprived PLN of constitutionally protected liberty and property interests.

62. Defendant has effected these deprivations without due process of law because they have failed to provide PLN with timely and adequate notice and an opportunity to be heard.

63. Specifically, where PLN has received rejection notices, those notices contain uninformative, perfunctory language that sheds little or no light on the reason for rejection. Insofar as the rejection notices contain no explanation regarding how the cited content undermines the safety or order of ADX, the notices do not provide sufficient detail to PLN (or its subscribers) to place it on notice of the reasons for the rejection and allow for any meaningful appeal.

64. Moreover, this failure to provide adequate notice violates the BOP's own procedures governing incoming publications at federal correctional facilities, which require the warden to inform inmates and publishers of "the reasons for [rejection]." 28 C.F.R. § 540.71(d),(e); *see also id.* § 540.13 (requiring warden to inform inmate of rejection of any mail of "the reasons for the rejection . . .").

65. The regulation requiring BOP to return rejected publications to their publisher rather than retain a rejected issue until the appeal process is complete (BOP Program Statement 5266.11 § 540.71 (a)(4)(d)) further impairs PLN's ability to obtain a meaningful appeal and violates PLN's due process rights, because the censored writing itself is unavailable for consideration by the Regional Director at the level of secondary review.

13

66. The lack of specific regulations or guidelines governing the Regional Director's review of censored material further impairs PLN's ability to receive an independent review of rejected publications.

67. Defendant's failure to provide PLN with constitutionally adequate notice each time *Prison Legal News* is censored violates PLN's rights to due process of law as protected by the Fifth Amendment to the U.S. Constitution.

68. Defendant's persistent failure to provide constitutionally adequate notice of the reasons for rejecting an issue is deliberate.

69. There exists a substantial threat that Defendant will continue to provide deficient notices for future censorship of *Prison Legal News*.

70. Defendant's failure to provide adequate notice causes ongoing and irreparable harm to PLN's constitutional rights, for which there is no adequate remedy at law.

## COUNT III

### Violations of the Administrative Procedure Act

71. PLN hereby reasserts and incorporates by reference all allegations contained in paragraphs 1 through 70 of this Complaint.

72. The actions of Defendant discussed herein are final agency actions for which there is no other adequate remedy in a court. They are therefore subject to judicial review.

73. Defendant has violated the APA in at least five respects.

74. First, Defendant's failure to provide timely notice of rejection—in some instances, sending notices six to nine months after an issue of *Prison Legal News* was delivered to ADX—constitutes arbitrary and capricious decision making and demonstrates the BOP's failure to follow its own procedures in violation of the APA. For example, Defendant has failed

14

to follow the BOP regulation requiring the warden to "*promptly* advise the inmate in writing of the decision [to reject a publication] and the reasons for it," 28 C.F.R. § 540.71(d) (emphasis added), and to send a copy of such notice to the publisher, *id.* § 540.71(e).

75. Second, Defendant's failure to provide adequate reasons for rejection, both in initial rejection notices and in appeals decisions, constitutes arbitrary and capricious decision making and demonstrates the BOP's failure to follow its own procedures in violation of the APA. For example, Defendant has failed to follow the BOP regulation requiring the warden to inform inmates and publishers of "the reasons for [rejection]." 28 C.F.R. § 540.71(d),(e); *see also id.* § 540.13 (requiring warden to inform inmate of rejection of any mail of "the reasons for the rejection"). Specifically, Defendant has failed to articulate specific facts rationally supporting the premise that purportedly objectionable content is "detrimental to the security, good order, or discipline of the institution," especially in the uniquely restrictive environment of a maximum-security facility such as ADX. Mere recitation of the regulation does not inform PLN—or its inmate-subscribers—of the actual reasons for a given rejection.

76. Third, Defendant's censorship of entire issues of PLN's publication based on a single line or two of supposedly objectionable material constitutes arbitrary and capricious decision making in violation of the APA.

77. Fourth, Defendant's censorship of entire issues of PLN's publication based on supposedly objectionable material that is readily available to inmates through other channels is arbitrary and capricious decision making in violation of the APA.

78. Fifth, Defendant's censorship of an entire issue of PLN's publication supposedly based on references to ADX inmates or staff, where there is no discernible connection to ADX, constitutes arbitrary and capricious decision making in violation of the APA.

15

79. There exists a substantial threat that such unlawful actions will continue.

80. Defendant's actions cause ongoing and irreparable harm to PLN, for which there is no adequate remedy at law.

81. The foregoing conduct should be held unlawful and set aside.

## PRAYER FOR RELIEF

**WHEREFORE**, PLN respectfully requests that this Court grant the following relief:

A. A declaration that Defendant's censorship of *Prison Legal News* under 28 C.F.R. § 540 and lack of due process regarding such censorship violates the First and Fifth Amendments to the U.S. Constitution and the APA;

B. Permanent injunctive relief compelling Defendant and its agents to deliver (i) all past issues of *Prison Legal News* that have been previously censored and withheld from PLN's subscribers at ADX, and (ii) all future issues of *Prison Legal News* absent a legitimate penological interest supported by specific facts;

C. Permanent injunctive relief requiring Defendant and its agents, as to any future issues that are censored, (i) to provide PLN with timely, individualized, specific, and detailed notice that includes an explanation of why the article(s) or page(s) in question are subject to censorship under 28 C.F.R. § 540, (ii) to provide PLN with timely opportunity to be heard and contest the decision each time PLN's publication is censored, and (iii) to retain censored issues of *Prison Legal News* until either the resolution of PLN's appeals to the Regional Director or until the time for appeal has expired, whichever is later;

D. An award to PLN of its costs and attorneys' fees arising out of this litigation pursuant to 28 U.S.C. § 2412(d); and

16

E. Such other and further relief as the Court deems just and equitable.

DATED: October 1, 2015

Respectfully Submitted,

Lance Weber (Admission Pending)
Sabarish Neelakanta (Admission Pending)
Human Rights Defense Center
PO Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Email:
lweber@humanrightsdefensecenter.org
sneelakanta@humanrightsdefensecenter.org

*Of Counsel:*

Elliot Mincberg
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle NW
Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Email: elliot_mincberg@washlaw.org

*s/ Steven D. Zansberg*
**Steven D. Zansberg**
Levine Sullivan Koch & Schulz LLP
1888 Sherman Street, Suite 370
Denver, CO 80203
Telephone: (303) 376-2409
FAX: (303) 376-2401
E-mail: szansberg@lskslaw.com

Peter A. Swanson
Addar Weintraub
Matthew S. Shapanka
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
FAX: (202) 662-6291
E-mail: pswanson@cov.com
aweintraub@cov.com
mshapanka@cov.com

David M. Shapiro (Admission Pending)
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
Telephone: (312) 503-0711
Email: david.shapiro@law.northwestern.edu

*Attorneys for Plaintiff Prison Legal News*

17