# Defendant's Statement
# of Undisputed Material Facts

*Prison Legal News v. Fed. Bureau of Prisons*,
No. 15-cv-02184-RM-STV

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| **Moving Party's Undisputed Material Facts and Supporting Evidence** | **Opposing Party's Response/Additional Facts and Supporting Evidence** | **Moving Party's Reply and Supporting Evidence** |
|---|---|---|
| **I. The ADX adopted an incoming publications policy that abolished the name-alone practice and implemented new rejection notification procedures.** | | |
| 1. At some point between 1998 and 2002, the ADX instituted a practice requiring SIS personnel to flag every incoming publication that mentioned a BOP inmate or staff member by name. The reason for instituting that practice was that ADX personnel had obtained information indicating that ADX inmates were using publications to pass clandestine messages. Until that time, ADX personnel were unaware of this illicit use of publications by inmates. Decl. of Todd Chapman, Ex. 1 ¶ 11. | | |
| 2. In the years that followed, SIS personnel continued to flag the names of both BOP inmates and staff during the publication-review process. Chapman Decl., Ex. 1 ¶ 11. | | |
| 3. Between January 2010 and April 2014, during the period when this practice was followed, eleven issues of *Prison Legal News* were rejected at the ADX. Complaint, Doc. 1 ¶ 22; *see also* Deposition of Paul Wright (excerpt), Ex. 2 at 114:18-115:1. | | |
| 4. Each of the eleven rejected issues of *Prison Legal News* mentioned a BOP inmate or staff member by name. *See* Doc. 31-8 (rejection notices for each rejected issue). | | |

1

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 5. ADX officials reviewed the issues this litigation brought to light and determined that changes were appropriate. Chapman Decl., Ex. 1 ¶ 7. | | |
| 6. The ADX eliminated the name-alone practice beginning with the February 2, 2016, ADX Institution Supplement regarding incoming publications. Decl. of Amy Kelley, Ex. 5 ¶ 7; *see also* First Decl. of Todd Chapman, Doc. 31-1 ¶¶ 24-25. Since February 2016, no incoming publication at the ADX has been referred to the Warden for possible rejection, nor has any publication been rejected, merely because it contained the name of a BOP inmate or staff member. Kelley Decl., Ex. 5 ¶ 9; Chapman Decl., Ex. 1 ¶ 16. | | |
| 7. On December 21, 2017, the ADX formalized its commitment to the abolition of the name-alone practice by adding this section to the Institution Supplement regarding incoming communications: "**An incoming publication at the ADX may not be rejected solely because it discusses an ADX or Federal Bureau of Prisons (BOP) inmate, or BOP staff member**. When a publication identifies and discusses an ADX or BOP inmate, or BOP staff member, SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and | | |

2

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| include an evaluation of the factors in 28 C.F.R. § 540.70(b). Staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment." Chapman Decl., Ex. 1 ¶ 8; *see also id.* Ex. 2, FLM 5266.11E, *Incoming Publications* (Dec. 21, 2017), at § III.C. (emphasis added); Decl. of Andre Matevousian, Ex. 3 ¶¶ 9-10. | | |
| 8. Section III.C. of the December 2017 Policy prohibits rejections of incoming publications based on the mere mention of the names of BOP inmates or staff. Matevousian Decl., Ex. 3 ¶ 16. | | |
| 9. Any issue of *Prison Legal News* that is sent to the ADX is evaluated under these procedures. Matevousian Decl., Ex. 3 ¶ 9. | | |
| 10. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.C. of the December 2017 Policy because it "is in accordance with the law and sound correctional judgment." Matevousian Decl., Ex. 3 ¶ 16. | | |
| 11. ADX Warden Jack Fox reviewed the eleven previously rejected issues of *Prison Legal News* in March 2017. Matevousian Decl., Ex. 3 ¶ 19. The issues were delivered to inmate subscribers at that time. *Id.* | | |
| 12. The eleven previously rejected issues of *Prison Legal News* would not be rejected under the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 19; Chapman Decl., Ex. 1 ¶ 16. | | |

