# EXHIBIT 23

## No Death Penalty for Maine Prisoner

*by Lance Tapley*

In 2008, within a supposedly high-security prison in the giant federal correctional complex in Florence, Colorado, Gary Watland, a "boarder" from Maine, murdered another prisoner, white supremacist Mark Baker.

After five and a half years – and after, probably, millions in taxpayer-paid legal costs, including for his defense team – Watland, the only Maine prisoner facing a possible death penalty, saw federal prosecutors in Denver on February 5, 2014 accept his offer to spend life behind bars without the possibility of parole.

However, Watland, 51, already had accumulated enough time to spend life in prison. He had been placed in the federal system after being sentenced to 35 years for a 2006 escape attempt at the Maine State Prison, in Warren, where he was serving 25 years for killing a drinking buddy in 2004.

At Warren, Watland had plotted with his wife to have her smuggle a gun behind her belt buckle into the prison visitors' room, where he allegedly planned to kill guards and anyone else in his way during the breakout. After a prisoner tipped off authorities, Susan Watland was apprehended with the loaded gun in the parking lot.

In Colorado, Watland snuck up on Baker while he was playing poker and stabbed him in the neck with a homemade knife. The plea agreement states: "One blow was to the carotid artery and a second blow severed the brain stem. Mr. Baker fell to the floor dead." Watland maintained he was in a "kill or be killed" situation. Baker's prison gang, the Nazi Low Riders, was allegedly harassing gays. Defending his life, Watland came out of the closet.

The feds had wanted to use the arguments that Watland was still dangerous and had a low chance of rehabilitation to obtain a death sentence from a jury, but a judge ruled them out. Shortly after the ruling, prosecutors accepted the plea bargain.

Watland's case recently stimulated the Maine Prisoner Advocacy Coalition to urge the state Department of Corrections to ban sending Maine prisoners to jurisdictions with the death penalty. Maine doesn't have capital punishment; the federal government does.

"He's a classic example of why the death penalty shouldn't be used," commented a prisoner who knew him at Warren. "I believe that Gary Watland is mentally ill." In 2007 his mother told *The Portland Phoenix* he suffered from bipolar disorder. He denies any mental illness.

Originally from California, Watland re-established his relationship with his parents and teenage daughter during his years awaiting trial in the solitary-confinement ADX prison, which also is in the federal complex in Florence.

"He's grown as a person over the time I've known him," defense attorney Patrick Burke told the *Phoenix*. "I think he'll continue to make a contribution to his family and friends."

Any future contribution Watland makes will likely be from the austere isolation of the most dreaded supermax in America. Although the U.S. Bureau of Prisons will decide where Watland will be kept, expectations are he will continue to be held at ADX. If he were allowed into a prison's general population, he would risk being killed in gang revenge.

*This article was originally published by The Portland Phoenix (http://portland.thephoenix.com) on February 12, 2014; it is reprinted with permission of the author.*

## Qualified Immunity Denied to Michigan Guard for Improper Strip Search of Amputee Prisoner

The Sixth Circuit Court of Appeals affirmed the denial of qualified immunity to a Michigan prison guard who allegedly strip searched a prisoner without a legitimate penological reason for doing so. The appellate court also vacated the denial of qualified immunity to a warden who sanctioned the prisoner's placement in isolation, remanding for consideration of the warden's qualified immunity defense.

When Martinique Stoudemire entered Michigan's prison system at the age of 23 in July 2002, she had a lengthy documented history of health problems. Absent proper care, she was at significant risk of experiencing kidney and liver damage, heart attacks, amputations and chronic pain. After arriving at the Huron Valley Women's Correctional Facility (Huron), her health quickly deteriorated.

By the time she was paroled in 2007, Stoudemire had undergone three amputations, eventually losing both legs below the knee. She attributed her health complications to the failure of prison staff, nurses and associated doctors to provide adequate medical care. The appeal in her lawsuit focused on her final amputation in December 2007, when she contracted a MRSA infection and was quarantined in Huron's segregation unit. [See: *PLN*, May 2007, p.1].

Michigan Department of Corrections (MDOC) policy provides for prisoners with MRSA to be quarantined, and the warden at Huron, Susan Davis, designated the facility's segregation unit as a quarantine location. Pursuant to that policy, Stoudemire spent two weeks in segregation.

While there she received "extremely poor" medical care: The cell was not equipped for disabled prisoners, and she was not provided with assistive devices to safely move between her bed, wheelchair, toilet and shower. Medical staff treated her with contempt, accused her of malingering and responded with hostility when she sought assistance. She was once forced to urinate in a bowl, defecated on herself once, received only one shower in the two weeks she spent in segregation and had to dress her own wounds.

Warden Davis argued that she was entitled to qualified immunity on Stoudemire's claim that the segregation conditions amounted to deliberate indifference to her serious medical needs. The Sixth Circuit found the district court did not make factual findings pertaining to Davis or her mental state or knowledge of the facts alleged by Stoudemire, and remanded that issue to the lower court to make such findings and rule on Davis' qualified immunity defense.

The Court of Appeals then addressed a claim against prison guard Ariel N. Dunagan, who strip searched Stoudemire on