
# EXHIBIT 24



**U.S. Department of Justice**

Robert C. Troyer
United States Attorney
District of Colorado

---

| | | |
|---|---|---|
| Susan Prose<br>Assistant United States Attorney | 1801 California Street, Suite 1600<br>Denver, Colorado  80202 | Telephone:  303-454-0100<br>Fax:  303-454-0404 |

December 7, 2017

**Via email only**

Stephen Kiehl
Covington & Burling LLP
One City Center
850 Tenth Street, NW
Washington, DC 20001-4956
skiehl@cov.com

Re:  *Prison Legal News v. Federal Bureau of Prisons*, No. 15-cv-02184-RM-STV

Dear Steve:

We have had several telephone conversations concerning the issues you raised in your letter dated October 29, 2017.  This correspondence is in further response to the specific points you raised about the documents produced at bates range BOP 1263 to BOP 1284.  You ask for clarification concerning the Federal Bureau of Prisons' ("BOP") assertions of the attorney-client and attorney-work-product privileges, as well as the deliberative-process privilege.  We will address the various aspects of these documents and briefly explain how, in our view, these privileges apply.

First, the redacted portion of the email from Ms. Hays to various BOP personnel (BOP 1264, 1270, 1277, 1278, 1279, 1280, 1281, 1282, 1284, 1285, 1286, 1287), does reflect legal advice provided by BOP attorney Clay Cook to his client, as do the separate emails from Mr. Cook found at BOP 1270 and BOP 1283.  We believed the language in the January 12, 2017, privilege log made that clear, but we will revise the privilege log to provide further clarification on that point.  As for the applicability of the attorney-work-product privilege to these documents, we think that privilege also applies.  The communications from Mr. Cook reflect his work in connection with the litigation of this matter in his role as counsel to the BOP.  As you note, the work-product doctrine shields discovery of "documents and tangible things that are prepared in anticipation of ligation," but it also covers "documents and tangible things that are prepared . . . *for trial*[.]"  Fed. R. Civ. P. 26(b)(3)(A) (emphasis added).  We do not believe that the work-product doctrine ceases to apply when litigation commences.  Were that the case, you would be entitled to discover all documents prepared by Ms. Cook and me in connection with our work

defending the case—and we would be able to obtain such documents from you. We will be glad to review any case law you have which suggests that documents prepared after litigation commences are, by definition, excluded from the protection of the work-product privilege. In the meantime, we will revise the privilege log to more fully explain the BOP's assertion of the work-product privilege.

Similarly, with regard to the red-lined drafts of Institution Supplement FLM 5266.11C, *Incoming Publications*, we asserted the attorney-client and work-product privileges because these documents were drafted and further revised by Mr. Cook. In presenting the drafts to his client, and suggesting subsequent changes, Mr. Cook was acting in his role as counsel to the BOP and advising his client about appropriate policy language based, at least in part, on his evaluation of the pending case brought by Prison Legal News. His drafts, which are his work product, advise his client concerning the appropriate language to include. Again, we will revise the privilege log to make our position on these points clearer.

Finally, I would like to address your questions concerning the BOP's assertions of the deliberative-process privilege.

As an initial matter, your letter brought to my attention the fact that one page in this group, BOP 1282, was inadvertently omitted from the log and should have been included. This document will be included on the revised privilege log.

With regard to the drafts of the Institution Supplement, the BOP's position is that these drafts are properly withheld in their entirety. Our thinking is informed by the well-established rule "that a document is deliberative if disclosure would expose recommendations, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency, or expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its function[.]" *In re United States,* 678 F. App'x 981, 988 (Fed. Cir. 2017) (holding that the deliberative-process privilege protected from disclosure various documents, including two draft policy memoranda) (internal citations and quotation marks omitted). "Documents that are clearly identifiable as drafts" are subject to the deliberative-process privilege. *Mohammed v. Holder*, No. 07-cv-02697-MSK-BNB, 2014 WL 1042309, at *6 (D. Colo. Mar. 18, 2014).

Were the BOP to produce partially redacted copies of these drafts, the only information that would be unredacted is the language that ultimately was incorporated into the final version of the Institution Supplement, which has been produced to you. Moreover, such partial redactions would necessarily highlight information about decisions to delete material or to change the approach to the policy and would reveal information about what the BOP considered important, even if the specifics of that information were not exposed. Such information about the scope and extent of changes in a draft is also protected by the deliberative-process privilege. As one court has put it, disclosure of such "editorial judgments—for example, decisions to insert or delete material or to change a draft's focus or emphasis—would stifle the creative thinking and candid exchange of ideas necessary to produce good historical work." *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1569 (D.C. Cir. 1987) (observing that potential

exposure of drafts "would place pressure on authors to write drafts that carefully toe the party line").

As to the email responses to Ms. Hays's request for review, we believe these also fall within the scope of the deliberative-process privilege. The federal district court in Colorado "has also permitted the withholding of documents [pursuant to the deliberative-process privilege] in which the sender requests and the recipients provide their consent to the contents of a draft document (whether included or not). There may be little harm in disclosing documents in which each recipient merely states that they consent to a proposed draft of decision, but obtaining such consent is an important component of the deliberative process, and thus, the Court treats such documents as privileged." *Mohammed*, 2014 WL 1042309, at \*6. The same analysis applies here.

In sum, the BOP has claimed the deliberative-process privilege here over the very kind of information the privilege is designed to protect: information that is "recommendatory in nature" and that "contains candid discussions and subjective views" about the proposed draft Institution Supplement. *In re United States*, 678 F. App'x at 988 (quotation omitted). If BOP employees, including their legal counsel, know that discussions like these might eventually be exposed in litigation, "they would be less likely to express those views in the future." *Id.*; *see also Moye, O'Brien, O'Rourke, Hogan, & Pickert v. Nat'l R.R. Passenger Corp.,* 376 F.3d 1270, 1277 (11th Cir. 2004) ("The purpose of [the deliberative-process] privilege is to allow agencies to freely explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny.").

We look forward to a further conversation with you about these important matters. Thank you for your professional courtesy.

    Sincerely,

    s/ *Susan Prose*
    Susan Prose
    Assistant United States Attorney

3