# EXHIBIT 27

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

---

**DEFENDANT'S FIRST SUPPLEMENTAL RESPONSES
TO PLAINTIFF'S SECOND INTERROGATORIES**

---

Pursuant to Fed. R. Civ. P. 33, Defendant Federal Bureau of Prisons ("Defendant" or "BOP"), through undersigned counsel, hereby supplements its responses to Plaintiff's Second Set of Interrogatories as follows:

**SUPPLEMENTAL RESPONSES**

**Interrogatory No. 19:** Describe in detail the factual and legal basis for your contention that ADX should not have to redact or remove objectionable content from incoming Publications at ADX (instead of rejecting Publications in their entirety), including a detailed description of (a) any alleged burden this would impose on prison officials (beyond the burden of rejecting the Publications in their entirety), and (b) any alleged burden any evaluation[1] of this alternative undertaken by BOP or ADX at any time and the outcome of any such evaluation.

---

[1] There may be words omitted from this portion of the interrogatory. The BOP understands this portion of the interrogatory to read as follows: "any evaluation of this alternative . . ."

**RESPONSE:**  The BOP incorporates here all previous objections to this interrogatory.

Subject to, and without waiving these objections, the BOP first incorporates herein its previous response to this interrogatory.  In addition, the BOP further incorporates here the deposition testimony of John Dunkelberger, Chief, Unit Management Section, Correctional Programs Division, that is responsive to this interrogatory.

**Interrogatory No. 20**: Identify any BOP institution, other than ADX, that has rejected an issue of *Prison Legal News* from January 2009 to the present, pursuant to 28 C.F.R. § 540.71, including, but not limited to, those rejected on the basis that the Warden determined them to be "detrimental to the security, good order, or discipline of the institution" or that "it might facilitate criminal activity," *id.* § 540.71(b), and describe in detail the basis for such rejection.

**RESPONSE**:  The BOP incorporates here all previous objections to this interrogatory.

Subject to, and without waiving these objections, the BOP first incorporates herein its previous response to this interrogatory.  As referenced in the previous response, the BOP has now completed a search of a SENTRY database for administrative remedies using a subject code for publication rejections, along with search terms designed to identify rejections of *Prison Legal News*.

The search identified three rejections (or possible rejections) of *Prison Legal News* between January 1, 2009, and January 27, 2018:

- USP Coleman:  One rejection of one issue on or before April 2009.  The records associated with this rejection have been purged.
- USP Big Sandy:  September 2011 issue of *Prison Legal News* rejected.  The records associated with this rejection have been purged.
- BOP medical center Springfield:  One possible rejection on or before March 2010.  There are no records associated with this potential rejection because the remedy was rejected and the inmate did not refile.

2

The BOP also has information, based on documents PLN has produced, that two other rejections of *Prison Legal News* occurred or may have occurred:

- FCI Fairton:  Documents related to the rejection of the May 2017 issue of *Prison Legal News* were received on March 15, 2018, and will be delivered to PLN's counsel at the deposition of Todd Chapman on March 16, 2018.
- FCI Yazoo City:  The BOP knows about this rejection because of documents produced by PLN.  *See* PLN 5123.  This rejection did not appear in the search of administrative remedies in the BOP's SENTRY database.  As noted in the BOP's previous response to this interrogatory, the outcome of the search was dependent on whether the terms "Prison Legal News" or "PLN" were used when the information about the administrative remedy was entered in the database.

Mr. Chapman will be prepared to testify concerning this information at his deposition on Friday, March 16, 2018.

**Interrogatory No. 21**: Explain the facts and circumstances that lead to the adoption of ADX's "practice of rejecting publications that contained information discussing an ADX or BOP inmate, or BOP staff member," Def.'s Mot. to Dismiss [Doc. 31] at 3, including, but not limited to, when such practice was adopted, the ADX personnel involved in the development and adoption of such practice, the legal basis for such practice, and the purported security rationale for such practice.

**RESPONSE**:  The BOP incorporates here all previous objections to this interrogatory.

Subject to, and without waiving these objections, the BOP first incorporates herein its previous response to this interrogatory.

**The following additional information is designated as "Confidential" pursuant to the terms of the Protective Order entered in this case:**

In addition, the practice of focusing on inmate names in incoming publications as raising security concerns arose after Special Investigative Services ("SIS") personnel learned from ADX

3

inmates that members of gangs incarcerated at the ADX were using coded information in articles and advertisements in outside publications to pass information about gang business. According to information provided by ADX inmates, publications through which information was passed included, but were not limited to, *Prison Legal News*. SIS personnel learned this information at some point between November 1998 and July 2002, during the tenure of Warden Robert Pugh. The Special Investigative Agent to whom this information was communicated was Danny Shoff. The whereabouts of Mr. Pugh and Mr. Shoff are currently unknown.

This information was provided by a BOP attorney who worked at the ADX during the referenced timeframe, but who was not a party to any communications between SIS staff and ADX inmates. Undersigned counsel received this information on Wednesday, March 14, 2018. Any additional information about how the BOP learned of the passing of information through publications, or the specific content of that information cannot be provided without divulging law-enforcement-privileged information. **End "Confidential" information.**

Mr. Chapman will be prepared to testify concerning the non-privileged aspects of this information at his deposition on Friday, March 16, 2018.[2]

---

[2] A verification of these supplemental interrogatory responses will follow.

4

DATED March 15, 2018.

    As to legal objections:

    ROBERT C. TROYER
    United States Attorney

    s/ *Susan Prose*
    Susan Prose
    Assistant United States Attorney
    1801 California Street, Suite 1600
    Denver, Colorado 80202
    Telephone: (303) 454-0100
    Fax: (303) 454-0404
    E-mail: susan.prose@usdoj.gov

    Counsel for the Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on February 8, 2018, I sent the foregoing document by electronic mail to:

      Stephen Kiehl
      Matthew Shapanka
      Peter Swanson
      Alyson Sandler
      Terra Fulham

                                      s/ *Susan Prose*
                                      Susan Prose
                                      United States Attorney's Office