**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the Human Rights Defense Center,

    Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

    Defendant.

**FEDERAL BUREAU OF PRISONS' RESPONSE IN OPPOSITION TO
PLN'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 104)**

PLN's motion for summary judgment confirms that it wants the Court to issue a declaration that past practices at the ADX violated PLN's rights, even though those past practices have been irrevocably withdrawn and new practices implemented. PLN seeks three types of declarations about eleven rejections of its magazine at the ADX between January 2010 and April 2014, which PLN calls the "Rejected Issues": (1) a declaration that ADX officials violated the First Amendment and the Administrative Procedure Act ("APA") by rejecting six of those issues without a rational basis for doing so; (2) a declaration that the prison officials' decision to reject the magazines in their entirety, rather than redacting the objectionable content, violated the First Amendment and the APA; and (3) a declaration that ADX officials violated the Due Process Clause by not providing PLN a sufficiently detailed notice about the rationales for the past rejections, including specific information about the Wardens' security assessments.

The undisputed evidence shows there is nothing for the Court to declare invalid or to set aside. The Rejected Issues have been provided to the inmate subscribers, and the ADX has

changed its policy concerning incoming publications. The evidence unequivocally shows that the Rejected Issues would *not* be rejected under the current policy. The undisputed evidence also shows that the current policy imposes new requirements for the contents of rejection notices sent to publishers, which would apply to any future rejections of *Prison Legal News* at the ADX. ADX officials have affirmatively imposed an obligation on themselves to provide *more* notice than is required by federal regulation or the Constitution.

Under circumstances like those here, when an agency has taken an action back, there is no jurisdiction for the Court to declare that the agency should not have done the thing the agency already voluntarily undid. Such a statement about past wrongs would be of no precedential value to PLN, unless it intends to send to the ADX exactly the same content found in the previously rejected issues of its magazine. Neither does the Court have jurisdiction to issue a purely advisory opinion defining the contours of how the ADX must handle future as-applied challenges to possible future rejections of *Prison Legal News*, based on hypothetical facts that cannot be known at this time. Such claims are not ripe. The Court should deny PLN's motion and find that it lacks subject-matter jurisdiction to address the merits of PLN's claims.

**I.      PLN has no remedy for an alleged violation of the First Amendment and the Administrative Procedure Act based on past rejections and previous ADX policies.**

PLN asks the Court to declare that the rejection of six of the Rejected Issues violated the First Amendment and the APA because those past rejections "lacked any rational basis." Doc. 104 at 8; *see also generally id.* at 7-17. The Court should deny PLN's motion because its claims about past rejections based on defunct ADX policies is moot. PLN has received all the relief to which it would have been entitled if it had prevailed on the merits of the claim. *See also* Doc. 106 at 5-8 (explaining why PLN's claims are moot).

### A. PLN has received all available retrospective relief for the past rejections.

PLN confirms that it wants the Court to issue a purely "retrospective opinion that [it] was wrongly harmed by the defendant" when ADX officials rejected six of the Rejected Issues. *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011). PLN wants the Court to declare that six issues of its magazine "were improperly rejected because the issues posed no threat to the security, good order, or discipline of ADX." Doc. 104 at 6; *see also id.* at 9-14 *passim*. Well-established law holds that, on the undisputed record here, the Court lacks jurisdiction to order any retrospective relief on PLN's First Amendment and APA claims about the past rejections of its magazines at the ADX. *See* Doc. 106 at 3-11. PLN's claims are moot because the magazines have been given to the inmates, without redactions, and it is undisputed that the magazines would not be rejected under the current ADX policy for reviewing incoming publications.

The Tenth Circuit made clear in *Jordan* that PLN cannot obtain a declaration about past matters merely to vindicate its belief that it was wronged. "[I]n the context of an action for declaratory relief, a plaintiff must be seeking more than a retrospective opinion that he was wrongly harmed by the defendant." *Jordan*, 654 F.3d at 1025; *see also*, *e.g.*, *Cleveland v. Martin*, 590 F. App'x 726, 730 (10th Cir. 2014) ("Likewise, a declaratory judgment would serve only to retrospectively vindicate Mr. Cleveland's belief that he was wronged. That is not enough to confer jurisdiction."); *G.H. Daniels III & Associates, Inc. v. Perez*, 626 F. App'x 205, 214 (10th Cir. 2015) (holding that plaintiffs' claims requesting that the Department of Labor reconsider their visa applications to perform non-agricultural labor were moot and "would have no real life effect. . . . DOL's actions were tethered to the specific applications and those applications applied to seasons that have expired. Any declaration that DOL's actions with respect to those

3

applications were improper would thus amount to nothing more than a 'retrospective opinion that [plaintiffs] were wrongly harmed by [DOL]'").

