# Defendant's Response to Plaintiff's Facts, Additional Facts and Supporting Evidence

*Prison Legal News v. Fed. Bureau of Prisons*,
No. 15-cv-02184-RM-STV

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 15-CV-02184-RM-STV

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

      Plaintiff,

      v.

FEDERAL BUREAU OF PRISONS,

      Defendant.
_____

**BUREAU OF PRISONS' RESPONSE AND ADDITIONAL FACTS AND SUPPORTING**
**EVIDENCE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY**
**JUDGMENT**
_____

Opposing Party's Statement:

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/ Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 1. *Prison Legal News* (*PLN*) contains reviews and analysis of prisoners' rights issues, reports on recent court decisions, and news relating to the criminal justice system. Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| 2. *Prison Legal News* has subscribers at ADX.  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, | Undisputed. | |

| | | |
|---|---|---|
| Scheduling Order, ECF No. 90 at 4. | | |
| 3. Since January 2010, ADX initially rejected and did not deliver the following issues of *Prison Legal News* (*PLN*) to ADX inmate subscribers:  January 2010, June 2010, October 2011, November 2011, June 2012, November 2012, February 2013, April 2013, July 2013, September 2013, and April 2014 (the "Rejected Issues"). Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| | 1. ADX officials reviewed the issues this litigation brought to light and determined that it was appropriate to make changes to the procedures for reviewing incoming publications. Declaration of Todd Chapman, Ex. 1 ¶ 7. | |
| | 2. On December 21, 2017, the ADX formally eliminated a prior practice of flagging for possible rejection every incoming publication that mentioned a BOP inmate or staff member by name. Decl. of Todd Chapman, Ex. 1 ¶ 11; *see also* Decl. of Amy Kelley, Ex. 2 ¶ 7. | |
| | 3. The December 21, 2017, ADX Institution Supplement for incoming publications (the "December 2017 Policy") added this section: "**An incoming publication at** | |

2

| | | |
|---|---|---|
| | **the ADX may not be rejected solely because it discusses an ADX or Federal Bureau of Prisons (BOP) inmate, or BOP staff member**. When a publication identifies and discusses an ADX or BOP inmate, or BOP staff member, SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and include an evaluation of the factors in 28 C.F.R. § 540.70(b).[1] Staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment." Chapman Decl., Ex. 1 ¶ 8; *see also id.* at Att. 2, FLM 5266.11E, *Incoming Publications* (Dec. 21, 2017), at § III.C. (emphasis added); Decl. of Andre Matevousian, Ex. 3 ¶¶ 9-10. | |
| | 4. The eleven rejections of *Prison Legal News* which occurred between January 2010 and April 2014 were made under previous versions of the ADX incoming publications Institution Supplement, and during a | |

---

[1] The reference to "540.70(b)" is a typographical error and should read "540.71(b)." That error will be corrected.

| | | |
|---|---|---|
| | period when the name-alone practice routinely applied. First Chapman Decl., Doc. 31-1 ¶¶ 12-15 (describing review procedures under versions of Institution Supplement in effect from August 1, 2007, to February 1, 2016). | |
| | 5. Any issue of *Prison Legal News* that is sent to the ADX is evaluated under the procedures set forth in the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 9. | |
| | 6. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.C. of the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 16. | |
| | 7. Former ADX Warden Jack Fox reviewed the eleven previously rejected issues of *Prison Legal News* in March 2017. Matevousian Decl., Ex. 3 ¶ 19. The issues were delivered to inmate subscribers at that time. *Id.* | |
| | 8. The eleven previously rejected issues of *Prison Legal News* would not be rejected under the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 19; Chapman Decl., Ex. 1 ¶ 16. | |
| 4. For each of the Rejected Issues, the ADX warden or acting warden who rejected the issue signed a rejection notice.  Exhibit 1, *Prison Legal News v. Federal* | Undisputed. | |

