**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 15-CV-02184-RM-STV

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

       Plaintiff,

       v.

FEDERAL BUREAU OF PRISONS,

       Defendant.

**PLAINTIFF PRISON LEGAL NEWS'S REPLY BRIEF
IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

       In response to Prison Legal News's Motion for Partial Summary Judgment, Defendant Federal Bureau of Prisons ("BOP") does not dispute that the censorship of six issues of *Prison Legal News* ("*PLN*") at the ADX prison violated PLN's First Amendment rights and the Administrative Procedure Act ("APA"). PLN has sought to address this unlawful censorship for years, including through administrative appeals, pre-suit correspondence, and nearly three years of litigation. Now, faced with a motion for summary judgment, BOP offers no defense for the ADX's conduct.

       Instead, BOP recycles the mootness argument it made nearly two years ago in its motion to dismiss. The Court rejected this argument (in an opinion that BOP's response fails to even acknowledge), and the Court should do so again. As discussed below and in PLN's opposition to BOP's motion for summary judgment (which addresses the same mootness argument), *see* PLN Opp'n to BOP Mot. for Summ. J., ECF No. 109 (hereinafter "PLN Opp'n"), ADX has not made

1

any policy change that addresses the basis for PLN's First Amendment claims since the Court denied the motion to dismiss. Because these claims are not moot, PLN is entitled to summary judgment that ADX's censorship of six issues of *PLN*—those published in October 2011, November 2011, February 2013, April 2013, July 2013, and September 2013—violated the First Amendment and the APA.

BOP also fails to identify any disputes of material fact concerning PLN's due process claims based on the adequacy of the rejection notices. The notices for all eleven rejected issues undisputedly fail to articulate the reasons for the rejections of *PLN*, let alone the particular content that triggered the rejections, and the changes to the ADX's policy concerning rejection notices are not sufficient to moot PLN's claims. Thus, PLN is entitled to summary judgment on its due process claim, as well.

## ARGUMENT

### I.  PLN Is Entitled to Summary Judgment on Its First Amendment Claims.

PLN's motion for summary judgment demonstrated that the undisputed material facts entitle PLN to judgment as a matter of law on its claims that ADX violated the Constitution and the APA in its decision to censor six issues of *PLN* (October 2011, November 2011, February 2013, April 2013, July 2013, and September 2013) (the "improper censorship claims"), because these issues did not pose any legitimate security risk at the time. *See* PLN Mot. for Partial Summ. J. ECF No. 104 (hereinafter "PLN Mot.") at 7–14; *see also* BOP Response to Plaintiff's Facts, Additional Facts and Supporting Evidence, ECF No. 111-1 (hereinafter "Resp. to PLN SOF") ¶¶ 5, 6, 34–51, 54. PLN also showed that it was entitled to partial summary judgment on its alternative claim that ADX should have redacted rather than censored *PLN* in its entirety (the

2

"redaction claim"), insofar as BOP argues that it has no authority to redact under its regulations. *See* PLN Mot. at 15–17.   BOP offers no compelling response to either argument.

### A.   PLN's Improper Censorship Claims Are Not Moot.

BOP's response to PLN's motion fails to address the merits of PLN's improper censorship claims.  BOP only argues that the claims are moot.  In so doing, BOP largely repeats the mootness arguments from its motion for summary judgment—*i.e.*, BOP points to the purported changes to ADX's December 2017 Institution Supplement on Incoming Publications and the post-suit delivery of the eleven Rejected Issues of *PLN* ( the "Rejected Issues").  *See* Def.'s Resp. to PLN Mot. for Partial Summ. J., ECF No. 111 (hereinafter "BOP Opp'n") at 1–2.  These changes are insufficient to moot PLN's claims for the reasons explained in PLN's opposition to BOP's motion for summary judgment, ECF No. 109, as well as the Court's Order on BOP's motion to dismiss, ECF No. 81.  ADX's changes do nothing to address the reasons why it censored *PLN* in the past (let alone fully address those reasons), and, even if they did, the voluntary cessation exception would apply.  PLN Opp'n at 5–16.  As those arguments have already been briefed, this reply responds to a few specific points in BOP's opposition to the arguments presented in PLN's motion for partial summary judgment and highlights additional reasons why BOP's arguments are flawed.

