**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 15-CV-02184-RM-STV

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

      Plaintiff,

      v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

_____

**PLAINTIFF PRISON LEGAL NEWS'S REPLY TO DEFENDANT'S RESPONSE AND ADDITIONAL FACTS AND SUPPORTING EVIDENCE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

Moving Party's Reply Statement:

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| 1.  *Prison Legal News* (*PLN*) contains reviews and analysis of prisoners' rights issues, reports on recent court decisions, and news relating to the criminal justice system.  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |

| | | |
|---|---|---|
| 2. *Prison Legal News* has subscribers at ADX.  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| 3. Since January 2010, ADX initially rejected and did not deliver the following issues of *Prison Legal News* (*PLN*) to ADX inmate subscribers:  January 2010, June 2010, October 2011, November 2011, June 2012, November 2012, February 2013, April 2013, July 2013, September 2013, and April 2014 (the "Rejected Issues").  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| | 1. ADX officials reviewed the issues this litigation brought to light and determined that it was appropriate to make changes to the procedures for reviewing incoming publications. Declaration of Todd Chapman, Ex. 1 ¶ 7. | This paragraph is disputed. For purposes of this response, PLN assumes that "issues" in this paragraph refers to the legal issues rather than issues of *Prison Legal News*.<br><br>The BOP has asserted attorney-client privilege, work product protection, and deliberative process privilege over communications concerning the changes to the ADX Institution Supplement concerning Incoming Publications. *See, e.g.*, ECF No. 109-14, Bureau of Prisons 6th Suppl. Privilege Log (Mar. 28, 2018) at 1–7 (emails discussing proposed changes to February 2016 Institution Supplement); *id.* at 15–17 (emails |

| | | |
|---|---|---|
| | | discussing proposed changes to December 2017 Institution Supplement).  In addition, BOP witnesses have refused to discuss the basis for ADX incoming publication policy changes on the basis of the attorney-client privilege.  ECF No. 110-1, Dep. of Jack Fox, Feb. 8, 2018 ("Fox Dep.") at 57:1–58:4, 84:16–85:10, 89:25–14.  PLN thus disputes that ADX officials "determined that changes were appropriate," because BOP's privilege claims deprived PLN of a full and fair opportunity to test the basis for this assertion. |
| | 2. On December 21, 2017, the ADX formally eliminated a prior practice of flagging for possible rejection every incoming publication that mentioned a BOP inmate or staff member by name.  Decl. of Todd Chapman, Ex. 1 ¶ 11; *see also* Decl. of Amy Kelley, Ex. 2 ¶ 7. | This paragraph is disputed in part.<br><br>It is disputed to the extent that this paragraph suggests that the BOP eliminated the name-alone practice prior to December 2017.  There is a factual dispute among BOP witnesses as to when the name-alone practice was eliminated at ADX.  At least one ADX staff member, whose job duties included management of personnel who directly reviewed incoming publications, testified that the name-alone practice was used at ADX until her retirement from BOP in December 2017.  ECF No. 109-5, Payne Dep. at 74:6–76:4; *see also* ECF No. 109-4, Chapman Dep. II at 130:13–22. |

| | | |
|---|---|---|
| | 3. The December 21, 2017, ADX Institution Supplement for incoming publications (the "December 2017 Policy") added this section: "**An incoming publication at the ADX may not be rejected solely because it discusses an ADX or Federal Bureau of Prisons (BOP) inmate, or BOP staff member**. When a publication identifies and discusses an ADX or BOP inmate, or BOP staff member, SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and include an evaluation of the factors in 28 C.F.R. § 540.70(b).[1] Staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment." Chapman Decl., Ex. 1 ¶ 8; *see also id.* at Att. 2, FLM 5266.11E, *Incoming Publications* (Dec. 21, 2017), at § III.C. (emphasis added); Decl. of Andre Matevousian, Ex. 3 ¶¶ 9-10. | Undisputed. |
| | 4. The eleven rejections of *Prison Legal News* which occurred between January 2010 and April 2014 were made under previous versions of the ADX incoming publications Institution Supplement, and | This paragraph is disputed in part.

PLN disputes this paragraph to the extent that it suggests the substantive review standard has changed since the eleven |

---

[1] The reference to "540.70(b)" is a typographical error and should read "540.71(b)." That error will be corrected.

| | | |
|---|---|---|
| | during a period when the name-alone practice routinely applied. First Chapman Decl., Doc. 31-1 ¶¶ 12-15 (describing review procedures under versions of Institution Supplement in effect from August 1, 2007, to February 1, 2016). | rejections were made.   The notices of these rejections, prepared by ADX officials, contain no reference to the ADX Institution Supplements in effect at the time of the relevant rejections.  ECF Nos. 104-5, 104-6, 104-7, 104-9, 104-13, 104-14, 104-15, 104-19, 104-22, 104-25, 104-24 (notices of the Rejected Issues). Rather, the notices state that the rejections were made "in accordance with the Bureau of Prisons Program Statement 5266.10, Incoming Publications," or "in accordance with the Bureau of Prisons Program Statement 5266.11, Incoming Publications." *Id.*  The substantive review standards in Program Statement 5266.10 and 5266.11 are identical, and Program Statement 5266.11 remains in effect today.<br><br>PLN also disputes that the name-alone practice was "routinely applied" at the ADX by the officials responsible for rejections of incoming publications during this period.  The former Wardens and Associate Wardens responsible for the rejection of the eleven issues of *Prison Legal News* between January 2010 and April 2014 (the "Rejected Issues") testified that did not use the name-alone practice.  *See* ECF No. 109-10, Dep. of Blake Davis, Jan. 10, 2018 ("Davis Dep.") at 73:6–11; ECF No. 109-11, Dep. of |

