# Exhibit 1
# Defendant's Reply to Plaintiff's Response to Defendant's Statement of Undisputed Material Facts

*Prison Legal News v. Fed. Bureau of Prisons*,
No. 15-cv-02184-RM-STV

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| Moving Party's Undisputed Material Facts and Supporting Evidence | Opposing Party's Response/Additional Facts and Supporting Evidence | Moving Party's Reply and Supporting Evidence |
|---|---|---|
| **I.  The ADX adopted an incoming publications policy that abolished the name-alone practice and implemented new rejection notification procedures.** | This heading does not include any citation to evidence and therefore does not require a response.  The heading should be stricken. | PLN fails to raise a genuine dispute about the heading, which summarizes the facts that follow. The statement is properly supported by admissible evidence. *See* BOP Facts ¶¶ 1-17, below. |
| 1. At some point between 1998 and 2002, the ADX instituted a practice requiring SIS personnel to flag every incoming publication that mentioned a BOP inmate or staff member by name. The reason for instituting that practice was that ADX personnel had obtained information indicating that ADX inmates were using publications to pass clandestine messages. Until that time, ADX personnel were unaware of this illicit use of publications by inmates. Decl. of Todd Chapman, Ex. 1 ¶ 11. | This paragraph is disputed, immaterial, and contains multiple assertions.

The paragraph is disputed because it lacks substantiation.  The evidence BOP cites in support of this paragraph is inadmissible hearsay.  Fed. R. Evid. 602, 802.  Mr. Chapman does not have personal knowledge of the truth of the information offered because he did not work at ADX in the relevant time period, and any information about the origins of the name-alone practice was received by Mr. Chapman second-hand.  Ex. 27, Def.'s Suppl. Resp. to Pl.'s Interrog. No. 21 at 3–4 (Mar. 15, 2018); ECF No. 106-2, Decl. of Todd Chapman, May 14, 2018 ("2018 Chapman Decl.") ¶ 1, 11–12; Ex. 7, Dep. of Todd Chapman, Mar. 16, 2018 ("Chapman Dep. II") at 34:18–36:3. | PLN fails to show the existence of a genuine dispute about this fact.

**First**, PLN fails to provide any evidence to support its conclusory statement that the fact is disputed. Its conclusory statement is insufficient to show the existence of a genuine dispute. *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record[.]").

**Second**, the testimony of Mr. Chapman, who was designated as a witness pursuant to Fed. R. Civ. P. 30(b)(6) to testify about the stated fact, is not hearsay. *See, e.g.*, *Lloyd v. Midland Funding, LLC*, 639 F. App'x 301, 304-05 |

1

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | This paragraph is also immaterial.  The origin of the alleged name-alone practice has no bearing on the arguments included in BOP's Motion for Summary Judgment. | (6th Cir. 2016) (recognizing that "the personal knowledge requirement" under Fed. R. Civ. P. 56(c)(4) "works differently in this setting, where a human being . . . speaks for a corporation," and holding that it was proper for trial court to rely on the declaration of a designated Rule 30(b)(6) witness submitted in connection with a summary judgment motion); *Brazos River Authority v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) ("When a corporation produces an employee pursuant to a rule 30(b)(6) notice, it represents that the employee has the authority to speak on behalf of the corporation with respect to the areas within the notice of deposition."); *Harris v. Vector Mktg. Corp.*, 656 F. Supp. 2d 1128, 1132 (N.D. Cal. 2009) ("The testimony of a Rule 30(b)(6) corporate agent deponent may be presented on motion for summary judgment, even though not based on personal knowledge, because a Rule 30(b)(6) witness need not have personal knowledge of the facts to which he or she testifies."); *Weinstein v. District of Columbia Housing Auth.*, 931 F. Supp. 2d 178, 186 (D.D.C. 2013) (considering declaration on motion for summary judgment, although not based |

2

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | | on personal knowledge, because declarant was a Rule 30(b)(6) designee); *Sara Lee Corp. v. Kraft Foods Inc.*, 276 F.R.D. 500, 503 (N.D. Ill. 2011) ("When it comes to using Rule 30(b)(6) depositions at trial, strictly imposing the personal knowledge requirement would only recreate the problems that Rule 30(b)(6) was created to solve."); *Velez v. SCL Health-Front Range, Inc.*, No. 14-cv-02179-PAB-CBS, 2015 WL 9315574, at *3 n.5 (D. Colo. Dec. 23, 2015) (deposition testimony of Rule 30(b)(6) witness was not inadmissible hearsay). <br><br> Mr. Chapman testified in his Rule 30(b)(6) deposition concerning all BOP personnel with personal knowledge who provided information to support this fact. Chapman depo., Ex. 2 hereto at 279:16-280:22. |
| 2. In the years that followed, SIS personnel continued to flag the names of both BOP inmates and staff during the publication-review process. Chapman Decl., Ex. 1 ¶ 11. | This paragraph is disputed and immaterial. <br><br> As phrased, this paragraph has no time limitation, so "the years that followed" is read to include 2002 to present.  There is a factual dispute—even *among* BOP's own witnesses—as to when the name-alone practice was eliminated. *Compare, e.g.*, Ex. 8, Dep. of Debra Payne, Feb. 7, 2018 ("Payne Dep.") at 74:6–76:4 (SIS | PLN fails to show the existence of a genuine dispute about this fact. <br><br> **First**, the evidence does not refute the fact that names were flagged as a basis for rejecting publications at the ADX in the years following the discovery that ADX inmates were using publications to pass clandestine messages. |

