## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.:  15-cv-02184-RM-STV

PRISON LEGAL NEWS, a project of the HUMAN RIGHTS DEFENSE CENTER,

      Plaintiff,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant.

---

## FINAL PRETRIAL ORDER

---

### 1. DATE AND APPEARANCES

The final pretrial conference was held on July 9, 2018.  The following counsel appeared

in person for Plaintiff Prison Legal News ("PLN"):

Matthew Shapanka
Covington & Burling LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000

Steven D. Zansberg
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, CO 80202
Telephone: (303) 376-2409

      The following counsel for PLN appeared telephonically:

Peter A. Swanson
Terra W. Fulham
Alyson R. Sandler
Covington & Burling LLP

One CityCenter
850 Tenth Street NW
Washington, DC 20001
Telephone: (202) 662-6000

The following counsel appeared in person for Defendant Federal Bureau of Prisons

("BOP"):

Susan Prose
Assistant U.S. Attorney
United States Attorney's Office for the District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202
Tel: 303-454-0170

Clay C. Cook
Special Assistant U.S. Attorney
Colorado Consolidated Legal Center
P.O. Box 8500
Florence, CO 81226
Telephone: (719) 784-5219

## 2. JURISDICTION

Plaintiff's Statement:

Plaintiff alleges violations of the First and Fifth Amendments of the U.S. Constitution and the Administrative Procedure Act ("APA"), 5 U.S.C. § 702. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 702, and, to the extent the claims seek declaratory relief, pursuant to 28 U.S.C. §§ 2201 and 2202. BOP has filed a motion for summary judgment arguing that PLN's claims are moot. ECF No. 106. PLN disagrees for the reasons discussed in its opposition to BOP's motion, ECF. No. 109, and PLN's Reply in Support of Its Motion for Partial Summary Judgment, ECF No. 113.

<u>Defendant's Statement</u>:

The Court does not have subject-matter jurisdiction to award any of the relief PLN seeks in this case. The Court lacks subject-matter jurisdiction over PLN's as-applied claims concerning the rejection of past issues of *Prison Legal News* at the ADX, all of which have been delivered to inmate subscribers. Those claims are moot. The Court lacks subject-matter jurisdiction to issue an advisory opinion attempting to define the circumstances under which ADX Wardens may consider PLN's publications to be a security risk in the future. Such claims, which are not based on clear, concrete facts, are not ripe. Any claim about the BOP's "all-or-nothing" practice of rejecting, rather than redacting, publications, is not ripe because it has no present effect on PLN.

Similarly, the Court does not have subject-matter jurisdiction over PLN's as-applied due-process claim. The Court lacks subject-matter jurisdiction to issue a declaration about the past rejection notices and the procedures pursuant to which they were issued because the magazines have been delivered, the content which triggered the rejections would not be rejected again, and the ADX has changed its procedures. The Court does not have subject-matter jurisdiction to enter an advisory opinion that would attempt to define, in the abstract, what information can be included in future rejection notices without compromising security at the ADX. That claim is not ripe.

### 3. CLAIMS AND DEFENSES

<u>Plaintiff's Statement</u>:

This case arises from the unlawful censorship of a news magazine at the U.S. Penitentiary – Administrative Maximum Facility ("ADX") in Florence, Colorado. From January 2010 through

April 2014, ADX rejected eleven issues of *Prison Legal News* ("*PLN*"), a monthly news magazine

published by PLN. PLN contends that ADX's rejection of these issues, along with the failure to

provide adequate notice, violated the Constitution and the APA. In particular, PLN asserts the

following claims:

 *First*, PLN alleges that the censorship of eleven issues of *PLN* at the ADX (the "Rejected

Issues") violate the First Amendment. This is an as-applied challenge to ADX's determination that

the Rejected Issues were "detrimental to the security, good order, or discipline." PLN will show at

trial that notwithstanding the dangerous aspects of the ADX prison environment, the censorship of

the Rejected Issues was not rationally related to ADX's goals of safety and security because the

Rejected Issues were not detrimental to the security, good order, or discipline of ADX. For

example, as the highest security BOP facility, ADX imposes stringent security protocols to ensure

the safety of its inmates, staff, and the general public, mitigating any perceived security risk arising

from delivery of the Rejected Issues to prisoner-subscribers. No other BOP facilities, some of

which have less stringent security measures and may therefore be arguably *more* dangerous

environments than the ADX, censored the Rejected Issues. Particularly in light of these security

measures, the material that prompted ADX to reject the issue of *Prison Legal News* did not

constitute a security risk. For example, in some cases, the content was is available from other

sources not censored at the ADX, including, but not limited to, published judicial decisions

accessible to prisoners through the ADX Electronic Law Library.

 *Second*, PLN alleges that ADX's  censorship of the Rejected Issues in their entirety

violated the First Amendment. Although the Rejected Issues vary in length from 52 to 72 pages,

each apparently was rejected in its entirety based on only a small portion of content on one or two

4

pages. No attempt was made to redact or remove only the portions of the publication that were deemed objectionable. While PLN claims that the Rejected Issues did not pose a security risk at the time they were rejected, at the very least ADX should have delivered the portions of the Rejected Issues that were admittedly unobjectionable. At trial, PLN will demonstrate that redaction or removal of the allegedly objectionable content was a viable and non-burdensome alternative to wholesale rejection of the eleven Rejected Issues.

