**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 15-cv-02184-RM-STV

PRISON LEGAL NEWS,

    Plaintiff,

v.

THE FEDERAL BUREAU OF PRISONS,

    Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant's motion for summary judgment (ECF No. 106); Plaintiff's opposition to the motion (ECF No. 109); and Defendant's reply (ECF No. 114). For the reasons stated below, the motion is GRANTED, and this case is DISMISSED WITHOUT PREJUDICE as MOOT.

**I. Introduction**

Plaintiff Prison Legal News ("PLN") produces *Prison Legal News*, a monthly magazine designed to help inmates navigate the criminal justice system, and sends it to subscribing inmates, including several at the Administrative Maximum Facility ("ADX") in Florence, Colorado. ADX is administered by Defendant the Federal Bureau of Prisons ("BOP"). Per BOP regulations, inmates may receive publications like *Prison Legal News* unless they are "detrimental to the security, good order, or discipline of the institution or . . . might facilitate criminal activity." 28 C.F.R. § 540.71(b). BOP regulations further require that "the Warden shall review the individual publication prior to the rejection of that publication." *Id.* § 540.71(c).

"Where a publication is found unacceptable, the Warden shall promptly advise the inmate in writing of the decision and the reasons for it," *id.* § 540.71(d), and provide the sender of the unacceptable publication with a copy of the rejection letter, *id.* § 540.71(e). Publishers and inmates can both appeal rejection decisions.

Between January 2010 and April 2014, the BOP refused to deliver eleven issues of *Prison Legal News* to prisoners at ADX. The BOP notified inmates of the rejections by letter, stating that the issues were rejected, at least in part, because of references to BOP inmates and staff members. This is referred to as the "name-alone practice." The letters did not explain how such references were detrimental to the security of ADX. The BOP asserts that copies of the rejection letters were mailed to PLN, but PLN alleges that it never received one of the letters and that some of them were not received until six to nine months after the rejections. PLN appealed four of the rejections, but the BOP's Regional Director upheld them without additional explanation. In response to further inquiry by PLN, the Regional Director explained that one issue was rejected because it contained information on BOP inmates and that "[s]pecific inmate names, location housed, case details, and other information may pose a security concern." (ECF No. 1-6 at 2.)

The name-alone practice remained in place until after PLN filed this lawsuit in October 2015. The lawsuit prompted the BOP to reevaluate the previously rejected issues, and it decided to deliver them to inmates who were still at ADX in March 2017. The name-alone practice was formally and expressly abolished in the BOP's December 2017 supplement to its policy on incoming publications.

## II. Procedural History

### A. PLN's Complaint

PLN filed its complaint in October 2015, asserting the BOP violated its First Amendment rights by censoring protected speech ("Claim One"); violated its Fifth Amendment rights by failing to provide timely and adequate notice of the rejections ("Claim Two"); and violated the Administrative Procedure Act ("APA") by acting arbitrarily and capriciously ("Claim Three").

The gist of Claim One is that the BOP of should not have considered an issue of PLN's magazine detrimental to the security of ADX simply because it contained information about a BOP inmate or staff member, particularly when that information was already known to inmates or available to them or the public through other means. PLN also challenges the BOP's policy of rejecting issues of *Prison Legal News* in their entirety, rather than redacting portions that were deemed unacceptable. The gist of Claim Two is that the BOP failed to provide timely and adequate notification to PLN about the rejections. PLN alleges that it received some of the rejection letters six to nine months after the publications were rejected and in one instance never received a letter. PLN also alleges that none of the letters adequately explained how the content of its magazine was detrimental to the security of ADX. Claim Three reiterates the same basic allegations as an ADA claim.

PLN seeks a declaration that the BOP's conduct violated the First and Fifth Amendments and the APA; injunctive relief compelling the BOP to deliver the rejected issues and any future issues "absent a legitimate penological interest supported by specific facts" (ECF No. 1 at 16); injunctive relief compelling the BOP to provide, if any future issues are censored, "timely, individualized, specific, and detailed notice that includes an explanation of why the article(s) or

page(s) in question are subject to censorship under 28 C.F.R. § 540," (*id.*); and costs and attorney fees.

