**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FILED
**United States Court of Appeals**
**Tenth Circuit**

**December 13, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

PRISON LEGAL NEWS,

      Plaintiff - Appellant,

v.

FEDERAL BUREAU OF PRISONS,

      Defendant - Appellee.

-----------------------------

UPTOWN PEOPLE'S LAW CENTER;
DANIELLE C. JEFFERIS; NICOLE B.
GODFREY,

      Amici Curiae.
_____

No. 18-1486

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:15-CV-02184-RM-STV)**
_____

Matthew S. Shapanka of Covington & Burling LLP, Washington, D.C. (Peter A.
Swanson, Terra W. Fulham, Alyson R. Sandler of Covington & Burling LLP,
Washington D.C.; Steven D. Zansberg of Ballard Spahr LLP, Denver, Colorado, with
him on the briefs) for Plaintiff - Appellant.

J. Bishop Grewell, Assistant United States Attorney (Jason R. Dunn, United States
Attorney with him on the brief), Denver, Colorado, for Defendant - Appellee.

Nicholas J. Siciliano, Dylan Glenn of Latham & Watkins LLP, Chicago, Illinois, filed an
amicus curiae brief in support of Plaintiff - Appellant for Danielle C. Jefferis, Nicole B.
Godfrey, and Uptown People's Law Center.
_____

Before **HARTZ**, **SEYMOUR**, and **MATHESON**, Circuit Judges.
_____

**MATHESON**, Circuit Judge.
_____

Prison Legal News ("PLN") publishes a monthly magazine to help inmates navigate the criminal justice system.  Between January 2010 and April 2014 (the "Rejection Period"), the Federal Bureau of Prisons ("BOP") rejected the distribution of 11 publications PLN sent to inmate subscribers at the BOP's United States Penitentiary, Administrative Maximum Facility in Florence, Colorado ("ADX").[1]

PLN sued the BOP, claiming the rejections violated PLN's First Amendment rights, its Fifth Amendment procedural due process rights, and the Administrative Procedure Act ("APA").  ADX responded by distributing the 11 publications, revising its institutional policies, and issuing a declaration from its current Warden.  Based on these actions, the BOP moved for summary judgment, arguing that PLN's claims were moot or not ripe.  PLN filed a cross-motion for partial summary judgment on its First and Fifth Amendment claims.  The district court granted the BOP's motion and dismissed the case as moot.

_____

[1] The BOP is the federal agency within the Department of Justice that "manage[s] and regulat[es] . . . all [f]ederal penal and correctional institutions," including ADX. 18 U.S.C. § 4042.  Because PLN sued the BOP, the BOP is the named defendant entity for motion papers during the lawsuit.  ADX was the specific BOP institution that rejected PLN's 11 publications and acted in response to the litigation.  References to the BOP or ADX in this opinion are references to the defendant.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm. Developments during

litigation mooted PLN's claims, and the voluntary cessation exception to mootness does

not apply.

## I.  BACKGROUND

We present in chronological order the BOP actions and district court proceedings

leading to this appeal. These events overlapped because the BOP continued to take

actions relevant to, but outside of, the court proceedings.

### A. *ADX's Review of Incoming Publications*

We describe (1) the BOP regulations set forth in 28 C.F.R. §§ 540.70 to 540.72

and (2) the ADX institutional supplement, a document establishing policies specific to a

BOP prison facility. Both govern ADX's review of incoming publications.

During the Rejection Period, the BOP regulations permitted inmates to receive

publications without prior approval unless the publications were (a) statutorily prohibited

or (b) rejected by the Warden as "detrimental to the [facility's] security, good order, or

discipline" under 28 C.F.R § 540.71(b). *See* 28 C.F.R. §§ 540.70-.72. For any rejection,

the regulations required the Warden to promptly notify the inmate in writing, provide

reasons, and identify the objectionable content. *Id.* § 540.71(d). The Warden also had to

provide the publisher with a copy of the rejection notice. *Id.* § 540.71(e). These

regulations have not changed since the Rejection Period.

The ADX institutional supplement in effect during the Rejection Period listed a sequence of ADX personnel responsible for screening incoming publications before the Warden's review.  Only the Warden may revise the supplement.[2]

### B.  *January 2010 to April 2014 – The Rejection Period*

During the Rejection Period, ADX officials flagged for potential rejection any publication that referred to an ADX inmate or staff member ("name-alone content"). After further review, the BOP rejected 11 PLN publications in their entirety.  For each rejection, the ADX Warden signed a notice.  Each notice said the publication was rejected under 28 C.F.R. § 540.71(b), identified the objectionable pages, and explained why the content was problematic, including that the objectionable pages contained name-alone content.[3]

PLN contends, and several former ADX Wardens have stated, that a publication's "name-alone content" was not a sufficient reason for rejection.  Aplt. Br. at 26; App. at

---

[2] ADX revised its institutional supplement twice during the Rejection Period and a third time in December 2014 before PLN's October 2015 complaint.  Because they did not materially differ, we refer to them collectively as the ADX institutional supplement in effect during the Rejection Period.