3

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 13. In the December 2017 Policy, ADX officials also made changes to the notification procedures following the rejection of an incoming publication: "When an incoming publication is rejected, the Warden will promptly advise the inmate and publisher in writing of the decision and the reason(s) for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable, **including page references and quotes from the incoming publication**. The Warden will advise the publisher or sender that the publisher may obtain independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. **Ordinarily, the rejection notice will be mailed to the publisher within ten business days from the Warden's signature date**." Chapman Decl., Ex. 1 ¶ 17 (discussing § III.G. of the December 2017 Policy) (emphasis added); Matevousian Decl., Ex. 3 ¶ 17. | | |
| 14. This provision was also implemented as a result of this litigation. Chapman Decl., Ex. 1 ¶ 18. ADX officials determined that this provision should be added to ensure that rejection notices adequately explain the grounds for rejection and to enable publishers to appeal rejections in a timely manner. *Id.* | | |
| 15. The procedures in § III.G. of the December 2017 Policy would be applied if any issue of | | |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| *Prison Legal News* is ever rejected at ADX in the future. Matevousian Decl., Ex. 3 ¶ 18. | | |
| 16. The language concerning specific page references and quotes is not required by national policy, nor is the statement that a rejection notice should be mailed to the publisher within ten business days of the Warden's signature on the notice. Chapman Decl., Ex. 1 ¶ 18; *see also* 28 C.F.R. § 540.71(d). | | |
| 17. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.G. of the December 2017 Policy because it "is in accordance with Bureau regulations and sound correctional judgment." Matevousian Decl., Ex. 3 ¶ 18. | | |
| **II.  ADX inmates pose extreme dangers to other inmates, staff, and the public.** | | |
| 18. ADX officials must protect the safety and security of inmates, prison staff, and the public from the dangerous, violent, and predatory inmates housed at the ADX. Matevousian Decl., Ex. 3 ¶ 3; Decl. of Mark Collins, Ex. 4 ¶¶ 13, 14, 24, 34. | | |
| 19. The ADX houses the most violent, predatory, disruptive, and escape-prone inmates in the BOP, including many state prisoners who are too violent and dangerous to be housed in a state facility. Collins Decl., Ex. 4 ¶¶ 3-4; Matevousian Decl., Ex. 3 ¶ 3. | | |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 20. Many current ADX inmates have murdered other inmates, prison staff, and other law enforcement personnel. Collins Decl., Ex. 4 ¶ 5. | | |
| 21. Approximately 140 current ADX inmates are leaders, members, or associates of BOP-designated Security Threat Groups ("STGs"). Collins Decl., Ex. 4 ¶ 5. | | |
| 22. The ADX houses a large number of international and domestic terrorists. Collins Decl., Ex. 4 ¶ 5. | | |
| 23. Notwithstanding this dangerous inmate population, the ADX is a programming prison in which inmates can progress to less-restrictive settings by means of the ADX Step-Down Program. Collins Decl., Ex. 4 ¶¶ 6-8. | | |
| 24. ADX staff are in close physical proximity to inmates every day. Collins Decl., Ex. 4 ¶ 9. | | |
| 25. ADX correctional staff are subject to physical assaults by inmates, including serious assaults in which staff have been beaten and nearly killed. Ex. 4 ¶¶ 9-10. As recently as May 3, 2018, an inmate in the last phase of the ADX Step-Down Program was seriously injured by another inmate wielding a shank and had to be airlifted to the hospital. Matevousian Decl., Ex. 3 ¶ 14. | | |
| 26. ADX inmates have been seriously assaulted by other inmates. Collins Decl., Ex. 4 ¶ 11. | | |
| 27. In this dangerous environment, ADX officials must not only address and attempt to eliminate | | |

6

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| actual threats, but attempt to identify potential threats. Collins Decl., Ex. 4 ¶ 13. | | |
| 28. ADX officials must make predictive judgments about inmate behavior, anticipate how those future events may compromise the safety and security of staff, inmates, and the public, and plan for the worst-case scenario. Collins Decl., Ex. 4 ¶ 13. Any mistake can result in serious harm or death. *Id.* | | |
| **III.  ADX officials need discretion to decide that identifying BOP inmates and staff in an incoming publication can jeopardize security.** | | |
| 29. Information can be used as a weapon by the dangerous ADX inmate population. Collins Decl., Ex. 4 ¶¶ 14-16. | | |
| 30. Despite the physical controls at the ADX, ADX inmates defeat security controls to communicate with other inmates throughout the prison. Collins Decl., Ex. 4 ¶ 17. | | |
| 31. Even though the communications of ADX inmates are monitored and analyzed, that does not eliminate all risks. Collins Decl., Ex. 4 ¶ 24. A communication sent to an ADX inmate may result in violence years after the fact. *Id.* | | |
| 32. The ADX Warden must have the ability to control information that comes into the prison in order to protect institutional and public safety and to maintain the safe, secure, and orderly operations of other BOP facilities. Collins Decl., Ex. 4 ¶ 14. | | |
| 33. In the judgment of the ADX Warden, it would be contrary to sound correctional judgment to | | |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| impose a rule mandating that incoming publications can never be rejected when they contain the names of BOP inmates or staff members. Matevousian Decl., Ex. 3 ¶ 8. | | |
| 34. In the correctional judgment of the ADX Warden, there are circumstances where identifying an inmate or staff member in a publication, along with other information about the inmate or staff member, could place those persons and persons associated with them in jeopardy. Matevousian Decl., Ex. 3 ¶ 8. | | |
| 35. In the correctional judgment of the ADX Warden, persons who could be put at risk by their being identified in an incoming publication include sex offenders, specifically those inmates who have committed sex crimes against children, inmate informants, and inmates who have testified for the government. Matevousian Decl., Ex. 3 ¶ 11; *see also* Collins Decl., Ex. 4 ¶ 16. Inmates who are identified in an incoming publication as former law enforcement officers are also put at risk. Collins Decl., Ex. 4 ¶ 16. | | |
| 36. In the correctional judgment of the ADX Warden, if an incoming publication highlights information of the type listed in Facts 34-35, above, the Warden must be able to evaluate that information and exercise his discretion to reject it. Matevousian Decl., Ex. 3 ¶ 11. | | |
| 37. Inmates who are exposed in this manner in an incoming publication are put at risk of physical | | |