Here, PLN received all available retrospective relief to remedy any allegedly improper past rejection when the BOP delivered the magazines, without redactions, to the inmates in March 2017. Ex. 1, BOP Fact 7.[1] As to the past rejections, PLN "no longer suffers an actual injury that can be redressed by a favorable judicial decision." *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015). At this point, a declaration from the Court that the past rejections were contrary to the First Amendment would have no effect in the real world. *Brown v. Buhman*, 822 F.3d 1151, 1165-66 (10th Cir. 2016) (in deciding whether a claim is moot, "'[t]he crucial question is whether granting a present determination of the issues offered will have some effect in the real world'"). The same is true of PLN's APA claim. The past rejections—the only discrete final agency actions at issue here—have been completely and permanently revoked. *See Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985) (only proper relief that may ordinarily be awarded under the APA is a "remand to the agency for additional investigation or explanation"). There is no legal basis for the Court to issue an advisory opinion as to those actions or to remand those actions back to the BOP for further investigation or explanation.

Neither would any declaration about the old ADX policies pursuant to which the past rejections were made have any effect in the real world. Those policies were revoked and replaced by a new Institution Supplement on December 21, 2017 (the "December 2017 Policy"). BOP

---

[1] The use of the term "BOP Fact" refers to the BOP's Additional Facts and Supporting Evidence in its response to PLN's Statement of Undisputed Material Facts.

Facts 2-4 (discussing FLM 5266.11E, *Incoming Publications* (Dec. 21, 2017)). That policy explicitly forbids the rejection of a publication based on the sole fact that it identifies a BOP inmate or staff member and requires an individualized assessment to determine whether the content of the publication constitutes a security risk:

> An incoming publication at the ADX may not be rejected solely because it discusses an ADX or Federal Bureau of Prisons (BOP) inmate, or BOP staff member. When a publication identifies and discusses an ADX or BOP inmate, or BOP staff member, SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and include an evaluation of the factors in 28 C.F.R. § 540.70(b). Staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment.

BOP Fact 3 (discussing § III.C. of the December 2017 Policy).[2] Critically, the record here confirms that the Rejected Issues would *not* be rejected under the December 2017 Policy. BOP Fact 8.

At this point, were the Court to state that the past rejections were wrong, as PLN demands, such a declaration would not change the fact that inmate subscribers have now received the Rejected Issues, nor would it alter how the ADX reviews publications now—a review that would not result in the rejection of the eleven old issues. Any order from the Court that ADX officials behaved wrongly in the past when they decided to reject the eleven magazines would amount to a legal nullity. In short, the undisputed record here shows that a judicial opinion on "PLN's central claim"—"that the eleven issues were improperly rejected

---

[2] The reference to 28 C.F.R. § 540.70(b) in § III.C. of the December 2017 Policy is a typographical error and should read § 540.71(b). That error will be corrected. ADX staff are trained on a quarterly basis on the security standard and analysis of factors for evaluating incoming publications contained in § 540.71(b). *See* December 2017 Policy, § III.S.

because the issues posed no threat to the security, good order, or discipline of ADX" (*see* Doc. 104 at 6)—would be nothing more than a retroactive opinion that would have no effect in the real world. On these facts, there is no jurisdictional basis for PLN to litigate about the past rejections and the past ADX policies underlying them.

Even if PLN's claims about the past issues and past ADX policies were not constitutionally moot, the Court should nevertheless decline to reach those claims under the prudential-mootness doctrine. "[A] court may dismiss a case under the prudential-mootness doctrine if the case is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the *power* to grant." *Jordan*, 654 F.3d at 1023 (emphasis in original). This doctrine has "particular applicability in cases, such as this one, where the relief sought is an injunction against the government." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). The "central inquiry" is whether "circumstances [have] changed since the beginning of litigation that forestall any occasion for meaningful relief." *Id.*

The circumstances here strongly support the Court "stay[ing] its hand." At this point, PLN's magazines have been delivered, the ADX policy and procedures for reviewing incoming publications have been completely overhauled, and it remains a matter of sheer speculation whether an issue of *Prison Legal News* will ever be rejected at the ADX again. In light of this record, the Court should, at a minimum, exercise its discretion to "stay its hand" and find that PLN's First Amendment and APA claims based on the rejection of old, and now delivered, issues of its magazine is prudentially moot.