4

| | | |
|---|---|---|
| *Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | | |
| 5. For each of the Rejected Issues, the rejection notice states that the issue was rejected in accordance with BOP Program Statement 5266.10, Incoming Publications, which states that a "warden may reject a publication if it is determined detrimental to the security, good order, or discipline of the institution or if it may facilitate criminal activity." Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| 6. Each of the Rejected Issues was rejected in its entirety.  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| 7. A notice of rejection prepared by ADX states that the January 2010 issue of *PLN* was rejected because pages 30 and 31 "contain information on an ADX inmate." Exhibit 2, January 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000056; *see also* Exhibit 10, Dep. of Todd Chapman | Undisputed. | |

| | | |
|---|---|---|
| (Mar. 16, 2018) ("Chapman Dep. II") at 175:16–21. | | |
| 8. The January 2010 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 2, January 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000056. | Undisputed that the January 2010 rejection notice did not detail the Acting Warden's security analysis. | |
| | 9. The rejection notices for the eleven previously rejected issues of *Prison Legal News* protected ADX security interests, while still making clear that, in the Warden's judgment, the identification of and information associated with persons identified in the articles created security concerns at that time. Second Declaration of Mark Collins, ¶ 3. | |
| | 10. Disclosing specific details concerning the Warden's security interests at the time could have undermined the security interests underlying the rejection. Second Declaration of Mark Collins, Ex. 5 ¶ 4. | |
| | 11. Despite the physical controls at the ADX, ADX inmates defeat security controls to communicate with other inmates throughout the prison in dangerous ways. First Collins Decl., Ex. 4 ¶¶ 14-17, 24. | |
| | 12. In preparing rejection notices, the BOP must be able | |

| | | |
|---|---|---|
| | to protect the methods and techniques it uses for identifying threats or risks so that those methods and techniques are not compromised and rendered useless. Second Collins Decl., Ex. 5 ¶ 4. If the Warden is compelled to provide an exhaustive analysis of his security concerns to persons outside the prison, it is impossible to prevent that information from being transmitted to other persons, including inmates and other persons the Warden has determined could use it to harm others. *Id.* | |
| | 13. Although these security risks exist, the ADX has changed its procedures to facilitate providing as much information in the notice as possible. In the December 2017 Policy, ADX officials made changes to the notification procedures following the rejection of an incoming publication: "When an incoming publication is rejected, the Warden will promptly advise the inmate and publisher in writing of the decision and the reason(s) for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable, **including page references and quotes from the incoming publication**. The Warden will advise the publisher or | |

| | | |
|---|---|---|
| | sender that the publisher may obtain independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. **Ordinarily, the rejection notice will be mailed to the publisher within ten business days from the Warden's signature date.**" Chapman Decl., Ex. 1 ¶ 17 (discussing § III.G. of the December 2017 Policy) (emphasis added); Matevousian Decl., Ex. 3 ¶ 17. | |
| | 14. This provision, which was implemented as a result of this litigation, was added to ensure that rejection notices adequately explain the grounds for rejection and to enable publishers to appeal rejections in a timely manner. Chapman Decl., Ex. 1 ¶ 18. | |
| | 15. The procedures in § III.G. of the December 2017 Policy would be applied if any issue of *Prison Legal News* is ever rejected at ADX in the future. Matevousian Decl., Ex. 3 ¶ 18. | |
| | 16. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.G. of the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 18. | |
| 9. A notice of rejection prepared by ADX states that the June 2010 issue of *PLN* was rejected because page 11 | Undisputed. | |

| | | |
|---|---|---|
| "contains information on a riot at USP Florence and information on an ADX inmate." Exhibit 3, June 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000082; *see also* Exhibit 10, Chapman Dep. II at 182:18–183:1. | | |
| 10. The June 2010 rejection notice did not identify the information about the riot or inmate that was supposedly a security risk. Exhibit 3, June 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000082. | Undisputed that the June 2010 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 11. A notice of rejection prepared by ADX states that the October 2011 issue of *PLN* was rejected because pages 20, 21, and 50 "contain information on FCC Florence inmates and staff." Exhibit 4, October 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000136; *see also* Exhibit 10, Chapman Dep. II at 191:2–6. | Undisputed. | |
| 12. The October 2011 rejection notice did not identify the information about the inmates and staff that was supposedly a security risk. Exhibit 4, October 2011 Notification to Inmate and | Undisputed that the October 2011 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |

| | | |
|---|---|---|
| Publisher/Sender of Rejected Publication, BOP000136. | | |
| 13. The article appearing on pages 20 and 21 of the October 2011 issue of *PLN* discusses a lawsuit by federal prisoners in Indiana and Illinois and does not reference ADX inmates. Exhibit 5, October 2011 *PLN* Issue, PLN_0001187, at 1206–07. | Undisputed that this article did not reference inmates who, at the time of publication of the article, were incarcerated at the ADX. | |
| 14. An article appearing on page 50 of the October 2011 issue of *PLN* discusses the conviction of four inmates at FCC Florence of beating another inmate to death, and states that the murder was allegedly due to a "disrespect" issue involving the Surenos gang.  Exhibit 5, October 2011 *PLN* Issue, PLN_0001187, at 1236. | Undisputed. | |
| 15. An article appearing on page 50 of the October 2011 issue of *PLN* discusses an indictment charged against a BOP staff member for stealing equipment from a BOP facility.  Exhibit 5, October 2011 *PLN* Issue, PLN_0001187, at 1236. | Undisputed. | |
| 16. A notice of rejection prepared by ADX states that the November 2011 issue of *PLN* was rejected because pages 38 and 47 "contain information on inmates who cooperated with BOP | Undisputed. | |