*First*, BOP's opposition repeatedly emphasizes the post-suit delivery of the Rejected Issues.  *See, e.g.*, BOP Opp'n at 3.  BOP made this same argument in connection with its motion to dismiss.  *See* ECF No. 66 at 6 ("The BOP has delivered those issues to ADX inmate-subscribers, just as PLN requested in its prayer for relief.").  It fares no better now than it did then.  Delivery of the eleven issues of the Rejected Issues up to seven years after their initial

3

rejection does not cure PLN's challenge to the initial rejections as illegal, nor does it deprive the Court of jurisdiction to issue a declaratory judgment that the rejections were improper and grant injunctive relief to prevent similar illegal rejections in the future. *See* ECF No. 76 at 9–10. This is particularly true given that the post-suit delivery did ***not*** result from an acknowledgement by BOP that the rejections had been improper, but rather because of the "passage of time" and implementation of additional (yet unspecified) security measures. *See* ECF No. 110, Dep. of Todd Chapman, Mar. 16, 2018 ("Chapman Dep. II") (Excerpt) at 179:3-180:13, 189:9–190:15, 207:5–25, 215:2–216:5, 236:2–18; *see also* PLN Opp'n at 9–10.

*Second*, ADX's policy changes fare no better. The only change has been to memorialize the elimination of the name-only practice, but the Rejected Issues were not censored based on that practice, but rather because of additional information beyond the mere mention of an inmate (*e.g.*, inmate offenses). *See* PLN Opp'n at 6–7; ECF No. 110 at 32:22–34:5. ADX has not made any changes to ensure that similar information is not deemed to be a security risk in the future. ADX has not, for example, enshrined the commitment of then-ADX Warden John Oliver in his pre-suit letter to PLN, pledging that "future issues of *Prison Legal News*, that may contain personal information about an ADX inmate, will be more thoroughly reviewed to ensure information contained therein is not already available publicly through the Electronic Law Library or other federal publications." *See* Resp. to PLN SOF ¶ 60 (quoting PLN Ex. 27). In the absence of such a change, BOP has not "eradicate[d] the effects" of its conduct on PLN. *Rezaq v. Nalley*, 677 F.3d 1001, 1009 (10th Cir. 2012).

*Third*, BOP cites two unpublished cases in an attempt to prop up its argument that declaratory relief is unavailable. BOP Opp'n at 3. Both are inapposite. In *Cleveland v. Martin*,

590 F. App'x 726 (10th Cir. 2014), the plaintiff was a prisoner who sued prison officials and the assistant district attorney under 42 U.S.C. § 1983 after he was allegedly denied visitation with his minor children. *Id.* at 728. The court held that the plaintiff's claims were mooted when he was transferred to another facility, reasoning that "visitation policies vary from facility to facility," and that the plaintiff was "beyond the reach" of the defendants after his transfer. *Id.* at 729–30. In contrast to the plaintiff in *Cleveland*, PLN continues to publish content similar to the content censored in the Rejected Issues, and to deliver those publications to prisoner-subscribers at ADX. *See, e.g.*, ECF No. 66 at 3 (admitting that PLN continues to send to ADX new issues of *PLN* containing content similar to the Rejected Issues). Further, ADX has indicated that it may continue to censor such content. *See* Matevousian Decl. ¶¶ 11–13, ECF No. 106-4. A ruling that ADX censored the Rejected Issues in violation of the First Amendment would have (or at least should have) a very real effect on the conduct of ADX toward PLN moving forward.