| | | David Berkebile, Jan. 19, 2018 ("Berkebile Dep.") at 52:9–13; ECF No. 109-12, Dep. of Shon Kuta, Mar. 14, 2018 ("Kuta Dep.") at 82:1–10; ECF No. 109-13, Dep. of Dennis Stamper, Mar. 14, 2018 ("Stamper Dep.") at 74:1–26, 75:1–3; ECF No. 110, Chapman Dep. II at 33:18-34:5.<br><br>It is undisputed that eleven issues of *Prison Legal News* were rejected at the ADX between January 2010 and April 2014. |
|---|---|---|
| | 5. Any issue of *Prison Legal News* that is sent to the ADX is evaluated under the procedures set forth in the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 9. | This paragraph is disputed. For purposes of this response, "the procedures set forth in the December 2017 Policy" is assumed to refer to Section III.C of the December 21, 2017 ADX Institution Supplement on incoming publications.<br><br>It is disputed to the extent that this paragraph is intended to mean that all future issues of *Prison Legal News* will be evaluated pursuant to these procedures. A future ADX warden may exercise his or her authority to change ADX Institution Supplement concerning incoming publications, including revisions of Section III.C. ECF No. 110-2, Dep. of Mark Collins, Apr. 19, 2018 ("Collins Dep.") at 139:9–22; ECF 109-15, Dep. of |

| | | |
|---|---|---|
| | | Todd Chapman, Jan. 17, 2017 ("Chapman Dep. I") at 20:23–22:25. |
| | 6. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.C. of the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 16. | This paragraph is disputed in part.<br><br>It is undisputed that Warden Matevousian has made such a declaration. It is disputed to the extent that this paragraph is intended to mean that all future issues of *Prison Legal News* will be evaluated pursuant to these procedures. A future ADX warden may exercise his or her authority to change ADX Institution Supplement concerning incoming publications, including revisions of Section III.C. ECF No. 110-2, Collins Dep. at 139:9–22; ECF 109-15, Chapman Dep. I at 20:23–22:25. |
| | 7. Former ADX Warden Jack Fox reviewed the eleven previously rejected issues of *Prison Legal News* in March 2017. Matevousian Decl., Ex. 3 ¶ 19. The issues were delivered to inmate subscribers at that time. *Id.* | This paragraph is disputed and contains multiple assertions.<br><br>The first sentence is disputed because ADX Warden Jack Fox admitted that he did not review the content of each of the eleven previously rejected issues of *Prison Legal News*. ECF No. 110-1, Fox Dep. at 116:15–117:9.<br><br>The second sentence is undisputed. However, the October 2011 and November 2011 issues of *PLN* were also delivered to a single inmate subscriber in |

| | | |
|---|---|---|
| | | August 2012 following a successful appeal of the rejection of these issues. ECF No. 104-12, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1079. |
| | 8. The eleven previously rejected issues of *Prison Legal News* would not be rejected under the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 19; Chapman Decl., Ex. 1 ¶ 16. | This paragraph is disputed.<br><br>BOP has failed to support this contention beyond conclusory assertions from the current Warden and Mr. Chapman. The declarations have not explained why the issues would not be rejected, nor pointed to any change in the policy that would ensure non-rejection of these issues if analyzed under the December 2017 Institution Supplement. *See* ECF No. 111-4, Matevousian Decl. ¶ 19; ECF No. 111-2, Chapman Decl. ¶ 16. That is insufficient to BOP's burden to establish mootness.<br><br>Further, other evidence demonstrates that the Rejected Issues could still have been rejected had the December 2017 Institution Supplement been in place at the time they were delivered.<br><br>ADX censored the Rejected Issues because they information about prisoners or staff members in those issues was deemed to be "detrimental to the security, good order, or discipline of the institution |

or . . . might facilitate criminal activity." 28 C.F.R. § 540.71(b).  The December 2017 Institution Supplement permits the censorship of incoming publications for the same reason.  *See* ECF No. 106-2, Att. 2.

The current ADX Warden's sworn Declaration states that a publication that "affirmatively identifies an inmate and provides details about his crimes and/or history" "creates an immediate safety risk to the identified inmate," and that "taking the proactive step of rejecting an incoming publication that presents dangers like these is the correct and safe way to manage a prison."  ECF No. 111-4, Matevousian Decl. ¶ 13.  A number of the Rejected Issues identified an inmate and provided details about his crime and/or history.  *See*, *e.g.*, ECF 109-16, January 2010 *PLN* Issue (Excerpt), BOP000053, at 54; ECF No. 109-17, June 2012 *PLN* Issue (Excerpt), BOP000250, at 251; ECF No. 109-18, April 2014 *PLN* Issue (Excerpt), BOP000447, at 448.  Thus, these issues could still have been rejected under the December 2017 Institution Supplement.

Moreover, Mr. Chapman testified in 2017 after the alleged elimination of the name-alone practice, that at least some of the

| | | |
|---|---|---|
| | | issues were still a security risk and would be rejected.  ECF No. 109-15, Chapman Dep. I at 48:19–51:5 (discussing January 2010 issue), 53:16–56:3 (discussing June 2010 issue), 56:22–61:3 (discussing October 2011 issue), 78:5–80:2 (discussing November 2012 issue), 82:7–85:2 (discussing July 2013 issue), 88:5–90:10 (discussing April 2014 issue). |
| 4. For each of the Rejected Issues, the ADX warden or acting warden who rejected the issue signed a rejection notice.  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| 5. For each of the Rejected Issues, the rejection notice states that the issue was rejected in accordance with BOP Program Statement 5266.10, Incoming Publications, which states that a "warden may reject a publication if it is determined detrimental to the security, good order, or discipline of the institution or if it may facilitate criminal activity."  Exhibit 1, *Prison Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | Undisputed. | |
| 6. Each of the Rejected Issues was rejected in its entirety.  Exhibit 1, *Prison* | Undisputed. | |

| | | |
|---|---|---|
| *Legal News v. Federal Bureau of Prisons*, Scheduling Order, ECF No. 90 at 4. | | |
| 7. A notice of rejection prepared by ADX states that the January 2010 issue of *PLN* was rejected because pages 30 and 31 "contain information on an ADX inmate." Exhibit 2, January 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000056; *see also* Exhibit 10, Dep. of Todd Chapman (Mar. 16, 2018) ("Chapman Dep. II") at 175:16–21. | Undisputed. | |
| 8. The January 2010 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 2, January 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000056. | Undisputed that the January 2010 rejection notice did not detail the Acting Warden's security analysis. | The rejection notices speak for themselves. BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 7. |
| | 9. The rejection notices for the eleven previously rejected issues of *Prison Legal News* protected ADX security interests, while still making clear that, in the Warden's judgment, the identification of and information associated with persons identified in the articles created security concerns at that time. Second Declaration of Mark Collins, ¶ 3. | PLN disputes this paragraph. First, PLN disputes that the rejection notices "mak[e] clear" which information in the article purportedly created a security risk. The notices indisputably provide no information beyond a single sentence that the article discusses or contains information on a BOP inmate or staff member. *See* Resp. to PLN SOF ¶¶ 7–12, 16, 17, 29–35, 40–41, 46–47, 52–53, 55–56. |