3

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | manager testifying that the name-alone practice was used until her retirement from ADX in December 2017), *with* ECF No. 106-6, Kelley Decl. ¶ 7 (stating that the name-only policy was eliminated beginning with the February 2016 ADX Institution Supplement regarding incoming publications).<br><br>This paragraph is further disputed to the extent it indicates that SIS had a role in the review of incoming publications on a systematic basis from 2002 to present.  From January 1, 2010 to February 1, 2016, ADX's institution supplements did not provide for SIS to play a role in review of incoming publications. Ex. 9, ADX Institution Supplement 5266.10C, *Incoming Publications*, Aug. 1, 2007; Ex. 10, ADX Institution Supplement 5266.10D, *Incoming Publications*, Mar. 1, 2011; Ex. 11, ADX Institution Supplement 5266.11A, *Incoming Publications*, Jan. 24, 2013; Ex. 12, ADX Institution Supplement 5266.11B, *Incoming Publications*, Dec. 8, 2014; *see also* Ex. 7, Chapman Dep. II at 59:19-60:3, 63:6-10; 63:19–64:7.<br><br>This paragraph is also immaterial.  The bases on which SIS personnel "flagged" publications for possible rejection is not relevant to this litigation.  PLN challenges the bases on which | **Second**, PLN's evidence does not support the claimed dispute, i.e., that there is a "dispute" among BOP witnesses about when the name-alone practice was eliminated. The testimony of Debra Payne shows that she had no idea whatsoever when the name-alone practice was eliminated. Payne depo., Doc. 109-5 at 73:23-74:2 ("I'm not sure of the time frame. I can't give you a time frame."); *id.* at 75:14-21 ("Legal could have said something in the quarterly meetings. I didn't attend all of them. But he could have. I am not aware of when exactly a change or who actually instructed my office of this. I'm not— I'm not sure.").<br><br>**Third**, the fact that versions of the ADX institution supplement concerning the review of incoming publications did not mandate a review by SIS personnel does refute the fact asserted, which is that investigatory personnel were flagging names as a basis for rejection of publications. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | issues of *Prison Legal News* were rejected by Wardens or their designees.  ECF No. 1, Compl. ¶¶ 17, 22–23. | |
| 3. Between January 2010 and April 2014, during the period when this practice was followed, eleven issues of *Prison Legal News* were rejected at the ADX. Complaint, Doc. 1 ¶ 22; *see also* Deposition of Paul Wright (excerpt), Ex. 2 at 114:18-115:1. | This paragraph is disputed in part.<br><br>PLN disputes that the name-alone practice was "followed" at the ADX by the officials responsible for rejections of incoming publications during this period.  Multiple former Wardens and Associate Wardens responsible for the rejection of the eleven issues of *Prison Legal News* between January 2010 and April 2014 (the "Rejected Issues") did not use the name-alone practice.  *See* Ex. 13, Dep. of Blake Davis, Jan. 10, 2018 ("Davis Dep.") at 73:6–11; Ex. 14, Dep. of David Berkebile, Jan. 19, 2018 ("Berkebile Dep.") at 52:9–13; Ex. 15, Dep. of Shon Kuta, Mar. 14, 2018 ("Kuta Dep.") at 82:1–10; Ex. 16, Dep. of Dennis Stamper, Mar. 14, 2018 ("Stamper Dep.") at 74:1–26, 75:1–3; Ex. 7, Chapman Dep. II at 33:18-34:5.<br><br>It is undisputed that eleven issues of *Prison Legal News* were rejected at the ADX between January 2010 and April 2014. | PLN fails to show the existence of a genuine dispute about this fact, which is that names were flagged as a basis for possible rejection of publications at the ADX between January 2010 and April 2014. That fact is not contradicted by the testimony of Wardens and Associate Wardens who may have had additional reasons for rejecting the publications. |
| 4. Each of the eleven rejected issues of *Prison Legal News* mentioned a BOP inmate or staff member by name. *See* Doc. 31-8 (rejection notices for each rejected issue). | This paragraph is disputed in part.<br><br>It is undisputed that all of the Rejected Issues mentioned a BOP inmate or staff member by | PLN fails to show the existence of a genuine dispute. PLN's evidence does not support the claimed dispute. The only specific reference PLN provides shows |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | name somewhere in the issue. PLN disputes that all of the pages cited in the rejection notices for the Rejected Issues mentioned a BOP inmate or staff member by name. For example, the article at page 38 of the November 2011 issue refers only to a "John Doe" inmate and an "Officer Wooten." ECF No. 104-10, November 2011 *PLN* Issue, PLN_0001341, at 1378; ECF No. 104-9, November 2011 Notification to Inmate and Publisher/Sender of Rejected Publication, BOP000215. | that a BOP staff member was identified by his last name—"Wooten"—in the referenced article. |
| 5. ADX officials reviewed the issues this litigation brought to light and determined that changes were appropriate. Chapman Decl., Ex. 1 ¶ 7. | This paragraph is disputed. For purposes of this response, PLN assumes that "issues" in this paragraph refers to the legal issues rather than issues of *Prison Legal News*.<br><br>The BOP has asserted attorney-client privilege, work product protection, and deliberative process privilege over communications concerning the changes to the ADX Institution Supplement concerning Incoming Publications. *See, e.g.*, Ex. 17, Bureau of Prisons 6th Suppl. Privilege Log (Mar. 28, 2018) at 1–7 (emails discussing proposed changes to February 2016 Institution Supplement); *id.* at 15–17 (emails discussing proposed changes to December 2017 Institution Supplement). In addition, BOP witnesses have refused to discuss the basis for ADX incoming publication policy changes on | PLN fails to show the existence of a genuine dispute about the fact that this litigation prompted changes to the process for reviewing incoming publications at the ADX.<br><br>**First**, PLN's evidence does not support the claimed dispute. As to the referenced deposition testimony of Jack Fox, counsel did not ask Mr. Fox whether this litigation prompted the ADX to implement changes to its procedures for reviewing incoming publications. Rather, counsel asked Warden Fox (1) how he was made aware of the name-alone practice, which Mr. Fox answered, *see* Doc. 112-3 at 57:1-58:4; (2) why the February 2016 institution supplement did |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | the basis of the attorney-client privilege.  Ex. 18, Dep. of Jack Fox, Feb. 8, 2018 ("Fox Dep.") at 57:1–58:4, 84:16–85:10, 89:25–14.  PLN thus disputes that ADX officials "determined that changes were appropriate," because BOP's privilege claims deprived PLN of a full and fair opportunity to test the basis for this assertion. | not contain specific language abolishing the name-alone practice, which Mr. Fox answered, *id.* at 84:24-85:17; and (3) "what led to the elimination of the practice that ADX had of rejecting a publication solely because it contained the name of a Bureau staff member or a Bureau inmate," which Mr. Fox answered that he did not know: "I don't know how long that supplement had been in the works. I don't recall any of that." *Id.* at 89:25-90:14.<br><br>**Second**, the evidence shows that "BOP witnesses have" not "refused to discuss the basis for ADX incoming publication policy changes on the basis of the attorney-client privilege."<br><br>The BOP prepared a Rule 30(b)(6) witness to testify to "the reasons or rationale for . . . changes" to each of the ADX institution supplements for incoming publications in effect from January 2016 to the present, which included the December 2017 Policy. *See* Ex. 3 hereto, March 4, 2018, Objections to Plaintiff's Supplemental Notice of Rule 30(b)(6) deposition, Topic 5 at p. 2. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | | Mr. Chapman, the Rule 30(b)(6) designee, testified that ADX practices were changed because of this litigation: "[T]his litigation has brought to light our practices and what we do and how we do that. So as we've done more research to find out what we've done in the past, what we're doing, what we're not doing, we wanted to get another layer of security and review. . . . So by bringing this to light, they brought more people to the review table. And so along with counsel, along with other staff from different departments, we came up with this would be a good thing to do." Ex. 2 at 107:16-108:11.<br><br>Mr. Chapman testified that this litigation prompted the introduction of the quarterly training requirement and the legal services department review of incoming publications. *Id.* at 108:12-15. He testified that "this litigation led BOP to have some concerns about the practices it had been using prior to the litigation": "[I]t led us to do a closer review of our practices. Because as it turns out, the other departments may not have been aware of what SIS was doing or what they were instructed to do or |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | | what they were trained on. So this litigation, and with being able to talk to different people in different departments and ask, hey, is this happening, are you doing it, we were able to see more than we would have otherwise if we did not know about it." *Id.* at 108:16-109:3.<br><br>Mr. Chapman testified that this litigation prompted the inclusion of the following language in the ADX training materials for reviewing incoming publications: "Please Note. An incoming publication at the ADX may not be rejected solely because it discusses an ADX or Bureau inmate, or Bureau staff member." *See id.* at 274:10-275:5. Mr. Chapman went on to testify, in response to specific questions from PLN's counsel, about when and by whom the same language was added to the December 2017 Policy. Counsel did not ask Mr. Chapman specifically why the language was added to the policy, but this testimony immediately followed his testimony about this litigation being the impetus for the development of this language. *Id.* at 275:6-276:7. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL
FACTS**