*Third*, PLN alleges that BOP violated the Due Process Clause of the Fifth Amendment by providing inadequate notice of each rejection to PLN. For each of the eleven Rejected Issues, BOP provided PLN with a rejection notice that stated that the issue was rejected because it was allegedly "detrimental to the security, good order, or discipline of the institution" or "may facilitate criminal activity." The rejection notices provide no explanation or reasons for why the cited content is purportedly detrimental to the security, good order, or discipline of ADX, beyond (in most cases) stating that a specific page or pages discuss an ADX or BOP prisoner or BOP personnel. At trial, PLN will show that the notices for the Rejected Issues failed to articulate reasons for the rejections of *PLN* and that BOP could have provided more information to PLN concerning the reasons for the rejections.

*Fourth*, PLN claims that BOP's censorship of the Rejected Issues, wholesale rejection of unobjectionable content, and failure to provide sufficient notice concerning the reasons for rejection violates the BOP's obligations under the Administrative Procedure Act.

PLN seeks declaratory and injunctive relief, specifically:

- A declaration that each of the eleven Rejected Issues of *Prison Legal News* was improperly rejected in violation of the First Amendment;

5

- An injunction barring the ADX from rejecting future issues of *PLN* based on facts and circumstances similar to those leading to the censorship of the Rejected Issues, including, but not limited to, content that is reasonably available to ADX prisoners from other sources, including published judicial decisions or other information available through the Electronic Law Library, general circulation newspapers, books, or magazines, and television programming available at the ADX;

- An injunction compelling ADX to redact or remove objectionable portions of rejected issues of *Prison Legal News* and deliver otherwise unobjectionable content to the prisoner-subscribers at ADX;

- A declaration that the Rejection Notices for each of the eleven Rejected Issues were insufficient to provide proper notice under the Due Process Clause of the Fifth Amendment;

- An injunction compelling ADX to provide notice sufficient for PLN to identify the reasons a rejected issue of *Prison Legal News* constitutes a security risk;

- An order assessing attorney's fees and costs for PLN; and

- Any other such relief the Court may deem necessary or appropriate.

<u>Defendant's Statement</u>:

The Court lacks subject-matter jurisdiction to award any of the relief PLN seeks in this case. In its Order denying the motion to dismiss, the Court assumed that PLN was challenging the incoming-publication policy used at the ADX, but PLN has now made it clear that its claims are *not* what the Court assumed—a facial challenge to ADX's approach to incoming publications—but instead seek just a judicial determination as to specific past rejections by the ADX. (Had PLN attempted to bring a facial challenge to the ADX incoming-publication policy,

6

it could not have met its heavy burden to prove that the policy was an irrational approach under the Constitution or the Administrative Procedure Act.)

PLN's as-applied claims are moot. First, those publications have been delivered. This case is thus unlike other cases where the challenged conduct might easily be reversed; PLN does not argue that there is any likelihood at all that these publications will be taken back. Second, the policy that was in place when those publications were rejected has been formally changed in significant ways. The BOP has confirmed that the material would *not* be rejected under the current ADX publication-review policy. A determination as to whether the past rejections, under the prior policy, was proper will not directly affect the current policy—the policy to which PLN has now confirmed that it is not bringing a facial challenge.

PLN asserts that a decision about those past rejections might define "the circumstances under which ADX *may* consider PLN's publications to be a security risk" in the future, based on a vague directive concerning whether "future facts and circumstances" are "similar to those leading to" the past rejections. But this Court lacks jurisdiction to issue such an advisory opinion. *If* any issue is ever rejected again, the Warden at the time will conduct a security assessment based on the particular circumstances. PLN may not litigate such claims unless and until they are ripe, based on clear, concrete facts. Likewise, the BOP's all-or-nothing policy concerning rejecting, rather than redacting objectionable content from incoming publications, has no present effect on PLN. The Supreme Court has held that the BOP's all-or-nothing practice is facially constitutional. *Thornburgh v. Abbott*, 490 U.S. 401, 419 (1989). Unless and until the practice is applied in a concrete way that harms PLN, any as-applied challenge is not ripe. Further, even if the Court had subject-matter jurisdiction to resolve an as-applied challenge to the

7

past rejections, PLN cannot meet its burden to prove that the BOP's actions were irrational under the deferential rational-basis standard set forth in *Turner v. Safley*, 482 U.S. 78, 89 (1986), and under the Administrative Procedure Act.

The same jurisdictional defects defeat PLN's "as-applied" due-process claim. A declaration about the past rejection notices and the procedures pursuant to which they were issued would be a legal nullity. The magazines have been delivered, the content which triggered the rejections would not be rejected again, and the ADX has changed its procedures for notifying publishers about incoming publications. PLN has never received a notice under the new policy. There is no jurisdiction for the Court to enter an advisory opinion that would attempt to define, in the abstract, what information can be included in future rejection notices without compromising security at the ADX. That claim is not ripe. Again, even if the Court had subject-matter jurisdiction, PLN cannot meet its burden to prove that the notices, on their faces, were so disconnected from any legitimate penological interest as to have been an irrational approach for communicating the reasons for rejection of the publications under the Constitution, *see Turner*, 482 U.S. at 89, and the Administrative Procedure Act.

The BOP is entitled to judgment in its favor on all of PLN's claims, including an award of costs and such other relief as the Court deems appropriate.