**B. The BOP's Motion to Dismiss**

In July 2016, the BOP moved to dismiss the complaint, arguing that changes to its policy on incoming publications rendered part of Claim One moot and that the voluntary-cessation exception to the mootness doctrine did not apply. According to the BOP, the February 2016 supplement abolished the name-alone practice, established enhanced review procedures before a publication could be rejected, and instituted additional training for BOP staff regarding the review procedures. Rejections were reduced significantly under the revised policy, and the BOP had declared its intention that the name-alone practice would not be reinstated. Once the eleven previously rejected issues were reviewed under the revised policy, they were accepted and delivered to those inmates still at ADX. Thus, the BOP contended, it had done everything it could do to address PLN's complaint, and PLN was no longer suffering from an actual injury that could be redressed by a favorable decision. The BOP also argued PLN failed to state a claim regarding the BOP's practice of rejecting publications in their entirety rather than redacting unacceptable portions or removing pages. The BOP contended that the Supreme Court upheld a similar practice in *Thornburgh v. Abbott*, 490 U.S. 401, 418-19 (1989) ("[T]he administrative inconvenience of [tearing out the rejected portions of a publication] is . . . a factor to be considered and adds additional support to the District Court's conclusion that petitioners were not obligated to adopt it.").

With respect to Claim Two, the BOP argued that PLN failed to state a due-process claim because it had in fact received notice and an opportunity to be heard regarding each of the rejections. The BOP asserted that in accordance with its administrative procedures, it had mailed

4

rejection letters to PLN shortly after it delivered them to the inmates, and it argued that PLN's unsupported assertions that one of them was never received and that others were not received until six to nine months after the rejections were not entitled to the presumption of truth.  PLN was informed by inmates about the rejection for which it allegedly did not receive a letter; therefore, it had actual notice of the rejection.  The BOP also pointed out that with respect to four of the notices, PLN had availed itself of the opportunity to be heard by appealing to the Regional Director.  Although PLN was not satisfied with the outcome of these appeals, the BOP contended that the requirements of due process were met.

The BOP argued that the reasons for dismissing the constitutional claims also supported dismissing Claim Three, which was brought under the APA.

### C. Denial of the BOP's Motion

The Court concluded that the BOP's reliance on its revised policy on incoming publications was misplaced because "the February 2016 supplement change[d] very little if anything about ADX's treatment of incoming publications." (ECF No. 81 at 8.)   The case was not moot, the Court ruled, because the revised policy did not actually eliminate the name-alone practice or address a core concern of PLN's complaint—that issues of *Prison Legal News* had been deemed "detrimental to the security, good order, or discipline of the institution" under § 540.71(b) simply because they included the names of BOP inmates or staff members.  Nor did the February 2016 supplement change the way a publisher would be notified if a publication was rejected.  Indeed, it was "entirely silent on the subjects of timeliness of notice and providing reasons for a rejection." (ECF No. 81 at 12.)  In light of the shortcomings of the February 2016 supplement, the Court concluded it did not moot PLN's claims.

The Court also ruled that the claims were not moot because the voluntary-cessation exception to the mootness doctrine applied.  *See Ind v. Colo. Dep't of Corr.*, 801 F.3d 1209, 1214 (10th Cir. 2015) ("A plaintiff's claim is not rendered moot by the voluntary cessation of a challenged practice which the defendant is free to resume at any time.").  Although the BOP had reevaluated the previously rejected issues under its revised policy and delivered them to inmates who were still at ADX, the Court noted that this occurred only after PLN filed the lawsuit.  Moreover, despite PLN's earlier appeals of the rejections, the BOP had twice declined to make any changes to its procedures or policies.  As a result, the BOP was not entitled to a presumption of good faith.  Further, the BOP had not met its burden of establishing that the February 2016 supplement had completely and irrevocably eradicated the effects of the alleged violations of PLN's rights or that its challenged practices could not reasonably be expected to recur.

### D.  The BOP's Motion for Summary Judgment

The BOP filed an answer (ECF No. 88) in September 2017 and then its motion for summary judgment (ECF No. 106) in May 2018.  The BOP now asserts that PLN's claims are mooted by the December 2017 supplement to its policy on incoming publications.  Through its current warden, the BOP has declared its intention to maintain the new policy going forward.  Pertinent paragraphs of that policy are quoted in part below, with portions that were added since the February 2016 supplement in italics:

> B.   The receiving [Correctional Systems Officer] will review all incoming publications for potentially objectionable content in accordance with 28 C.F.R. § 540.70 *et seq.*  If content is preliminarily deemed objectionable by the receiving CSO, the objectionable incoming publication will be forwarded to the Special Investigative Services (SIS) department for additional review in accordance with 28 C.F.R. § 540.70 et seq.  SIS staff will review each individual incoming publication and, if rejection is recommended, prepare a letter for the Warden's signature.  *All recommended rejection letters must notate, in writing, specific objectionable pages and content, as well as the national policy and Code of Federal Regulations citation.*