[3] *See, e.g.*,  App. at 668 (January 2010 pages "contain information on an ADX inmate"); *id.* at 672 (October 2011 pages "contain information on FCC Florence inmates and staff"); *id.* at 1065 (September 2013 pages "contain the names of former Bureau of Prisons staff members that have been sentenced"); *id.* at 1067 (April 2014 notice explaining objectionable page "contains information on an individual incarcerated at United States Penitentiary (ADX) and details on his case").

4

1577-78, 1606.[4]  Former ADX Wardens provided examples of specific reasons for the rejections other than name-alone content,[5] and the record shows that two notices listed a reason other than name-alone content.[6]

### C. *October 2015 – PLN's Complaint*

On October 1, 2015, PLN sued the BOP in the United States District Court for the District of Colorado.  It alleged the BOP violated (1) its First Amendment rights, (2) its Fifth Amendment due process rights, and (3) the APA.

First, PLN alleged the BOP censored First Amendment-protected speech (the "content censorship claim").  PLN averred this "censorship . . . [was] not rationally related to any legitimate and neutral government purpose" because "the allegedly objectionable information [did] not pose any risk to the security, discipline, or good order of ADX."  *Id.* at 23.  PLN also claimed the BOP's rejection of publications in their

---

[4] On appeal, the BOP does not specify ADX's initial reasons for rejection, but contends those reasons are irrelevant to the mootness analysis because the BOP has acknowledged the publications were improperly rejected.  Aplee. Br. at 13.

[5] One example was a publication's discussion of an ADX inmate's gang membership when ADX housed rival gang members.  *See, e.g.*, App. at 2208-14 (February 2013 publication's discussion of "active terrorists," when ADX housed rival gang members, was security risk); *id.* at 2306-10 (April 2013 publication's discussion of "terrorist" and "terrorist attack he was involved in," when ADX housed rival gang members, was security risk); *id.* at 2312-13 (July 2013 publication's identification of inmate's cartel, when ADX housed rival cartels, was security risk).

[6] *See* App. at 670 (June 2010 notice explaining objectionable page "contains information on a riot at USP Florence and information on an ADX inmate"); *id.* at 731 (November 2011 notice explaining objectionable pages "contain information on inmates who cooperated with BOP investigations").

entirety constituted improper censorship because redaction was "an obvious and easy alternative" (the "non-redaction censorship claim"). *Id*.[7]

Second, PLN alleged the BOP's rejections "failed to provide PLN with timely and adequate notice" and an opportunity to contest (the "procedural due process claim"). *Id.* at 24.[8]  PLN claimed the rejection notices' "uninformative, perfunctory language" provided insufficient detail to place PLN on notice. *Id.*

Third, PLN alleged the BOP violated the APA by taking actions "constitut[ing] arbitrary and capricious decision making." *Id*. at 25.

PLN requested the following relief:

> (1) A declaration that the BOP's censorship of *Prison Legal News* violated the First and Fifth Amendments and the APA;
>
> (2) injunctive relief compelling the BOP to deliver (a) the rejected publications and (b) all future *Prison Legal News* publications, unless the BOP had a valid penological reason to reject them;
>
> (3) injunctive relief compelling the BOP to provide PLN with, for any future rejections, (a) timely and individualized notice with a justifying explanation and (b) timely opportunity to contest;

---

[7] The record shows PLN's publications averaged around 60 pages and each contained, at most, one to three pages of objectionable material. *See, e.g.*, App. at 674-729, 672 (October 2011 publication at 56 pages with three objectionable pages); *id.* at 30-93, 989 (July 2013 publication at 64 pages with two objectionable pages).

[8] We have "recognized that . . . publishers have a right to procedural due process when publications are rejected." *Jacklovich v. Simmons*, 392 F.3d 420, 433 (10th Cir. 2004).

(4) "further relief as the [c]ourt deem[ed] just and equitable."

*Id*. at 27-28.

PLN did not request monetary damages.

### D. *February 2016 – Updated ADX Supplement*

On February 2, 2016, ADX issued an updated institutional supplement (the "February 2016 Supplement"). It required additional ADX personnel, including the legal department, to review incoming publications. Section IV.Q also required the legal department to "conduct quarterly training" with ADX personnel regarding procedures for reviewing incoming publications. *Id*. at 234. The February 2016 Supplement did not explicitly address name-alone content.

### E. *July 2016 – BOP's Motion to Dismiss*

On July 27, 2016, the BOP filed a motion to dismiss. It argued various grounds for dismissal of PLN's claims, including that PLN's claims were mooted by the February 2016 supplement, PLN lacked standing, and PLN had failed to state a claim.

### F. *March 2017 – ADX Delivered the Rejected Publications*

In early 2017, then-Warden Jack Fox examined the rejected publications in consultation with the BOP's legal department.[9] He concluded the BOP's initial reasons

---

[9] The ADX Warden was Jack Fox from December 2015 to December 2017. ADX had acting wardens in the interim period before Andre Matevousian became ADX Warden in April 2018.

for rejection were improper.[10]  Based on Warden Fox's review, ADX delivered the 11

rejected publications to inmate subscribers in March 2017.

### G. *August 2017 – Denial of BOP's Motion to Dismiss*

On August 14, 2017, the district court said the case was not moot and denied the

BOP's motion to dismiss.  It reasoned that the BOP's February 2016 Supplement

"change[d] very little" regarding ADX's review of incoming publications.  *Id.* at 582.