8

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| harm, manipulation by other inmates, and being forced into protective custody. Collins Decl., Ex. 4 ¶¶ 22-23. | | |
| 38. The ADX houses powerful leaders and other high-level operatives of various dangerous gangs and STGs who continue to wield authority outside the ADX. Collins Decl., Ex. 4 ¶ 18. These "shot callers" exert influence outside the prison, including the authority to order that persons be killed. *Id.* ¶¶ 19-20. | | |
| 39. An ADX Warden must anticipate how these "shot callers" may view information they read in incoming publications, and how they may use that information to their advantage and to the benefit of their associates on the street and in other BOP facilities. Collins Decl., Ex. 4 ¶ 21. | | |
| **IV. A rule forbidding an ADX Warden from ever rejecting "publicly available" information poses unacceptable security risks.** | | |
| 40. The review of an incoming publication by the ADX Warden depends on the circumstances at the time an incoming publication is received at the ADX. Collins Decl., Ex. 4 ¶ 29. | | |
| 41. In the correctional judgment of the ADX Warden, requiring a Warden to provide information to the ADX inmate population because it is "publicly available," or possibly "already known" by inmates, would render the Warden helpless to take action to prevent any known or reasonably perceived risks. Matevousian Decl., Ex. 3 ¶ 12. | | |

9

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 42. In the correctional judgment of the ADX Warden, even if information is "publicly available" or in the "public domain," or if some inmates may know that information through other sources, that does not diminish the negative impact of highlighting and presenting information that identifies an inmate and provides details about his crimes directly to the dangerous inmate population at the ADX. Matevousian Decl., Ex. 3 ¶ 13. In the Warden's correctional judgment, disseminating this information creates an immediate safety risk to the identified inmate. *Id.* | | |
| 43. There is no way for the Warden to apply a "publicly available" standard without creating risks. Collins Decl., Ex. 4 ¶ 31. There is no way to determine what inmates actually know without polling the inmate population, which will expose the information itself, and the inmates may not be truthful. *Id.* | | |
| 44. Any information that a publisher prints is, by definition, "publicly available," meaning that the Warden could never reject any publication, no matter how dangerous it might be. Collins Decl., Ex. 4, ¶ 31. With this standard in place, inmates and publishers would know that incoming publications could be used as a conduit to pass information into the institution with little oversight. *Id.* | | |
| 45. In the correctional judgment of the ADX Warden, inmate rumors (including about sex | | |

10

Case No. 1:15-cv-02184-RM-STV   Document 106-1   filed 05/14/18   USDC Colorado   pg 12 of 13

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| offenders or cooperators) are often not acted upon until that information is verified. When a publication affirmatively identifies an inmate and provides details about his crimes and/or history, that verification increases the risk that he will be harmed by other inmates. Matevousian Decl., Ex. 3 ¶ 13; *see also* Collins Decl., Ex. 4 ¶ 32. | | |
| 46. In the correctional judgment of the ADX Warden, no ADX security protocol can eliminate all risks, and the Warden must be able to exercise his correctional judgment to determine that there are circumstances in which exposing information about individuals creates risks that require rejection of an incoming publication. Matevousian Decl., Ex. 3 ¶ 15. | | |
| 47. The risk assessment is necessarily predictive in nature. The Warden cannot know with certainty that bad consequences will follow if a publication enters the institution, but he must have the ability to exercise his informed judgment to decide that there might be a dangerous result based on his assessment of the known facts and intelligence at the time. Collins Decl., Ex. 4 ¶¶ 33-34. | | |
| 48. In the correctional judgment of the ADX Warden, there is no way for the Warden to identify every risk that may occur in the future. He must conduct the risk analysis at the time he reviews the incoming publication in the particular context at the time, taking into account the specific content of the publication; facts involving the identified | | |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| inmate, staff member, or other person; the identity of the inmate population at the time, including their contacts outside the prison; and a host of other unknown and unknowable factors that may be in play at some hypothetical point in the future. Matevousian Decl., Ex. 3 ¶ 15. | | |
| 49. In the correctional judgment of the ADX Warden, Section III.C. of the December 2017 Policy prevents rejections of incoming publications based on the mere mention of inmates or staff, while giving the Warden the necessary discretion to deal with risks that may arise when information about these people is exposed to the ADX inmate population. Matevousian Decl., Ex. 3 ¶ 16. | | |
| 50. The ADX Warden must have the discretion to reject incoming publications that, in his judgment, pose a security risk to inmates, staff, and the public. Matevousian Decl., Ex. 3 ¶ 12; *see also* Collins Decl., Ex. 4 ¶¶ 33-34. | | |