Finally, as the BOP explained in detail in its motion for summary judgment, the

6

voluntary-cessation exception to mootness does not apply on these undisputed facts. *See* Doc. 106 at 6-8. Based on the explicit terms of the December 2017 Policy, there is *no* risk that content that mentions the name of a BOP inmate or staff member, and that does not otherwise pose a security risk, will be rejected. As the Tenth Circuit has emphasized, PLN cannot litigate about agency rules superseded by the December 2017 Policy, where an official's sworn declaration confirms a policy change that renders the old rules obsolete. *Rio Grande Silvery Minnow v. Bureau of Recl.*, 601 F.3d 1096, 1118 (10th Cir. 2010) (rejecting plaintiffs' attempt to litigate about a prior agency rule, and finding that the voluntary-cessation exception did not apply where the agency "took the concrete step" of issuing a new rule, thus rendering obsolete the old rules "that provided the framework for" the plaintiffs' challenge). *Id.*; *see also Buhman*, 822 F.3d at 1166 (no voluntary-cessation exception where official's sworn declaration confirmed policy change); *Burbank v. Twomey*, 520 F.2d 744, 748 (7th Cir. 1975) (no voluntary-cessation exception where change in prison policy was "codified into a formal, published administrative regulation").

The record here—demonstrating a policy change based on thoughtful consideration of issues raised in litigation, and bolstered by a sworn declaration from an ADX Warden, the delivery of the previously rejected magazines, and the affirmative adoption of procedures that impose *more* work on ADX staff—provides strong evidence that the ADX will not revert to old policies or practices. *Buhman*, 822 F.3d at 1172 (in rejecting voluntary cessation, stating that "[v]iolation of the declaration would expose [the declarant] to prosecution for perjury or contempt"); *see also id.* at 1171 (recognizing that a policy change that is "a reaction to" a lawsuit "does not necessarily make it suspect. An agency's decision to adopt a policy in the context of

7

litigation may actually make it *more likely the policy will be followed*, especially with respect to the plaintiffs in that particular case."). The ADX Warden and other ADX personnel would have much to lose by reverting to the old ways, a point that strengthens the case against voluntary cessation. *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) ("Courts are more apt to trust public officials than private defendants to desist from future violations.").

On the record here, there is no evidence that the ADX has "changed course simply to deprive the court of jurisdiction." *Silvery Minnow*, 601 F.3d at 1115-16. Nor is there any reason for the Court to discredit this course of genuine self-correction by ADX officials and to discourage the efforts of the government to improve processes and procedures in a sincere, good-faith response to issues raised in litigation.[3]

### B. Any claim seeking directives about future applications of the December 2017 Policy to PLN is not ripe.

The record here unequivocally demonstrates that the past rejections will *not* recur under the December 2017 Policy. BOP Fact 8. There is nothing left for PLN to litigate as to those past rejections.

---

[3] The capable-of-repetition-but-evading-review exception to mootness is also not applicable here. This is an extremely narrow exception, only to be used in "exceptional circumstances." *Jordan*, 654 F.3d at 1035. PLN bears the burden to demonstrate: (1) the challenged action is too short in duration to be fully litigated; and (2) there is a reasonable expectation that PLN will be subject to the challenged conduct again. *Id.* Mooting this case would not implicate this exception. On the first prong, PLN cannot proffer evidence showing that it did not have sufficient time to litigate its claims about the past rejections—the first of which occurred in January 2010. *Id.* at 1036; *see also Disability Law Ctr. v. Millcreek Health Ctr.*, 428 F.3d 992, 997 (10th Cir. 2005) (holding that without "an inherent problem of limited duration," the exception will not apply). PLN also cannot show that there is any reasonable expectation that it will be subject to the challenged conduct again, where the record confirms that the Rejected Issues have been delivered and that those issues would *not* be rejected under the December 2017 Policy.

The undisputed record further shows that any future rejections of *Prison Legal News* (if there ever are any) would be made pursuant to the December 2017 Policy. BOP Fact 5. That policy requires that the Warden and other ADX staff involved in the publication-review process to undertake an individualized security assessment of whether the identification of a person implicates a security risk. BOP Fact 3. As the BOP explained in its motion for summary judgment, PLN could not meet its heavy burden to establish that the approach for reviewing incoming publications set forth in the December 2017 Policy is facially invalid. *See* Doc 106 at 11-20.