| | | |
|---|---|---|
| investigations."  Exhibit 6, November 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000215; *see also* Exhibit 33, Dep. of Todd Chapman (Jan. 17, 2017) ("Chapman Dep. I") at 61:14–62:8. | | |
| 17. The November 2011 rejection notice did not identify the information about the inmates that was supposedly a security risk.. Exhibit 6, November 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000215. | Undisputed that the November 2011 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 18. An article appearing on page 38 of the November 2011 issue of *PLN* concerns a lawsuit filed by a "John Doe" federal prisoner who was allegedly attacked by a prison guard, an "Officer Wooten," for participating in an investigation of another BOP guard at the U.S. Penitentiary in Atlanta, Georgia.  Exhibit 7, November 2011 *PLN* Issue, PLN_0001341, at 1378. | Undisputed. | |
| 19. The BOP inmate discussed in the article appearing at page 38 of the November 2011 issue of *PLN* was not identified by name and was not incarcerated at the ADX at the time of the investigation discussed in the article.  Exhibit 8, Def.'s 2d | Undisputed. | |

| | | |
|---|---|---|
| Suppl. Resp. to Pl.'s Interrog. No. 2, at 5. | | |
| 20. An article appearing at page 47 of the November 2011 issue of *PLN* discusses a U.S. District Court, District of Oregon case that was dismissed due to mishandling of evidence by BOP employees.  Exhibit 7, November 2011 *PLN* Issue, PLN_0001341, at 1387. | Undisputed. | |
| 21. An ADX inmate appealed the rejection of the October and November 2011 issues of *PLN* to the North Central Regional Office on or around January 11, 2012. Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1078; *see also* Exhibit 10, Chapman Dep. II at 191:22–193:5. | Undisputed. | |
| 22. On February 6, 2012, Acting Regional Director Amber L. Nelson remanded an ADX inmate's appeal of the rejection of the October and November 2011 issues of *PLN* to ADX for further review.   Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1077; *see also* Exhibit 10, Chapman Dep. II at 191:22–193:5. | Undisputed. | |

| | | |
|---|---|---|
| 23. At some time before September 6, 2012, Assistant Warden Dennis Stamper determined that the October and November 2011 issues of *PLN* were improperly rejected.  Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1079; *see also* Exhibit 10, Chapman Dep. II at 191:22–193:5. | Undisputed. | |
| 24. On August 10, 2012, the October 2011 and November 2011 issues of *PLN* were delivered to the ADX inmate who appealed the rejections.  Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1079. | Undisputed. | |
| 25. The October 2011 issue of *PLN* was improperly rejected by ADX at the time that it was rejected.  Exhibit 10, Chapman Dep. II at 194:6–10. | Undisputed. | |
| 26. The November 2011 issue of *PLN* was improperly rejected by ADX at the time that it was rejected.  Exhibit 10, Chapman Dep. II at 199:11–15. | Undisputed. | |
| 27. BOP did not inform PLN of an inmate's successful appeal of the rejection of the October 2011 and November 2011 issues of | Undisputed that Mr. Chapman, the BOP's designee pursuant to Fed. R. Civ. P. 30(b)(6), testified that "[t]ypically we wouldn't | |

13

| | | |
|---|---|---|
| *PLN*.  Exhibit 10, Chapman Dep. II at 198:9–16. | contact a publisher and give private information about an inmate." | |
| 28. Prior to 2017, BOP did not deliver the October 2011 or November 2011 issues of *PLN* to any ADX inmates other than the inmate who successfully appealed the rejections.  Exhibit 10, Chapman Dep. II at 198:17–199:24. | Undisputed that these issues were not delivered to any other ADX inmate subscriber until March 2017. | |
| 29. A notice of rejection prepared by ADX states that the June 2012 issue of *PLN* was rejected it "contains information about an ADX inmate and former staff members."  Exhibit 11, June 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000253; *see also* Exhibit 10, Chapman Dep. II at 200:25–201:5. | Undisputed. | |
| 30. The notice of rejection of the June 2012 issue of *PLN* does not indicate the page or pages on which allegedly objectionable material appears.  Exhibit 11, June 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000253. | Undisputed. | |
| 31. The June 2012 rejection notice did not identify the information about the inmate and former staff member that was supposedly a security risk.  Exhibit 11, | Undisputed that the June 2012 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |

| | | |
|---|---|---|
| June 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000253. | | |
| 32. A notice of rejection prepared by ADX states that the November 2012 issue of *PLN* was rejected because page 42 "discusses individuals incarcerated at Administrative Maximum Security Institution."  Exhibit 12, November 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000303; *see also* Exhibit 10, Chapman Dep. II at 208:11–14. | Undisputed. | |
| 33. The November 2012 rejection notice did not identify the information about the inmates that was supposedly a security risk. Exhibit 12, November 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000303. | Undisputed that the November 2012 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 34. A notice of rejection prepared by ADX states that the February 2013 issue of *PLN* was rejected because pages 8 and 9 "discuss[] individuals incarcerated at U.S. Penitentiary Florence (ADX)."  Exhibit 13, February 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000323; *see also* Exhibit | Undisputed. | |

15

| | | |
|---|---|---|
| 10, Chapman Dep. II at 220:16–23. | | |
| 35. The February 2013 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 13, February 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000323. | Undisputed that the February 2013 rejection notice did not detail the Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 36. An article appearing at pages 8 and 9 of the February 2013 issue of *PLN* discusses the U.S. Court of Appeals for the Tenth Circuit's ruling in a case brought by terrorism prisoners at the ADX. Exhibit 14, February 2013 *PLN* Issue, PLN_0001572, at 1579–80. | Undisputed. | |
| 37. The Tenth Circuit's ruling in *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012), is available to ADX inmates through the ADX Electronic Law Library.  Exhibit 15, Def.'s Resp. to Pl.'s 1st Requests for Admission at 8. | Undisputed. | |
| 38. All information contained in the article at pages 8 and 9 of the February 2013 issue of *PLN* is included in a published judicial opinion, *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012). Exhibit 14, February 2013 *PLN* Issue, PLN_0001572, at 1579-80; Exhibit 16, *Rezaq v.* | Undisputed that significant portions of the article are contained in the judicial opinion. | |

| | | |
|---|---|---|
| *Nalley*, 677 F.3d 1001 (10th Cir. 2012), PLN_0001831–45. | | |
| 39. The published judicial opinion, *Rezaq v. Nalley*, 677 F.3d 1001, identifies four ADX inmates as terrorists. Exhibit 14, February 2013 *PLN* Issue, PLN_0001572, at 1579–80; Exhibit 16, *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012), PLN_0001831–45. | Undisputed. | |
| 40. A notice of rejection prepared by ADX states that the April 2013 issue of *PLN* was rejected because page 32 "discusses individuals incarcerated at U.S. Penitentiary Florence (ADX)."  Exhibit 17, April 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000350; *see also* Exhibit 10, Chapman Dep. II at 228:21–25. | Undisputed. | |
| 41. The April 2013 rejection notice did not identify the information about the inmates that was supposedly a security risk. Exhibit 17, April 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000350. | Undisputed that the April 2013 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 42. An article appearing on page 32 of the April 2013 issue of *PLN* discusses the U.S. Court of Appeals for the | Undisputed. | |

| | | |
|---|---|---|
| Tenth Circuit's ruling in a case brought by an ADX inmate.  Exhibit 18, April 2013 *PLN* Issue, PLN_0001668, at 1699. | | |
| 43. The Tenth Circuit's ruling in *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012) is available to ADX inmates through the ADX Electronic Law Library. Exhibit 15, Def.'s Resp. to Pl.'s 1st Requests for Admission at 9. | Undisputed. | |
| 44. All information contained in the article at page 32 of the April 2013 issue of *PLN* is included in a published judicial opinion, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012). Exhibit 18, April 2013 *PLN* Issue, PLN_0001668, at 1699; Exhibit 19, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012), PLN_0001767–74. | Undisputed that some of the information contained in the article is included in the published judicial opinion. Otherwise, the evidence does not support the claimed fact. The article cross-references information found in cases and sources, including another issue of *Prison Legal News*. In addition, the article contains numerous editorial comments by the writer. | |
| 45. The published judicial opinion, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012) identifies an ADX inmate as a terrorist.  Exhibit 19, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012), PLN_0001767. | Undisputed. | |
| 46. A notice of rejection prepared by ADX states that the July 2013 issue of *PLN* was rejected because pages 36 and 37 "discuss[] | Undisputed. | |