BOP also cites *G.H. Daniels III & Associates, Inc. v. Perez*, 626 F. App'x 205 (10th Cir. 2015), where the plaintiffs brought a challenge under the APA to compel the Department of Labor ("DOL") to reconsider visa applications for H-2B workers associated with past seasons. *Id.* at 207-08. The court found that "[b]ecause the employment of H-2B workers is limited to the season identified in the certification, requiring DOL to reconsider or grant their applications would have no real life effect." *Id.* at 214 (internal citation omitted). In other words, if the DOL were to grant the visa applications for past seasons, those determinations would be meaningless as the time period to execute the visas would have passed and they would not bear on future visa applications. *Id.*

In contrast, a ruling from this Court holding that ADX rejected content in violation of the First Amendment would have a direct effect on the future review of incoming publications at ADX, including *PLN*. For example, a ruling that the February 2013, April 2013, and July 2013 issues of *PLN* were improperly censored because the allegedly objectionable information contained in the censored articles was already available to ADX prisoners through the Electronic Law Library, *see* PLN Mot. at 11-14, would provide guidance to ADX that censorship is generally inappropriate under these circumstances. PLN routinely publishes content discussing judicial decisions that may reference ADX or BOP prisoners and staff; a ruling that censorship on the basis of this information alone violates the First Amendment would ensure that ADX cannot repeat its past improper conduct. *See also* PLN Opp'n at 10–13.[1]

*Fourth*, BOP's opposition fails to acknowledge PLN's request for injunctive relief. Injunctive relief is viable for many of the same reasons as declaratory relief. For example, if the Court were to order ADX to comply with Warden Oliver's promise to review *PLN* more thoroughly to ensure that information about an ADX or BOP prisoner is not already available through the Electronic Law Library, this would have a direct "effect in the real world" by mandating a substantive change to ADX's review of incoming publications. *Brown v. Buhman*, 822 F.3d 1151, 1165–66 (10th Cir. 2016).

---

[1] Such a ruling is particularly important given the frequent turnover in wardens at ADX. *See* Def.'s 1st Suppl. Resp. to Pl.'s Interrog., Jan. 13, 2017, ECF No. 104-38, at 5-6 (identifying four wardens between January 2010 and January 2017); Matevousian Decl., ECF No. 111-4 (identifying new Warden appointed in April 2018). In this context, the sworn declaration of the current warden that ADX will continue to follow its current policy does not prevent a future warden from taking a different position. *See* PLN Opp'n, § I.B, at 14.

*Fifth*, BOP's prudential mootness argument fails for the same reasons as its constitutional mootness argument. Under the prudential mootness doctrine, the "central inquiry is essentially the same" as when evaluating constitutional mootness: "have circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief." *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727–28 (10th Cir. 1997) (citing 13A Charles Alan Wright et al., *Federal Practice and Procedure* § 3533.3 (2d ed. 1984)). As the Supreme Court has stated, "a federal court's 'obligation' to hear and decide cases within its jurisdiction is 'virtually unflagging.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)). Here, BOP raises the exact same arguments under prudential mootness that it does under constitutional mootness, namely that the Rejected Issues have been delivered at ADX and ADX has revised its policies. BOP Opp'n at 6. This Court should once again reject BOP's prudential mootness argument, as there is "nothing attenuated about the controversies in this case." ECF No. 81 at 17 n.5.

*Finally*, as explained in PLN's opposition to BOP's motion for summary judgment, the Court should reject BOP's mootness argument because the voluntary cessation exception to the mootness doctrine applies. *See* PLN Opp'n at 13–16. In addressing voluntary cessation, BOP asserts that PLN's claims are an attempt to litigate about agency rules that have been rendered "obsolete." BOP Opp'n at 7. But as discussed above, the standard under which PLN's publications were censored—which allows rejection of a publication deemed "detrimental to the security, good order, or discipline of the institution," 28 C.F.R. § 540.71(b)—has not changed and is expressly incorporated into the December 2017 Institution Supplement. *See* ECF No. 106-2, Att. 2 ¶ III.C.

7

Because PLN's improper censorship claims are not moot and because BOP has not presented any evidence to create a genuine dispute of material fact on the issue of the propriety of the rejections, the Court should grant PLN summary judgment that ADX violated the First Amendment by improperly rejecting the October 2011, November 2011, February 2013, April 2013, July 2013, and September 2013 issues of *PLN*.[2]

### B. PLN's Redaction Claim Should Proceed to Trial.

BOP makes two unpersuasive arguments in response to PLN's request for a ruling that BOP's regulations do not preclude PLN's redaction claim. PLN Mot. at 15–17. These arguments should be rejected.