11

| | | |
|---|---|---|
| | | Second, PLN disputes any suggestion that the omission of additional information was necessary to "protect[] ADX security interests." Mr. Collins does not state that ADX could not have provided additional information to PLN with respect to the eleven rejected issues without creating a security risk, and therefore his opinion does not create a genuine dispute of fact as to whether additional information could have been provided. As explained in PLN's reply, other evidence shows that additional information could have been provided. *See* Def.'s 1st Suppl. Resp. to Pl.'s Interrog., ECF No. 104-38, at 2–3; Def.'s 2d Suppl. Resp. to Pl.'s Interrog., ECF No. 104-11 at 4–7; Chapman Decl., ECF No. 106-2, Att. 2, at § III.G.<br><br>Further, Mr. Collins has no personal knowledge of the preparation of the rejection notices, and he fails to explain the basis for his opinion that the notices "protected ADX security interests." |
| | 10. Disclosing specific details concerning the Warden's security interests at the time could have undermined the security interests underlying the rejection. Second Declaration of Mark Collins, Ex. 5 ¶ 4. | PLN disputes this paragraph.<br><br>In particular, PLN disputes that disclosing additional information would have "undermined the security interests underlying the rejection." Mr. Collins does not state that ADX could not have provided additional information to PLN |

| | | with respect to the eleven rejected issues without creating a security risk, and therefore his opinion does not create a genuine dispute of fact as to whether additional information could have been provided.  As explained in PLN's reply, other evidence shows that additional information could have been provided.  *See* Def.'s 1st Suppl. Resp. to Pl.'s Interrog., ECF No. 104-38, at 2–3; Def.'s 2d Suppl. Resp. to Pl.'s Interrog., ECF No. 104-11 at 4–7; Chapman Decl., ECF No. 106-2, Att. 2, at § III.G.<br><br>Further, Mr. Collins has no personal knowledge of the preparation of the rejection notices, and he fails to explain the basis for his opinion that the notices "protected ADX security interests." |
| | 11. Despite the physical controls at the ADX, ADX inmates defeat security controls to communicate with other inmates throughout the prison in dangerous ways. First Collins Decl., Ex. 4 ¶¶ 14-17, 24. | This paragraph is disputed in part.<br><br>Undisputed that ADX inmates communicate with other ADX and BOP inmates.  However, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above.  Prisoners at BOP facilities other than ADX are able to communicate with one another.  ECF No. 110-2, Collins Dep. at 106:7–18. |

| | | |
|---|---|---|
| | 12. In preparing rejection notices, the BOP must be able to protect the methods and techniques it uses for identifying threats or risks so that those methods and techniques are not compromised and rendered useless. Second Collins Decl., Ex. 5 ¶ 4. If the Warden is compelled to provide an exhaustive analysis of his security concerns to persons outside the prison, it is impossible to prevent that information from being transmitted to other persons, including inmates and other persons the Warden has determined could use it to harm others. *Id.* | This paragraph, and the evidence cited therein, fails to create a genuine dispute of material fact. These statements reflect only general opinions on prison security. Mr. Collins does not state that ADX could not have provided additional information to PLN without revealing security "methods and techniques" with respect to the eleven rejected issues of PLN. As explained in PLN's reply, other evidence shows that additional information could have been provided. *See* Def.'s 1st Suppl. Resp. to Pl.'s Interrog., ECF No. 104-38, at 2–3; Def.'s 2d Suppl. Resp. to Pl.'s Interrog., ECF No. 104-11 at 4–7; Chapman Decl., ECF No. 106-2, Att. 2, at § III.G. |
| | 13. Although these security risks exist, the ADX has changed its procedures to facilitate providing as much information in the notice as possible. In the December 2017 Policy, ADX officials made changes to the notification procedures following the rejection of an incoming publication: "When an incoming publication is rejected, the Warden will promptly advise the inmate and publisher in writing of the decision and the reason(s) for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable, **including page references and quotes from the incoming** | This paragraph is disputed in part.<br><br>The BOP has asserted attorney-client privilege, work product protection, and deliberative process privilege over communications concerning the changes to the ADX Institution Supplement concerning Incoming Publications. *See, e.g.*, ECF No. 109-14, Bureau of Prisons' 6th Suppl. Privilege Log (Mar. 28, 2018) at 1–7 (emails discussing proposed changes to February 2016 Institution Supplement); *id.* at 15–17 (emails discussing proposed changes to December 2017 Institution Supplement). In addition, |

| | | |
|---|---|---|
| | **publication**. The Warden will advise the publisher or sender that the publisher may obtain independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. **Ordinarily, the rejection notice will be mailed to the publisher within ten business days from the Warden's signature date**." Chapman Decl., Ex. 1 ¶ 17 (discussing § III.G. of the December 2017 Policy) (emphasis added); Matevousian Decl., Ex. 3 ¶ 17. | BOP witnesses have refused to discuss the basis for ADX incoming publication policy changes on the basis of the attorney-client privilege.  ECF No. 110-1, Fox Dep. at 57:1–58:4, 84:16–85:10; 89:25–14.  PLN thus disputes that ADX officials "changed its procedures to facilitate providing as much information in the notice as possible," because BOP's privilege claims deprived PLN of a full and fair opportunity to test the basis for this assertion.<br><br>PLN also disputes that, under the December 2017 Institution Supplement, ADX officials must provide "as much information in the notice as possible."  By its express terms, the Institution Supplement requires only that ADX's rejection notices include "reference to the specific article(s) or material(s) considered objectionable, including page references and quotes from the incoming publications."  ECF No. 111-2, Att. 2. BOP's interrogatory answers in this matter, for example, provided more information than would be required under the Institution Supplement.  *See* ECF No. 104-38, Def.'s 1st Suppl. Resp. to Pl.'s Interrog. No. 2, at 2–3; ECF No.104-11, Def.'s 2d Suppl. Resp. to Pl.'s Interrog. No. 2 at 4–7. |