| | | |
|---|---|---|
| | | **Third**, the final December 2017 Policy and the bases for adopting it are not privileged matters, but unprivileged facts reflecting the BOP's ultimate decisions. This is not a "sword and shield" tactic. The BOP has not selectively used privileged information to prove a point, but then invoked a privilege to prevent PLN from challenging the assertion. *See Frontier Refining, Inc. v. Gorman-Rupp Co., Inc.*, 136 F.3d 695, 704 (10th Cir. 1998). However, the fact that the ADX policy was changed because of this litigation does *not* entitle PLN to probe all of the predecisional, privileged communications that preceded the policy changes—none of which the BOP relies on here. The internal, pre-decisional communications of the government are privileged, but its final decisions and the factual bases for them are not. *See, e.g., Stewart v. Dep't of Interior*, 554 F.3d 1236, 1239 (10th Cir. 2009) (deliberative-process privilege protects "[a]dvisory opinions, recommendations and deliberations that reflect *how* government decisions are made") (emphasis added). |
| 6. The ADX eliminated the name-alone practice beginning with the February 2, | This paragraph is disputed and contains multiple assertions. | PLN fails to show the existence of a genuine dispute. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 2016, ADX Institution Supplement regarding incoming publications. Decl. of Amy Kelley, Ex. 5 ¶ 7; *see also* First Decl. of Todd Chapman, Doc. 31-1 ¶¶ 24-25. Since February 2016, no incoming publication at the ADX has been referred to the Warden for possible rejection, nor has any publication been rejected, merely because it contained the name of a BOP inmate or staff member. Kelley Decl., Ex. 5 ¶ 9; Chapman Decl., Ex. 1 ¶ 16. | *First*, as the Court has already determined, the February 2, 2016 ADX Institution Supplement did not eliminate the name-alone practice.  ECF No. 104-37, ADX Institution Supplement 5266.11C; *see also* ECF No. 81 at 9 ("The 'name alone-policy,' however, was not eliminated in the February 2016 supplement– there is no mention of it therein."). <br><br> *Second*, there is a dispute as to when the name-alone practice was eliminated.  At least one ADX staff member, whose job duties included management of personnel who directly reviewed incoming publications, testified that the name-alone practice was used until her retirement from BOP in December 2017.  Ex. 8, Payne Dep. at 74:6–76:4. <br><br> *Third*, there is a factual dispute as to whether any incoming publication was referred to a Warden for possible rejection on the basis of the name-alone practice after February 2016.  BOP's 30(b)(6) witness testified that, after February 2016, there was "confusion" among ADX staff as to whether or not the name-alone practice still existed.  Ex. 7, Chapman Dep. II at 130:13–22. | **First**, the Court's statement in its Order on the BOP's motion to dismiss is not binding. A district judge may revisit and reconsider his own interlocutory rulings. *See, e.g.*, *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1298 (10th Cir. 2011). <br><br> **Second**, PLN's evidence does not support the claimed dispute. Ms. Payne had no idea whatsoever when the name-alone practice was eliminated. *See* BOP Fact 2, above. <br><br> **Third**, Mr. Chapman's testimony that "there was some confusion amongst the different departments throughout the time about what was or was not a way of doing things," *see* Doc. 112-2 at 20-22, does not demonstrate a dispute about the fact that no publication was ever actually referred to the Warden for possible rejection based on the name of a BOP inmate or staff member. |
| 7. On December 21, 2017, the ADX formalized its commitment to the abolition | This paragraph is disputed in part. | PLN fails to show the existence of a genuine dispute. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| of the name-alone practice by adding this section to the Institution Supplement regarding incoming communications: "**An incoming publication at the ADX may not be rejected solely because it discusses an ADX or Federal Bureau of Prisons (BOP) inmate, or BOP staff member**. When a publication identifies and discusses an ADX or BOP inmate, or BOP staff member, SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and include an evaluation of the factors in 28 C.F.R. § 540.70(b).  Staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment." Chapman Decl., Ex. 1 ¶ 8; *see also id.* Ex. 2, FLM 5266.11E, *Incoming Publications* (Dec. 21, 2017), at § III.C. (emphasis added); Decl. of Andre Matevousian, Ex. 3 ¶¶ 9-10. | It is disputed to the extent that this paragraph suggests that the BOP eliminated the name-alone practice prior to December 2017.  There is a factual dispute among BOP witnesses as to when the name-alone practice was eliminated at ADX.  At least one ADX staff member, whose job duties included management of personnel who directly reviewed incoming publications, testified that the name-alone practice was used at ADX until her retirement from BOP in December 2017.  Ex. 8, Payne Dep. at 74:6–76:4; *see also* Ex. 7, Chapman Dep. II at 130:13–22. | PLN's evidence does not support the claimed dispute. Ms. Payne had no idea whatsoever when the name-alone practice was eliminated. *See* BOP Fact 2 (Reply), above. Mr. Chapman's testimony that "there was some confusion amongst the different departments throughout the time about what was or was not a way of doing things" does not show the existence of a dispute about when the name-alone practice was eliminated. |
| 8. Section III.C. of the December 2017 Policy prohibits rejections of incoming publications based on the mere mention of the names of BOP inmates or staff. Matevousian Decl., Ex. 3 ¶ 16. | This paragraph is undisputed. | |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 9. Any issue of *Prison Legal News* that is sent to the ADX is evaluated under these procedures. Matevousian Decl., Ex. 3 ¶ 9. | This paragraph is disputed. For purposes of this response, "these procedures" is assumed to refer to Section III.C of the December 21, 2017 ADX Institution Supplement on incoming publications.<br><br>It is disputed to the extent that this paragraph is intended to mean that all future issues of *Prison Legal News* will be evaluated pursuant to these procedures. A future ADX warden may exercise his or her authority to change ADX Institution Supplement concerning incoming publications, including revisions of Section III.C. Ex. 19, Dep. of Mark Collins, Apr. 19, 2018 ("Collins Dep.") at 139:9–22; Ex. 20, Dep. of Todd Chapman, Jan. 17, 2017 ("Chapman Dep. I") at 20:23–22:25. | PLN fails to show the existence of a genuine dispute.<br><br>Warden Matevousian's statements are proper evidence. *Brown v. Buhman*, 822 F.3d 1151, 1171-72 (10th Cir. 2016) (finding "no basis to question" statements "contained in a declaration [by a government official] that was signed under penalty of perjury and submitted to the federal district court," where "violation of the declaration would expose [the declarant] to prosecution for perjury and contempt").<br><br>Warden Matevousian's statements establish that the ADX will continue to adhere to the policy. *Id.* at 1171 (holding that, after an official has publicly adopted a policy under penalty of perjury, the risk that the policy will be revoked or ignored "is minimal at best, and certainly not enough to sustain a live case or controversy"); *see also id.* (fact that regulation can be changed by a future official is "unremarkable and unpersuasive" and "does not breathe life into an otherwise moot case"). |
| 10. The ADX Warden has made an affirmative commitment, under oath, that the | This paragraph is disputed in part. | PLN fails to show the existence of a genuine dispute as to the Warden's sworn |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| ADX will continue to abide by Section III.C. of the December 2017 Policy because it "is in accordance with the law and sound correctional judgment." Matevousian Decl., Ex. 3 ¶ 16. | It is undisputed that Warden Matevousian has made such a declaration.  It is disputed to the extent that this paragraph is intended to mean that all future issues of *Prison Legal News* will be evaluated pursuant to these procedures.  A future ADX warden may exercise his or her authority to change ADX Institution Supplement concerning incoming publications, including revisions of Section III.C.  Ex. 19, Collins Dep. at 139:9–22; Ex. 20, Chapman Dep. I at 20:23–22:25. | statement for the same reasons set forth in BOP Fact 9 (Reply), above. |
| 11. ADX Warden Jack Fox reviewed the eleven previously rejected issues of *Prison Legal News* in March 2017. Matevousian Decl., Ex. 3 ¶ 19. The issues were delivered to inmate subscribers at that time. *Id.* | This paragraph is disputed and contains multiple assertions.<br><br>The first sentence is disputed because ADX Warden Jack Fox admitted that he did not review the content of each of the eleven previously rejected issues of *Prison Legal News*.  Ex. 18, Fox Dep. at 116:15–117:9.<br><br>The second sentence is undisputed.  However, the October 2011 and November 2011 issues of *PLN* were also delivered to a single inmate subscriber in August 2012 following successful appeal of the rejection of these issues.  ECF No. 104-12, Regional Administrative Remedy Appeal and BP-229 Response, BOP001077, at 1079; ECF No. 104-2 at ¶¶ 25–27. | PLN fails to show the existence of a genuine dispute as to the Warden's sworn statement that Warden Fox reviewed the previously rejected issues.<br><br>Warden Fox testified that he "did not personally review the content of all 11 of the issues that were determined to be able for release." Doc. 112-3 at 117:1-4. Warden Fox also testified that he did conduct a review in "consultation with the [ADX] legal department." *Id.* at 115:23-116:3. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 12. The eleven previously rejected issues of *Prison Legal News* would not be rejected under the December 2017 Policy. Matevousian Decl., Ex. 3 ¶ 19; Chapman Decl., Ex. 1 ¶ 16. | This paragraph is disputed.<br><br>BOP has failed to support this contention beyond conclusory assertions from the current Warden and Mr. Chapman.  The declarations have not explained why the issues would not be rejected, nor pointed to any change in the policy that would ensure non-rejection of these issues if analyzed under the December 2017 Institution Supplement. *See* ECF No. 106-4, Matevousian Decl. ¶ 19; ECF No. 106-2, Chapman Decl. ¶ 16. That is insufficient to meet BOP's summary judgment burden.<br><br>Further, other evidence demonstrates that the Rejected Issues could still have been rejected had the December 2017 Institution Supplement been in place at the time they were delivered.<br><br>ADX censored the Rejected Issues because they information about prisoners or staff members in those issues was deemed to be "detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity."  28 C.F.R. § 540.71(b).  The December 2017 Institution Supplement permits the censorship of incoming publications for the same reason. *See* ECF No. 106-2, Att. 2. | PLN fails to show the existence of a genuine dispute for the same reasons set forth in BOP Fact 9 (Reply), above.<br><br>In addition, the Warden's sworn statements are bolstered by unrefuted concrete actions by the BOP: (1) the rejected issues have been delivered to the inmates (BOP Fact 11); (2) no issue of *Prison Legal News* has been rejected since April 2014 (BOP Fact 3); and (3) the BOP does *not* contend that the previously rejected issues should be rejected. *See* Reply to PLN Fact 10, below.<br><br>PLN's other evidence does not support the claimed dispute that the rejected issues "could still have been rejected had the December 2017 Institution Supplement been in place at the time they were delivered."<br><br>**First**, the Warden did not testify that the rejected issues "could still have been rejected" under the December 2017 Policy. He testified that the determination of whether "exposing information about individuals creates risks that require rejection of the incoming publications" |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