## 4. STIPULATIONS

**Facts and Events as to Which the Parties Stipulate:**

1. PLN is a project of the Human Rights Defense Center, a not-for-profit entity organized under the laws of the State of Washington and Section 501(c)(3) of the Internal Revenue Code. PLN publishes *Prison Legal News*, a softcover magazine, on a monthly basis.

8

2.  *Prison Legal News* contains reviews and analysis of prisoners' rights issues, reports on recent court decisions, and news relating to the criminal justice system.  Inmates pay $30 per year for a 12-issue subscription to the magazine.  PLN has subscribers at the ADX.

3.  Since January 2010, ADX wardens have rejected the following issues of *Prison Legal News* in their entirety:  January 2010, June 2010, October 2011, November 2011, June 2012, November 2012, February 2013, April 2013, July 2013, September 2013, and April 2014.

4.  For each of the rejected issues, the ADX warden or ADX official who rejected the issue signed a rejection notice.  Each notice states that the issue was rejected in accordance with the Bureau of Prisons Program Statement 5266.10 or 5266.11, *Incoming Publications*, which states that a publication may be rejected "if it is detrimental to the security, good order, or discipline of the institution or if it may facilitate criminal activity."

## 5. PENDING MOTIONS

The following motions are pending:

1.  Plaintiff Prison Legal News's Motion for Partial Summary Judgment, ECF No. 104, filed on May 14, 2018.  Federal Bureau of Prisons' Response in Opposition to Plaintiff Prison Legal News's Motion for Partial Summary Judgment, ECF No. 111, was filed on June 4, 2018.  PLN's Reply in Support of Its Motion for Partial Summary Judgment, ECF No. 113, was filed on June 18, 2018.

2.  Federal Bureau of Prisons' Motion for Summary Judgment, ECF No. 106, was filed on May 14, 2018.  Plaintiff Prison Legal News's Opposition to Defendant Federal Bureau of

Prisons' Motion for Summary Judgment, ECF. No. 109, was filed on June 4, 2018.

BOP's Reply in Support of Its Motion for Summary Judgment, ECF No. 114, was filed on June 18, 2018.

## 6. WITNESSES[1]

### a. **Non-Expert Witnesses**

**Plaintiff:**

(1) **witnesses who will be present at trial** (*see* **Fed. R. Civ. P. 26(a)(3)(A)):**

1. Paul Wright, Founder and Editor of *Prison Legal News*, contact via counsel for PLN. Mr. Wright will testify concerning the factual allegations in PLN's Complaint, including but not limited to: the content of PLN's publications and other content sent by mail to prisoners at ADX; PLN's methods of sending mail to prisoners; the mail, including issues of *PLN*, sent to prisoners at ADX; the mail that BOP censored and returned to PLN; the rejection notices provided by BOP to PLN; the inadequacy of Defendant's appeal process and the lengthy delays associated therewith; pre-suit correspondence with BOP concerning the rejections; the redaction of publications by state prison systems; and correspondence PLN received from prisoner-subscribers at ADX. Mr. Wright may authenticate relevant documents.

2. Jack Fox, former ADX Warden. Mr. Fox will testify regarding the statements made in

---

[1] The parties provide a list of witnesses here. The parties will submit a Witness List in the form designated by the Court seven days prior to the Final Trial Preparation Conference in accordance with this Court's Practice Standards. *See* Civ. Practice Standard V.B.5. The parties reserve their rights to amend their respective witness lists following a ruling on the pending dispositive motions. The Court's resolution of the parties' motions for summary judgment may have an impact on decisions concerning which witnesses may be called at trial and the scope of their testimony.

his Declarations in this case (ECF Nos. 59-1; 66-1); ADX's review of incoming publications; ADX's censorship policies and practices; Mr. Fox's review of the Rejected Issues; security procedures used at ADX; and prison security issues.  Mr. Fox may authenticate relevant documents.

**(2) witnesses who may be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A):**

1. Warden Andre Matevousian, Complex Warden, FCC Florence, 5880 State Highway 67 South, P.O. Box 8500, Florence, CO 81226-8500.  PLN may call Warden Matevousian regarding the statements made in his Declaration in support of BOP's motion for summary judgment (ECF No. 106-4) and in support of BOP's opposition to PLN's motion for partial summary judgment (ECF No. 111-4); review of incoming publications at ADX; ADX's censorship policies and practices; security procedures used at ADX; and prison security issues.

2. Todd Chapman, Executive Assistant, ADX, 5880 State Highway 67 South, P.O. Box 8500, Florence, CO 81226-8500.  Mr. Chapman may testify concerning the review of incoming publications at ADX; ADX policy changes related to the review of incoming publications; ADX's censorship policies and practices; the censorship of the Rejected Issues of *PLN*; ADX prisoners' access to media, including through the electronic law library, incoming publications, and television access; ADX prisoners' ability to communicate with one another, prisoners at other correctional facilities, and unincarcerated individuals; security procedures used at ADX; and prison security issues.  Mr. Chapman's deposition may be used to authenticate relevant documents.

3. Debra Payne, former Special Investigative Services ("SIS") Agent at ADX.  Ms. Payne

11

may testify concerning the role of Special Investigative Services personnel in the review

of incoming publications at ADX; ADX's censorship policies and practices; security

procedures used at ADX; and prison security issues.  Ms. Payne may authenticate

documents.