> C. *An incoming publication at the ADX may not be rejected solely because it discusses an ADX or [BOP] inmate, or BOP staff member. When a publication identifies and discusses an ADX or BOP inmate, or BOP staff member, SIS staff must conduct an individualized assessment of each such incoming publication, taking into account specific information about the inmate or staff member, the content of the article, how that information may affect institutional security at the ADX, and include an evaluation of the factors in 28 C.F.R. § 540.70(b). Staff should rely upon his/her correctional experience, using sound correctional judgment, in making this individualized assessment.*
>
> . . . .
>
> G. *When an incoming publication is rejected, the Warden will promptly advise the inmate and publisher in writing of the decision and the reason(s) for it. The notice must contain reference to the specific article(s) or material(s) considered objectionable, including page references and quotes from the incoming publication. The Warden will advise the publisher or sender that the publisher may obtain independent review of the rejection by writing to the Regional Director within 20 days of the rejection letter. Ordinarily, the rejection notice will be mailed to the publisher within ten business days from the Warden's signature date.*

(ECF No. 106-2 at 20-21.)

The BOP's motion is fully briefed, as is PLN's motion for partial summary judgment (ECF No. 104).

### III. Summary Judgment and Mootness

Summary judgment is appropriate only if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). Whether there is a genuine dispute as to a material fact depends upon whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of material fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (brackets and quotation

omitted). "Unsupported conclusory allegations . . . do not create a genuine issue of fact." *In re Grandote Country Club Co.*, 252 F.3d 1146, 1149 (10th Cir. 2001).

Before reaching the merits of this case, however, we must consider the jurisdictional question of mootness. "Mootness is a threshold issue because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction." *Ind*, 801 F.3d at 1213 (quotation omitted). When a lawsuit is filed, a plaintiff must demonstrate "(1) an injury in fact; (2) a causal connection between the injury and the challenged action; and (3) a likelihood that a favorable decision will redress the injury." *Jordan v. Sosa*, 654 F.3d 1012, 1019 (10th Cir. 2011). However, "[i]f an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point during the litigation, the action can no longer proceed and must be dismissed as moot." *Brown v. Buhrman*, 822 F.3d 1151, 1165 (10th Cir. 2016) (quotation omitted).

Voluntary cessation is an exception to the mootness doctrine. "A plaintiff's claim is *not* rendered moot by the voluntary cessation of a challenged practice which the defendant is free to resume at any time." *Ind*, 801 F.3d at 1214 (emphasis added). "Voluntary cessation *may* moot litigation, however, if . . . (1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id.* (quotation omitted). "The defendant bears the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again." *Id.* (brackets and quotation omitted).

**IV. Discussion**

This case has evolved in three important ways since the Court's denial of BOP's motion for summary judgment. First, the BOP issued the December 2017 supplement to its policy on

incoming publications. That supplement directly addresses the core concerns of PLN's complaint in ways that the February 2016 supplement was found to be lacking. Second, the matter is before the Court on a motion for summary judgment. As such, the Court need not accept as true factual allegations in PLN's complaint that are not supported by evidence in the record. *See In re Grandote Country Club*, 252 F.3d at 1150 ("To withstand summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." (quotation omitted)). Third, PLN has crystalized its position that it is bringing only "*as-applied* claims under the First and Fifth Amendments." (ECF No. 109 at 18.)

### A. Claim One

Paragraph C of the December 2017 supplement (quoted above in full) proscribes the rejection of a publication "solely because it discusses an ADX or [BOP] inmate, or BOP staff member." (ECF No. 106-2 at 21, ¶ C). The December 2017 supplement expressly ends the name-alone practice, and there is no evidence that the name-alone practice persisted beyond December 2017. Less clear is the extent to which the practice was phased out while the February 2016 supplement was still in effect. The previously rejected issues of *Prison Legal News* were delivered to inmates who were still at ADX in March 2017. There is no evidence that any of those issues could be rejected under the December 2017 supplement, which, like the February 2016 supplement, continues to allow the rejection of a publication that is detrimental to the security of ADX. *See* § 540.71(b). "[A] plaintiff's continued susceptibility to injury must be reasonably certain; a court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." *Jordan*, 654 F.3d at 1024 (brackets and quotation omitted). Because the previously rejected issues have been delivered and the BOP's

policy going forward has changed, PLN's as-applied challenge to the BOP's allegedly improper rejection of them can proceed no further.