The court also would have found the voluntary cessation exception applied because the

BOP's updated supplement was a "ploy" to avoid its jurisdiction.  *Id.* at 588.

### H. *December 2017 – Updated ADX Supplement*

On December 21, 2017, ADX issued an updated institutional supplement that

remains effective (the "December 2017 Supplement").  Section III.C of the supplement

states that a publication "may not be rejected solely because it discusses an ADX or

[BOP] inmate, or BOP staff member," and instead requires incoming publications to

undergo "an individualized assessment."  *Id.* at 1787.  For any rejection, the Warden must

give prompt written notice to the inmate and the publisher of the decision and the ability

to obtain independent review.  ADX also will "[ordinarily] . . .  mail[] [the rejection

---

[10] *See, e.g.*, App. at 2346-47 (Warden Fox's deposition explaining PLN's
November 2011 publication was improperly rejected, despite objectionable pages
mentioning inmates who cooperated with a BOP investigation, because the occurrence of
such events was common knowledge); *id.* at 2350-51 (Warden Fox's deposition
explaining PLN's February 2013 publication was improperly rejected, despite
identification of a BOP inmate, because the objectionable pages' content was not
otherwise of concern).

notice] to the publisher within ten business days from the Warden's signature date." *Id*.

Any rejection notice must identify the reasons for rejection, "refer[] to the specific

article(s) or material(s) considered objectionable," and include page references and

quotes. *Id*.[11]

## I. *May 2018 – Cross-Motions for Summary Judgment*

On May 14, 2018, the BOP moved for summary judgment on all claims. It

attached a declaration from current ADX Warden Andre Matevousian stating the

December 2017 Supplement prohibited "any past [BOP] practice of rejecting publications

based on names alone," though the ADX Warden is allowed to find "the names of [BOP]

inmates or staff, coupled with more details about the individual, may pose a security

risk." *Id*. at 1363. He stated that "ADX will continue to abide by . . . the December 2017

[Supplement]," under which the 11 publications "would not be rejected." *Id*. at 1366. He

declared he was aware former Warden Fox had reviewed the rejected publications before

deciding to deliver them to ADX inmate subscribers, and he "agree[d] with [former

Warden Fox's] assessment" that the original reasons for rejection were improper. *Id*.

The BOP argued its March 2017 delivery of the rejected publications, the

December 2017 Supplement, and Warden Matevousian's declaration mooted PLN's

claims. It also contended that PLN's claims regarding future rejections were not ripe.

---

[11] The BOP stated at oral argument that rejections have declined since adoption of the December 2017 Supplement. Oral Arg. at 25:41-27:49. According to the BOP, it has not rejected any PLN publications since April 2014. *Id.*; *see also* App. at 425.

PLN filed a cross-motion for partial summary judgment on its First and Fifth Amendment claims.  In its cross-motion, PLN confirmed its claims were as-applied.[12]

### J.   *October 2018 – District Court Grants BOP's Motion for Summary Judgment*

In October 2018, the district court granted the BOP's motion for summary judgment, dismissed the case without prejudice, and denied PLN's motion for partial summary judgment.  The court found that interim developments had mooted each of PLN's claims, citing the BOP's December 2017 Supplement, which prohibited rejecting a publication solely because it contained name-alone content, and PLN's confirmation that its claims were only as-applied—not facial—challenges.  It noted the BOP's delivery of its previously rejected publications was an "effective[] resci[sion] [of] the rejection letters."  *Id.* at 2091.[13]

PLN timely appealed.

\*   \*   \*   \*

The following table summarizes the factual and procedural events discussed above.

---

[12] PLN has, throughout this litigation, said all of its claims were as-applied.  *See, e.g.*, App. 622 (describing "PLN's as-applied challenge to BOP's unwillingness to redact publications"); *see also id.* at 1467 (explaining PLN brings "challenges, on an as-applied basis, under the First Amendment and the APA"); *id.* at 1483 ("PLN brings *as-applied* claims under the . . . Fifth Amendment[].");  *id.* at 1927 (explaining the "BOP again mischaracterizes PLN's redaction argument as a facial challenge").

[13] Although the district court explained that "[v]oluntary cessation is an exception to the mootness doctrine," it did not analyze this exception in its summary judgment order.  App. at 2087.

| The BOP's Administrative Actions | | Legal Proceedings | |
|---|---|---|---|
| Jan. 2010 to Apr. 2014 | The BOP rejected 11 PLN publications. | | |
| | | Oct. 1, 2015 | PLN filed its complaint. |
| Feb. 2, 2016 | ADX issued February 2016 Supplement requiring additional ADX personnel to review incoming publications and receive quarterly training. | | |
| | | July 27, 2016 | The BOP filed a motion to dismiss. |
| Mar. 1, 2017 | Warden Fox delivered the 11 previously rejected PLN publications to inmate subscribers at ADX. | | |
| | | Aug. 14, 2017 | District court denied the BOP's motion to dismiss. |
| Dec. 21, 2017 | ADX issued December 2017 Supplement prohibiting the rejection of a publication solely because it contained name-alone content, and requiring prompt, specific notice to a rejected publication's publisher. | | |
| | | May 14, 2018 | Parties filed cross-motions for summary judgment. The BOP's motion attached a declaration from ADX Warden Matevousian. |
| | | Oct. 25, 2018 | District court granted the BOP's motion for summary judgment and denied PLN's motion for partial summary judgment. |

## II. **DISCUSSION**

PLN appeals the district court's (1) grant of the BOP's motion for summary

judgment and (2) denial of PLN's motion for partial summary judgment. We hold that

PLN's claims became moot when ADX took intervening administrative actions and PLN confirmed its claims were as-applied.  We affirm the district court's judgment.

### A. *Standard of Review and Summary Judgment*

We review a district court's decision to grant summary judgment based on mootness de novo.  *See Teets v. Great-West Life & Annuity Ins. Co.*, 921 F.3d 1200, 1211 (10th Cir. 2019) ("We review a grant of summary judgment de novo. . . ." (quotations omitted)); *see also Brown v. Buhman*, 822 F.3d 1151, 1168 (10th Cir. 2016) (explaining we review questions of mootness de novo "squarely [as] a legal determination" (quotations omitted)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When applying the summary judgment standard, "[w]e view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party."  *Teets*, 921 F.3d at 1211.  The party arguing in favor of mootness due to its discontinued conduct bears the burden to show the case is moot.  *See United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968) (explaining the "burden of persuasion [of mootness] . . . rests upon those in [the proponent of mootness's] shoes"); *Rezaq v. Nalley*, 677 F.3d 1001, 1008 (10th Cir. 2012) ("[I]t falls upon the BOP to carry [the] burden" of showing mootness).  It also must meet the "heavy burden" to show that the voluntary cessation exception to mootness does not apply.  *Rio Grande*

*Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1116 (10th Cir. 2010) (quotations omitted).[14]

## B.  *Legal Background*

The following describes (1) the Constitution's case-or-controversy requirement for federal court jurisdiction, (2) the mootness doctrine, and (3) the voluntary cessation exception to mootness.

### 1.  Article III Case-or-Controversy Requirement

Article III of the Constitution permits federal courts to decide only "Cases" or "Controversies."  U.S. Const. art. III, § 2; *see Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013).  "This case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quotations omitted).  It "requires a party seeking relief to have suffered, or be threatened with, an actual injury traceable to the appellee and likely to be redressed by a favorable judicial decision by the appeals court."  *United States v. Vera-Flores*, 496 F.3d 1177, 1180 (10th Cir. 2007) (quotations and brackets omitted).

Courts employ three jurisdictional doctrines to "keep federal courts within their constitutional bounds":  standing, mootness, and ripeness.  *Brown*, 822 F.3d at 1163. Standing requires the plaintiff to allege a personal interest warranting federal-court jurisdiction by showing three elements:  (1) "an injury in fact," (2) a "causal connection

---

[14] This burden is "even greater" than the burden to prove mootness.  *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1183 (10th Cir. 2012).

between the injury and the conduct complained of," and (3) redressability. *Id.* at 1164 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Mootness is "standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Id.* (quotations omitted).[15] Ripeness "prevent[s] the premature adjudication of abstract claims." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (quotations omitted).

---

[15] As we said in *Brown*,

> The Court has cautioned that the "time frame" description of mootness "is not comprehensive." *Friends of the Earth, Inc. v. Laidlaw Envtl. Serv's (TOC), Inc.*, 528 U.S. 167, 190 (2000). In particular, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." *Id.* Standing, unlike mootness, is also not subject to an exception for disputes that are "capable of repetition yet evading review[]." *Id.* at 191. These caveats, however, do not affect the general rule that "[t]he requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Arizonans for Official English*[ *v. Arizona*, 520 U.S. 43, 68 n.22 (1997)].

*See Brown*, 822 F.3d at 1164, n.14.

2.  **Article III Mootness**[16]

"We have no subject-matter jurisdiction if a case is moot." *Rio Grande Silvery Minnow*, 601 F.3d at 1109.  "The crucial question is whether granting a *present* determination of the issues offered will have some effect in the real world." *Brown*, 822 F.3d at 1165-66 (emphasis added) (quotations omitted); *see Wyo. v. U.S. Dep't of Agric.*, 414 F.3d 1207, 1212 (10th Cir. 2005) (finding case mooted by defendant's new rule, which rescinded portions of prior rule challenged by plaintiff).

An action becomes moot "[i]f an intervening circumstance deprives the plaintiff of a personal stake . . . at any point." *Brown*, 822 F.3d at 1165 (quotations omitted).  In a moot case, a plaintiff no longer suffers a redressable "actual injury." *Ind v. Colo. Dep't of Corrs.*, 801 F.3d 1209, 1213 (10th Cir. 2015) (quotations omitted).  But an action is not moot if a plaintiff has "a concrete interest, however small, in the outcome." *Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307-08 (2012) (quotations omitted).

The court must decide whether a case is moot as to "each form of relief sought." *Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (explaining the plaintiff's "burden to demonstrate standing for each form of relief sought . . . exists at all times

---

[16] The mootness doctrine includes constitutional and prudential considerations. *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (stating courts "recognize two kinds of mootness:  constitutional mootness and prudential mootness").  Constitutional mootness "is grounded in the requirement that any case or dispute that is presented to a federal court be definite, concrete, and amenable to specific relief." *Id.* at 1024 (emphasis and quotations omitted).  We address only constitutional mootness as necessary to our analysis.

throughout the litigation" (quotations omitted)).  Thus, interim developments that moot a claim for prospective relief do not necessarily moot a claim for damages.[17]  And "[t]he mootness of a plaintiff's claim for *injunctive relief* is not necessarily dispositive regarding the mootness of his claim for a *declaratory judgment*."  *Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011).

"Generally, a claim for prospective injunction becomes moot once the event to be enjoined has come and gone."  *Citizen Ctr. v. Gessler*, 770 F.3d 900, 907 (10th Cir. 2014).  A claim for declaratory relief that does not "settl[e] . . . some dispute which affects the behavior of the defendant toward the plaintiff" is moot, *Rio Grande Silvery Minnow*, 601 F.3d at 1110 (quotations omitted), because it fails to "seek[] more than a retrospective opinion that [the plaintiff] was wrongly harmed by the defendant," *Jordan*, 654 F.3d at 1025.

3.  **Voluntary Cessation Exception to Mootness**

Under the "voluntary cessation exception" to mootness, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013); *see also Brown*, 822 F.3d at 1166.[18]  The

---

[17] *See Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8 (1978) (explaining the claim for "damages . . . saves [the case] from the bar of mootness"); *see also Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1257-58 (10th Cir. 2004).

[18] The mootness doctrine has two exceptions that make a case not moot, "notwithstanding the seeming extinguishment of any live case or controversy."  *Brown*, 822 F.3d at 1166.  The second exception applies when a defendant's wrongs are "capable of repetition, yet evad[e] [judicial] review."  *Id.* (quotations omitted).  *See, e.g.*, *United States v. Sanchez-Gomez*, 138 S.Ct. 1532, 1541-42 (2018); *Am. Charities for Reasonable*

exception "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resum[e] the illegal conduct," *Ind*, 801 F.3d at 1214 (quotations omitted), or "evade judicial review . . . by temporarily altering questionable behavior," *Brown*, 822 F.3d at 1166 (quotations omitted).[19]

The voluntary cessation exception does not apply, and a case is moot, "if the defendant carries 'the formidable burden of showing that it is absolutely clear[20] the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 1166 (quoting *Already*, 568 U.S. at 91). This burden is "stringent" and "heavy." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). The

---

*Fundraising Regulation, Inc. v. O'Bannon*, 909 F.3d 329, 333-34 (10th Cir. 2018). That exception is not relevant to this case.

[19] *See, e.g.*, *Knox v. Serv. Emps. Int'l Union*, *Local 1000*, 567 U.S. 298, 305 (2012). In *Knox*, union class members sued the union, challenging the union's increased fees. *Id.* After certiorari was granted, the union offered all class members a full refund and moved to dismiss the case. *Id.* at 307. The Court determined the case was not moot because the union continued to defend the fee's legality, making it unclear why the union "would necessarily refrain from collecting similar fees in the future." *Id.* at 307.

[20] "The Supreme Court's voluntary cessation cases suggest the word 'absolutely' adds little to this formulation. After reciting this standard, the Court sometimes omits 'absolutely' from its subsequent analysis, instead using the 'reasonably be expected' language as shorthand." *Brown*, 822 F.3d at 1166 n.16; *see, e.g.*, *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953) ("The case may . . . be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." (quotations omitted)). For the voluntary cessation exception to apply, "we must be convinced that the allegedly wrongful behavior could not *reasonably* be expected to recur . . . not that there is no possibility." *Brown*, 822 F.3d at 1175 (quotations omitted).

inquiry is fact-specific. *See United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *Brown*, 822 F.3d at 1168.

To carry its burden, a defendant must do more than offer "a mere informal promise or assurance . . . that the challenged practice will cease" or "announce[] . . . an intention to change." *Rio Grande Silvery Minnow*, 601 F.3d at 1118 (quotations omitted). A defendant's corrective actions that "do[] not fully comport with the relief sought" are also insufficient. *Wiley v. Nat'l Collegiate Athletic Ass'n*, 612 F.2d 473, 476 (10th Cir. 1979). Instead, a defendant must undertake "changes that are permanent in nature" and "foreclose a reasonable chance of recurrence of the challenged conduct." *Tandy v. City of Wichita*, 380 F.3d 1277, 1291 (10th Cir. 2004). Such changes could include "withdrawal or alteration of administrative policies" through a formal process, *Rio Grande Silvery Minnow*, 601 F.3d at 1117 (quotations and brackets omitted), or a declaration under penalty of perjury, so that plaintiffs "face no credible threat of prosecution," *Brown*, 822 F.3d at 1172.

Courts may accord "more solicitude" to government officials' claims that their voluntary conduct moots a case. *Rio Grande Silvery Minnow*, 601 F.3d at 1116 n.15 (quotations omitted). This solicitude is "not . . . invoked automatically." 13C Charles Alan Wright & Arthur R. Miller, *Fed. Practice & Procedure* § 3533.7 (3d ed. Aug. 2019). But "government self-correction provides a secure foundation for mootness so long as it seems genuine." *Brown*, 822 F.3d at 1167-68 (alterations and quotations omitted). And absent evidence the voluntary cessation is a sham, the mere possibility a successor official may shift course does not necessarily keep a case live. *See id.* at 1175

18

(explaining "hypothetical" that a future government official could change a policy "does not breathe life into an otherwise moot case").

## C. *Analysis*

Significant developments leading up to the parties' cross-motions for summary judgment rendered this case moot:

(1) The BOP delivered the 11 rejected publications.

(2) ADX issued its December 2017 Supplement, which prohibited rejecting a publication solely because it contained name-alone content, required prompt, specific notice to a rejected publication's publisher, and retained the February 2016 Supplement's requirements that additional ADX personnel review incoming publications and receive quarterly training on procedures.

(3) ADX Warden Matevousian declared, under penalty of perjury, that the December 2017 Supplement would apply going forward, that the 11 previously rejected publications "would not be rejected under [that supplement]," and that he "agree[d] with [former Warden Fox's] assessment" that the initial rejections were improper.  App. at 1366.

PLN also confirmed its claims were only as-applied, not facial.

The voluntary cessation exception to mootness does not apply because these developments satisfy the BOP's "formidable burden" to make "clear the [BOP's] allegedly wrongful behavior could not reasonably be expected to recur."  *Brown*, 822 F.3d at 1166 (quotations omitted).[21]

---

[21] Although the district court did not expressly analyze the voluntary cessation exception in its summary judgment order, *see* App. at 2087, at the summary judgment stage both parties addressed it in their briefing.  *Id.* at 1478-81 (PLN arguing "The

The following addresses mootness for each of PLN's claims and the declaratory and injunctive relief it seeks.  PLN has not asked for compensatory damages.

1.  **Content Censorship Claim**

a.  *Mootness*

PLN asked for injunctive and declaratory relief on its content censorship claim.  In its complaint, it specifically asked the district court to order the BOP to deliver the 11 rejected publications and all future PLN publications unless the BOP had a valid penological reason to reject them.  It also asked the court to declare that the BOP's content censorship violated the First Amendment.

Neither form of relief would redress an ongoing "actual injury."  *Ind*, 801 F.3d at 1213.  The ADX's administrative actions, Warden Matevousian's declaration, and PLN's confirmation that its as-applied claim covers only its 11 previously rejected publications are "intervening circumstance[s] depriv[ing] [PLN] of a personal stake."  *Brown*, 822 F.3d at 1165 (quotations omitted).  Any equitable redress would lack "some effect in the real world."  *Id.* at 1165-66 (quotations omitted).

i.  Past 11 PLN publications

PLN's requests for injunctive and declaratory relief are moot.  The BOP delivered the 11 rejected publications in March 2017.  Because "the event to be enjoined has come and gone," *Citizen Ctr.*, 770 F.3d at 907, there is now no reason for the court to order

---

Voluntary Cessation Exception Applies"); *id.* at 1302-04 (BOP arguing "[t]he voluntary-cessation exception to mootness does not apply here").

delivery.  *See also Jordan*, 654 F.3d at 1024 (requiring an injury to be more than "past exposure to illegal conduct . . . unaccompanied by any continuing, present adverse effects" (quotations omitted)).  The BOP's concession that the publications were initially improperly rejected likewise means that a declaratory judgment would not "affect[] the behavior of the [BOP] toward [PLN]," *Rio Grande Silvery Minnow*, 601 F.3d at 1110, and would serve merely as "a retrospective opinion that [PLN] was wrongly harmed by the [BOP]," *Jordan*, 654 F.3d at 1025.

### ii.  Future PLN publications

PLN also asked the district court to order the BOP to deliver future PLN publications unless the BOP has a valid penological reason for rejection.  But Warden Matevousian declared that the December 2017 Supplement will apply going forward.  He said the 11 previously rejected publications "would not be rejected" and "agree[d] with [former Warden Fox's] assessment" that the initial rejections were improper.  App. at 1366.  To the extent PLN seeks to prevent the BOP from rejecting publications that are substantially similar to the 11 previously rejected publications, the BOP's December 2017 Supplement and the Warden's declaration rendered the request moot.  *See Brown*, 822 F.3d at 1165-66.

To the extent PLN seeks more broadly to prevent the BOP from rejecting its future publications that are not substantially similar to its prior 11 publications, this requested

relief is vague[22] and incompatible with PLN's as-applied claim.  When a plaintiff brings

an as-applied claim, prospective relief must be limited to a future wrong that

"disadvantages [the plaintiffs] in the *same fundamental way*."  *See Ne. Fla. Chapter of

Assoc. Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993)

(emphasis added).  PLN's claim concerns its prior 11 publications.  Its request for broad

injunctive relief extends far beyond its as-applied claim and does not merit consideration

absent a facial challenge to the BOP's rejection policies.  As the BOP points out, PLN's

broad request for relief is also not ripe because "future rejections will necessarily result

from different facts and different reasons."  Aplee. Br. at 20.

    In summary, on its content censorship claim, PLN lacks an ongoing injury that is

judicially redressable.  The BOP delivered its 11 publications.  The Warden has declared

that PLN's future publications substantially similar to the previously rejected publications

will not be rejected.  And because PLN asserts only an as-applied claim, we do not

consider future PLN publications that are not substantially similar to the 11 at issue in

this suit.

---

[22] Under Federal Rule of Civil Procedure 65(d), an injunction granted by a court
must "state the reasons why it was issued," "state its terms specifically," and "describe in
reasonable detail . . . the act or acts restrained or required."  Fed. R. Civ. P. 65(d)).  To
the extent PLN seeks an "[i]njunction[] simply requiring a defendant to obey the law,"
this is "too vague to satisfy Rule 65(d)."  *Vallario v. Vandehey*, 554 F.3d 1259, 1268
(10th Cir. 2009) (quotations omitted).

b. *Voluntary cessation exception does not apply*

The voluntary cessation exception does not apply because the same developments that mooted PLN's content censorship claim also satisfy the BOP's formidable burden to show no reasonable expectation its allegedly wrongful behavior will recur. *See Brown*, 822 F.3d at 1166.

ADX has "[w]ithdraw[n] or alter[ed]" its challenged "administrative policies" to eliminate the practice of rejecting a publication solely because it contains name-alone content. This action helps ensure the ADX's past challenged censorship decisions will not recur. *See Rio Grande Silvery Minnow*, 601 F.3d at 1117. Further, Warden Matevousian's declaration limits ADX's ability to reject substantially similar future publications. *See Brown*, 822 F.3d at 1170-72 (declaration limiting a county attorney's prosecutorial discretion to circumstances unlikely to apply to the plaintiffs was sufficient to moot a case). These revisions are not merely "informal promise[s] or assurance[s]" or "intention[s]," *Rio Grande Silvery Minnow*, 601 F.3d at 1118, or incomplete responses to the plaintiff's sought relief, *see Wiley*, 612 F.2d at 476. Instead, they are "permanent" and "foreclose a reasonable chance of recurrence of the challenged conduct." *Tandy*, 380 F.3d at 1291. PLN thus "face[s] no credible threat of" similar future rejections. *Brown*, 822 F.3d at 1168.

Although the BOP bears a formidable burden, it does not need to show that there is "no possibility" of recurrence—only that its challenged actions could not reasonably be expected to recur. *Id.* at 1175. Its actions here represent the "genuine" government self-

correction that courts accord solicitude. *Id.* at 1168. These actions satisfy the BOP's heavy burden to show the voluntary cessation exception to mootness does not apply.

c. *PLN's arguments*

PLN makes four arguments as to why the voluntary cessation exception should apply. We address and reject each in turn.

<u>First</u>, PLN argues the "BOP failed to meet its 'formidable burden'" on voluntary cessation. Aplt. Br. at 36 (quoting *Brown*, 822 F.3d at 1166). It contends ADX may continue censoring its publications "for reasons *substantially similar*" to the prior reasons for rejection because "the warden's ability to censor publications like the [r]ejected [publications] remains unchanged." *Id.* at 28 (emphasis added). PLN further claims that ADX has been unresponsive because its post-suit changes address only name-alone content.

PLN's assertion that the BOP's policies remain unchanged and unresponsive is wrong, given the BOP's administrative actions and the Warden's declaration. To the extent the sole reason for rejecting a publication was its name-alone content, the December 2017 Supplement prohibited this practice and requires ADX personnel to receive quarterly training on ADX's procedures. And to the extent PLN's publications were rejected for other reasons, ADX Warden Matevousian's declaration restricts rejection of PLN publications that are substantially similar to the 11 publications. These changes address PLN's concerns and limit ADX's discretion to reject future publications.

24

<u>Second</u>, PLN contends that future wardens will retain discretion to change ADX's institutional supplement.[23]  But this court has explained that a successor government official's ability to change a policy does not in itself "breathe life into an otherwise moot case."  *Brown*, 822 F.3d at 1175 ("To argue that a [prison warden] cannot bind future [prison wardens] to his [institution's supplement] is unremarkable and unpersuasive.").

<u>Third</u>, PLN asserts ADX's improper content censorship can reasonably be expected to recur because it was contested in a prior 2003 lawsuit between the parties. Aplt. Br. at 38.  But PLN failed to present this argument to the district court and cannot raise it for the first time on appeal when it has not argued plain error.  *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011) ("[I]f the theory simply wasn't raised before the district court, we usually hold it forfeited.").

<u>Fourth</u>, PLN argues the BOP's failure to remedy its challenged policies until after PLN brought its lawsuit warrants application of the voluntary cessation exception.  Aplt. Br. at 39 (quoting *Brown*, 822 F.3d at 1167).  But in *Brown*, we explained that "[a] government official's decision to adopt a policy in the context of litigation may actually make it *more* likely the policy will be followed" and that a defendant's cessation of alleged wrongful conduct in "reaction to the [plaintiff's] suit . . . does not necessarily make it suspect."  *Brown*, 822 F.3d at 1171 (emphasis added).

---

[23] *See* App. at 1479 ("Even if the current warden intends to follow the institution[al] supplement, there is no dispute that a future warden has unfettered discretion to change it."); *see* Aplt. Br. at 4 ("ADX institution[al] supplements . . . are not promulgated pursuant to agency rule-making.  Rather, they are adopted—and can be changed at any time—by the decision of the ADX warden.").

2. **Non-Redaction Censorship Claim**

a. *Mootness*

PLN's as-applied non-redaction censorship claim also is moot due to the same developments that mooted its content censorship claim. Because the non-redaction censorship claim pertains only to the 11 previously rejected publications that the BOP delivered in their entirety, there is no ongoing injury or live controversy from the non-redaction of those publications. PLN also has not alleged a facial challenge to non-redaction, so its request for an injunction to prevent wholesale rejection goes beyond its as-applied claim. Its non-redaction censorship claim regarding future rejected publications is otherwise not ripe and must await an actual case or controversy.

b. *Voluntary cessation exception does not apply*

PLN's non-redaction censorship claim appears to present a stronger case for applying the voluntary cessation exception than the content censorship claim. Again, the BOP bears the formidable burden to show no reasonable expectation of recurrence. *See id.* at 1166. In the context of PLN's as-applied claim, this means the BOP must show it will not wholly reject future PLN publications that are substantially similar to the 11 that it previously rejected.

None of the BOP's administrative actions taken between the time of PLN's complaint and when the parties filed cross-motions for summary judgment specifically addressed PLN's non-redaction censorship claim. The BOP's delivery of the previously rejected publications did not forecast any change in the BOP's non-redaction practice. Neither ADX's February 2016 nor its December 2017 institutional supplements

addressed this practice.  And Warden Matevousian's declaration is silent on this issue.

Although these developments expressly addressed PLN's content censorship claim, they

do not resolve its non-redaction censorship claim.

      ADX's interim administrative actions nonetheless show the voluntary cessation

exception does not apply because PLN confirmed that all of its claims were as-applied.

Because the BOP met its burden to show it will not reject substantially similar future

PLN publications, it follows that such future PLN publications will not be rejected in

their entirety.  In short, the same developments enable the BOP to meet its formidable

burden on voluntary cessation for PLN's content censorship claim and its non-redaction

censorship claim.

### 3.  Procedural Due Process Claim

      In its complaint, PLN asked the court to order the BOP to provide proper due

process and to declare the BOP provided deficient due process for its rejections.

      PLN's as-applied procedural due process claim is moot because the publications

were distributed and the December 2017 Supplement addressed PLN's concerns

regarding timely and adequate reasons and an opportunity to contest.  Under the

December 2017 Supplement, the Warden must give prompt notice, ordinarily within 10

business days, to inmates and publishers.  App. at 1787.  The Warden's rejection notices

must identify the reasons for rejection with greater specificity by referring to the specific,

objectionable materials, including page references and quotes.  *Id.*

      The Warden's declaration states the BOP will adhere to the December 2017

Supplement.  *Id.* at 1366.  Taken together, these facts show that PLN has no ongoing and

redressable due process injury.  The BOP's actions mooting PLN's due process claim also satisfy its formidable burden to show no reasonable expectation of recurrence exists and that the voluntary cessation exception does not apply.  *See Brown*, 822 F.3d at 1166.

4.  **APA Claim**

Because PLN's APA claim is based on the same allegations as its constitutional claims, the APA claim is similarly moot.

### III. **CONCLUSION**

Factual developments during the litigation mooted PLN's claims.  The district court did not err in granting summary judgment for the BOP and dismissing this case for lack of jurisdiction.  We affirm.

## UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT
## OFFICE OF THE CLERK

Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157

| | | |
|---|---|---|
| Elisabeth A. Shumaker<br>Clerk of Court | December 13, 2019 | Chris Wolpert<br>Chief Deputy Clerk |

Ms. Terra White Fulham
Ms. Alyson Sandler
Mr. Matthew S. Shapanka
Mr. Peter Andrew Swanson
Covington & Burling
One CityCenter
850 Tenth Street NW
Washington, DC 20001-4956

Mr. Steven David Zansberg
Levine Sullivan Koch & Schulz, L.L.P.
1888 Sherman Street
Suite 370
Denver, CO 80203

RE:     18-1486, Prison Legal News v. Federal Bureau of Prisons
        Dist/Ag docket: 1:15-CV-02184-RM-STV

Dear Counsel:

Enclosed is a copy of the opinion of the court issued today in this matter. The court has entered judgment on the docket pursuant to Fed. R. App. P. Rule 36.

Pursuant to Fed. R. App. P. 40(a)(1), any petition for rehearing must be filed within 14 days after entry of judgment. Please note, however, that if the appeal is a civil case in which the United States or its officer or agency is a party, any petition for rehearing must be filed within 45 days after entry of judgment. Parties should consult both the Federal Rules and local rules of this court with regard to applicable standards and requirements. In particular, petitions for rehearing may not exceed 3900 words or 15 pages in length, and no answer is permitted unless the court enters an order requiring a response. If requesting rehearing en banc, the requesting party must file 6 paper copies with the clerk, in addition to satisfying all Electronic Case Filing requirements. *See* Fed. R. App. P. Rules 35 and 40, and 10th Cir. R. 35 and 40 for further information governing petitions for rehearing.

Please contact this office if you have questions.

Sincerely,

Elisabeth A. Shumaker
Clerk of the Court


cc:     Dylan Glenn
        J. Bishop Grewell
        Nicholas J. Siciliano


EAS/lab