Given these circumstances, PLN cannot extricate itself from the fact that all that remains is for it to urge the Court to render an opinion providing guidance as to future *as-applied* challenges to the December 2017 Policy, which will occur (if ever) in an entirely new and different context, based on unknown facts and unforeseeable potential security concerns. The law does not provide for that relief. As the BOP explained in its motion for summary judgment, such claims—devoid of any connection to concrete particulars—are not ripe now, and may never be. *See* Doc. 106 at 8-11. And, any judicial opinion that would speculate about these unknown future events would be an impermissible advisory opinion. *See*, *e.g.*, *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998) (observing that merely advisory opinions have been "disapproved by this Court from the beginning").

There is no relief remaining for the Court to award, either retrospective or prospective. The Court should deny PLN's motion.

      **C.**      **PLN cannot bring an "as-applied challenge" to the BOP's non-redaction practice because the ADX did not apply that practice to PLN, and any claim about a hypothetical future application of the practice to PLN is not ripe. Doc. 106 at 8-11, 17.**

PLN attempts to wedge its claim that ADX officials should have redacted, rather than rejected, the Rejected Issues into an "as-applied challenge." *See* Doc. 104 at 15 (asserting that "PLN's as-applied challenge" to not redacting its magazines "must be allowed to proceed to trial"). PLN must do this because the Supreme Court has confirmed that the BOP's all-or-nothing practice is facially constitutional. *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989) (holding that the all-or-nothing rule in 28 C.F.R. § 540.71(e) is facially valid under *Turner v. Safley*, 482 U.S. 78 (1986)). Its effort fails. PLN's use of the term "as-applied challenge" is a misnomer that does not show the existence of a live claim.

PLN can bring no "as-applied challenge" to the BOP's all-or-nothing policy because that practice has never been applied to PLN at the ADX. The previously rejected issues were provided, in their entirety and with no redactions, to inmate subscribers in March 2017. PLN's purported "as-applied challenge" thus rests completely on actions that have been irrevocably withdrawn and eliminated. As to those old Rejected Issues, and the decisions in the past not to redact them, any relief the Court could award would reduce to an impermissible advisory opinion that PLN sustained some harm in the past. For the reasons discussed above, that "as-applied challenge" is moot.

If some issue of *Prison Legal News* is rejected at the ADX in the future, and prison officials decline to redact the objectionable content, PLN can bring an as-applied challenge to the rule at that time. PLN anticipates some arguments the BOP might make in defending an application of the all-or-nothing practice in a particular case, *see* Doc. 104 at 15-16, but until that

10

regulation is applied to PLN, there is no live controversy and no need for the Court to address these potential arguments. Until then, any claim about such a hypothetical future rejection, unmoored to any concrete facts, is not ripe. *See* Doc. 106 at 8-11 (discussing ripeness standard).

In sum, if PLN has any claim about the all-or-nothing rule at all, it is simply a straightforward facial challenge to 28 C.F.R. § 541.71(e). PLN loses that claim under long-established Supreme Court law. *See Thornburgh*. If PLN is in fact bringing such a claim, the Court should enter judgment in favor of the BOP.

## II. PLN has no remedy for an alleged procedural-due-process violation based on past rejections and previous ADX policies. Doc. 106 at 5-8.

PLN asks the Court to declare that the content of the past notices of the Rejected Issues violated the Due Process Clause. *See* Doc. 104 at 17-19. PLN's Fifth Amendment claim is moot because, like its First Amendment claim about those past rejections, it is based on now-defunct policies and practices.

As a result of a review conducted because of this litigation, ADX officials determined that changes should be made to the procedures for notifying inmates and publishers about rejections. BOP Facts 1, 13. Based on that review and analysis, the following provision was added to the December 2017 Policy:

> When an incoming publication is rejected, the Warden will promptly advise the inmate and publisher in writing of the decision and the reason(s) for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable, **including page references and quotes from the incoming publication**. The Warden will advise the publisher or sender that the publisher may obtain independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. Ordinarily, the rejection notice will be mailed to the publisher within ten business days from the Warden's signature date.

BOP Fact 12 (discussing § III.G.) (emphasis added).

As the BOP explained in its motion for summary judgment, ADX officials implemented Section III.G. to ensure that rejection notices adequately explain the grounds for rejection and to enable publishers to appeal rejections in a timely manner. BOP Fact 13. These procedures would apply if any issue of *Prison Legal News* were ever rejected at the ADX in the future. BOP Fact 14. Notably, the procedures exceed those required by federal regulation. *See* 28 C.F.R. § 540.71(d) (no requirements concerning page references, quotes, or timeframe for mailing notices). As with Section III.C. in the December 2017 Policy, the ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.G. of the December 2017 Policy. BOP Facts 6, 15.

This record demonstrates that PLN's procedural-due-process claim challenging the previous ADX policies and past rejection notices is moot for the same reasons that its First Amendment claim challenging the past rejections is moot. *See* § I.A., above. If any issue of *Prison Legal News* is ever rejected in the future, and if PLN deems that notice constitutionally insufficient, it can bring a claim at that time. Until then, such a claim is not ripe. *See* § I.B., above. The Court should deny PLN's request for summary judgment concerning the notices for the Rejected Issues for lack of subject-matter jurisdiction.

Were the Court to find that it retains jurisdiction over PLN's due-process claim about the notices for the Rejected Issues—which it should not do based on binding Tenth Circuit law regarding subject-matter jurisdiction—it should still deny PLN's motion for summary judgment regarding the notices. PLN has failed to meet its burden: (1) to prove that the content of the notices reflects an irrational approach under the deferential *Turner* standard, and (2) to establish the absence of a genuine dispute as to the adequacy of the notices. In *Thornburgh*, the Supreme

Court held that the *Turner* rational-basis standard must be applied to a prison's regulation of publications. *See* 490 U.S. at 413. Under *Turner*, the Court must assess whether the notices, on their faces, are so disconnected from any legitimate penological interest as to have been an *irrational* approach for communicating the reasons for rejection of the publications. *Turner*, 482 U.S. at 89.

The record here demonstrates that the former prison officials' rationales, as contained in the notices, were not irrational. The rationales in the notices, though brief, balanced important competing interests, with ADX security at the top of the list. The notices make clear that, in the Warden's judgment, the identification of and information associated with the identified persons created security concerns at that time. BOP Fact 9. No more is required under the Due Process Clause in this context. *See Moore v. Bd. of Cnty. Com'rs*, 507 F.3d 1257, 1259 (10th Cir. 2007) (observing that "[t]he essence of procedural due process is the provision to the affected party of "'*some* kind of notice and … *some* kind of hearing") (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original)).

PLN labels the notices "perfunctory," and contends that the "BOP has not provided PLN with adequate notice sufficient to permit a meaningful opportunity to be heard." *See* Doc. 104 at 19. But that is a contention, not a fact. It is disputed because there are limits about how much information the BOP can provide without undermining the security rationale for rejecting the publication in the first place. BOP Fact 10. Moreover, the BOP must be able to protect the methods and techniques it uses for identifying threats or risks, lest those methods and techniques be compromised and rendered useless. BOP Fact 12. Those interests are protected by the language in the notices about the Rejected Issues. BOP Fact 9. PLN has presented no evidence to

refute the BOP's security concerns. Its assertions that it needed more information, and that the BOP provided more information when compelled to do so in response to discovery requests, *see* Doc. 104 at 19, do not show that the notices for the Rejected Issues were constitutionally deficient as written—nor does the fact that the ADX has taken upon itself the affirmative obligation to provide more information in notices in the December 2017 Policy.

In sum, if the Court finds that PLN has a live claim about the rejection notices for the Rejected Issues, it should assess the evidence at trial and determine whether PLN has proven that the notices for the Rejected Issues were an irrational approach to addressing security concerns at the ADX. At this juncture, PLN has failed to show the absence of a genuine dispute about any material facts concerning that issue.

## CONCLUSION

The Court should deny PLN's partial motion for summary judgment.

Respectfully submitted on June 4, 2018.

>
> ROBERT C. TROYER
> United States Attorney
>
> s/ *Susan Prose*
> Susan Prose
> Assistant United States Attorney
> 1801 California Street, Suite 1600
> Denver, Colorado 80202
> Tel.: (303) 454-0100; Fax: (303) 454-0404
> E-mail: susan.prose@usdoj.gov
>
> Counsel for the Federal Bureau of Prisons

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**CERTIFICATE OF SERVICE (CM/ECF)**

      I hereby certify that on June 4, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

    Steven Zansberg
    Sabarish Neelakanta
    Peter Swanson
    Matthew Shapanka
    Elliot Mincberg
    David Shapiro
    Terra Fulham
    Alyson Sandler

    s/ *Susan Prose*
    Susan Prose
    United States Attorney's Office