| | | |
|---|---|---|
| individuals incarcerated at U.S. Penitentiary Florence (ADX)."  Exhibit 20, July 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000405; *see also* Exhibit 33, Chapman Dep. I at 81:17–22. | | |
| 47. The July 2013 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 20, July 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000405. | Undisputed that the July 2013 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 48. An article appearing at pages 36 and 37 of the July 2013 issue of *PLN* discusses a ruling by the U.S. Court of Appeals for the Tenth Circuit. Exhibit 21, July 2013 *PLN* Issue, PLN_0000751, at 786–87. | | |
| 49. The Tenth Circuit's ruling in *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012) is available to ADX inmates through the ADX Electronic Law Library. Exhibit 15, Def.'s Resp. to Pl.'s 1st Requests for Admission at 10. | Undisputed. | |
| 50. All information contained in the article at pages 36 and 37 of the July 2013 issue of *PLN* is included in a published judicial | Undisputed that significant portions of the article are contained in the judicial opinion. | |

| | | |
|---|---|---|
| opinion, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012).  Exhibit 21, July 2013 *PLN* Issue, PLN_0000751, at 786–87; Exhibit 22, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), PLN_0001823. | | |
| 51. The published judicial opinion, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), identifies an ADX inmate as a member of the Sinaloa drug cartel.  Exhibit 22, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), PLN_0001823. | Undisputed. | |
| 52. A notice of rejection prepared by ADX states that the entire September 2013 issue of *PLN* was rejected because pages 18 and 20 "contain the names of former Bureau of Prisons staff members that have been sentenced."  Exhibit 23, September 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000439; *see also* Exhibit 29, Dep. of David Berkebile (Jan. 19, 2018) ("Berkebile Dep.") at 107:15–20. | Undisputed. | |
| 53. The September 2013 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 23, September 2013 Notification to Inmate and | Undisputed that the September 2013 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |

| | | |
|---|---|---|
| Publisher/Sender of Rejected Publication, BOP000439. | | |
| 54. The September 2013 issue of *Prison Legal News* was improperly rejected by ADX at the time that it was rejected.  Exhibit 10, Chapman Dep. II at 251:2–9. | Undisputed. | |
| 55. A notice of rejection prepared by ADX states that the entire April 2014 issue of *PLN* was rejected because page 42 "contains information on an individual incarcerated at United States Penitentiary (ADX) and details on his case."  Exhibit 24, April 2014 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000449; *see also* Exhibit 10, Chapman Dep. II at 251:19–22. | Undisputed. | |
| 56. The April 2014 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 24, April 2014 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000449. | Undisputed that the April 2014 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | |
| 57. ADX inmates have access to published U.S. federal court opinions through the ADX Electronic Law Library.  Exhibit 8, Def.'s 2d Suppl. Resp. to Pl.'s Interrog. No. 4, at 9; Exhibit 25, Listing of ADX | Undisputed. | |

| | | |
|---|---|---|
| Electronic Law Library Content, BOP2129–2133; *see also* Exhibit 10, Chapman Dep. II at 158:22–159:11. | | |
| 58. ADX has never censored any content contained in the ADX Electronic Law Library. Exhibit 10, Chapman Dep. II at 212:21–25. | Undisputed. | |
| 59. A warden may not deny an ADX inmate access to a published court decision. Exhibit 26, Dep. of Mark Collins (Apr. 19, 2018) ("Collins Dep.") at 125:25–126:6. | Undisputed that Mr. Collins and counsel for PLN had this exchange: "Q. I want to clarify this one point. So is there ever a circumstance in which the warden can say, I'm not going to allow an inmate access to this published court decision? I'm not talking about the issue of PLN, I'm just talking about— A. Not that I'm aware of. Not that I'm aware of." | |
| 60. ADX has told PLN that "future issues of *Prison Legal News*, that may contain personal information about an ADX inmate, will be more thoroughly reviewed to ensure information contained therein is not already available publicly through the Electronic Law Library or other federal publications." Exhibit 27, Letter from ADX to P. Swanson, Re: Rejection of *Prison Legal News* at ADX Florence (Sept. 15, 2015), PLN_0008621–22. | Undisputed. | |
| 61. ADX made no effort to redact or remove the | Undisputed. | |

| | | |
|---|---|---|
| material in the eleven rejected *PLN* issues to which ADX objected and deliver the unobjectionable portion to subscribers.  Exhibit 28, Dep. of John Dunkleberger (Mar. 9, 2018) ("Dunkleberger Dep.") at 33:4–13; Exhibit 10, Chapman Dep. II at 166:17–167:8. | | |
| 62. There is no sound security rationale for the practice of rejecting an article solely because it referenced the name of a ADX or BOP inmate or BOP staff member. Exhibit 26, Collins Dep. 17:24–18:10. | Undisputed. | |
| 63. The eleven rejected *PLN* issues were re-reviewed by BOP after this lawsuit was filed and were found not to be detrimental to security at the ADX.  Exhibit 30, Def.'s 3d Suppl. Resp. to Pl.'s 1st Interrog. No. 2, at 2. | Undisputed. | |
| 64. The eleven rejected *PLN* issues were delivered to ADX inmate subscribers on March 1, 2017.  Exhibit 31, Suppl. Decl. of Jack Fox, ECF No. 66-1. | Undisputed. | |
| 65. An article titled "Prisoners Raped and Sexually Abused while PREA Standards Pending" appearing at pages 17–21 of the September 2013 issue of *Prison Legal News* collects reports of nationwide | Undisputed. | |

| | | |
|---|---|---|
| instances of arrests and convictions of prison employees.  Exhibit 32, September 2013 *PLN* Issue, PLN_0000837, at 853–57. | | |
|     66. BOP has never seriously considered redaction or removal of objectionable content as an alternative to wholesale rejection of entire publications that may contain objectionable content. Exhibit 28, Dunkleberger Dep. at 75:21–25. | Undisputed that Mr. Dunkelberger testified that, since 2008, the BOP has not considered implementing a redaction policy. | |
| | 17. The BOP has evaluated the administrative burdens associated with the implementation of a redaction practice and has determined that such a practice would lead to many logistical issues and administrative burdens, including: (1) the potential for liability for inmate tort claims when incoming publications are altered; (2) the burden of conducting a line-by-line review and reading every page of every incoming publication whenever any objectionable content is identified, rather than randomly reading a publication; (3) staff confusion engendered by a lack of clarity as to exactly which content must be redacted; (4) the preparation and delivery of multiple rejection notices and approval forms, and time spent | |

| | | |
|---|---|---|
| | speaking with inmates to determine if they approve redactions; (5) the need for additional training for staff involved in the redaction process; and (6) the need for negotiations with the correctional workers' union to gain approval for the additional work to be performed by prison staff. Deposition of John Dunkelberger, Ex. 6 at 45:9-47:24; 61:1-21; 63:14-64:4; 68:2-69:19; 70:15-71:24; 72:15-73:18; 80:7-81:5; *see also* Defendant's Response to Plaintiff's Second Interrogatories, Doc. 104-39 at 8, 9-10 (describing administrative burdens). | |
| | 18. At the ADX, approximately 55 to 75 incoming publications are received at the ADX each day. BOP Interrogatory Responses, Doc. 104-39 at 9. | |
| | 19. The review of incoming publications is just one of the many duties that ADX Special Investigative Services ("SIS") and mailroom personnel must perform every day. BOP Interrogatory Responses, Doc. 104-39 at 9. | |
| | 20. Under a redaction/extraction practice, SIS staff would be obliged to conduct a line-by-line analysis of every word in the publication to ensure that each and every phrase, line, and word that may compromise security or | |

| | | |
|---|---|---|
| | facilitate criminal activity is identified for redaction before dissemination to the inmate. It is physically impossible for SIS technicians, each of whom monitors all communications of a large caseload of inmates, to bring that level of scrutiny to every incoming publication. BOP Interrogatory Responses, Doc. 104-39 at 9. | |
| | 21. Imposing that additional work on the ADX SIS Department would compromise all other aspects of the work of the Department, thus jeopardizing the security of ADX staff and inmates and persons outside the prison who are at risk if the Department fails to identify dangerous communications. BOP Interrogatory Responses, Doc. 104-39 at 9-10. | |
| | 22. Under a rejection/extraction practice, some content that warrants rejection inevitably will be missed in the redaction process, especially in lengthy publications. Inadvertent but unavoidable human errors like these will undermine the entire publication-review process because inmates will gain access to the very material that BOP intelligence professionals have determined to be detrimental to security.  BOP | |

| | Interrogatory Responses, Doc. 104-39 at 10. | |
|---|---|---|