*First*, BOP argues that PLN cannot bring an as-applied challenge to the BOP's "all-or-nothing" practice because this challenge is moot. BOP Opp'n at 10. BOP does not dispute that the BOP's "all-or-nothing" policy remains in effect. Thus, the sole basis for BOP's mootness argument concerning PLN's redaction challenge is that the Rejected Issues have now been provided to ADX subscribers, as of March 2017. But ADX's delivery of the Rejected issues (some three to seven years after the censorship of time-sensitive information) does nothing to deprive this Court of jurisdiction to determine whether the wholesale censorship of these issues violated the First Amendment. There is no dispute that the alleged violation occurred, *see* Resp.

---

[2] As to the February 2013, April 2013, and July 2013 issues, *PLN* is entitled to summary judgment because the information on which the censorship was based was available to ADX prisoners in published judicial decisions available in the law library. *See* Mot. at 12–13. BOP does not dispute that the information BOP identified as the bases for the rejections of these three issues—*i.e.*, certain information about ADX inmates, such as their offenses and gang affiliations—was also present in published judicial opinions. BOP Resp. to PLN SOF ¶¶ 38–39, 44–45, 50–51; *see also* Mot. at 12–13. BOP has pointed out that some of these articles may contain "cross references" to other cases and/or *PLN* issues and "editorial comments," but BOP does not contend that any of these portions of the articles were the basis for the rejections.

8

to PLN SOF ¶ 6, and the relevant policy remains in effect, *see* BOP Opp'n at 10–11. A declaratory judgment and an injunction are thus available to address these violations.

*Second*, BOP again mischaracterizes PLN's redaction argument as a facial challenge to the "all-or-nothing" policy. BOP Opp'n at 10–11; *see also* BOP Mot. for Summ. J., ECF No. 106 at 17. As the Magistrate Judge has already recognized, PLN raises an as-applied challenge with respect to the eleven Rejected Issues, which PLN is permitted to pursue under Supreme Court and Tenth Circuit precedent. ECF No. 62 at 19–22.

BOP's response on this issue otherwise fails to address the merits of the arguments raised in PLN's motion for partial summary judgment. Thus, the Court should grant PLN's motion, rule that BOP is not precluded from employing redaction as an alternative to outright rejection, and allow PLN's claims to proceed to trial to resolve remaining factual disputes.[3]

## II. PLN Is Entitled to Summary Judgment on Its Claim That the Notice Provided to PLN Was Inadequate Under the Fifth Amendment.

BOP makes two arguments as to PLN's claim that the content of ADX's rejection notices provided constitutionally inadequate notice as to the eleven Rejected Issues: (1) BOP argues that this claim is moot, BOP Opp'n at 11–12; and (2) BOP contends that there are disputes of material fact on the merits of this claim, *id.* at 13–14. Neither argument has merit.

---

[3] BOP's Response to Plaintiff's Statement of Facts introduces a number of unsupported and disputed assertions related to alleged burdens of implementing a redaction practice at ADX. Resp. to PLN SOF, BOP Add'l Facts ¶¶ 17–22. These assertions are immaterial to the present motion, in which PLN seeks a ruling that it may pursue an as-applied challenge notwithstanding BOP's regulations. Factual disputes regarding any alleged burdens associated with redaction are appropriately resolved at trial. PLN Mot. at 15–16.

### A. BOP's December 2017 Institution Supplement Does Not Moot PLN's Due Process Claim, Because the Policy Can Easily Be Reversed.

BOP argues that issuance of a new ADX Institution Supplement in December 2017 that expressly requires a rejection notice to include "page references and quotes from the incoming publication" moots PLN's due process claim. BOP Opp'n at 11. This argument fails for reasons PLN has already explained: the changes in the Institution Supplement are neither "irrevocable," nor do they "completely . . . eradicate" the effects of the violation. *See* PLN Opp'n at 16–17. While PLN agrees that BOP's December 2017 Institution Supplement contains some helpful changes to the procedure for rejecting publications, these changes can, as the Court has already found, "be changed at any time." ECF No. 81 at 13. Moreover, the December 2017 policy does not require sufficient detail to permit PLN to mount a meaningful appeal of a rejection. *See Veal v. Jones*, 349 F. App'x. 270, 272 (10th Cir. 2009) (procedural due process claim is not moot unless plaintiff receives the "precise remedy he has requested"); *Salazar v. City of Albuquerque*, 776 F. Supp. 2d 1217, 1235 (D.N.M. 2011) ("Where a plaintiff receives less than the complete relief he seeks, his claims are not moot.") (citing *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248 (10th Cir. 2004)). PLN has asked this Court to compel BOP to, *inter alia*, "provide PLN with timely, individualized, specific, and detailed notice *that includes an explanation of why the article(s) or page(s) in question are subject to censorship*." ECF No. 1 at 16 (emphasis added). Since that "precise relief" has not been provided, the December 2017 Institution Supplement does not moot PLN's due process claim.

### B. BOP's Rejection Notices Provide Constitutionally Inadequate Notice.

BOP does not dispute that none of the rejection notices provides a reason for rejecting the issue beyond a single sentence stating that the issue "discussed" or "contained information on"

ADX or BOP prisoners or staff members.  *See* Resp. to PLN SOF ¶¶ 7–12, 16, 17, 29–35, 40–41, 46–47, 52–53, 55–56.[4]  As such, PLN is entitled to summary judgment, because, as BOP has acknowledged, naming an ADX or BOP inmate or staff member does not provide sufficient reason by itself to reject a publication.  *Id.* ¶ 62.  In other words, the rejection notices for the Rejected Issues do not identify *what* information allegedly presented a security risk.  The notices are insufficient under the Due Process Clause for this reason alone.

BOP's vague argument that "there are limits about how much information the BOP can provide without undermining the security rationale for rejecting the publication in the first place," BOP Opp'n at 13, is insufficient to withstand summary judgment.  BOP does not provide any evidence that disclosing additional information would have created additional security concerns *as to the eleven Rejected Issues*.  BOP only offers "speculation, conjecture, or surmise" concerning the feasibility of providing additional information in the notices for the Rejected Issues, but that does not suffice to create a *genuine* dispute of fact.  *Pioneer Centres Holding Co. Emp. Stock Ownership Plan & Trust v. Alerus Fin.*, 858 F.3d 1324, 1334 (10th Cir. 2017) (quoting *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004)).

Moreover, other evidence belies BOP's suggestion that by disclosing "more specific details, the security interests underlying the rejection could be undermined."  ECF No. 111-6 ¶ 4.  For one, BOP *did* in fact provide additional details during discovery for at least seven of the Rejected Issues.  *See* PLN Mot. at 19; ECF No. 104-38 at 2–3; ECF No. 104-11 at 4–7.  For

---

[4] BOP qualifies its admissions with respect to certain of these facts by stating that it is "undisputed that the [] rejection notice did not detail the [] Warden's security analysis."  Resp. to PLN SOF ¶¶ 8, 10, 12, 17, 31, 33, 35, 41, 47, 53, and 56.  But BOP cannot dispute the content of the rejection notices, which simply do not contain any information as to the basis for the rejection, beyond the single sentence noted in the text above.

another, BOP's suggestion is at odds with the December 2017 policy, which requires notices to provide "quotes from the incoming publication" (which were not provided in the case of the Rejected Issues). BOP Opp'n at 11–12. Assuming BOP would not adopt a policy that undermines its own purported security interests, this policy demonstrates, at the very least, that ADX could have provided more details than it did for the eleven Rejected Issues.

BOP also argues that PLN's motion should be denied because ADX's rejection notices satisfy the test articulated by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987). Even assuming, *arguendo*, that *Turner* applies in this scenario,[5] ADX's bare-bones rejection notices fail to pass constitutional muster. A prison regulation is valid under *Turner* if it is "reasonably related to legitimate penological interests," *id.* at 89, a determination made by weighing four factors: (1) whether a valid and rational connection exists between the regulation and the asserted legitimate governmental interest, (2) whether alternative means of exercising the constitutional right remain available to inmates, (3) any effect accommodating the right would have on guards and inmates, and (4) the absence of ready alternatives. *Id.* at 89–90; *see also Jacklovich v. Simmons*, 392 F.3d 420, 426 (10th Cir. 2004). Although PLN bears the initial burden of showing

---

[5] PLN does not concede that the *Turner* test applies to this scenario. *See Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004) ("The [Supreme] Court required 'minimum procedural safeguards' and affirmed a district court requirement 'that an inmate be notified of the rejection of a letter written by or addressed to him, [and] that the author of the letter be given a reasonable opportunity to protest that decision[.]'") (quoting *Procunier v. Martinez,* 416 U.S. 396, 417–18 (1974)); *see also Krug v. Lutz*, 329 F.3d 692, 698 n.5 (9th Cir. 2003) (rejecting prison officials' suggestions that the court "must apply the 'reasonableness' standard of *Turner*" to plaintiff's due process claim). However, even if the Court were to accept BOP's argument that *Turner* does apply, the four-part test is not a comfortable fit for a due process claim, where the claimant—in this case PLN—seeks not to "exercise" an affirmative right, as in the First Amendment context, but rather seeks to vindicate its procedural right to be informed when a liberty interest is curtailed.

a constitutional violation, *Turner*, 482 U.S. at 85, once this burden is met, BOP must present "credible evidence" that a given prison practice is rational. *Beerheide v. Suthers*, 286 F.3d 1179, 1189 (10th Cir. 2002) (emphasis omitted).

PLN has met its burden of showing irrationality because, as described above, BOP has conceded that the "name-only" policy—the sole rationale for rejection offered in the rejection notices—is not sufficient to reject a publication. *See* Section II.B, *supra*, at 11.  PLN is entitled to summary judgment, because BOP has offered no evidence, much less "credible evidence," asserting that the content of the rejection notices is rationally related to a legitimate penological interest.  Instead, BOP offers only vague assertions that providing PLN with additional information concerning the rationale for rejections "could" create a security risk.  ECF No. 111-6 ¶ 4.  As described above, these vague and conclusory statements are belied by other evidence in the record, and are insufficient to defeat summary judgment.  *Id.*

Accordingly, PLN is entitled to summary judgment on its claim that ADX violated PLN's due process rights by failing to provide sufficient notice of the reasons for the rejections.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment should be granted.

DATED: June 18, 2018

Sabarish Neelakanta
Masimba Mutamba
Human Rights Defense Center
P.O. Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523
Email:
sneelakanta@humanrightsdefensecenter.org
mmutamba@humanrightsdefensecenter.org

*Of Counsel:*
Elliot Mincberg
Washington Lawyers' Committee for Civil Rights & Urban Affairs
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000
Email: elliot_mincberg@washlaw.org

David M. Shapiro
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
Telephone: (312) 503-0711
Email: david.shapiro@law.northwestern.edu

Respectfully Submitted,

*s/ Matthew S. Shapanka*
Steven D. Zansberg
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, CO 80202
Telephone: (303) 376-2409
FAX: (303) 296-3956
E-mail: zansbergs@ballardspahr.com

Peter A. Swanson
Terra W. Fulham
Matthew S. Shapanka
Alyson R. Sandler
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000
FAX: (202) 662-6291
E-mail: pswanson@cov.com
        tfulham@cov.com
        mshapanka@cov.com
        asandler@cov.com

*Attorneys for Plaintiff Prison Legal News*

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 18th day of June, 2018, I electronically filed the foregoing with the Clerk of the Court using the ECF/CM electronic filing system, which will send electronic notification to all counsel of record.

                                                      *s/Matthew S. Shapanka*
                                                      Matthew S. Shapanka