| | | |
|---|---|---|
| | | Undisputed that the December 2017 Institution Supplement includes the language quoted at BOP ¶ 13. |
| | 14. This provision, which was implemented as a result of this litigation, was added to ensure that rejection notices adequately explain the grounds for rejection and to enable publishers to appeal rejections in a timely manner. Chapman Decl., Ex. 1 ¶ 18. | This paragraph is disputed.<br><br>The BOP has asserted attorney-client privilege, work product protection, and deliberative process privilege over communications concerning the changes to the ADX Institution Supplement concerning Incoming Publications. *See, e.g.*, ECF No. 109-14, Bureau of Prisons' 6th Suppl. Privilege Log (Mar. 28, 2018) at 1–7 (emails discussing proposed changes to February 2016 Institution Supplement); *id.* at 15–17 (emails discussing proposed changes to December 2017 Institution Supplement). In addition, BOP witnesses have refused to discuss the basis for ADX incoming publication policy changes on the basis of the attorney-client privilege. ECF No. 110-1, Fox Dep. at 57:1–58:4, 84:16–85:10; 89:25–14. PLN thus disputes that this provision was "added to ensure that rejection notices adequately explain the grounds for rejection and to enable publishers to appeal rejections in a timely manner," because BOP's privilege claims deprived PLN of a full and fair opportunity to test the basis for this assertion. |

|  |  |  |
|---|---|---|
|  | 15. The procedures in § III.G. of the December 2017 Policy would be applied if any issue of *Prison Legal News* is ever rejected at ADX in the future. Matevousian Decl., Ex. 3 ¶ 18. | This paragraph is disputed.<br><br>As an initial matter, this is not a proper statement of fact, but instead is an assertion about contingent future events. Warden Matevousian does not have personal knowledge of what procedures will be applied to future rejections, nor can he ensure that the current policy will remain in place indefinitely.<br><br>This paragraph is also disputed because a future ADX warden may exercise his or her authority to change ADX Institution Supplement concerning incoming publications, including revisions of Section III.C.  ECF No. 110-2, Collins Dep. at 139:9–22; ECF No. 109-15, Chapman Dep. I at 20:23–22:25. |
|  | 16. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.G. of the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 18. | This paragraph is disputed in part.<br><br>It is undisputed that Warden Matevousian has made such a declaration.  It is disputed to the extent the paragraph is intended to mean that all future incoming publications will be reviewed pursuant to the December 2017 Institution Supplement.  A future ADX warden may exercise his or her authority to change the ADX Institution Supplement concerning incoming publications, including revisions |

| | | of Section III.C.  ECF No. 110-2, Collins Dep. at 139:9–22; ECF No. 109-15, Chapman Dep. I at 20:23–22:25. |
|---|---|---|
| 9. A notice of rejection prepared by ADX states that the June 2010 issue of *PLN* was rejected because page 11 "contains information on a riot at USP Florence and information on an ADX inmate."  Exhibit 3, June 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000082; *see also* Exhibit 10, Chapman Dep. II at 182:18–183:1. | Undisputed. | |
| 10. The June 2010 rejection notice did not identify the information about the riot or inmate that was supposedly a security risk.  Exhibit 3, June 2010 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000082. | Undisputed that the June 2010 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the June 2010 notice provided no information or reasons beyond the statement quoted in PLN ¶ 9. |
| 11. A notice of rejection prepared by ADX states that the October 2011 issue of *PLN* was rejected because pages 20, 21, and 50 "contain information on FCC Florence inmates and staff."  Exhibit 4, October 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000136; *see also* Exhibit 10, Chapman Dep. II at 191:2–6. | Undisputed. | |
| 12. The October 2011 rejection notice did not identify the information about the | Undisputed that the October 2011 rejection notice did not detail the Acting Warden's | The rejection notices speak for themselves.  BOP does not and cannot |

| | | |
|---|---|---|
| inmates and staff that was supposedly a security risk.  Exhibit 4, October 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000136. | security analysis. *See also* BOP Facts 10-16, above. | dispute that the October 2011 rejection notice provided no information or reasons beyond the statement quoted in PLN ¶ 11. |
| 13. The article appearing on pages 20 and 21 of the October 2011 issue of *PLN* discusses a lawsuit by federal prisoners in Indiana and Illinois and does not reference ADX inmates.  Exhibit 5, October 2011 *PLN* Issue, PLN_0001187, at 1206–07. | Undisputed that this article did not reference inmates who, at the time of publication of the article, were incarcerated at the ADX. | Because BOP does not provide evidence to dispute any portion of PLN Fact ¶ 13, this fact should be treated as undisputed for purposes of this Motion. |
| 14. An article appearing on page 50 of the October 2011 issue of *PLN* discusses the conviction of four inmates at FCC Florence of beating another inmate to death, and states that the murder was allegedly due to a "disrespect" issue involving the Surenos gang.  Exhibit 5, October 2011 *PLN* Issue, PLN_0001187, at 1236. | Undisputed. | |
| 15. An article appearing on page 50 of the October 2011 issue of *PLN* discusses an indictment charged against a BOP staff member for stealing equipment from a BOP facility.  Exhibit 5, October 2011 *PLN* Issue, PLN_0001187, at 1236. | Undisputed. | |
| 16. A notice of rejection prepared by ADX states that the November 2011 issue of *PLN* was rejected because pages 38 and 47 "contain information on inmates who | Undisputed. | |

| | | |
|---|---|---|
| cooperated with BOP investigations." Exhibit 6, November 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000215; *see also* Exhibit 33, Dep. of Todd Chapman (Jan. 17, 2017) ("Chapman Dep. I") at 61:14–62:8. | | |
| 17. The November 2011 rejection notice did not identify the information about the inmates that was supposedly a security risk.. Exhibit 6, November 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000215. | Undisputed that the November 2011 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 16. |
| 18. An article appearing on page 38 of the November 2011 issue of *PLN* concerns a lawsuit filed by a "John Doe" federal prisoner who was allegedly attacked by a prison guard, an "Officer Wooten," for participating in an investigation of another BOP guard at the U.S. Penitentiary in Atlanta, Georgia. Exhibit 7, November 2011 *PLN* Issue, PLN_0001341, at 1378. | Undisputed. | |
| 19. The BOP inmate discussed in the article appearing at page 38 of the November 2011 issue of *PLN* was not identified by name and was not incarcerated at the ADX at the time of the investigation discussed in the article. | Undisputed. | |

| | | |
|---|---|---|
| Exhibit 8, Def.'s 2d Suppl. Resp. to Pl.'s Interrog. No. 2, at 5. | | |
| 20. An article appearing at page 47 of the November 2011 issue of *PLN* discusses a U.S. District Court, District of Oregon case that was dismissed due to mishandling of evidence by BOP employees.  Exhibit 7, November 2011 *PLN* Issue, PLN_0001341, at 1387. | Undisputed. | |
| 21. An ADX inmate appealed the rejection of the October and November 2011 issues of *PLN* to the North Central Regional Office on or around January 11, 2012.  Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1078; *see also* Exhibit 10, Chapman Dep. II at 191:22–193:5. | Undisputed. | |
| 22. On February 6, 2012, Acting Regional Director Amber L. Nelson remanded an ADX inmate's appeal of the rejection of the October and November 2011 issues of *PLN* to ADX for further review.   Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1077; *see also* Exhibit 10, Chapman Dep. II at 191:22–193:5. | Undisputed. | |
| 23. At some time before September 6, 2012, Assistant Warden Dennis Stamper determined that the October and | Undisputed. | |

| | | |
|---|---|---|
| November 2011 issues of *PLN* were improperly rejected.  Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1079; *see also* Exhibit 10, Chapman Dep. II at 191:22–193:5. | | |
| 24. On August 10, 2012, the October 2011 and November 2011 issues of *PLN* were delivered to the ADX inmate who appealed the rejections.  Exhibit 9, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1079. | Undisputed. | |
| 25. The October 2011 issue of *PLN* was improperly rejected by ADX at the time that it was rejected.  Exhibit 10, Chapman Dep. II at 194:6–10. | Undisputed. | |
| 26. The November 2011 issue of *PLN* was improperly rejected by ADX at the time that it was rejected.  Exhibit 10, Chapman Dep. II at 199:11–15. | Undisputed. | |
| 27. BOP did not inform PLN of an inmate's successful appeal of the rejection of the October 2011 and November 2011 issues of *PLN*.  Exhibit 10, Chapman Dep. II at 198:9–16. | Undisputed that Mr. Chapman, the BOP's designee pursuant to Fed. R. Civ. P. 30(b)(6), testified that "[t]ypically we wouldn't contact a publisher and give private information about an inmate." | This testimony was part of a line of questioning about whether BOP notified PLN of the inmate's successful appeal. Given that BOP has provided no information to suggest that the "typical" practice was not followed in this case, PLN Fact ¶ 27 should be treated as undisputed. |

| | | |
|---|---|---|
| 28. Prior to 2017, BOP did not deliver the October 2011 or November 2011 issues of *PLN* to any ADX inmates other than the inmate who successfully appealed the rejections.  Exhibit 10, Chapman Dep. II at 198:17–199:24. | Undisputed that these issues were not delivered to any other ADX inmate subscriber until March 2017. | Because BOP does not provide evidence to dispute any portion of PLN Fact ¶ 28, this fact should be treated as undisputed for purposes of this Motion. |
| 29. A notice of rejection prepared by ADX states that the June 2012 issue of *PLN* was rejected it "contains information about an ADX inmate and former staff members."  Exhibit 11, June 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000253; *see also* Exhibit 10, Chapman Dep. II at 200:25–201:5. | Undisputed. | |
| 30. The notice of rejection of the June 2012 issue of *PLN* does not indicate the page or pages on which allegedly objectionable material appears.  Exhibit 11, June 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000253. | Undisputed. | |
| 31. The June 2012 rejection notice did not identify the information about the inmate and former staff member that was supposedly a security risk.  Exhibit 11, June 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000253. | Undisputed that the June 2012 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 29. |

| | | |
|---|---|---|
| 32. A notice of rejection prepared by ADX states that the November 2012 issue of *PLN* was rejected because page 42 "discusses individuals incarcerated at Administrative Maximum Security Institution."  Exhibit 12, November 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000303; *see also* Exhibit 10, Chapman Dep. II at 208:11–14. | Undisputed. | |
| 33. The November 2012 rejection notice did not identify the information about the inmates that was supposedly a security risk.  Exhibit 12, November 2012 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000303. | Undisputed that the November 2012 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 32. |
| 34. A notice of rejection prepared by ADX states that the February 2013 issue of *PLN* was rejected because pages 8 and 9 "discuss[] individuals incarcerated at U.S. Penitentiary Florence (ADX)."  Exhibit 13, February 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000323; *see also* Exhibit 10, Chapman Dep. II at 220:16–23. | Undisputed. | |
| 35. The February 2013 rejection notice did not identify the information about the inmate that was supposedly a security risk.  Exhibit 13, February 2013 Notification to Inmate and | Undisputed that the February 2013 rejection notice did not detail the Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 34. |

| | | |
|---|---|---|
| Publisher/Sender of Rejected Publication, BOP000323. | | |
| 36. An article appearing at pages 8 and 9 of the February 2013 issue of *PLN* discusses the U.S. Court of Appeals for the Tenth Circuit's ruling in a case brought by terrorism prisoners at the ADX.  Exhibit 14, February 2013 *PLN* Issue, PLN_0001572, at 1579–80. | Undisputed. | |
| 37. The Tenth Circuit's ruling in *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012), is available to ADX inmates through the ADX Electronic Law Library. Exhibit 15, Def.'s Resp. to Pl.'s 1st Requests for Admission at 8. | Undisputed. | |
| 38. All information contained in the article at pages 8 and 9 of the February 2013 issue of *PLN* is included in a published judicial opinion, *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012). Exhibit 14, February 2013 *PLN* Issue, PLN_0001572, at 1579-80; Exhibit 16, *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012), PLN_0001831–45. | Undisputed that significant portions of the article are contained in the judicial opinion. | Because BOP does not provide evidence to dispute any portion of PLN Fact ¶ 38, this fact should be treated as undisputed for purposes of this Motion.<br><br>Further, there is no dispute that the information identified by BOP as the basis for the rejection was included in the published judicial opinion.  BOP has stated that the basis for the rejection of the February 2013 issue is that the article at pages 8 and 9 identifies ADX inmates as terrorists.  *See* ECF No. 105, Chapman Dep. II at 222–23.  The identification of four inmates as terrorists is included published judicial decision, *Rezaq v.* |

| | | |
|---|---|---|
| | | *Nalley*, 677 F.3d 1001 (10th Cir. 2012). *See* PLN Ex. 16, ECF No. 104-18; *see also* Resp. to PLN SOF ¶ 39. |
| 39. The published judicial opinion, *Rezaq v. Nalley*, 677 F.3d 1001, identifies four ADX inmates as terrorists.  Exhibit 14, February 2013 *PLN* Issue, PLN_0001572, at 1579–80; Exhibit 16, *Rezaq v. Nalley*, 677 F.3d 1001 (10th Cir. 2012), PLN_0001831–45. | Undisputed. | |
| 40. A notice of rejection prepared by ADX states that the April 2013 issue of *PLN* was rejected because page 32 "discusses individuals incarcerated at U.S. Penitentiary Florence (ADX)."  Exhibit 17, April 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000350; *see also* Exhibit 10, Chapman Dep. II at 228:21–25. | Undisputed. | |
| 41. The April 2013 rejection notice did not identify the information about the inmates that was supposedly a security risk.  Exhibit 17, April 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000350. | Undisputed that the April 2013 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 40. |
| 42. An article appearing on page 32 of the April 2013 issue of *PLN* discusses the U.S. Court of Appeals for the Tenth Circuit's ruling in a case brought by an | Undisputed. | |

| | | |
|---|---|---|
| ADX inmate.  Exhibit 18, April 2013 *PLN* Issue, PLN_0001668, at 1699. | | |
| 43. The Tenth Circuit's ruling in *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012) is available to ADX inmates through the ADX Electronic Law Library.  Exhibit 15, Def.'s Resp. to Pl.'s 1st Requests for Admission at 9. | Undisputed. | |
| 44. All information contained in the article at page 32 of the April 2013 issue of *PLN* is included in a published judicial opinion, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012).  Exhibit 18, April 2013 *PLN* Issue, PLN_0001668, at 1699; Exhibit 19, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012), PLN_0001767–74. | Undisputed that some of the information contained in the article is included in the published judicial opinion. Otherwise, the evidence does not support the claimed fact.  The article cross-references information found in cases and sources, including another issue of *Prison Legal News*. In addition, the article contains numerous editorial comments by the writer. | There is no dispute that the information identified by BOP as the basis for the rejection was included in the published judicial opinion.  BOP has stated that the basis for the rejection of the April 2013 issue is that the article at page 32 identifies an ADX inmate as a terrorist and identifies "exactly what terrorist attack he was involved in."  *See* ECF No. 105, Chapman Dep. II at 230–31.  The identification of the inmate and the terrorist attack in which he was involved are in the published judicial decision, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012).  *See* PLN Ex. 19, ECF No. 104-21; *see also* Resp. to PLN SOF ¶ 45. |
| 45. The published judicial opinion, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012) identifies an ADX inmate as a terrorist.  Exhibit 19, *Al-Owhali v. Holder*, 687 F.3d 1236 (10th Cir. 2012), PLN_0001767. | Undisputed. | |

| | | |
|---|---|---|
| 46. A notice of rejection prepared by ADX states that the July 2013 issue of *PLN* was rejected because pages 36 and 37 "discuss[] individuals incarcerated at U.S. Penitentiary Florence (ADX)." Exhibit 20, July 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000405; *see also* Exhibit 33, Chapman Dep. I at 81:17–22. | Undisputed. | |
| 47. The July 2013 rejection notice did not identify the information about the inmate that was supposedly a security risk. Exhibit 20, July 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000405. | Undisputed that the July 2013 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves. BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 46. |
| 48. An article appearing at pages 36 and 37 of the July 2013 issue of *PLN* discusses a ruling by the U.S. Court of Appeals for the Tenth Circuit. Exhibit 21, July 2013 *PLN* Issue, PLN_0000751, at 786–87. | | Because BOP does not provide any response to PLN Fact ¶ 48, this fact should be treated as undisputed for purposes of this Motion. |
| 49. The Tenth Circuit's ruling in *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012) is available to ADX inmates through the ADX Electronic Law Library. Exhibit 15, Def.'s Resp. to Pl.'s 1st Requests for Admission at 10. | Undisputed. | |
| 50. All information contained in the article at pages 36 and 37 of the July 2013 issue of *PLN* is included in a published | Undisputed that significant portions of the article are contained in the judicial opinion. | Because BOP does not provide evidence to dispute any portion of PLN Fact ¶ 50, |

| | | |
|---|---|---|
| judicial opinion, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012).  Exhibit 21, July 2013 *PLN* Issue, PLN_0000751, at 786–87; Exhibit 22, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), PLN_0001823. | | this fact should be treated as undisputed for purposes of this Motion.

Further, there is no dispute that the information identified by BOP as the basis for the rejection of the July 2013 issue was included in a published judicial opinion.  BOP has stated that the basis for the rejection of the July 2013 issue is that the article at pages 36 and 37 identifies an ADX inmate and the particular drug cartel with which he was involved).  *See* ECF No. 105, Chapman Dep. II at 244:11–20.  The identification of the ADX inmate as a member of the Sinaloa drug cartel is included in the published judicial opinion, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012).  *See* PLN Ex. 22, ECF No. 104-24; *see also* Resp. to PLN SOF ¶ 51. |
| 51. The published judicial opinion, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), identifies an ADX inmate as a member of the Sinaloa drug cartel.  Exhibit 22, *Palma-Salazar v. Davis*, 677 F.3d 1031 (10th Cir. 2012), PLN_0001823. | Undisputed. | |
| 52. A notice of rejection prepared by ADX states that the entire September 2013 issue of *PLN* was rejected because pages 18 and 20 "contain the names of | Undisputed. | |

| | | |
|---|---|---|
| former Bureau of Prisons staff members that have been sentenced." Exhibit 23, September 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000439; *see also* Exhibit 29, Dep. of David Berkebile (Jan. 19, 2018) ("Berkebile Dep.") at 107:15–20. | | |
| 53. The September 2013 rejection notice did not identify the information about the inmate that was supposedly a security risk.  Exhibit 23, September 2013 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000439. | Undisputed that the September 2013 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 52. |
| 54. The September 2013 issue of *Prison Legal News* was improperly rejected by ADX at the time that it was rejected.  Exhibit 10, Chapman Dep. II at 251:2–9. | Undisputed. | |
| 55. A notice of rejection prepared by ADX states that the entire April 2014 issue of *PLN* was rejected because page 42 "contains information on an individual incarcerated at United States Penitentiary (ADX) and details on his case."  Exhibit 24, April 2014 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000449; *see also* Exhibit 10, Chapman Dep. II at 251:19–22. | Undisputed. | |

| | | |
|---|---|---|
| 56. The April 2014 rejection notice did not identify the information about the inmate that was supposedly a security risk.  Exhibit 24, April 2014 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000449. | Undisputed that the April 2014 rejection notice did not detail the Acting Warden's security analysis. *See also* BOP Facts 10-16, above. | The rejection notices speak for themselves.  BOP does not and cannot dispute that the notice provided no information or reasons beyond the statement quoted in PLN ¶ 55. |
| 57. ADX inmates have access to published U.S. federal court opinions through the ADX Electronic Law Library. Exhibit 8, Def.'s 2d Suppl. Resp. to Pl.'s Interrog. No. 4, at 9; Exhibit 25, Listing of ADX Electronic Law Library Content, BOP2129–2133; *see also* Exhibit 10, Chapman Dep. II at 158:22–159:11. | Undisputed. | |
| 58. ADX has never censored any content contained in the ADX Electronic Law Library.  Exhibit 10, Chapman Dep. II at 212:21–25. | Undisputed. | |
| 59. A warden may not deny an ADX inmate access to a published court decision.  Exhibit 26, Dep. of Mark Collins (Apr. 19, 2018) ("Collins Dep.") at 125:25–126:6. | Undisputed that Mr. Collins and counsel for PLN had this exchange: "Q. I want to clarify this one point. So is there ever a circumstance in which the warden can say, I'm not going to allow an inmate access to this published court decision? I'm not talking about the issue of PLN, I'm just talking about—A. Not that I'm aware of. Not that I'm aware of." | Because BOP does not provide evidence to dispute any portion of PLN Fact ¶ 59, this fact should be treated as undisputed for purposes of this Motion. |
| 60. ADX has told PLN that "future issues of *Prison Legal News*, that may contain personal information about an ADX inmate, will be more thoroughly | Undisputed. | |

| | | |
|---|---|---|
| reviewed to ensure information contained therein is not already available publicly through the Electronic Law Library or other federal publications." Exhibit 27, Letter from ADX to P. Swanson, Re: Rejection of *Prison Legal News* at ADX Florence (Sept. 15, 2015), PLN_0008621–22. | | |
| 61. ADX made no effort to redact or remove the material in the eleven rejected *PLN* issues to which ADX objected and deliver the unobjectionable portion to subscribers.  Exhibit 28, Dep. of John Dunkleberger (Mar. 9, 2018) ("Dunkleberger Dep.") at 33:4–13; Exhibit 10, Chapman Dep. II at 166:17–167:8. | Undisputed. | |
| 62. There is no sound security rationale for the practice of rejecting an article solely because it referenced the name of a ADX or BOP inmate or BOP staff member.  Exhibit 26, Collins Dep. 17:24–18:10. | Undisputed. | |
| 63. The eleven rejected *PLN* issues were re-reviewed by BOP after this lawsuit was filed and were found not to be detrimental to security at the ADX. Exhibit 30, Def.'s 3d Suppl. Resp. to Pl.'s 1st Interrog. No. 2, at 2. | Undisputed. | |

| | | |
|---|---|---|
| 64. The eleven rejected *PLN* issues were delivered to ADX inmate subscribers on March 1, 2017.  Exhibit 31, Suppl. Decl. of Jack Fox, ECF No. 66-1. | Undisputed. | |
| 65. An article titled "Prisoners Raped and Sexually Abused while PREA Standards Pending" appearing at pages 17–21 of the September 2013 issue of *Prison Legal News* collects reports of nationwide instances of arrests and convictions of prison employees.  Exhibit 32, September 2013 *PLN* Issue, PLN_0000837, at 853–57. | Undisputed. | |
| 66. BOP has never seriously considered redaction or removal of objectionable content as an alternative to wholesale rejection of entire publications that may contain objectionable content. Exhibit 28, Dunkleberger Dep. at 75:21–25. | Undisputed that Mr. Dunkelberger testified that, since 2008, the BOP has not considered implementing a redaction policy. | |
| | 17. The BOP has evaluated the administrative burdens associated with the implementation of a redaction practice and has determined that such a practice would lead to many logistical issues and administrative burdens, including: (1) the potential for liability for inmate tort claims when incoming publications are altered; (2) the burden of conducting a line-by-line review and reading every page of every incoming publication whenever any | This paragraph is disputed and immaterial.  PLN disputes that BOP has "evaluated" the administrative burdens associated with the implementation of a redaction practice.  *See* PLN Fact ¶ 66 and BOP Resp. to ¶ 66.  At trial, PLN will show that BOP has not met its burden of demonstrating that redaction is either |

| | | |
|---|---|---|
| | objectionable content is identified, rather than randomly reading a publication; (3) staff confusion engendered by a lack of clarity as to exactly which content must be redacted; (4) the preparation and delivery of multiple rejection notices and approval forms, and time spent speaking with inmates to determine if they approve redactions; (5) the need for additional training for staff involved in the redaction process; and (6) the need for negotiations with the correctional workers' union to gain approval for the additional work to be performed by prison staff. Deposition of John Dunkelberger, Ex. 6 at 45:9-47:24; 61:1-21; 63:14-64:4;  68:2-69:19; 70:15-71:24; 72:15-73:18; 80:7-81:5; *see also* Defendant's Response to Plaintiff's Second Interrogatories, Doc. 104-39 at 8, 9-10 (describing administrative burdens). | more harmful or cost prohibitive than wholesale rejection.<br><br>This paragraph is further disputed because it lacks substantiation.  The evidence BOP cites in support of this paragraph is inadmissible hearsay.  Fed. R. Evid. 602, 802.<br><br>In addition, BOP Add'l Facts ¶¶ 17–22 are immaterial to the resolution of this Motion.  In its Motion, PLN does not seek a ruling requiring BOP to redact rather than wholly reject publications.  PLN's Motion seeks a ruling that BOP is not precluded from employing redaction as an alternative to outright rejection. |
| | 18. At the ADX, approximately 55 to 75 incoming publications are received at the ADX each day. BOP Interrogatory Responses, Doc. 104-39 at 9. | This paragraph is disputed.  A BOP witness has stated in a declaration that "[o]n average, 50 to 70 publications are received at the ADX every day."  ECF No. 106-2, Chapman Decl. ¶ 14.<br><br>This paragraph is also disputed because it lacks substantiation.  The evidence BOP cites in support of this paragraph is inadmissible hearsay.  Fed. R. Evid. 602, 802. |

| | | |
|---|---|---|
| | | Further, this paragraph is immaterial for the reasons stated above (*see* Resp. to BOP Add'l Fact ¶ 17). |
| | 19. The review of incoming publications is just one of the many duties that ADX Special Investigative Services ("SIS") and mailroom personnel must perform every day. BOP Interrogatory Responses, Doc. 104-39 at 9. | This paragraph is disputed because it lacks substantiation. The evidence BOP cites in support of this paragraph is inadmissible hearsay. Fed. R. Evid. 602, 802.<br><br>Further, this paragraph is immaterial for the reasons stated above (*see* Resp. to BOP Add'l Fact ¶ 17). |
| | 20. Under a redaction/extraction practice, SIS staff would be obliged to conduct a line-by-line analysis of every word in the publication to ensure that each and every phrase, line, and word that may compromise security or facilitate criminal activity is identified for redaction before dissemination to the inmate. It is physically impossible for SIS technicians, each of whom monitors all communications of a large caseload of inmates, to bring that level of scrutiny to every incoming publication. BOP Interrogatory Responses, Doc. 104-39 at 9. | This paragraph is disputed, and contains multiple assertions.<br><br>This paragraph is disputed because it lacks substantiation. The evidence BOP cites in support of this paragraph is inadmissible hearsay. Fed. R. Evid. 602, 802.<br><br>PLN also disputes that it is "physically impossible" for SIS technicians to review all publications. At least one ADX staff member, whose job duties included management of personnel who directly reviewed incoming publications, testified that under current ADX procedures, SIS technicians review all incoming publications sent to ADX inmates. Ex. |

| | | |
|---|---|---|
| | | 40, Deposition of Debra Payne ("Payne Dep.") at 41:7–44:14.<br><br>Further, this paragraph is immaterial for the reasons stated above (*see* Resp. to BOP Add'l Fact ¶ 17). |
| | 21. Imposing that additional work on the ADX SIS Department would compromise all other aspects of the work of the Department, thus jeopardizing the security of ADX staff and inmates and persons outside the prison who are at risk if the Department fails to identify dangerous communications. BOP Interrogatory Responses, Doc. 104-39 at 9-10. | This paragraph is disputed.<br><br>This paragraph is disputed because it lacks substantiation.  The evidence BOP cites in support of this paragraph is inadmissible hearsay.  Fed. R. Evid. 602, 802.<br><br>The SIS Department's current procedures already involve the review of all incoming publications sent to ADX inmates.  *See* Resp. to BOP Add'l Fact ¶ 20.  Thus, the "additional work" arising from a redaction/extraction practice includes only the work associated with the redaction/extraction itself (rather than the review of incoming publications).<br><br>Through May 4, 2018, the ADX only had nine non-sexually explicit or nudity based rejections of incoming publications in 2018.  ECF No. 106-2, Chapman Decl. ¶ 14.  PLN disputes that the redaction of objectionable content from approximately 2-3 publications per month would "compromise all other aspects of the work |

| | | |
|---|---|---|
| | | of the Department" or jeopardize the security of ADX staff, inmates, or the public.<br><br>At trial, PLN will show that BOP has not met its burden of demonstrating that redaction is either more harmful or cost prohibitive than wholesale rejection.<br><br>Further, this paragraph is immaterial for the reasons stated above (*see* Resp. to BOP ¶ 17). |
| | 22. Under a rejection/extraction practice, some content that warrants rejection inevitably will be missed in the redaction process, especially in lengthy publications. Inadvertent but unavoidable human errors like these will undermine the entire publication-review process because inmates will gain access to the very material that BOP intelligence professionals have determined to be detrimental to security.  BOP Interrogatory Responses, Doc. 104-39 at 10. | This paragraph is disputed.<br><br>This paragraph is disputed because it lacks substantiation.  The evidence BOP cites in support of this paragraph is inadmissible hearsay.  Fed. R. Evid. 602, 802.<br><br>PLN further disputes this paragraph as speculative.  PLN does not assume that BOP will make errors in implementing a redaction practice, and it is unclear why BOP believes the likelihood of errors would be greater than for publications that ADX allows into the facility (the vast majority of publications received).  At trial, PLN will show that BOP has not met its burden of demonstrating that redaction is either more harmful or cost prohibitive than wholesale rejection. |

| | | |
|---|---|---|
| | | Further, this paragraph is immaterial for the reasons stated above (*see* Resp. to BOP Add'l Fact ¶ 17). |