|  | The current ADX Warden's sworn Declaration states that a publication that "affirmatively identifies an inmate and provides details about his crimes and/or history" "creates an immediate safety risk to the identified inmate," and that "taking the proactive step of rejecting an incoming publication that presents dangers like these is the correct and safe way to manage a prison."  ECF No. 106-4, Matevousian Decl. ¶ 13.  A number of the Rejected Issues identified an inmate and provided details about his crime and/or history.  *See*, *e.g.*, Ex. 21, January 2010 *PLN* Issue (Excerpt), BOP000053, at 54; Ex. 22, June 2012 *PLN* Issue (Excerpt), BOP000250, at 251; Ex. 23, April 2014 *PLN* Issue (Excerpt), BOP000447, at 448.  Thus, these issues could still have been rejected under the December 2017 Institution Supplement.<br><br>Moreover, Mr. Chapman testified in 2017 after the alleged elimination of the name-alone practice, that at least some of the issues were still a security risk and would be rejected.  Ex. 20, Chapman Dep. I at 48:19–51:5 (discussing January 2010 issue), 53:16–56:3 (discussing June 2010 issue), 56:22–61:3 (discussing October 2011 issue), 78:5–80:2 (discussing November 2012 issue), 82:7–85:2 (discussing July 2013 issue), 88:5–90:10 (discussing April 2014 issue). | must be made "at the time I review the publication, in the particular context at the time," based on an analysis of many factors. Doc. 106-4 ¶ 15.<br><br>**Second**, the referenced deposition testimony of Mr. Chapman was presented in January 2017, eleven months before the adoption of the December 2017 Policy. The BOP does not contend that the content of these issues should be rejected. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 13. In the December 2017 Policy, ADX officials also made changes to the notification procedures following the rejection of an incoming publication: "When an incoming publication is rejected, the Warden will promptly advise the inmate and publisher in writing of the decision and the reason(s) for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable, **including page references and quotes from the incoming publication**. The Warden will advise the publisher or sender that the publisher may obtain independent review of the rejection by writing to the Regional Director within 20 days of receipt of the rejection letter. **Ordinarily, the rejection notice will be mailed to the publisher within ten business days from the Warden's signature date**." Chapman Decl., Ex. 1 ¶ 17 (discussing § III.G. of the December 2017 Policy) (emphasis added); Matevousian Decl., Ex. 3 ¶ 17. | This paragraph is undisputed. | |
| 14. This provision was also implemented as a result of this litigation. Chapman Decl., Ex. 1 ¶ 18. ADX officials determined that this provision should be added to ensure that rejection notices adequately explain the grounds for rejection and to enable | This paragraph is disputed.<br><br>The BOP has asserted attorney-client privilege, work product protection, and deliberative process privilege over communications concerning the changes to the ADX Institution | PLN fails to show the existence of a genuine dispute about the fact that this litigation prompted changes to the process for reviewing incoming publications at the ADX for the same |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL
FACTS**

| | | |
|---|---|---|
| publishers to appeal rejections in a timely manner. *Id.* | Supplement concerning Incoming Publications. *See, e.g.*, Ex. 17, Bureau of Prisons' 6th Suppl. Privilege Log (Mar. 28, 2018) at 1–7 (emails discussing proposed changes to February 2016 Institution Supplement); *id.* at 15–17 (emails discussing proposed changes to December 2017 Institution Supplement). In addition, BOP witnesses have refused to discuss the basis for ADX incoming publication policy changes on the basis of the attorney-client privilege. Ex. 18, Fox Dep. at 57:1–58:4, 84:16–85:10; 89:25–14. PLN thus disputes that ADX officials "determined that changes were appropriate," because BOP's privilege claims deprived PLN of a full and fair opportunity to test the basis for this assertion. | reasons set forth in BOP Fact 5 (Reply), above. |
| 15. The procedures in § III.G. of the December 2017 Policy would be applied if any issue of *Prison Legal News* is ever rejected at ADX in the future. Matevousian Decl., Ex. 3 ¶ 18. | This paragraph is disputed.<br><br>As an initial matter, this is not a proper statement of fact, but instead is an assertion about contingent future events. Warden Matevousian does not have personal knowledge of what procedures will be applied to future rejections, nor can he ensure that the current policy will remain in place indefinitely.<br><br>This paragraph is also disputed because a future ADX warden may exercise his or her authority to change ADX Institution Supplement | PLN fails to show the existence of a genuine dispute as to the Warden's sworn statement for the same reasons set forth in BOP Fact 9 (Reply), above. The government official's declaration in *Brown* also dealt with "contingent future events." *See* 822 F.3d at 1175 (finding the possibility that a future county attorney might change the policy did not defeat mootness, and that "[t]he district court erred by relying on Mr. Buhman's inability to bind future county attorneys"). |

18

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | concerning incoming publications, including revisions of Section III.C. Ex. 19, Collins Dep. at 139:9–22; Ex. 20, Chapman Dep. I at 20:23–22:25. | |
| 16. The language concerning specific page references and quotes is not required by national policy, nor is the statement that a rejection notice should be mailed to the publisher within ten business days of the Warden's signature on the notice. Chapman Decl., Ex. 1 ¶ 18; *see also* 28 C.F.R. § 540.71(d). | Undisputed that 28 C.F.R. § 540.71(d) does not expressly require that rejection notices reference specific pages and quotes serving as the basis for a rejection, nor that rejection notices be mailed within ten business days of the Warden's signature on the notice. To the extent that this paragraph purports to assert what is required as adequate notice under 28 C.F.R. § 540.71(d) and the Fifth Amendment, the paragraph is an improper legal argument and therefore should be stricken. PLN disputes that these provisions are not required by the Fifth Amendment. | PLN does not dispute this fact. |
| 17. The ADX Warden has made an affirmative commitment, under oath, that the ADX will continue to abide by Section III.G. of the December 2017 Policy because it "is in accordance with Bureau regulations and sound correctional judgment." Matevousian Decl., Ex. 3 ¶ 18. | This paragraph is disputed in part. It is undisputed that Warden Matevousian has made such a declaration. It is disputed to the extent the paragraph is intended to mean that all future incoming publications will be reviewed pursuant to the December 2017 Institution Supplement. A future ADX warden may exercise his or her authority to change the ADX Institution Supplement concerning incoming | PLN fails to show the existence of a genuine dispute as to the Warden's sworn statement for the same reasons set forth in BOP Fact 9 (Reply) and BOP Fact 15 (Reply) above. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | publications, including revisions of Section III.C. Ex. 19, Collins Dep. at 139:9–22; Ex. 20, Chapman Dep. I at 20:23–22:25. | |
|---|---|---|
| **II.  ADX inmates pose extreme dangers to other inmates, staff, and the public.** | This heading does not include any citation to evidence and therefore does not require a response.  The heading should be stricken. | PLN fails to raise a genuine dispute about the heading, which summarizes the facts that follow. The statement is properly supported by admissible evidence. *See* BOP Facts ¶¶ 18-28, below. |
| 18. ADX officials must protect the safety and security of inmates, prison staff, and the public from the dangerous, violent, and predatory inmates housed at the ADX. Matevousian Decl., Ex. 3 ¶ 3; Decl. of Mark Collins, Ex. 4 ¶¶ 13, 14, 24, 34. | All of the alleged facts under this heading, including ¶ 18, are immaterial.  BOP relies on these alleged facts only to support its argument that the December 2017 Institution Supplement is facially valid under *Turner v. Safley*, 482 U.S. 78 (1987).  Because PLN is not challenging the facial validity of the December 2017 Institution Supplement, the assertions in this section are immaterial to the resolution of this Motion and therefore do not require a response.<br><br>To the extent the assertions in this section are intended to suggest that ADX should have more latitude to censor *Prison Legal News* than other BOP institutions—which generally have not censored *Prison Legal News*—PLN disagrees. At trial, PLN will show that, notwithstanding the dangerous aspects of ADX, the censorship of the eleven Rejected Issues was not rationally related to the ADX's goals of safety and security, in part due to the significant security measures in place | PLN has not disputed this fact.<br><br>The BOP does not dispute that "PLN is not challenging the facial validity of the December 2017 Institution Supplement."<br><br>PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

|  |  |  |
|---|---|---|
|  | at ADX, which makes it *less* violent than other BOP institutions that have not censored *Prison Legal News*.  Ex. 19, Collins Dep. at 92:22–93:25 (stating that U.S. penitentiaries have more violence than the ADX).<br><br>While no response is required, PLN disputes any suggestion that this is a greater concern at the ADX or that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above. |  |
| 19. The ADX houses the most violent, predatory, disruptive, and escape-prone inmates in the BOP, including many state prisoners who are too violent and dangerous to be housed in a state facility. Collins Decl., Ex. 4 ¶¶ 3-4; Matevousian Decl., Ex. 3 ¶ 3. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 18). | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 20. Many current ADX inmates have murdered other inmates, prison staff, and other law enforcement personnel. Collins Decl., Ex. 4 ¶ 5. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above.  Other BOP institutions have inmates who have murdered or attempted to murder other inmates or staff.  Ex. 19, Collins Dep. at 96:6–17. | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 21. Approximately 140 current ADX inmates are leaders, members, or associates of BOP-designated Security Threat Groups ("STGs"). Collins Decl., Ex. 4 ¶ 5. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 18). Other BOP institutions have members of designated Security Threat Groups. Ex. 14, Collins Dep. at 97:24-98:1. | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 22. The ADX houses a large number of international and domestic terrorists. Collins Decl., Ex. 4 ¶ 5. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above  (*see* response to ¶ 18). Other BOP institutions house international and domestic terrorists. Ex. 19, Collins Dep. at 98:2-6. | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 23. Notwithstanding this dangerous inmate population, the ADX is a programming prison in which inmates can progress to less-restrictive settings by means of the ADX Step-Down Program. Collins Decl., Ex. 4 ¶¶ 6-8. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes that all inmates are eligible for the ADX Step-Down Program.  *See* Ex. 25, Expert Report of M. | PLN has not disputed this fact.<br><br>In addition, the evidence PLN presents does not support its assertion that inmates in the High Security Adult Alternative Housing Program cannot be moved into |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

|  |  |  |
|---|---|---|
|  | Collins at 4 (discussing High Security Adult Alternative Housing Program); Ex. 19, Collins Dep. at 84:18-86:5, 86:22-87:16. | the ADX Step-Down Program or otherwise program out of the ADX. |
| 24. ADX staff are in close physical proximity to inmates every day. Collins Decl., Ex. 4 ¶ 9. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that ADX staff have more "close physical proximity to inmates" than do BOP staff at other BOP institutions that do not censor PLN.  Ex. 19, Collins Dep. at 92:22–93:10 (stating that U.S. penitentiaries with "open-populations" have more violence than the ADX). | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 25. ADX correctional staff are subject to physical assaults by inmates, including serious assaults in which staff have been beaten and nearly killed.  Ex. 4 ¶¶ 9-10. As recently as May 3, 2018, an inmate in the last phase of the ADX Step-Down Program was seriously injured by another inmate wielding a shank and had to be airlifted to the hospital. Matevousian Decl., Ex. 3 ¶ 14. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 18).  Inmates and staff are assaulted at other BOP institutions. Ex. 19, Collins Dep. at 96:12–17. Moreover, BOP has failed to provide requested discovery concerning instances of violence by inmates against other inmates and staff at ADX, so PLN has no basis to affirm this alleged fact. Ex. 7, Chapman Dep. II at 144:3–146:2 (stating that witness was not prepared to provide | PLN has not disputed this fact.<br><br>Moreover, PLN's evidence does not support its statement that "the BOP has failed to provide discovery concerning instances of violence by inmates against other inmates and staff at ADX." As the deposition exchange shows, the BOP agreed to provide an answer to the specific question asked, and is still attempting to retrieve the specific data requested, which is not maintained in a readily accessible form. As Mr. Chapman testified, "[i]t would take some work" to generate the data in the form PLN |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

|  |  |  |
|---|---|---|
|  | testimony on instances of violence committed by prisoners at ADX). | requested. Chapman depo., Ex. 112-2 at 145:4-9.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 26. ADX inmates have been seriously assaulted by other inmates. Collins Decl., Ex. 4 ¶ 11. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 18).  ADX inmates have been assaulted by other inmates at other BOP institutions.  Ex. 19, Collins Dep. at 96:12–14.<br><br>Moreover, BOP has failed to provide requested discovery concerning instances of violence against inmates and staff at ADX, depriving PLN of a full and fair opportunity to test the basis for this assertion.  Ex. 7, Chapman Dep. II at 144:3–146:2 (stating that witness was not prepare to provide testimony on instances of violence committed by prisoners at ADX). | PLN has not disputed this fact. *See also* BOP Fact 25 (Reply), above (discussing complexity of generating data in form PLN requested).<br><br>PLN's remaining assertions are not responsive to the fact. |
| 27. In this dangerous environment, ADX officials must not only address and attempt to eliminate actual threats, but attempt to identify potential threats. Collins Decl., Ex. 4 ¶ 13. | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX differs from other BOP institutions in this regard. | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 28. ADX officials must make predictive judgments about inmate behavior, anticipate how those future events may compromise the safety and security of staff, inmates, and the public, and plan for the worst-case scenario. Collins Decl., Ex. 4 ¶ 13. Any mistake can result in serious harm or death. *Id.* | This paragraph is immaterial for the reasons noted in response to ¶ 18.<br><br>While no response is required, PLN disputes any suggestion that the ADX differs from other BOP institutions in this regard. There is also a factual dispute as to whether any "mistake" in allowing an incoming publication to enter the ADX can result in serious harm or death. BOP has no empirical evidence to support this assertion, Ex. 19, Collins Dep. at 57:23–58:11. And BOP is not aware of any instances of violence resulting from the introduction of information to the ADX through an incoming publication. Ex. 7, Chapman Dep. II at 277:18-278:4. | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |
| **III. ADX officials need discretion to decide that identifying BOP inmates and staff in an incoming publication can jeopardize security.** | This heading does not include any citation to evidence and therefore does not require a response. The heading should be stricken. | PLN fails to raise a genuine dispute about the heading, which summarizes the facts that follow. The statement is properly supported by admissible evidence. *See* BOP Facts ¶¶ 29-39, below. |
| 29. Information can be used as a weapon by the dangerous ADX inmate population. Collins Decl., Ex. 4 ¶¶ 14-16. | All of the alleged facts under Heading III, including ¶ 29, are immaterial. BOP relies on these alleged facts only to support its argument that the December 2017 Institution Supplement is facially valid under *Turner v. Safley*, 482 U.S. 78 (1987). Because PLN is not challenging the | PLN has not disputed this fact.<br><br>The BOP does not dispute that "PLN is not challenging the facial validity of the December 2017 Institution Supplement." |

25

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | facial validity of the December 2017 Institution Supplement, the assertions in this section are immaterial to the resolution of this Motion and therefore do not require a response.<br><br>To the extent the assertions in this section are intended to suggest that ADX should have more latitude to censor *Prison Legal News* than other BOP institutions—which generally have not censored *Prison Legal News*—PLN disagrees. At trial, PLN will show that, notwithstanding the dangerous aspects of ADX, the censorship of the eleven Rejected Issues was not rationally related to the ADX's goals of safety and security, in part due to the significant security measures in place at ADX, which makes it *less* violent than other BOP institutions that have not censored *Prison Legal News*. Ex. 19, Collins Dep. at 92:22–93:25 (stating that U.S. penitentiaries have more violence than the ADX).<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 29). PLN also disputes that ADX inmates are any more likely to "use information as a weapon" than inmates at other BOP institutions that do not censor PLN. Ex. 19, Collins Dep. at 106:7–18. | PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 30. Despite the physical controls at the ADX, ADX inmates defeat security controls to communicate with other inmates throughout the prison. Collins Decl., Ex. 4 ¶ 17. | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 29). Prisoners at BOP facilities other than ADX are able to communicate with one another. Ex. 19, Collins Dep. at 106:7–18. | PLN has not disputed this fact.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 31. Even though the communications of ADX inmates are monitored and analyzed, that does not eliminate all risks. Collins Decl., Ex. 4 ¶ 24. A communication sent to an ADX inmate may result in violence years after the fact. *Id.* | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>While no response is required, this paragraph is disputed because it is unsupported by the evidence cited. Mr. Collins's declaration contains no support for this statement other than conclusory assertions. Moreover, BOP does not attribute any instances of violence at ADX that it attributes to information introduced through an incoming publication. Ex. 7, Chapman Dep. II at 277:18-278:4. | PLN has not disputed this fact.<br><br>PLN's remaining assertions do not show the existence of a genuine dispute. Prison officials can exercise their professional judgment to make predictions about future behavior and to take preventive actions without waiting for detailed evidentiary specifics confirming that harm is certain to ensue. *See Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 334 (2012) (applying the test under *Turner v. Safley*, 482 U.S. 78, 89 (1987), in rejecting argument that detainees should be exempt from invasive searches absent a "particular reason to suspect them" and holding that officials can reasonably find such an |

| | | |
|---|---|---|
| | | evidentiary standard "unworkable"); *see also*, *e.g.*, *Jones v. N. Carolina Prisoners' Labor Union*, 433 U.S. 119, 132-33 & 136 (1977) (holding that "[r]esponsible prison officials must be permitted to take reasonable steps to forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot," and that for the district court to require a "demonstrable showing that the Union was in fact harmful" would be "inconsistent with the deference federal courts should pay to the informed discretion of prison officials"). |
| 32. The ADX Warden must have the ability to control information that comes into the prison in order to protect institutional and public safety and to maintain the safe, secure, and orderly operations of other BOP facilities. Collins Decl., Ex. 4 ¶ 14. | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>This paragraph is also immaterial because PLN does not seek to preclude an ADX Warden from rejecting incoming publications where the Warden has a legitimate penological interest supported by specific facts.  ECF No. 1, Compl. at 16. | PLN has not disputed this fact. |
| 33. In the judgment of the ADX Warden, it would be contrary to sound correctional judgment to impose a rule mandating that incoming publications can never be rejected when they contain the names of BOP | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>This paragraph is also immaterial because PLN has never requested that ADX impose a rule | PLN has not disputed this fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| inmates or staff members. Matevousian Decl., Ex. 3 ¶ 8. | mandating that incoming publications that contain the names of BOP inmates and/or staff members can never be rejected. | |
| 34. In the correctional judgment of the ADX Warden, there are circumstances where identifying an inmate or staff member in a publication, along with other information about the inmate or staff member, could place those persons and persons associated with them in jeopardy. Matevousian Decl., Ex. 3 ¶ 8. | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>This paragraph is also immaterial because PLN has never requested that ADX impose a rule mandating that incoming publications that contain the names of BOP inmates and/or staff members can never be rejected.<br><br>While no response is required, PLN disputes that the identification of certain prisoners and staff members in the Rejected Issues put them in jeopardy.  At trial, PLN will show that, in the context of those publications, the identification of prisoners and staff members did not constitute a security risk.  For example, it was the correctional judgment of Warden Matevousian's predecessor, Jack Fox, that an article identifying an inmate as cooperating with a BOP investigation was not a security risk because cooperation with BOP "happens all the time" and it is "common knowledge that an inmate might cooperate with a BOP investigation."  Ex. 18, Fox Dep. at 137:18–138:13; *see also id.* at 128 (stating that June 2010 *PLN* issue, which identified an inmate's refusal to participate in a | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected.<br><br>PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | gang prison riot, was not a security risk), 145 (stating that the February 2013 *PLN* issue, which identified ADX inmate as a terrorist, was not a security risk), 142 (stating that the April 2014 issue of *PLN*, which identified an inmate as having murdered a member of a prison gang, was not a security risk).<br><br>Moreover, ADX has conceded that three of the Rejected Issues (all of which identify BOP inmates or personnel) were not security risks. *See* ECF No. 104-1, Pl.'s Statement of Undisputed Material Facts in Support of Mot. for Partial Summ. J. ¶¶ 23, 54. | |
| 35. In the correctional judgment of the ADX Warden, persons who could be put at risk by their being identified in an incoming publication include sex offenders, specifically those inmates who have committed sex crimes against children, inmate informants, and inmates who have testified for the government. Matevousian Decl., Ex. 3 ¶ 11; *see also* Collins Decl., Ex. 4 ¶ 16. Inmates who are identified in an incoming publication as former law enforcement officers are also put at risk. Collins Decl., Ex. 4 ¶ 16. | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>This paragraph is also immaterial because PLN has never requested that ADX impose a rule mandating that incoming publications that contain the names of BOP inmates and/or staff members can never be rejected.<br><br>While no response is required, PLN disputes that the identification of certain prisoners in the Rejected Issues put them at risk.  At trial, PLN will show that, in the context of those publications, the identification of prisoners did | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected.<br><br>PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | not constitute a security risk.  *See* PLN Response to ¶ 34. | |
| 36. In the correctional judgment of the ADX Warden, if an incoming publication highlights information of the type listed in Facts 34-35, above, the Warden must be able to evaluate that information and exercise his discretion to reject it. Matevousian Decl., Ex. 3 ¶ 11. | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>While no response is required, PLN disputes this paragraph to the extent it means that a Warden *must* reject publications that highlight the information of the types listed in Facts 34-35. Again, as PLN will show at trial, the particular information disclosed in the Rejected Issues did not justify censoring those publications.  In Warden Fox's correctional judgment, a number of the Rejected Issues which contain information "of the type listed in Facts 34-35 above" were not security risks. Ex. 18, Fox Dep. at 137:18–138:13, 128, 145, 142.<br><br>Moreover, ADX has conceded that three of the Rejected Issues (all of which identify BOP inmates or personnel) were not security risks. *See* ECF No. 104-1, Pl.'s Statement of Undisputed Material Facts in Support of Mot. for Partial Summ. J. ¶¶ 23, 54. | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 37. Inmates who are exposed in this manner in an incoming publication are put at risk of physical harm, manipulation by other inmates, and being forced into protective custody. Collins Decl., Ex. 4 ¶¶ 22-23. | This paragraph is immaterial for the reasons noted in response to ¶ 29.<br><br>While no response is required, PLN disputes that the identification of certain prisoners in the | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | Rejected Issues put them at risk.  At trial, PLN will show that, in the context of those publications, the identification of prisoners did not constitute a security risk.  *See* PLN Response to ¶ 34. | PLN's remaining assertions are not responsive to the fact. |
| 38. The ADX houses powerful leaders and other high-level operatives of various dangerous gangs and STGs who continue to wield authority outside the ADX. Collins Decl., Ex. 4 ¶ 18. These "shot callers" exert influence outside the prison, including the authority to order that persons be killed. *Id.* ¶¶ 19-20. | This paragraph is immaterial for the reasons noted in response to ¶ 29.

While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above (*see* response to ¶ 29).  Other institutions house members of dangerous gangs and Security Threat Groups, and inmates in other institutions also have the ability to target persons outside of prison.  Ex. 19, Collins Dep. at 97:24-98:1, 107:1-11. | PLN has not disputed this fact.

PLN's remaining assertions are not responsive to the fact. |
| 39. An ADX Warden must anticipate how these "shot callers" may view information they read in incoming publications, and how they may use that information to their advantage and to the benefit of their associates on the street and in other BOP facilities. Collins Decl., Ex. 4 ¶ 21. | This paragraph is immaterial for the reasons noted in response to ¶ 29.

While no response is required, PLN disputes any suggestion that the ADX is more violent than other BOP institutions that do not censor PLN, as noted above.  Other institutions house members of dangerous gangs and Security Threat Groups, and inmates in other institutions also have the ability to target persons outside of | PLN has not disputed this fact.

PLN's remaining assertions are not responsive to the fact. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | prison.  Ex. 19, Collins Dep. at 97:24-98:1, 107:1-11. | |
| **IV.  A rule forbidding an ADX Warden from ever rejecting "publicly available" information poses unacceptable security risks.** | This heading does not include any citation to evidence and therefore does not require a response.  The heading should be stricken. | PLN fails to raise a genuine dispute about the heading, which summarizes the facts that follow. The statement is properly supported by admissible evidence. *See* BOP Facts ¶¶ 40-50, below. |
| 40. The review of an incoming publication by the ADX Warden depends on the circumstances at the time an incoming publication is received at the ADX. Collins Decl., Ex. 4 ¶ 29. | Most of the alleged facts under Heading IV, including ¶ 40, are immaterial.  BOP relies on these alleged facts only to support its argument that the December 2017 Institution Supplement is facially valid under *Turner v. Safley*, 482 U.S. 78 (1987).  Because PLN is not challenging the facial validity of the December 2017 Institution Supplement, most assertions in this section are immaterial to the resolution of this Motion and therefore do not require a response. | PLN has not disputed this fact.<br><br>The BOP does not dispute that "PLN is not challenging the facial validity of the December 2017 Institution Supplement." |
| 41. In the correctional judgment of the ADX Warden, requiring a Warden to provide information to the ADX inmate population because it is "publicly available," or possibly "already known" by inmates, would render the Warden helpless to take action to prevent | This paragraph is immaterial for the reasons noted in response to ¶ 40.<br><br>While no response is required, PLN disputes that the Warden is "helpless" to take action to prevent risks if incoming publications are not rejected.  The ADX Warden has a number of | PLN fails to raise a genuine dispute that, if the Warden is required to provide information that is "publicly available," he will be helpless to prevent that information from triggering a security risk in the first instance. The fact that there may be *post hoc* procedures that |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| any known or reasonably perceived risks. Matevousian Decl., Ex. 3 ¶ 12. | methods by which to reduce possible risk that arises from making public information known to the ADX inmate population, including but not limited to inmate classification, inmate separation procedures, audio and video surveillance of prisoner movement and activities, contraband controls, security intelligence, and physical restraints.  Ex. 7, Chapman Dep. II at 147:18–153:20; Ex. 8, Payne Dep. at 13:7–14:13.<br><br>Moreover, BOP has conceded that, as to a number of the Rejected Issues, BOP would have taken no further security measures if the Rejected Issues had been delivered.  Ex. 7, Chapman Dep. II at 181:18–182:7, 231:7–25. | might mitigate the consequences does not show that the Warden was not helpless to avoid those risks in the first instance.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |
| 42. In the correctional judgment of the ADX Warden, even if information is "publicly available" or in the "public domain," or if some inmates may know that information through other sources, that does not diminish the negative impact of highlighting and presenting information that identifies an inmate and provides details about his crimes directly to the dangerous inmate population at the ADX. Matevousian Decl., Ex. 3 ¶ 13. In the Warden's correctional judgment, disseminating this information creates an | This paragraph is immaterial for the reasons noted in response to ¶ 40.<br><br>While no response is required, PLN disputes any suggestion that whether publication in an incoming publication is publicly available should not be taken into consideration when determining whether rejection is proper. Multiple BOP witnesses have stated that whether the information in question is otherwise publicly available or generally known to inmates should be a factor to be considered making a rejection determination.  *See* ECF No. 104-29, Letter | PLN has not disputed this fact.<br><br>The BOP does not dispute that whether information is "publicly available" or "generally known" to inmates are factors that can be considered when evaluating a publication.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| immediate safety risk to the identified inmate. *Id.* | from ADX to P. Swanson, Re: Rejection of *Prison Legal News* at ADX Florence (Sept. 15, 2015), PLN_0008621–22 (telling PLN that "future issues of *Prison Legal News*, that may contain personal information about an ADX inmate, will be more thoroughly reviewed to ensure information contained therein is not already available publicly through the Electronic Law Library or other federal publications"); Ex. 18, Fox Dep. at 138:14–18 ("Q. [T]he fact that information is generally known in the ADX population, for you, is a reason that would weigh in favor of not rejecting content?  A. Correct."); Ex. 19, Collins Dep. at 47:5–23 (stating that whether information is publicly available is "a factor that's considered").

Further, as explained above, it is disputed that the disclosure of information about inmates in the Rejected Issues put those inmates at risk.  At trial, PLN will show that, in the context of the Rejected Issues, the disclosure of such information did not constitute a security risk. *See* Resp. to ¶ 34. | |
| 43.  There is no way for the Warden to apply a "publicly available" standard without creating risks. Collins Decl., Ex. 4 ¶ 31. There is no way to determine what inmates actually know without polling the inmate | This paragraph is immaterial for the reasons noted in response to ¶ 40.

While no response is required, PLN disputes that there is "no way" for the Warden is apply a | PLN's assertions are not responsive to the fact that there is no way for the Warden to apply a "publicly available" standard without *creating risks*. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| population, which will expose the information itself, and the inmates may not be truthful. *Id.* | standard related to a review of publicly available information. BOP has acknowledged that it is possible to fashion a standard related to whether information in an incoming publication is otherwise available to inmates. In fact, multiple BOP witnesses have stated that whether the information in question is otherwise publicly available or generally known to inmates should be a factor to be considered making a rejection determination. *See* ECF No. 104-29, Letter from ADX to P. Swanson, Re: Rejection of *Prison Legal News* at ADX Florence (Sept. 15, 2015), PLN_0008621–22 (telling PLN that "future issues of *Prison Legal News*, that may contain personal information about an ADX inmate, will be more thoroughly reviewed to ensure information contained therein is not already available publicly through the Electronic Law Library or other federal publications"); Ex. 18, Fox Dep. at 138:14–18 ("Q. [T]he fact that information is generally known in the ADX population, for you, is a reason that would weigh in favor of not rejecting content? A. Correct."); Ex. 19, Collins Dep. at 47:5–23 (stating that whether information is publicly available is "a factor that's considered").

Moreover, it is disputed that "there is no way to determine what inmates actually know without polling the inmate population." Prison officials | PLN's evidence does not show the existence of a genuine dispute about the fact that "there is no way to determine what inmates *actually know* without polling the inmate population." Assumptions by staff about what inmates may know, or SIS monitoring "to gain an understanding of information of what is known," do not establish actual knowledge by the inmate population.

The BOP does not dispute that whether information is "publicly available" or "generally known" to inmates are factors that can be considered when evaluating a publication. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | are expected to have an understanding of what information is known within the respective institutions.  For example, when a new inmate arrives at ADX, ADX officials assume that other ADX inmates will be aware of the new inmate's criminal history and take security measures accordingly.  Ex. 7, Chapman Dep. II at 173.  In addition, ADX has an entire group, Special Investigation Support ("SIS"), responsible for understanding and investigating the inmate population.  SIS personnel use a variety of methods, including the review of inmate correspondence and phone calls, specifically to gain an understanding of what information is known to prisoners at ADX.  Ex. 8, Payne Dep. at 12:19-14:13 ("[E]ach SIS tech at the ADX has their own group of inmates so that they learn the inmate and they know the inmate inside and out."). | |
| 44. Any information that a publisher prints is, by definition, "publicly available," meaning that the Warden could never reject any publication, no matter how dangerous it might be. Collins Decl., Ex. 4, ¶ 31. With this standard in place, inmates and publishers would know that incoming publications could be used as a conduit to pass information into the institution with little oversight. *Id.* | This paragraph is immaterial for the reasons noted in response to ¶ 40. | PLN has not disputed this fact. |

37

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| 45. In the correctional judgment of the ADX Warden, inmate rumors (including about sex offenders or cooperators) are often not acted upon until that information is verified. When a publication affirmatively identifies an inmate and provides details about his crimes and/or history, that verification increases the risk that he will be harmed by other inmates. Matevousian Decl., Ex. 3 ¶ 13; *see also* Collins Decl., Ex. 4 ¶ 32. | This paragraph is immaterial for the reasons noted in response to ¶ 40.<br><br>While no response is required, PLN disputes that the affirmative identification of an inmate and details about his crimes and/or history will necessarily increase risk to the identified inmate, and PLN disputes that any such identification or discussion of inmates in the Rejected Issues increased the risk to those inmates. *See* Resp. to ¶ 34. | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected.<br><br>PLN's remaining assertions are not responsive to the fact. |
| 46. In the correctional judgment of the ADX Warden, no ADX security protocol can eliminate all risks, and the Warden must be able to exercise his correctional judgment to determine that there are circumstances in which exposing information about individuals creates risks that require rejection of an incoming publication. Matevousian Decl., Ex. 3 ¶ 15. | This paragraph is immaterial for the reasons noted in response to ¶ 40.<br><br>While no response is required, PLN disputes that the particular information about prisoners and staff members in the Rejected Issues created any risk that required rejected of those publications. *See* Resp. to ¶ 34. | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |
| 47. The risk assessment is necessarily predictive in nature. The Warden cannot know with certainty that bad consequences will follow if a publication enters the institution, but he must have the ability to exercise his informed judgment to decide that there might be a dangerous result based on his assessment of the known facts and | This paragraph is immaterial for the reasons noted in response to ¶ 40.<br><br>While no response is required, PLN states that it has never requested that ADX impose a rule preventing Wardens from ever rejecting an incoming publication. Rather, PLN has challenged the determinations made by the | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| intelligence at the time. Collins Decl., Ex. 4 ¶¶ 33-34. | Wardens as to the eleven Rejected Issues. *See* Resp. to ¶ 34. | |
| 48. In the correctional judgment of the ADX Warden, there is no way for the Warden to identify every risk that may occur in the future. He must conduct the risk analysis at the time he reviews the incoming publication in the particular context at the time, taking into account the specific content of the publication; facts involving the identified inmate, staff member, or other person; the identity of the inmate population at the time, including their contacts outside the prison; and a host of other unknown and unknowable factors that may be in play at some hypothetical point in the future. Matevousian Decl., Ex. 3 ¶ 15. | This paragraph is immaterial for the reasons noted in response to ¶ 40.<br><br>While no response is required, PLN states that it has never requested that ADX impose a rule preventing Wardens from ever rejecting an incoming publication. Rather, PLN has challenged the determinations made by the Wardens as to the eleven Rejected Issues. *See* Resp. to ¶ 34. | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |
| 49. In the correctional judgment of the ADX Warden, Section III.C. of the December 2017 Policy prevents rejections of incoming publications based on the mere mention of inmates or staff, while giving the Warden the necessary discretion to deal with risks that may arise when information about these people is exposed to the ADX inmate population. Matevousian Decl., Ex. 3 ¶ 16. | This paragraph is disputed in part.<br><br>PLN does not dispute that Section III.C of the December 2017 Institution Supplement prevents rejections of incoming publications based on the mere mention of inmates or staff. Nor does PLN dispute that the December 2017 Institution Supplement would permit the Warden to censor publications based on information about inmates or staff. However, PLN disputes that, in the case | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

|  |  |  |
|---|---|---|
|  | of the Rejected Issues, such censorship was appropriate. *See* Resp. to ¶¶ 34–36. |  |
| 50. The ADX Warden must have the discretion to reject incoming publications that, in his judgment, pose a security risk to inmates, staff, and the public. Matevousian Decl., Ex. 3 ¶ 12; *see also* Collins Decl., Ex. 4 ¶¶ 33-34. | This paragraph is undisputed as a general matter. However, PLN disputes that ADX Wardens correctly used their discretion to censor the Rejected Issues. *See* Resp. to ¶¶ 34–36. | PLN has not disputed this fact.<br><br>The BOP does not contend that the content of the previously rejected issues should be rejected. |
|  | 1. BOP has no empirical data that shows that censorship stops the flow of otherwise publicly information in a prison. Ex. 19, Collins Dep. at 54:15–18. | Undisputed there is no such "empirical data," which would be impossible to gather or to verify. |
|  | 2. BOP does not attribute any instances of violence at the ADX to the introduction of information through an issue of *Prison Legal News*. Ex. 7, Chapman Dep. II at 277:18-278:4; Ex. 19, Collins Dep. at 107:22-25. | Undisputed. |
|  | 3. BOP does not attribute any instances of violence at the ADX to the introduction of information through an incoming publication. Ex. 7, Chapman Dep. II at 277:18-278:4; Ex. 19, Collins Dep. at 108:1-2. | Undisputed. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | 4. When a new inmate arrives at ADX, ADX officials assume that other ADX inmates will be aware of the new inmate's criminal history. Ex. 2, Chapman Dep. II at 173. | Disputed because the evidence referenced does not support the claimed fact. |
| | 5. An ADX Warden has the authority to revise an Institution Supplement. Ex. 19, Collins Dep. at 139:9–22; Ex. 20, Chapman Dep. I at 20:23–22:2. | Undisputed that Mr. Collins testified: "So can a Warden do it? He can. Would he do it? Very, very, very unlikely because for two reasons: One, because of the lawsuit, and he doesn't want to do anything that violates moving forward and doing the right thing. And two, you always are going to take the opinions of your experts that have to process this stuff. So the people that are involved in the review process, you have to put your trust in them that they are giving you good advice." Collins Depo., Doc. 112-4 at 139:22-140:10. |
| | 6. The name-alone practice was not the primary basis for the censorship of the Rejected Issues. Ex. 7, Chapman Dep. II at 39:15-40:6. | Undisputed that Mr. Chapman testified that the name-alone practice "was taken into account" in the review of the eleven issues, but "was not the *sole reason* they were rejecting (sic)," and that the name-alone practice "was the primary reason they were *flagged*[.]" Chapman Depo., Doc. 112-2 at 39:15-40: 1 (emphasis added). |

41

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | 7. The Wardens and Assistant Wardens who rejected the eleven issues of *PLN* did not make the rejections based on the name-alone practice.  Ex. 7, Chapman Dep. II at 33:6-34:5. | Undisputed that Mr. Chapman testified: "So none of the wardens made rejections based off a name of an ADX inmate or former staff or another bureau inmate alone. SIS flagged every one of those, sent them up, but the warden made the sound correctional judgment for them." Chapman Depo., Doc. 112-2 at 33:25-34:4. |
| | 8. Pursuant to federal regulations, a warden of a BOP institution may reject a publication only if it is deemed detrimental to the security, good order or discipline of the institution or if it might facilitate criminal activity.  ECF No. 31-1, Chapman Decl. ¶ 4 (citing 28 C.F.R. § 540.71(b)). | Undisputed. |
| | 9. The ADX Warden or designee has ultimate decision-making authority with respect to whether an incoming publication is rejected.  ECF No. 31-1 at ¶ 6; Chapman Dep. II at 37:25–38:2. | Undisputed. |
| | 10. BOP's position in this litigation is that the following issues of *PLN* were properly rejected at the time:  January 2010; June 2010; June 2012; November 2012; February 2013, April 2013, July | The BOP does not contend that the content of the magazines should be rejected. |

*Prison Legal News v. Fed. Bureau of Prisons*, 15-cv-02184-RM-STV
**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

| | | |
|---|---|---|
| | 2013, and April 2014  Ex. 7, Chapman Dep. II at 177:15–20, 185:5–7, 202:18–21, 210:14–17, 222:19–22, 230:2–25, 244:11–20, 252:19–25. | |
| | 11. Since January 2010, seven versions of the Institution Supplement on incoming publications were in effect at the ADX. Ex. 9, ADX Institution Supplement 5266.10C, *Incoming Publications*, Aug. 1, 2007; Ex. 10, ADX Institution Supplement 5266.10D, *Incoming Publications*, Mar. 1, 2011; Ex. 11, ADX Institution Supplement 5266.11A, *Incoming Publications*, Jan. 24, 2013; Ex. 12, ADX Institution Supplement 5266.11B, *Incoming Publications*, Dec. 8, 2014; ECF No. 104-36, ADX Institution Supplement 5266.11C, *Incoming Publications*, February 2, 2016; Ex. 26, ADX Institution Supplement 5266.11D, *Incoming Publications*, May 30, 2017; ECF No. 106-2, Att. 2, ADX Institution Supplement 5266.11E, *Incoming Publications*, Dec. 21, 2017. | Undisputed. |