4.  Any witness designated by BOP.

5.  Any witness necessary for rebuttal or impeachment.

**(3) witnesses where testimony is expected to be presented by means of a
deposition and, if not taken stenographically, a transcript of the pertinent
portions of the deposition testimony.  *See* Fed. R. Civ. P. 26(a)(3)(B).**

1.  Todd Chapman, Executive Assistant, ADX, 5880 State Highway 67 South, P.O. Box

8500, Florence, CO 81226-8500.  PLN may present portions of Mr. Chapman's

deposition testimony as BOP's 30(b)(6) witness, as well as deposition testimony offered

in his individual capacity.  PLN may present portions of Mr. Chapman's depositions

concerning the review of incoming publications at ADX; ADX's censorship policies and

practices; ADX policy changes related to the review of incoming publications; the

censorship of the Rejected Issues of *PLN*; ADX prisoners' access to media, including

through the electronic law library, incoming publications, and television access; ADX

prisoners' ability to communicate with one another, prisoners at other correctional

facilities, and unincarcerated individuals; security procedures used at ADX; and prison

security issues.  Mr. Chapman's deposition may be used to authenticate relevant

documents.

2.  Blake Davis, former Warden of ADX, currently Eastern Regional Vice President for the

Geo Group, 13777 Ballantyne Corporate Place, Suite 200, Charlotte, NC.  PLN may

present portions of Mr. Davis's deposition concerning ADX's review of incoming

publications; ADX's censorship policies and practices; the censorship of the June 2010

issue of *PLN*; security procedures used at ADX; and prison security issues.  Mr. Davis's

deposition may be used to authenticate relevant documents.

3.  David Berkebile, former Warden of ADX, currently employee of CoreCivic, 12240

Jones Park Court, Colorado Springs, CO.  PLN may present portions of Mr. Berkebile's

deposition concerning ADX's review of incoming publications; ADX's censorship

policies and practices; the censorship of the February 2013 issue of *PLN*; security

procedures used at ADX; and prison security issues.  Mr. Berkebile's deposition may be

used to authenticate relevant documents.

4.  Dennis Stamper, former Associate Warden of ADX, currently Deputy Commissioner of

the Alabama Department of Corrections.  PLN may present portions of Mr. Stamper's

deposition concerning ADX's review of incoming publications; ADX's censorship

policies and practices; the censorship of the October 2011 and November 2011 issues of

*PLN*; the successful inmate appeal of these rejections; the subsequent delivery of the

October 2011 and November 2011 issues of *PLN* to that prisoner; security procedures

used at ADX; and prison security issues.  Mr. Stamper's deposition may be used to

authenticate relevant documents.

5.  Shon Kuta, former Associate Warden of ADX, currently Warden of Moshannon Valley

Correctional Center, 555 Geo Drive, Phillipsburg, PA.  PLN may present portions of Mr.

Kuta's deposition concerning ADX's review of incoming publications; ADX's

censorship policies and practices; the censorship of the November 2012, July 2013, and

April 2013 issues of *PLN*; security procedures used at ADX; and prison security issues. Mr. Kuta's deposition may be used to authenticate relevant documents.

6. John Dunkleberger, Chief, Unit Management Section, Correctional Programs Division, Federal Bureau of Prisons.  PLN may present portions of Mr. Dunkleberger's deposition testimony concerning the viability of redaction or removal of allegedly objectionable portions of the Rejected Issues in lieu of rejecting the entire incoming publication at ADX.

7. John Oliver, former Warden of ADX, currently Director of Operations, Geo Group, 177 Northeast Loop 410, Suite 1100, San Antonio, TX.  PLN may present portions of Mr. Oliver's deposition concerning ADX's review of incoming publications; ADX's censorship policies and practices; security procedures used at ADX; prison security issues; and pre-suit communications between PLN and BOP regarding ADX censorship practices.  Mr. Oliver's deposition may be used to authenticate relevant documents.

**Defendant:**

**(1) witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):**

1. Andre Matevousian, Complex Warden, FCC Florence, 5880 State Highway 67 South, P.O. Box 8500, Florence, CO 81226-8500.  Warden Matevousian will testify concerning the operation of the ADX; the unique and extremely dangerous environment at the ADX, including, but not limited to, the security protocols necessary for defusing those risks; the standards and procedures for evaluating incoming publications and for notifying publishers of rejections of publications at the ADX pursuant to FLM 5266.11E, *Incoming Publications* (December 21, 2017) (the "December 2017 Policy"), as well as the prior iterations of that

14

Institution Supplement dated February 2, 2016, and May 30, 2017; the necessity for ADX

Wardens to retain discretion to reject incoming publications based on an individualized

assessment of the context at the time; and the fact that the eleven previously rejected issues

of *Prison Legal News* would not be rejected under the December 2017 Policy.  Warden

Matevousian may authenticate relevant documents.  Warden Matevousian will testify in

person.

2.  Todd Chapman, Executive Assistant, ADX, 5880 State Highway 67 South, P.O. Box 8500,

Florence, CO 81226-8500.  Mr. Chapman will testify concerning the operation of the

ADX; the unique and extremely dangerous environment at the ADX, including, but not

limited to, the security protocols necessary for defusing those risks; the standards and

procedures for evaluating incoming publications pursuant to the December 2017 Policy

and its prior iterations in February 2016 and May 2017; the standards for notifying

publishers of rejections at the ADX; training provided to ADX personnel concerning these

procedures; the rejection notices provided to PLN; mailroom procedures at the ADX; the

scope and quantity of incoming publications at the ADX and rejections of incoming

publications; the origin and elimination of the ADX "name alone" practice; and

procedures for appealing the rejection of an incoming publication at the ADX, including

appeals related to the eleven issues of PLN's magazine at issue in this case.  Mr. Chapman

may testify to any other matter for which he was designated as a witness pursuant to Fed.

R. Civ. P. 30(b)(6), as necessary following the Court's disposition of the pending

dispositive motions.  Mr. Chapman may authenticate relevant documents.  Mr. Chapman

will testify in person.

3. Amy Kelley, Lieutenant, Special Investigative Services Department ("SIS"), ADX, 5880 State Highway 67 South, P.O. Box 8500, Florence, CO 81226-8500.  Lieutenant Kelley will testify concerning the standards and procedures for evaluating incoming publications and for notifying publishers of rejections at the ADX pursuant to the December 2017 Policy and its prior iterations in February 2016 and May 2017; training provided to ADX personnel concerning these procedures; the origin and elimination of the ADX "name alone" practice; the burdens and risks imposed by compelling the ADX to engage in a practice of redacting objectionable content from incoming publications; and security issues posed by incoming publications at the ADX.  Lieutenant Kelley may authenticate relevant documents.  Lieutenant Kelley will testify in person.

4. David Nelson, former Supervisory Correctional Systems Specialist, ADX; currently, Supervisory Correctional Systems Specialist, FCI Englewood, Colorado.  Mr. Nelson will testify concerning the standards and procedures for evaluating incoming publications and for notifying publishers of rejections at the ADX pursuant to the December 2017 Policy and its prior iterations in February 2016 and May 2017; training provided to ADX personnel concerning these procedures; mailroom procedures at the ADX; duties assigned to ADX mailroom personnel; the scope and quantity of incoming publications at the ADX and rejections of incoming publications; and the burdens and risks imposed by compelling the ADX to engage in a practice of redacting objectionable content from incoming publications.  Mr. Nelson may authenticate relevant documents.  Mr. Nelson will testify in person.

5. John Dunkelberger, Chief, Unit Management Section, Correctional Programs Division,

Federal Bureau of Prisons, Washington D.C.  Mr. Dunkelberger will testify concerning the negative impact of redacting, removing, or otherwise altering incoming publications in lieu of rejecting the entire incoming publication at BOP institutions, including the ADX; the BOP's federal regulations and national policy that direct prison officials at all BOP institutions, including the ADX, to reject an entire incoming publication that contains objectionable material, and the sound correctional justifications underlying these federal regulations and national policy; and the enormous burden that a redaction/extraction/excision practice would impose on the ADX, including mailroom staff and the SIS Department, to the detriment of institutional resources and the inmate population.  Mr. Dunkelberger will testify concerning all other relevant matters raised in his disclosure pursuant to Fed. R. Civ. P. 26(a)(2)(C) dated March 23, 2018, and in his deposition.  Mr. Dunkelberger may authenticate may authenticate relevant documents.  Mr. Dunkelberger will testify in person.

**(2) witnesses who may be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A):**

1.  Any witness designated by PLN.

2.  Any witness necessary for rebuttal or impeachment.

**(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.  *See* Fed. R. Civ. P. 26(a)(3)(B).**

None.

b.  **Expert Witnesses**

**Plaintiff:**

**(1) witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):**

1. James Aiken, Principal of James E. Aiken & Associates, Inc., 36 Tysia Court, Brevard, NC. Mr. Aiken is the principal of a consulting firm that specializes in prison and jail confinement matters, and he has over 45 years of experience in the management of prisons and correctional systems. Mr. Aiken will testify concerning the information and opinions expressed in his reports served on March 23, 2018, and April 6, 2018, including but not limited to the following: that the Rejected Issues of *PLN* did not threaten the security, discipline, or good order of the ADX, nor facilitate criminal activity; there was no legitimate or rational penological interest for ADX's censorship of the Rejected Issues; that BOP's alleged practice of rejecting all incoming publications that referenced an ADX or BOP prisoner or BOP staff member does not serve a legitimate or rational penological interest; that redaction or removal of allegedly objectionable material is a viable alternative to wholesale rejection of a magazine; and that the notices of the Rejected Issues are inadequate to provide PLN with information about why the Rejected Issues were censored.

2. Jack Fox, former Warden of ADX. Mr. Fox may testify concerning the topics discussed at his deposition on February 8, 2018, including but not limited to his opinion that the Rejected Issues did not threaten the security, discipline, or good order of the ADX, or facilitate criminal activity, and his determination that the Rejected Issues could be delivered to prisoner-subscribers in 2017.

**(2) witnesses who may be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A):**

None.

**(3) witnesses where testimony is expected to be presented by means of a**

18

deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony. *See* Fed. R. Civ. P. 26(a)(3)(B).

None.

**Defendant:**

(1) witnesses who will be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A)):

1. Mark Collins. Mr. Collins is a retained expert in the field of correctional security and correctional management with over 27 years of experience in the field of correctional management in BOP facilities, including the ADX. Mr. Collins will testify concerning the information and opinions discussed in his March 23, 2018, expert report and his April 6, 2018, rebuttal report, including, but not limited to, the following: the unique and extremely dangerous environment of the ADX and the means required to protect ADX security; the communications of ADX inmates, both within the institution and outside it; the need to monitor and control information provided to ADX inmates to protect the safety and security of ADX inmates, ADX staff, and the public; the manner in which the December 2017 Policy protects institutional security and public safety; the rejection notices provided to PLN; and why notices of rejected publications must be crafted so as to ensure that institutional security and public safety are not compromised. Mr. Collins will also testify concerning any relevant matters raised in his deposition testimony. Mr. Collins may authenticate relevant documents. Mr. Collins will testify in person.

2. John Dunkelberger. Please see the description of Mr. Dunkelberger's testimony in the preceding section, which is incorporated here by reference. Mr. Dunkelberger was disclosed as a non-retained expert pursuant to Fed. R. Civ. P. 26(a)(2)(C).

(2) witnesses who may be present at trial (*see* Fed. R. Civ. P. 26(a)(3)(A):

19

None.

**(3) witnesses where testimony is expected to be presented by means of a deposition and, if not taken stenographically, a transcript of the pertinent portions of the deposition testimony.** *See* **Fed. R. Civ. P. 26(a)(3)(B).**

None.

## 7. EXHIBITS[2]

(1)     Plaintiff(s):

| No. | Brief Categorical Description | Bates Range/ Docket Numbers |
|-----|-------------------------------|------------------------------|
| 1 | Rejected Issues of *Prison Legal News* | PLN_0000688-743; 751-814; 837-900; 938-1001; 1037-92; 1124-79; 1187-242; 1341-96; 1397-452; 1497-552; 1572-627; 1668-731 BOP00053-55; 116-18; 125-28; 132-35; 245-48; 251-53; 301-02; 342-45; 348-49; 407-10; 442-44; 446-48 |
| 2 | Notices of Rejection | PLN_0000744-50; 815-36; 901-37; 1002-36; 1093-1123; 1270-339; 1453-96; 1553-71; 1628-67; 1732-766 BOP000056; 82; 129-30; 136; 215; 253; 303; 322-23; 350; 386; 405; 439; 449 |

[2] The parties provide a list of exhibits here. The parties will submit a Witness List in the form designated by the Court seven days prior to the Final Trial Preparation Conference in accordance with this Court's Practice Standards. *See* Civ. Practice Standard V.B.5. The parties reserve their rights to amend their respective witness lists following a ruling on any pending motion(s). The Court's resolution of the parties' motions for summary judgment may have an impact on decisions concerning trial exhibits. As required by this Court's Practice Standards, the Exhibit Lists submitted before the Final Trial Preparation Conference will denote those to which the parties have stipulated.

| 3 | Uncensored Issues of *Prison Legal News* | PLN_0006723-8596; 10127-66; 10183-93; 10201-18 |
|---|---|---|
| 4 | Publicly available content discussing topics in the Rejected Issues | PLN_0000001-138; 9015-199; 9333-581; 9582-723 |
| 5 | Published court decisions discussed in Rejected Issues | PLN_0001775-862 |
| 6 | Declaration of Todd Chapman (July 26, 2016) | ECF No. 31-1 |
| 7 | Declaration of Jack Fox (Feb. 13, 2017) | ECF No. 59-1 |
| 8 | Supplemental Declaration of Jack Fox, ECF No. 66-1 (Mar. 14, 2017) | ECF No. 66-1 |
| 9 | Declaration of Todd Chapman (May 14, 2018) | ECF No. 106-2; ECF No. 111-2 |
| 10 | Declaration of Andre Matevousian (May 14, 2018) | ECF No. 106-4; ECF No. 111-4 |
| 11 | Declaration of Amy Kelley (May 14 ,2018) | ECF No. 106-6; ECF No. 111-3 |
| 12 | Todd Chapman Deposition (Jan. 17, 2017) | |
| 13 | Todd Chapman Deposition (Mar. 16, 2018) | |
| 14 | Jack Fox Deposition (Feb. 8, 2018) | |
| 15 | John Oliver Deposition (Mar. 2, 2018) | |
| 16 | Blake Davis Deposition (Jan. 10, 2018) | |
| 17 | David Berkebile Deposition (Jan. 19, 2018) | |
| 18 | Shon Kuta Deposition (Mar. 14, 2018) | |
| 19 | Dennis Stamper Deposition (Mar. 14, 2018) | |
| 20 | Mark Collins Deposition (Apr. 19, 2018) | |
| 21 | Debra Payne Deposition (Feb. 7, 2018) | |
| 22 | John Dunkleberger Deposition (Mar. 9, 2018) | |
| 23 | ADX Institution Supplement FLM 5321.07(1)(B) | PLN_0010019-34, BOP 10284-10296 |
| 24 | List of Electronic Law Library Content | BOP002129-33 |
| 25 | ADX Channel Line Up for Direct TV | BOP002038-40 |
| 26 | List of books available in ADX library | BOP001986-2037 |
| 27 | ADX Institution Supplement FLM 5266.10C | BOP000030-35 |
| 28 | ADX Institution Supplement FLM 5266.10D | BOP000037-41 |
| 29 | ADX Institution Supplement FLM 5266.11A | BOP000043-46 |
| 30 | ADX Institution Supplement FLM 5266.11B | BOP000048-51 |
| 31 | ADX Institution Supplement FLM 5266.11C | BOP000023-28 |
| 32 | ADX Institution Supplement FLM 5266.11D | BOP002045-49 |
| 33 | ADX Institution Supplement FLM 5266.11E | ECF No. 106-2, Att. 2 |
| 34 | ADX Incoming Publications Rejection Procedures Training Materials | BOP000731-79; 2060-75; 2109-28 |
| 35 | BOP Program Statement 5266.10 | BOP001190-1202 |

| 36 | BOP Program Statement 5266.11 | BOP000014-21 |
|----|---|---|
| 37 | Examples of Redaction by State Correctional Facilities | PLN0006553-54; 6567-609; 6623-6721; 10224-302 |
| 38 | Regional Administrative Remedy Appeal and BP-229 Response | BOP001077-79 |
| 39 | Letter from P. Swanson to S. Yates (June 30, 2015) | PLN_0008614-20 |
| 40 | Letter from J. Oliver to P. Swanson (Aug. 6, 2015) | PLN_0008612-13 |
| 41 | Letter from P. Swanson to J. Oliver (Aug. 24, 2015) | PLN_0008623-725 |
| 42 | Letter from J. Oliver to P. Swanson (Sept. 15, 2015) | PLN_0008621-22 |
| 43 | Email from S. Prose to S. Kiehl (Jan. 17, 2018) | |
| 44 | Email from NCRO/Correctional Sys to Anne Cummins et al. (Sept. 21, 2017) | BOP008128 |
| 45 | Letters from *Prison Legal News* subscribers | PLN_0001888-4974 |
| 46 | Def.'s Resp. to Pl.'s 1st Requests for Admission | |
| 47 | Pl.'s 1st Set of Interrogatories | |
| 48 | Def.'s Resp. to Pl.'s Interrogatories | |
| 49 | Def.'s 1st Suppl. Resp. to Pl.'s Interrogatories | |
| 50 | Def.'s 2d Suppl. Resp. to Pl.'s Interrogatories | |
| 51 | Def.'s 3d Suppl. Resp. to Pl.'s 1st Interrog. | |
| 52 | Pl.'s 2d Set of Interrogatories | |
| 53 | Def.'s Resp. to Pl.'s 2d Interrogatories | |
| 54 | Def.'s 1st Suppl. Resp. to Pl.'s 2d Interrogatories | |
| 55 | Def.'s Disclosures | |
| 56 | Def.'s First Supp. Disclosures | |
| 57 | Def.'s 2d Suppl. Disclosures | |
| 58 | Expert Report of Mark Collins | |
| 59 | Davis Memorandum (Oct. 15, 2012) | |
| 60 | ADX Institution Supplement FLM 5321.07(4)(A) | |
| 61 | Email from S. Prose to T. Fulham et al (Apr. 6, 2018) | |
| 62 | Rebuttal Expert Report of Mark Collins | |
| 63 | PLN's appeals of the Rejected Issues and BOP Responses | PLN_0000249-277; 406-588; PLN0001888-1905 |
| 64 | BOP notes on ADX inmates' incidents of violence | |
| 65 | ADX internal memoranda on rejections of *Prison Legal News* | BOP000052; 115; 131; 243; 250; 300; 341; 347; 406; 440 |
| 66 | Rejection of content other than *Prison Legal News* at ADX | BOP000787-1055; 1209-62; 1296-818 |
| 67 | Curriculum Vitae of James E. Aiken | |
| 68 | Other documents produced by BOP discussing the Rejected Issues and/or *Prison Legal News* | |

| 69 | Documents produced by BOP describing security procedures and systems at ADX | |
|----|------------------------------------------------------------------------------|---|
| 70 | Documents produced by BOP discussing the media and publications available to ADX inmates | |
| 71 | Any document necessary for rebuttal, impeachment, or refreshing recollection | |

(2)    Defendant(s):

| No. | Brief Categorical Description | Remarks |
|-----|------------------------------|---------|
| 1 | FLM 5266.11E, *Incoming Publications* (December 21, 2017) | BOP 10332-10336 |
| 2 | FLM 5266.11C, *Incoming Publications* (February 2, 2016) | BOP 23-28 |
| 3 | FLM 5266.11D, *Incoming Publications* (May 7, 2017) | BOP 2045-2049 |
| 4 | Program Statement 5266.11, *Incoming Publications* (November. 9, 2011) | BOP 14-21 |
| 5 | FLM 5321.07(1)B, *General Population and Step-Down Unit Operations* (September 1, 2015) | BOP 10284-10296 |
| 6 | Packets re: eleven rejected issues of *Prison Legal News* at the ADX | BOP 52-477 |
| 7 | Documents re: PLN's appeals of rejections of *Prison Legal News* at the ADX to BOP North Central Regional Office | BOP 478-730 |
| 8 | All documentation re: quarterly training at ADX regarding Incoming Publications Rejection Procedures (including updated documents to be produced) | BOP 731-750, 751-768, 769-786, 1182-1189, 2050-2058, 2059-2075, 2109-2117, 2118-2128, 2166-2173, 2408-2427, 3302-3306, 7539-7546, 10215-10223 |
| 9 | ADX Incoming Publications Rejection Comparisons from 2015 to 2016 | BOP 2061 |
| 10 | Curriculum Vitae of Mark Collins | |
| 11 | Analysis of statistics concerning security risks associated with ADX inmates | BOP 10297-10331 (marked "Confidential – Attorney's Eyes Only" pursuant to the Protective Order, Doc. 43) |
| 12 | PLN's responses to BOP's written discovery requests, including interrogatories, requests for production, and requests for admission | |

| 13 | PLN's disclosures pursuant to Fed. R. Civ. P. 26 | |
| 14 | October 15, 2012, memorandum from Blake R. Davis | Doc. 106-5 at 30-39 |
| 15 | Deposition of Paul Wright, including exhibits | |
| 16 | Deposition of James Aiken, including exhibits | |
| 17 | Any document necessary for rebuttal, impeachment, or refreshing recollection | |

b.      Copies of listed exhibits must be provided to opposing counsel and any *pro se*

party no later than 30 days before trial.  The objections contemplated by Fed. R. Civ. P.

26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14

days after the exhibits are provided.

## 8. DISCOVERY

Discovery has been completed with the exception of two matters:

1.      As stated in its Reply in Support of its Motion for Summary Judgment, BOP has

agreed to provide a response to PLN's request for information concerning the number

of instances of violence at ADX by inmates against other inmates and staff.  *See* ECF

No. 114-1 at 23.  BOP is continuing to compile this information.  *Id.*

2.      In the event that claims remain following the Court's ruling on the parties' motions

for summary judgment, PLN reserves its right to seek to depose ADX Warden Andre

Matevousian.  Warden Matevousian did not become ADX Warden until April 2018,

and thus was not disclosed as having discoverable information until after the fact

discovery period closed.  *See* ECF No. 114 at 4 n.2.  BOP counsel has represented

that BOP would likely not oppose PLN's request to depose Warden Matevousian.

## 9. SPECIAL ISSUES

The BOP states that it reserves the right to object to PLN presenting the testimony of

witnesses by means of depositions, unless PLN can establish that those witnesses are unavailable at the time of trial.  If a witness cannot be present at trial, the parties should conduct a trial preservation deposition, at which the BOP can also be present to ask its own questions of the witness.

PLN states that it will present deposition testimony in accordance with the Federal Rules of Civil Procedure, including for witnesses who served as BOP's designees under Fed. R. Civ. P. 30(b)(6), *see* Fed. R. Civ. P. 32(a)(3), and witnesses who are unavailable at the time of trial, *see* Fed. R. Civ. P. 32(a)(4). PLN objects to BOP re-opening any depositions for which BOP was present and had an opportunity to ask questions of the relevant witness during the deposition.

## 10.  SETTLEMENT

a.  Counsel for the parties have had a number of discussions regarding settlement and offers have been exchanged.  Counsel for the parties most recently discussed settlement by telephone on June 26, 2018.

b.  The parties have been promptly informed of all offers of settlement.

c.  Counsel for the parties intend to continue settlement discussions.

d.  It appears from the discussion by all counsel that there is some possibility of settlement.

e.  Counsel for the parties have considered ADR in accordance with D.C.COLO.LCivR.16.6.

## 11.  OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure.  Counsel have discussed it with the clients against whom claims are made in this case.

## 12.  EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice.  The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order.  In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13.  TRIAL AND ESTIMATED TRIAL TIME;
## FURTHER TRIAL PREPARATION PROCEEDINGS

1.     This matter will be a trial to the court.

2.     **PLN** estimates trial to last 3 days.

       **The BOP** states that, because of the number of witnesses listed by PLN, five days may be required to complete the trial of this case.  As noted above, the parties have different views as to scope and extent to which deposition testimony can be used at trial.

3.     Trial will occur at the United States District Court, Denver, Colorado.

DATED this _____9TH_____day of ___July_____, 20_18____.

BY THE COURT

_____
HON. SCOTT T. VARHOLAK
United States Magistrate Judge

APPROVED:

s/ *Terra White Fulham*　　　　　　　　　　　　　　　　　　s/ *Susan Prose*

Peter A. Swanson
Terra White Fulham
Matthew S. Shapanka　　　　　　　　　　　　Susan Prose
Alyson R. Sandler　　　　　　　　　　　　　　Assistant United States Attorney
Covington & Burling LLP　　　　　　　　　1801 California Street, Suite 1600
One CityCenter　　　　　　　　　　　　　　Denver, CO 80202
850 Tenth Street NW　　　　　　　　　　　Telephone: (303) 454-0100
Washington, DC 20001
Telephone: (202) 662-6000　　　　　　　　Clay Cook
　　　　　　　　　　　　　　　　　　　　　　　Special Assistant United States Attorney
Steven D. Zansberg　　　　　　　　　　　　Colorado Consolidated Legal Center
Ballard Spahr LLP　　　　　　　　　　　　　P.O. Box 8500
1225 17th Street, Suite 2300　　　　　　　Florence, CO 81226
Denver, CO 80202　　　　　　　　　　　　　Telephone: (719) 784-5219
Telephone: (303) 376-2409

Sabarish Neelakanta　　　　　　　　　　　　*Attorneys for Defendant*
Masimba Mutamba
Human Rights Defense Center
PO Box 1151
Lake Worth, Florida 33460
Telephone: (561) 360-2523

Elliot Mincberg
Washington Lawyers' Committee for Civil
Rights & Urban Affairs
11 Dupont Circle NW, Suite 400
Washington, DC 20036
Telephone: (202) 319-1000

David M. Shapiro
Northwestern University School of Law
375 E. Chicago Avenue
Chicago, IL 60611
Telephone: (312) 503-0711
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on July 3, 2018, I electronically filed the foregoing with the Clerk of Court using the ECF system, which will electronically send notice to:

Steven Zansberg
Sabarish Neelakanta
Peter Swanson
Matthew Shapanka
Elliot Mincberg
David Shapiro
Terra Fulham
Alyson Sandler

s/ *Susan Prose*
Susan Prose
United States Attorney's Office