PLN contends that the effects of the rejections have not been completely and irrevocably eradicated by the elimination of the name-alone practice, but it has not shown that it faces a credible threat that its publications will be improperly rejected on some other basis. *See Jordan*, 654 F.3d at 1024 ("[A] court will not entertain a claim for injunctive relief where the allegations take it into the area of speculation and conjecture." (brackets and quotation omitted)). PLN also contends that the BOP's policy may be changed by a future warden. But "that possibility does not breathe life into an otherwise moot case." *Brown v. Buhman*, 822 F.3d 1151, 1175 (10th Cir. 2016). The prospect that the BOP will resume censoring the PLN's magazine under the name-alone practice or for some other unspecified and improper reason is speculative and remote. *See id.* at 1176.

To the extent PLN contends that the BOP's practice of rejecting issues *Prison Legal News* in their entirety violates its rights, all of the previously rejected issues have issues have been delivered, so it cannot meet the injury-in-fact requirement. "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). PLN has not identified any continuing, present adverse effects associated with this practice. Therefore, Claim One is now moot.

**B. Claim Two**

Some of PLN's allegations with respect to this claim, though sufficient to withstand the BOP's motion to dismiss, are insufficient to withstand BOP's motion for summary judgment. First, although PLN alleges that it did not receive a rejection letter regarding the BOP's rejection

of the November 2011 issue of *Prison Legal News*, it does not cite any evidence to support this allegation. The record includes a copy of the letter, which states it was sent to PLN. The lack of evidence supporting PLN's contention, along with the presumption of regularity that attaches to administrative procedures, *see, e.g.*, *Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10th Cir. 2004), compels the Court to conclude that PLN has not carried its burden of showing a genuine issue of material fact with respect to this issue. And in any event, PLN concedes that it received actual notice of the rejection from subscribing inmates who did receive rejection letters.

Second, PLN's allegation regarding to the six-to-nine-month delay in receiving rejection letters also lacks evidentiary support. The BOP states that in accordance with its administrative procedures, the letters were mailed to PLN either in the same month as the date of publication or within the following month. The BOP further states that it "is without knowledge or information sufficient to form a belief as to the date on which [PLN] received the rejection notices or the reasons that may have caused any delay." (ECF No. 88 at 8, ¶ 38.) Again, PLN's unsupported allegation is insufficient to overcome the presumption of regularity that attaches to administrative procedures, *see Yuk*, 355 P.3d at 1232, and the Court declines to accept it as true at this stage of the litigation.

Paragraph G of the December 2017 supplement provides that rejection notices will ordinarily be sent to the publisher within ten business days after a publication is rejected. This appears to shore up a key deficiency in the BOP's policy identified by the Court in its denial of the BOP's motion to dismiss. PLN has not shown that this addition to the BOP's policy is insufficient to satisfy its due-process concerns stemming from its as-applied challenge to the BOP's rejection of eleven issues of its magazine. *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010) ("The crucial question [when determining

whether a claim is moot] is whether granting a *present* determination of the issues offered will have some effect in the real world." (quotation omitted)).

With respect to the whether the BOP provided adequate reasons for rejecting the eleven issues, PLN has not shown that the December 2017 supplement did not moot those concerns. With its decision to deliver the previously rejected issues, the BOP effectively rescinded the rejection letters. Because the rejection letters are no longer pending and the BOP has modified its policy on notifying publishers about rejections, there is no basis to conclude that PLN's continued susceptibility to injury is reasonably certain. Moreover, paragraphs E and G require added specificity for recommendations for rejection, which must contain "specific objectionable pages and the national policy cite," (*id.* at ¶ E), and the rejection notices themselves, which must contain "reference to the specific article(s) or material(s) considered objectionable, including page references and quotes from the incoming publication," (*id.* at ¶ G). The Court concludes the BOP has carried its burden to show that there is no reasonable possibility that the alleged violations will recur. Accordingly, this claim, too, is now moot.

### C. Claim Three

In light of the Court's conclusion that PLN's constitutional claims are now moot, PLN has not shown the BOP acted arbitrarily or capriciously. Therefore, the APA claim is also moot.

## V. Conclusion

The BOP's motion for summary judgment (ECF No. 106) is GRANTED and the case is DISMISSED WITHOUT PREJUDICE as MOOT.  PLN's pending motion for partial summary judgment (ECF No. 104) is DENIED as MOOT.

DATED this 25th day of October, 2018.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge